# EXHIBIT 2

## AGREEMENT

THIS AGREEMENT ("Agreement") is entered into this 16th day of August by and between David E. Brody ("Brody") and Marc. A. Bruner ("Bruner"). Brody and Bruner may sometimes be referred to as a "Party" or collectively as the "Parties". This Agreement is based on the following premises:

## RECITALS

A. Brody has filed a claim *In the Matter of PetroHunter Energy Corporation* in the United States Bankruptcy Court for the District of Colorado, Case No. 16-20197-KHT (the "PetroHunter Bankruptcy"), in the amount of $335,374.18 (the "Claim");

B. Bruner and his affiliates have filed one or more claims in the PetroHunter Bankruptcy;

C. Brody desires to sell and assign, and Bruner desires to accept, the Claim in accordance with the terms set forth in this Agreement.

NOW, THEREFORE, based on the above premises, and the mutual covenants set forth herein, the Parties agree as follows:

1. **CONSIDERATION:**

    (a) Bruner shall pay and deliver to Brody: (i) $12,500 in cash (the "First Payment"), to be paid and delivered to Brody in the form of a cashier's check within thirty (30) days after signing this Agreement; (ii) $12,500 in cash (the "Second Payment") in the form of a cashier's check within sixty days from the date of this Agreement, and (iii) 150,000 shares of common stock of Fortem Resources Inc. (FRTM:US OTC) (the "Shares") owned by Bruner, free and clear of any liens or encumbrances, to be delivered to Brody in one share certificate within ten days from the date of this Agreement, which Shares shall be freely tradable on either the OTC market or on NASDAQ, with any and all restrictive legends or other restrictions removed or not applicable to the Shares by the end of the six-month holding period applicable under Rule 144, or such sooner time as the Shares can be freely traded under U.S. federal securities law. Bruner shall sign the Stock Power attached hereto simultaneously with signing this Agreement, and otherwise take all actions necessary to cause Squin Switzerland to issue a certificate for the Shares to Brody.

    (b) In the event the First Payment and the Second Payment are made by the due date, Brody shall promptly return to Bruner 25,000 Shares represented by the Stock Power attached hereto. If the First Payment and/or the Second Payment are not paid in full or in a timely manner, Brody may elect either to retain all 150,000 Shares or to extend the due date for one or both cash payments that are due under Section 1(a). If one or both cash payments are not made, Brody waives the right to make a claim against Bruner for breach of this Agreement. The provisions of Section 1(a) shall apply equally to all 150,000 Shares.

    (c) In consideration for the First Payment, the Second Payment, and delivery of the Shares, Brody hereby assigns and transfers the Claim to Bruner in accordance with the Transfer of Claim, attached hereto, effective on the date of this Agreement, together with all rights to pursue the Claim in the PetroHunter Bankruptcy, in Bruner's sole discretion.

1

Notwithstanding anything in this Agreement to the contrary, in the event the Claim is fully dismissed after Bruner takes all reasonable actions to defend on the Claim, and Bruner receives no value for it, Ready shall reassign to Bruner 50% of the Shares for which Ready Minerals receives a certificate, or shall pay Bruner the equivalent value of said Shares as of the date of this Agreement, after Bruner receives a final and unappealable determination regarding the Claim.

2. SHARES. The number of Shares shall be adjusted in an appropriate manner in the event of any stock split, stock dividend or other recapitalization of Puntan Resources Inc. prior to issuance of the Shares to Ready, and to take account of any share issuance for less than fair market value by Puntan Resources Inc. prior to the time the Shares become freely tradable and the legends or other restrictions removed from the certificates representing the Shares.

3. MISCELLANEOUS.

   (a) Modification. This Agreement will not be amended, modified, revised, supplemented, waived or otherwise changed except by a written instrument duly executed by the Parties and designated as such a change.

   (b) Entire Agreement. This Agreement constitutes and incorporates the entire agreement of the Parties concerning the subject matter of this Agreement and supersedes any prior agreements concerning the subject matter hereof.

