# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. ~~_____~~ 19-cv-01091

DAVID E. BRODY,

    Plaintiff,

v.

MARC A. BRUNER,
~~_____ Defendant.~~

THE BRUNER FAMILY TRUST, and
MARC E. BRUNER, AS TRUSTEE OF THE BRUNER FAMILY TRUST

    Defendants.

---

**AMENDED COMPLAINT FOR DAMAGES, DECLARATORY RELIEF, AND TEMPORARY AND PRELIMINARY INJUNCTIVE RELIEF**

---

Plaintiff David E. Brody respectfully submits this Amended Complaint against ~~Defendant~~ Defendants Marc A. Bruner, the Bruner Family Trust, and Marc E. Bruner, as Trustee of the Bruner Family Trust, and alleges as follows:

**Nature of the Claims**

1.    This case arises from Defendant~~'s~~ Marc A. Bruner's ("Bruner") fraud and/or breach of an agreement (the "Agreement") ~~to pay~~ pursuant to which Plaintiff ~~for~~ agreed to assign and transfer to Bruner a certain bankruptcy claim ~~transferred from Plaintiff to Defendant. Specifically, Plaintiff assigned his bankruptcy claim~~ (the "Brody Claim") against PetroHunter Energy Corp. ("PetroHunter") ~~to Defendant~~ in exchange for $25,000 in cash and 150,000 freely-tradable shares of Fortem Resources Inc. ("Fortem" and the "Fortem Shares"), "free and clear of

any liens and encumbrances," valued in excess of $300,000. ~~Defendant has not~~, as well as Defendant the Bruner Family Trust's ("BFT"), itself or through its trustee, Defendant Marc E. Bruner (the "BFT Trustee" and collectively "BFT"), conspiracy with Bruner to defraud Plaintiff. Plaintiff has fully performed under the Agreement. ~~Furthermore, Plaintiff recently learned that Defendant may liquidate or transfer some or all of his shares in Fortem as part of a separate transaction, potentially depriving Plaintiff of the benefit of the Agreement. Thereafter, Plaintiff demanded compliance with the Agreement or assurances that Defendant would comply. Defendant has neither complied nor given assurances of future compliance. Therefore, Plaintiff is compelled to bring this action seeking specific performance.~~ Bruner has not performed any of his obligations under the Agreement. Indeed, on information and belief, Plaintiff believes that Bruner never intended to perform under the Agreement, but, instead, together with BFT, defrauded Plaintiff of the Brody Claim by making a promise he did not intend to keep.

2. Furthermore, the trustee in the PetroHunter bankruptcy case recently filed a motion to allow interim distributions on bankruptcy claims, including the Brody Claim. If the bankruptcy court grants the motion as to the Brody Claim and the trustee pays any part of the claim, Defendants' misconduct will be rewarded and Plaintiff will be further damaged. Plaintiff also believes that Bruner has and is likely to continue to remove assets from the reach of creditors.

3. For almost three years, Plaintiff has repeatedly demanded compliance with the Agreement or assurances that Bruner would comply. Bruner has neither complied nor given any credible assurances of future compliance. Therefore, Plaintiff is compelled to bring this action.

**The Parties**

2

4.    2.Plaintiff is an individual who resides in the State of Colorado.

5.    3.Defendant Bruner is an individual who resides outside of the State of Colorado, in Zurich, Switzerland , Vancouver, British Columbia, and Calgary, Alberta, Canada. As applicable here, he is the President and Chief Executive Officer of Fortem and a claimant in the PetroHunter Bankruptcy., and he is a claimant in the PetroHunter Bankruptcy by virtue of the assignment of the Brody Claim.