   (c) Severability. If any provision of this Agreement is held invalid, illegal or unenforceable in any jurisdiction, the validity, legality and enforceability of the remaining provisions of this Agreement will not be affected thereby, nor will the validity, legality or enforceability of any such defective provisions be in any way affected or impaired in any other jurisdiction.

   (d) Successors and Assigns. This Agreement shall not be transferred or assigned to any third party without the non-assigning Party's prior written approval. If such approval is given, the terms, conditions, rights, benefits and obligations set forth in this Agreement will bind and inure to the benefit of each Party and their respective successors and permitted assigns.

   (e) Governing Law and Venue. This Agreement will be governed by and construed in accordance with the laws of the State of Colorado and venue for any legal action brought under this Agreement will be state or federal court in Denver, Colorado.

   (f) Attorneys' Fees. If any Party commences any action or proceeding against the other in order to enforce the provisions of this Agreement, the prevailing Party in any such action will be entitled to recover, in addition to any amounts or relief otherwise awarded, all reasonable costs incurred in connection therewith, including all reasonable attorneys' fees and costs.

IN WITNESS WHEREOF, the Parties have entered into this Agreement on the day and year first written above.

_____          _____
David E. Ready                                           Marc A. Bruner

Notwithstanding anything in this Agreement to the contrary, in the event the Claim is fully disallowed after Bruner takes all reasonable actions to collect on the Claim, and Bruner receives no value for it, Brody shall reassign to Bruner 50% of the Shares for which Brody physically receives a certificate, or shall pay Bruner the equivalent value of said Shares as of the date of this Agreement, after Bruner receives a final and unappealable determination regarding the Claim.

2. SHARES: The number of Shares shall be adjusted in an appropriate manner in the event of any stock split, stock dividend or other recapitalization of Fortem Resources Inc. prior to issuance of the Shares to Brody, and to take account of any share issuance for less than fair market value by Fortem Resources Inc. prior to the time the Shares become freely tradable and the legends or other restrictions removed from the certificates representing the Shares.

3. MISCELLANEOUS:

    (a) Modification. This Agreement will not be amended, modified, revoked, supplemented, waived or otherwise changed except by a written instrument duly executed by the Parties and designated as such a change.

    (b) Entire Agreement. This Agreement constitutes and incorporates the entire agreement of the Parties concerning the subject matter of this Agreement and supersedes any prior agreements concerning the subject matter hereof.

    (c) Severability. If any provision of this Agreement is held invalid, illegal or unenforceable in any jurisdiction, the validity, legality and enforceability of the remaining provisions of this Agreement will not be impaired thereby, nor will the validity, legality or enforceability of any such defective provisions be in any way affected or impaired in any other jurisdiction.

    (d) Successors and Assigns. This Agreement shall not be transferred or assigned to any third party without the non-assigning Party's prior written approval. If such approval is given, the terms, conditions, rights, benefits and obligations set forth in this Agreement will bind and inure to the benefit of each Party and their respective successors and permitted assigns.

    (e) Governing Law and Venue. This Agreement will be governed by and construed in accordance with the laws of the State of Colorado and venue for any legal action brought under this Agreement will be state or federal court in Denver, Colorado.

    (f) Attorneys' Fees. If any Party commences any action or proceeding against the other in order to enforce the provisions of this Agreement, the prevailing Party in any such action will be entitled to recover, in addition to any amounts or relief otherwise awarded, all reasonable costs incurred in connection therewith, including all reasonable attorneys' fees and costs.

IN WITNESSS WHEREOF, the Parties have entered into this Agreement on the day and year first written above.

_____          _____
David E. Brody                                          Marc A. Bruner

2

# Irrevocable Stock Power

FOR VALUE RECEIVED, the undersigned does hereby sell, assign and transfer to David E. Brody ("Brody") 150,000 shares of the common stock of Fortem Resources Inc. (FTMR:US) represented by Certificate No. _____, standing in the name of Squin Switzerland ("Squin") on the books of Fortem. Squin shall take any and all corporate actions necessary to sell, assign and transfer the Shares to Brody, including but not limited to corporate resolutions and stock powers.

IN WITNESS WHEREOF, Squin has signed this Irrevocable Stock Power on the date set forth below.

Squin Switzerland

By: _____

Effective August 15, 2017