6.    BFT is a trust and a claimant in the PetroHunter Bankruptcy.

7.    Marc E. Bruner is a trustee of BFT domiciled in the State of Colorado.

**Jurisdiction and Venue**

8.    4.This Court has jurisdiction under 28 U.S.C. § 1332 as there is complete diversity of citizenship between Plaintiff1334, a citizen of Colorado, and Defendant, a citizen of Switzerland and Canada, and the amount of controversy exceeds $75,000, exclusive of interests and costs.as the claims made herein arise in and are related to

5.  This matter arises from acts and omissions that occurred within the State of Colorado, including:

a.Plaintiff and Defendant were each claimants *In re PetroHunter Energy Corporation*, Case No. 16-20197-KHT, in the United States Bankruptcy Court for the District of Colorado (the "PetroHunter Bankruptcy").

b.    Defendant requested that Plaintiff sell and transfer Plaintiff's bankruptcy claim to Defendant so that Defendant could add Plaintiff's substantial claim to Defendant's own bankruptcy claim(s) in the PetroHunter Bankruptcy, for the purpose of strengthening Defendant's position in such proceedings. Plaintiff accepted Defendant's offer and the parties entered into the Agreement.

3

9. This matter arises from acts and omissions that occurred within the State of Colorado, including:

a. Plaintiff and BFT were each claimants in the PetroHunter Bankruptcy, and Defendants are responsible for the defrauding of Plaintiff of the Brody Claim, which remains pending in the PetroHunter Bankruptcy.

b. Specifically, Bruner requested that Plaintiff sell and transfer the Brody Claim to Bruner so Bruner could become a claimant in the PetroHunter Bankruptcy and add it to the bankruptcy claims held by BFT in order to strengthen Defendants' collective claims and position in the PetroHunter Bankruptcy. Plaintiff accepted Bruner's offer and the parties signed the Agreement.

c. On information and belief, Bruner directly or indirectly controls and/or has a management role in, and is a beneficiary of, BFT, and BFT is used as a vehicle to shield assets from Bruner's creditors, including Plaintiff.

~~c~~d. Plaintiff's sale and assignment of his bankruptcy claim to ~~Defendant~~ Bruner occurred entirely within the State of Colorado, and ~~Defendant~~ Bruner received the claim and filed notice of the assignment in the PetroHunter Bankruptcy in Colorado~~, where Defendant's claims remain pending~~.Ex. 1.

~~d.Defendant's~~ e. Bruner's payment of the ~~$25,000 and delivery of a certificate in the Fortem Shares to Plaintiff~~ consideration for the Agreement was to occur in Colorado.

~~e~~f. The harm from ~~Defendant's breach~~ Defendants' misconduct alleged herein is felt in Colorado, where Plaintiff resides.

4

~~f~~g.     Plaintiff and ~~Defendant~~ Bruner agreed in the Agreement that "venue for any legal action brought under the Agreement will be state or federal court in Denver, Colorado." ~~Agreement at 2, attached as Ex. 2.~~

10.     ~~6.~~In addition to the foregoing case-specific contacts, ~~Defendant has~~ Defendants have at least the following general contacts with the State of Colorado:

a.     ~~Defendant~~ Bruner travels to Colorado often for personal and business reasons~~.~~, and holds assets in Colorado, including, at a minimum, through BFT, a Colorado trust that Bruner also controls and/or with respect to which he plays a management role.

b.     Bruner has and/or continues to avail himself of the privilege of doing business in the State of Colorado, owning real property in the State of Colorado, renting property in the State of Colorado, and availing himself of one or more courts in the State of Colorado, such that it would not be unjust or unfair for Bruner to be haled into this Court.

~~b.     Throughout 2016 and 2017, Defendant represented to the U.S. Securities and Exchange Commission and the Nevada Secretary of State that his residence was in Colorado.~~

~~c.     Until recently, Defendant owned real property in Colorado through his wholly-owned affiliate, MAB Resources LLC.~~

c.     BFT is domiciled in the State of Colorado, and its trustee, Mr. Marc E. Bruner, Defendant Bruner's son, is a resident of the State of Colorado.

~~d.     From 2010 to 2018, Defendant leased an apartment at 1555 Blake Street in Denver, which he used as his business address during those years.~~

5

11.     ~~7.~~The value of Plaintiff's claim against ~~Defendant~~ Defendants exceeds $75,000, exclusive of interest.

## ~~General~~ Allegations

12.     ~~8.~~On August 16, 2017, Plaintiff and ~~Defendant~~ Bruner entered into the Agreement, under which Plaintiff would assign his claim in the amount of $335,374.18 filed in the PetroHunter Bankruptcy to ~~Defendant~~ Bruner in exchange for $25,000 and 150,000 unrestricted, freely-tradable shares ~~of~~ in Fortem Resources, Inc. (the "Fortem Shares").

13.     At and around the time the Plaintiff and Bruner entered into the Agreement, the Fortem Shares had a market value of approximately $2.00 a share, or a total of $300,000. Fortem's publicly-traded shares increased in value to $3.98 per share on September 28, 2018, and have steadily declined since that date. Therefore, if Bruner had delivered the 150,000 Fortem Shares to Plaintiff as required by August 26, 2017, those shares would have had a value of $597,000 as of September 28, 2018.

14.     In the course of the parties negotiating the Agreement prior to signing, Bruner advised Plaintiff that despite the fact that Bruner owned shares in several companies, the Fortem Shares would be immediately available for assignment to Plaintiff and that such shares were liquid and freely-tradeable.

15.     In the course of the parties negotiating the Agreement prior to signing, Bruner assured Plaintiff that he would make the $25,000 in two cash payments when they became due.

16.     ~~9.~~Pursuant to the Agreement, Plaintiff promptly transferred his bankruptcy claim to ~~Defendant~~Bruner. On August 22, 2017, ~~Defendant~~ Bruner signed and recorded this transfer in the PetroHunter Bankruptcy.

6

17.    ~~10.~~Under the Agreement, ~~Defendant~~ Bruner was required to: (1) pay Plaintiff $25,000 in two equal installments of $12,500 to Plaintiff, within 30 and 60 days of the Agreement, respectively, and (2) deliver to Plaintiff 150,000 shares of freely-tradable common stock ~~of~~ in Fortem owned by ~~Defendant~~Bruner, free and clear of any liens or encumbrances, in one share certificate, within 10 days of the Agreement, as more fully described in the Agreement.

18.    ~~11.Defendant~~ Bruner failed to pay the $25,000.

19.    ~~12.Defendant~~ Bruner failed to transfer any of the 150,000 ~~shares of Fortem stock, which value is estimated to be in excess of $300,000.~~Fortem Shares, which value was approximately $300,000 as of the date of the Agreement and as of the date upon which the Fortem Shares were required to be delivered to Plaintiff.

20.    From time-to-time after the date of the Agreement, Plaintiff advised Bruner that Plaintiff would accept other shares or other equivalent consideration in place of the Fortem Shares, and that the only reason that Plaintiff agreed to specify Fortem Shares was because Bruner advised Plaintiff that Fortem Shares would be available to Bruner for assignment to Plaintiff, and would be free-trading, within the period specified in the Agreement.

21.    From the date of the Agreement and continuing to present, Bruner has had the financial resources to make the $25,000 cash payment and the ability to substitute freely-tradeable shares of Fortem and of companies other than Fortem in order to perform his obligations under the Agreement.

22.    ~~13.Plaintiff has further learned that Defendant~~ On information and belief, Bruner intends to contribute $15 million worth of his shares of Fortem to third party Beetaloo Basin

7

Partners ~~-~~ , an Australian company, and is liquidating or otherwise using his Fortem shares for that purpose and/or for other purposes.

23. Upon information and belief, Bruner never intended to perform any of his obligations under the Agreement and used the Agreement at the time of signing it and thereafter as an inducement for Plaintiff to assign the Brody Claim to him without providing any consideration. Plaintiff bases this allegation on several facts, including the following: (a) Under the Agreement, Bruner agreed to pay the $25,000 cash payment within thirty days after the date of the Agreement. However, immediately after Plaintiff assigned his bankruptcy claim to Bruner, Bruner advised Plaintiff that he did not have the ability to make the cash payment within such thirty-day period; and (b) Under the Agreement, Bruner agreed to assign the Fortem Shares to Plaintiff within ten days of the date of the Agreement. However, immediately after Plaintiff assigned his bankruptcy claim to Bruner, Bruner advised Plaintiff that: (i) Bruner did not own any Fortem shares that were freely tradeable, (ii) Bruner would have to obtain the Fortem Shares from a third party in Europe, (iii) Bruner did not know when any Fortem shares would be obtainable or freely-tradeable, and (iv) Despite Plaintiff advising Bruner that Plaintiff would accept other shares or other equivalent consideration in place of the Fortem Shares, Bruner failed and refused to make any attempt to substitute other consideration of any kind in place of the Fortem Shares.

24. ~~14.Defendant's~~ Bruner's contribution of his interest in Fortem to a third party ~~-~~, such as Beetaloo Basin Partners, is likely to deprive Plaintiff of the benefit of the Agreement.

25. ~~15.~~Plaintiff has made multiple demands since the ~~breach of~~ time Bruner originally breached the Agreement ~~originally occurred that Defendant comply with the Agreement and~~ .

8

including that Bruner provide assurances that he will perform under the Agreement, which demands have gone unanswered for almost three years. ~~Plaintiff therefore seeks specific performance.~~

26. It is now clear to Plaintiff that Bruner continued his misrepresentations and other misleading statements for the purpose of delaying Plaintiff from taking action until the trustee in the PetroHunter Bankruptcy began to make distributions to creditors.

27. On May 20, 2020, the trustee in the PetroHunter Bankruptcy issued a Notice stating that "the Chapter 7 Trustee…has filed a Motion for authority to make interim distribution to creditors…" (the "Motion").

28. Objections and requests for hearing in response to the Motion are due no later than June 10, 2020.

29. Bruner's contribution of his interest in Fortem to third party Beetaloo Basin Partners, an Australian company, and his receipt of all or any portion of the Brody Claim in the amount of $335,374, together with almost $7,000,000 claimed by BFT, which are expected to be moved offshore, would permanently deprive Plaintiff of the benefit of the Brody Claim and Agreement.

30. ~~16.~~Pursuant to the Agreement, "[i]f any Party commences any action or proceeding against the other in order to enforce the provisions of th[e] Agreement, the prevailing Party in any such action will be entitled to recover, in addition to any amounts or relief otherwise awarded, all reasonable costs incurred in connection therewith, including all reasonable attorneys' fees and costs."  Therefore, Plaintiff further seeks attorneys' fees and costs.

## Causes of Action

9

## Count I ~~Breach of Contract – Specific Performance~~ Fraud

<u>31.</u>  ~~17.~~Plaintiff re-alleges the allegations of the paragraphs above herein.

<u>32.  Bruner intentionally and knowingly provided materially false information to Plaintiff to induce Plaintiff to assign the Brody Claim to Bruner, with the intention that Plaintiff would rely on Bruner's misrepresentations.</u>

<u>33.  Bruner knew the misrepresentations to be false and were made with the intent to deceive Plaintiff.</u>

<u>34.  Plaintiff did not know the misrepresentations were false and justifiably relied on Bruner's misrepresentations in entering into the Agreement.</u>

<u>35.  As a direct and proximate result of Bruner's fraudulent misrepresentations, Plaintiff assigned the Brody Claim to Bruner and suffered damages in an amount to be determined at trial.</u>

## Count II
## Civil Theft

<u>36.  Plaintiff re-alleges the allegations of the paragraphs above herein.</u>

<u>37.  Bruner knowingly and deceptively induced Plaintiff to assign the Brody Claim to Bruner, which Bruner obtained and retains.</u>

<u>38.  Bruner intended and continues to intend to permanently deprive Plaintiff of the value of the Brody Claim, and has used and continues to use the Brody Claim in an effort to obtain payment from the PetroHunter Bankruptcy estate for his own benefit.</u>

<u>39.  The Brody Claim constitutes a "thing of value" for purpose of Colo. Rev. Stat. § 18-4-401, *et seq.*</u>

10

40. As a direct and proximate result of Bruner's theft and possession of stolen property, Plaintiff has suffered damages in an amount to be determined at trial.

## Count III
## Breach of Contract

41. Plaintiff re-alleges the allegations of the paragraphs above herein.

42. ~~18.The~~ In the alternative, the Agreement is a valid and enforceable contract between Plaintiff and ~~Defendant~~ Bruner that is binding on ~~Defendant~~Bruner.

43. ~~19.~~Plaintiff has fully performed and complied with his obligations under the Agreement.

44. ~~20. Defendant is able to but~~ Bruner has failed to perform under the Agreement by failing to: (1) pay Plaintiff $25,000 in two equal installments of $12,500 to Plaintiff, within 30 and 60 days of the Agreement, respectively, and (2) deliver to Plaintiff 150,000 shares of freely-tradable common stock of Fortem owned by as provided in the Agreement, valued at the time delivery was due in excess of $335,000.

45. ~~21.Defendant~~ Bruner refused, continues to refuse, and otherwise failed to provide assurances that he will perform under the Agreement, causing damages in an amount to be proved at trial.

~~22. Given the nature of the Agreement and the fact that Plaintiff fully performed his obligations by selling and assigning his bankruptcy claim against PetroHunter to Defendant, Plaintiff is entitled to specific performance of the Agreement by payment of $25,000 from Defendant. Given the unique value and number of Fortem Shares and Plaintiff's full performance under the Agreement, Plaintiff is entitled to specific performance of the Agreement by Defendant's~~

11

~~delivery of 150,000 shares of freely tradable common stock of Fortem owned by Defendant, as provided in the Agreement.~~

46. ~~23.~~The Agreement further provides that in the event of a breach, the prevailing party is entitled to attorneys' fees and costs, and due to ~~Defendant's~~ Bruner's breach, Plaintiff is entitled to and seeks same in an amount to be proved at trial.

## Count ~~II~~IV
## Breach of the Implied Duty of Good Faith and Fair Dealing

47. ~~24.~~Plaintiff re-alleges the allegations of the paragraphs above herein.

48. ~~25.~~Under Colorado law, a duty of good faith and fair dealing is implied into every contract.

49. ~~26.~~The Agreement, like every contract, ~~contained~~ contains the implied duty of good faith and fair dealing.

50. ~~27.~~Plaintiff justifiably relied on the duty of good faith and fair dealing.

51. ~~28.~~Good faith performance under the Agreement ~~involved Defendant's~~ required Bruner's adherence to the terms of the Agreement by keeping his promises to Plaintiff and performing under the Agreement.

52. ~~29.~~Plaintiff had a justified expectation that ~~Defendant~~ Bruner would act in a reasonable manner in its performance under the Agreement. ~~Defendant~~ Bruner has failed to perform under the Agreement.

53. ~~30.~~~~Defendant's~~ Bruner's conduct deprived or threatens to deprive Plaintiff of the benefit of the Agreement.

12

54. ~~31.Defendant's~~ Bruner's breach of the implied duty of good faith and fair dealing has caused Plaintiff damages in an amount to be proved at trial, and entitles Plaintiff to an award of attorneys' fees and costs.

## Count V
## Promissory Estoppel

55. Plaintiff re-alleges the allegations of the paragraphs above herein.

56. In the Agreement and in pre-Agreement discussions, Bruner promised Plaintiff that he would pay Plaintiff the consideration described in the Agreement.

57. Bruner's purpose and reasonable expectation in making the promises in the Agreement was to induce Plaintiff to assign the Brody Claim to Bruner, so Bruner could file transfer documentation in the PetroHunter Bankruptcy and to obtain the benefit of the Brody Claim in the PetroHunter Bankruptcy.

58. Plaintiff reasonably and detrimentally relied on Bruner's promises.

59. Bruner's promises to Plaintiff must be enforced to prevent injustice.

## Count VI
## Civil Conspiracy

60. Plaintiff re-alleges the allegations of the paragraphs above herein.

61. On information and belief, Bruner, BFT, and one Carmen J. (Tony) Lotito ("Lotito"), who has served in various capacities with respect to Bruner and the BFT Trustee (who is Lotito's stepson and Bruner's son), and their respective and joint companies, as well as with BFT, have conducted and treated the business activities of BFT, Bruner's companies, and the BFT Trustee's companies as intertwined and interrelated entities, including with respect to the claims alleged herein.

13

62. Defendants agreed and worked cooperatively to defraud Plaintiff of and steal the Brody Claim, use the Brody Claim, and/or retain the benefit of the Brody Claim, or, in the alternative, to breach Bruner's contractual obligation to pay consideration and act in good faith under the Agreement, and/or retain the benefit of Bruner's breach, in order to enrich themselves at the expense of Plaintiff.

63. Defendants' object has been accomplished, as Bruner filed papers in the PetroHunter Bankruptcy to transfer the Brody Claim to himself for his benefit and/or the benefit of BFT.

64. Furthermore, Lotito, on behalf of Defendants and potentially on behalf of himself, as well, repeatedly misled Plaintiff into believing that Bruner would fulfill his obligations under the Agreement, but instead allowed distributions on bankruptcy claims, including the Brody Claim, to become imminent. Lotito did so by stating to Plaintiff on several occasions that Lotito would provide Bruner with Plaintiff's communications that Plaintiff seeks to resolve the dispute amicably, and then for almost three years falsely telling Plaintiff that Bruner intended to pay and would pay the consideration required under the Agreement.

65. Defendants' conspiracy resulted in damages to Plaintiff in an amount to be determined at trial.

**Count VII**
**Declaratory Judgment**

66. Plaintiff re-alleges the allegations of the paragraphs above herein.

67. An actual controversy between Plaintiff and Defendants exists with respect to whether the assignment and transfer of the Brody Claim from Plaintiff to Bruner are valid.

14

68. Plaintiff asserts that the assignment and transfer are invalid for at least the following reasons: fraud, civil theft, and lack of consideration.

69. The Court's resolution of the dispute would resolve the controversy as to the ownership of the Brody Claim and whether Plaintiff or Bruner is the legal holder of the Brody Claim.

**Request for Relief**

~~WHEREFORE, Plaintiff requests an award against Defendant requiring specific performance of the agreement to pay $25,000, transfer 150,000 freely tradeable shares of Fortem, actual damages for Defendant's breach of the implied duty of good faith and fair dealing, and attorneys' fees and costs.~~

WHEREFORE, Plaintiff requests an award against Defendants (1) declaring the assignment and transfer of the Brody Claim as void such that Plaintiff is and shall be recognized as the true claimant and holder of the Brody Claim, (2) damages according to proof of not less than $360,374.18, (3) treble and/or punitive damages, (4) attorney's fees and costs, (5) injunctive relief barring transfer of any bankruptcy claim distribution paid to either Defendant to Bruner, (6) imposition of a constructive trust for any bankruptcy claim distributions to either Defendant.

Dated this ~~12th~~ 5th day of ~~April~~June, ~~2019~~ 2020.

                                             s/ Michael A. Rollin
                                             Michael A. Rollin
                                             Esther H. Lee
                                             Edgar O. Barraza
                                             FOX ROTHSCHILD LLP
                                             1225 17th Street, Suite 2200
                                             Denver, CO 80202
                                             Phone: (303) 945-7412
                                             Fax: (303) 292-1200
                                             E-mail: mrollin@foxrothschild.com

E-mail: elee@foxrothschild.com
E-mail: ebarraza@foxrothschild.com
*Attorneys for Plaintiff*

Case No. 1:19-cv-01091-RM-NRN   Document 17-1   filed 06/05/20   USDC Colorado
pg 17 of 17