IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 19-cv-01091
DAVID E. BRODY,

    Plaintiff,

v.

MARC A. BRUNER,
THE BRUNER FAMILY TRUST, and
MARC E. BRUNER, AS TRUSTEE OF THE BRUNER FAMILY TRUST

    Defendants.

_____

**PLAINTIFF'S MOTION FOR CONSTRUCTIVE TRUST OR, IN THE ALTERNATIVE, FOR PREJUDGMENT ATTACHMENT**

_____

Plaintiff, David E. Brody, hereby moves for imposition of a constructive trust or, in the alternative, for prejudgment attachment of assets, as specified below, held by the estate of PetroHunter Energy Corporation, Marc A. Bruner, and/or the Bruner Family Trust, through its trustee, Marc E. Bruner, and as grounds therefor states as follows:

## INTRODUCTION

This case arises from Defendant Marc A. Bruner's ("MAB") fraudulent acquisition of a $335,000 bankruptcy claim held by Plaintiff (the "Brody Claim"), which MAB then used for his personal benefit. As described more fully herein, MAB's fraud and use of the Brody Claim was facilitated by his son, Marc E. Bruner ("MEB"), who serves as trustee for the Bruner Family Trust (the "BFT"), which MAB and MEB (collectively, the "Bruners") have used as a personal bank account since 2004 with which to advance their personal and business goals, including in ways that have contributed to the harm suffered by Plaintiff.

Plaintiff therefore seeks imposition of a constructive trust on, or, in the alternative, prejudgment attachment of, bankruptcy distributions (the "Distributions") paid or to be paid on the

{00863820.DOCX / 1 }    1

Brody Claim and other bankruptcy claims held by the BFT (the "BFT Claims"), and any other MAB assets Plaintiff can locate within the state ("Other Assets"), in an amount sufficient to satisfy any judgment and award in this action.

## STANDARD OF REVIEW

"A constructive trust is a flexible equitable remedy that may be imposed to prevent unjust enrichment. It enables the restitution of property that in equity and good conscience does not belong to the defendant." *Lowry v. Palm*, 192 P.3d 550, 562 (Colo. App. 2008) (collecting cases). There is no formula; instead, "[t]he equity of the transaction must shape the measure of relief." *Weeks v. Esch*, 568 P.2d 494, 496 (Colo. App. 1977) (quoting *Beatty v. Guggenheim Exploration Co.*, 122 N.E. 378, 389 (N.Y. 1919) (Cardozo, J.)).[1]

Constructive trusts may be imposed "to attach property obtained by fraud," *Lowry*, 192 P.3d at 563 (citing *Page v. Clark*, 592 P.2d 792, 798 (Colo. 1979) (en banc)), or "any other property that in equity and good conscience does not belong to the constructive trustee," *id.* (citing *In re Marriage of Allen*, 724 P.2d 651, 657(Colo. 1986) (en banc) (quotations omitted)). It is no defense to a constructive trust, therefore, that the "transferee intended to perform his promise and was not therefore guilty of fraud in acquiring [the property]." *Weeks*, 568 P.3d at 496 (quoting 1 Scott, Law of Trusts, § 44.2 (3d ed. 1967)).

The purpose of the doctrine is to prevent unjust enrichment: "In general, 'a constructive trust is imposed...because the person holding the title to property would profit by a wrong or would be unjustly enriched if he were permitted to keep the property.'" *Mancuso v. United Bank of Pueblo*, 818 P.2d 731, 737 (Colo. 1991) (en banc) (citing Restatement (Second) of Trusts, ch. 12, introductory note at 326 (1959)). "When property has been acquired in such circumstances that the holder of

---

[1] Aspects of *Beatty* not relevant here were superseded by statute. *See Israel v. Chabra*, 906 N.E.3d 158, 167 (N.Y. 2009).

legal title may not in good conscience retain the beneficial interest, equity converts him into a trustee." *Page*, 592 P.2d at 798 (quoting *Beatty*, 122 N.E. at 386).

The property that may be held in constructive trust includes the property itself and any proceeds therefrom; that is, "[t]he beneficiary of a constructive trust…may follow property into its product. *In re Marriage of Allen*, 724 P.2d at 657 (citing 5 Scott, The Law of Trusts, § 507 at 3571) (internal quotations omitted). This includes profits derived from the property. *Lyons v. Jefferson Bank & Tr.*, 781 F. Supp. 1525, 1530 (D. Colo. 1992) ("[A] constructive trust beneficiary may obtain, through tracing, not merely what was lost but also other property or profits traceable to that lost property.") (quoting *In re Marriage of Allen*, 724 P.2d at 657). Further, where, as here, civil theft is claimed, the amount to be held in trust must be sufficient to satisfy treble damages. *Syfrett v. Pullen*, 209 P.3d 1167, 1172 (Colo. App. 2008).

Construing a trust before final judgment "implicates the balance of equities required for a preliminary injunction." *In re Estate of Feldman*, 443 P.3d 66, 70 (Colo. 2019) (citing *Lyons*, 781 F. Supp. at 1530–31 (applying the test for preliminary injunction)). The requirements for a preliminary injunction are (1) a substantial likelihood of success on the merits, (2) irreparable injury if the injunction is not granted, (3) that the injury outweighs any harm the preliminary injunction will cause the opposing party, and (4) that the preliminary injunction is in the public interest. *Id.*

Similar in effect to a constructive trust imposed prior to final judgment, Colorado law provides that courts may issue a writ of prejudgment attachment. Colo. R. Civ. P. 102. Federal courts in this District apply Rule 102 pursuant to Fed. R. Civ. P. 64. *Conry v. Baker*, No. 14-cv-02672-CMA-KLM, 2015 WL 4538720, at *1 (D. Colo. July 28, 2015). Thus, prejudgment attachment is appropriate where there is a reasonable probability that, among other things:

> The defendant has for more than four months been absent from the state, or the whereabouts of the defendant are unknown, or the defendant is a nonresident of this state, and all reasonable efforts to obtain in personam jurisdiction over the defendant have failed.

Colo. R. Civ. P. 102(c)(2). A plaintiff invoking this subsection must "show what efforts have been made to obtain jurisdiction over the defendant." *Id.*

In addition to subsection (c)(2), prejudgment attachment is also available where there is a reasonable likelihood that any one of the following is true:

- "The defendant conceals himself or stands in defiance of an officer, so that process of law cannot be served upon him." Colo. R. Civ. P. 102(c)(3).

- "The defendant is presently about to remove his property or effects, or a material part thereof, from this state with intent to defraud, delay, or hinder one or more of his creditors, or to render process of execution unavailing if judgment is obtained." Colo. R. Civ. P. 102(c)(4).

- "The defendant has fraudulently conveyed, transferred, or assigned his property or effects, or a material part thereof, so as to hinder or delay one or more of his creditors, or to render process or execution unavailing if judgment is obtained." Colo. R. Civ. P. 102(c)(5).

- "The defendant has fraudulently concealed, removed, or disposed of his property or effects, or a material part thereof, so as to hinder or delay one or more of his creditors, or to render process of execution unavailing if judgment is obtained." Colo. R. Civ. P. 102(c)(6).

- "The defendant is presently about to fraudulently convey, transfer, or assign his property or effects, or a material part thereof, so as to hinder or delay one or more of his creditors, or to render process of execution unavailing if judgment is obtained." Colo. R. Civ. P. 102(c)(7).

- "The defendant is presently about to fraudulently conceal, remove, or dispose of his property or effects, or a material part thereof, so as to hinder or delay one or more of his creditors, or to render process of execution unavailing if judgment is obtained." Colo. R. Civ. P. 102(c)(8).

- "The defendant has departed or is presently about to depart from this state, with the intention of having his property or effects, or a material part thereof, removed from the state." Colo. R. Civ. P. 102(c)(9).

A dishonest or fraudulent motive is not a prerequisite to prejudgment attachment. *Chaffin, Inc. v. Wallain*, 689 P.2d 684, 688 (Colo. App. 1984). Instead, [i]t is the intent to delay creditors which constitutes the fraud upon them,"[2] even if done openly and not secretively. *Id.* (quoting *Curran v.*

---

[2] Dishonest motive also satisfies the criteria for attachment, as "the greater includes the less." *Curran v. Rothschild*, 60 P. 1111, 1112 (Colo. App. 1900)

{00863820.DOCX / 1 }   4

*Rothschild*, 60 P. 1111, 1112 (Colo. App. 1900)). Nor must this intent be proved by direct evidence—circumstantial evidence is sufficient. *Id.*

Procedurally, a plaintiff need not satisfy the elements of an injunction to obtain prejudgment attachment. Instead, Rule 102 requires only that:

> The plaintiff file an affidavit "that the defendant is indebted to the plaintiff…or liable in damages to the plaintiff for a tort committed against the person or property of a resident of this state, stating the nature and amount of such indebtedness or claim for damages and setting forth facts showing one or more of the causes of attachment of section (c) of [the] Rule."

Colo. R. Civ. P. 102(b).

Further, while Rule 102(d) requires a successful plaintiff to post a bond, the Court may set that bond at zero dollars where there is no evidence that the enjoined party will be unable to collect from the plaintiff in the event the attachment was wrongful. *Old Republic Nat. Title Ins. Co. v. Kornegay*, 292 P.3d 111, 1118 (Colo. App. 2012). The same rule applies to preliminary injunctions. *Id.* (collecting cases). Likewise, because MAB owns no interest in the Brody Claim, *see* Colo. Rev. Stat. § 18-4-405 (stating that stolen property remains the property of the owner), this Court should require no bond. *Roda Drilling Co. v. Siegal*, 552 F.3d 1203, 1215 (10th Cir. 2009) (upholding magistrate judge's decision not to require a bond where the enjoined party had no ownership interest in the subject property).

## FACTS

1. Plaintiff has known Defendants for 16 years and has become familiar with their business and busines practices, including with respect to the BFT. Brody Decl. ¶¶ 1-2, 5-6, 8-10.

2. In or about August 2017, MAB asked Plaintiff to sell him the Brody Claim, telling him that he planned to combine or consolidate it with the BFT Claims in the PetroHunter bankruptcy Case. An Agreement was reached and memorialized on August 16, 2017. Exhibit D. The Agreement required that MAB deliver the Fortem Shares to Plaintiff within 10 days of the

Agreement along with two payments of $12,500 each. *Id.* ¶¶ 13-14. The value of 150,000 Fortem Shares at the time of the Agreement was about $300,000. *Id.* ¶ 20.

3. Plaintiff transferred the Brody Claim, as agreed, *see* Exhibit E, but MAB never transferred the Fortem Shares or paid the $25,000 in cash. *Id.* ¶¶ 15-16. Indeed, shortly after transferring the Brody Claim to himself, MAB told Plaintiff that he could not pay the $25,000 and that he did not have any freely tradable Fortem stock. *Id.* ¶ 17.

4. Plaintiff had no knowledge that MAB either could not or would not transfer the Fortem Shares or pay the cash consideration, though he relied on MAB's promise in the Agreement that he would, *id.* ¶ 19, and it now seems that MAB never intended to perform, *id.* ¶ 18 This belief is informed by various facts, including that as Chief Executive Officer of Fortem and owner of millions of Fortem shares of stock, MAB could have easily done so at any time. *Id.*

5. Plaintiff also became convinced that MAB would never and did not intend to transfer the Fortem Shares when he heard from co-counsel who was representing one of the same MAB entities Plaintiff had been representing (and who is a respected and reliable senior partner in a prominent Denver-based law firm, hereinafter, "Counsel") that MAB stated to Counsel that MAB intended to contribute $15 million in Fortem stock to Beetaloo Basin Partners, an Australian company controlled by MAB, and was planning to liquidate or otherwise use his Fortem stock for that purpose and other purposes. *Id.* ¶ 21. At this point, Plaintiff filed this lawsuit. *Id.* ¶ 22.

6. Plaintiff has told MAB that he would accept other consideration in lieu of the Fortem Shares, but he has not given any. *Id.* ¶ 23. As a result, Plaintiff has suffered and continues to suffer significant losses, *id.* ¶ 3 and his potential damages award exceeds $1 million, *id.* ¶ 4.

7. Both Plaintiff and Plaintiff's counsel have made multiple efforts to contact MAB, both directly and through associates, in an effort to get him to either resolve the matter or accept service of process so we can resolve the matter in court, and he has done neither. *Id.* ¶ 24; *see also*

Rollin Declaration. In addition to MAB's efforts to avoid service, obtaining in personal jurisdiction over him is complicated because his whereabouts are unknown but is believed to reside and operates his businesses in multiple counties overseas and has not lived in the United States for at least four years. Brody Decl. ¶¶ 7-8, 37.

8. Furthermore, MAB has a history of not only operating businesses overseas, but also co-mingling business and BFT assets for personal gain, *id.* ¶¶ 25-33, keeping assets offshore, *id.* ¶ 37, behaving in a manner consistent with the deception alleged herein, *id.* ¶¶ 32, 35, such that if the Distributions are made to him or the BFT, which MAB effectively controls, *see id.* ¶¶ 10-12, Plaintiff is unlikely to recover anything even if he wins judgment in this case. *Id.* ¶¶ 34, 36, 38.

9. The bankruptcy Trustee's filing in response to MAB's motions and maneuvers is particularly enlightening, calling MAB to a "fox who thinks he can simply walk into the front door of the chicken coop and assume control" in an effort to strip the value of the PetroHunter estate for himself. *Id.* ¶ 33 (citing Exhibit A).

## DISCUSSION

I. **Plaintiff is substantially likely to prevail on the merits.**

   **A. The central facts showing that Plaintiff will be successful on the merits are not in dispute.**

The First Amended Complaint (Doc. No. 16) asserts six causes of action: fraud, civil theft, breach of contract, breach of the implied duty of good faith and fair dealing, promissory estoppel, and civil conspiracy. Plaintiff is only required to show a substantial likelihood of success on one of them. *Bankers Life and Cas. Co. v. Laycock*, No. 18-cv-00459-RM, 2018 WL 1046789, at *3 (D. Colo. Feb. 26, 2018). Nonetheless, the facts surrounding MAB's misconduct, as well as his co-option of the BFT to consummate his scheme within the PetroHunter bankruptcy case, show that Plaintiff is likely to prevail on all claims.

Most importantly in this posture, there will be no factual dispute as to the central issue warranting a constructive trust or prejudgment attachment: MAB took possession of the Brody Claim in exchange for a promise to deliver over $300,000 in Fortem Shares and $25,000 in cash, which he never delivered, and MAB is on the verge of collecting $335,000 in distributions from the bankruptcy estate on account of the Brody Claim, as well as collecting $6,881,150 as a result of his direct or indirect control of the BFT. Plaintiff, meanwhile, has realized nothing from his claim or the Agreement with MAB, and has had to expend significant resources and continues to expend significant resources pursuing a remedy. Under any of the causes of action pleaded, Plaintiff is likely to prevail. For purposes of this motion, Plaintiff focuses his discussion on three claims: fraud, civil theft, and breach of contract.

### B. The facts establish a substantial likelihood of success.

#### 1. Fraud

"To establish fraud, the plaintiff must show that the defendant made a false representation of a material fact, knowing that representation to be false; that the person to whom the representation was made was ignorant of the falsity; that the representation was made with the intention that it be acted upon; and, that the reliance resulted in damage to the plaintiff." *Coors v. Security Life of Denver Ins. Co.*, 112 P.3d 59, 66 (Colo. 2005).

Here, as set forth in the Brody Declaration and as reflected in the Agreement between them, MAB represented to Plaintiff that he would transfer both the Fortem Shares and $25,000 to Plaintiff if Plaintiff assigned the Brody Claim to him. Plaintiff agreed. Immediately upon receiving the Brody Claim, MAB filed papers in the Bankruptcy Case identifying himself as the transferee holder of the Brody Claim. When the time for MAB's performance came, he failed to perform and has continued to fail to perform. Plaintiff made multiple attempts to seek performance or some alternative form of performance with equivalent value to Plaintiff, and although MAB said he would have the Fortem

Shares transferred, he never did. Approximately one year after MAB's initial breach, the Fortem Shares could not be transferred because Canadian securities officials placed a freeze or "Cease Trading Order" ("CTO") on the transfer of all Fortem stock. However, the CTO had no bearing or impact on MAB's ability to perform because, as stated, Plaintiff would have accepted shares or cash with value equivalent to the Fortem Shares' value at the time of the Agreement. MAB easily could have performed at any time since the Agreement was entered into by the parties but elected not to do so.

This is a quintessential fraud. But for MAB's promise that he would pay the consideration described in the Agreement, Plaintiff would not have transferred the Brody Claim to MAB. That MAB never intended to meet his obligations is also apparent from the fact that he never paid the cash component of the Agreement, never delivered any Fortem shares—even though he was and continues as the Chief Executive Officer of Fortem—and never paid any kind of alternate consideration.

Furthermore, with the benefit of hindsight and additional research, and after reviewing the Trustee's Response, MAB's motive in acquiring the Brody Claim has become completely clear. MAB was the controlling shareholder in PetroHunter at the time of its bankruptcy, and PetroHunter held valuable oil and gas assets that MAB and his interests sought to strip out of the estate. However, MAB had no standing in the Bankruptcy Case because he was not a creditor until he acquired the Brody Claim.

Once he gained standing in the Bankruptcy Case, MAB went on to commandeer the BFT Claims, as well, which he had done with other BFT assets since 2004, and which were much more substantial than the Brody Claim. With the benefit of hindsight, MAB's statement to Plaintiff at the time of the Agreement that he planned to "combine" or "consolidate" the Brody Claim with the BFT Claims now makes sense—it allowed MAB to use the full weight of over $7.2 million in

combined Bruner-related claims controlled by MAB to try to affect the distribution of the debtor's assets in his own favor. Furthermore, it was necessary that MAB—rather than MEB—leverage the BFT Claims because MEB, as trustee of the BFT, could not—after having gambled or allowed MAB to gamble family assets held in trust in a company in which his father held a controlling interest—be placed in a position of overtly negotiating a deal that would favor MAB rather than the BFT.

MAB's maneuvers in this regard are detailed in the Trustee's Response, in which the Trustee compared MAB to a "fox" trying to raid the "chicken coop."

### 2. Civil Theft

"[T]o recover on a claim for civil theft under section 18-4-405, a rightful owner of stolen property must establish the statutory elements of criminal theft, including the requisite culpable mental state." *Bermel v. Blueradios, Inc.*, 440 P.3d 1150, 1157 (2019). The criminal theft statute, in turn, provides that:

> (1) A person commits theft when he or she knowingly obtains, retains, or exercises control over anything of value of another without authorization or by threat or deception; or receives, loans money by pawn or pledge on, or disposes of anything of value or belonging to another that he or she knows or believes to have been stolen, and:
>
> (a) Intends to deprive the other person permanently of the use or benefit of the thing of value;
>
> (b) Knowingly uses, conceals, or abandons the thing of value in such manner as to deprive the other person permanently of its use or benefit;
>
> (c) Uses, conceals, or abandons the thing of value intending that such use, concealment, or abandonment will deprive the other person permanently of its use or benefit;
>
> (d) Demands any consideration to which he or she is not legally entitled as a condition of restoring the thing of value to the other person; or
>
> (e) Knowingly retains the thing of value more than seventy-two hours after the agreed-upon time of return in any lease or hire agreement.
>
> (1.5) For the purposes of this section, a thing of value is that of "another" if anyone other than the defendant has a possessory or proprietary interest therein.

Colo. Rev. Stat. § 18-4-401.

Here, as the foregoing facts demonstrate, MAB "knowingly obtain[ed], retain[ed], or exercised control over" the Brody Claim, which constitutes a "thing of value" for theft purposes." Colo. Rev. Stat. § 18-1-901 (defining "thing of value" to include such items as "intangible personal property,…contract rights, choses in action,…and any rights of use or enjoyment connected therewith"). MAB did so "by deception," with the intent to permanently deprive Plaintiff of its value and/or knowingly using it in such a manner that would permanently deprive Plaintiff of its value or benefit.

MAB's intentions "may be inferred from [his] conduct and the circumstances of the case…." *E.g.*, *Pinon Sun Condominium Ass'n, Inc. v. Atain Specialty Ins. Co.*, No. 17-cv-01595-CMA-NRN, 2019 WL 4747673, at *10 (D. Colo. Sept. 27, 2019). As reflected in the Trustee's Response, MAB's course of conduct in the PetroHunter case is entirely consistent with Plaintiff's allegations here. MAB, in his own name and through entities he controls, maneuvers through judicial processes attempting to obtain things of value to which he is not entitled. Indeed, once he fraudulently took control of the Brody Claim, he then falsely tried to assert that it was a secured claim, and thus enjoy priority in the bankruptcy payout process rather than await his pro rata share of distributions to unsecured creditors.

If MAB worked as hard as is reflected in the Trustee's Response to permanently deprive other creditors of their equitable share of distributions and to strip an outsized share of the value of the PetroHunter estate, it is reasonable for this Court to infer under the circumstances that his intention was to permanently deprive Plaintiff of the value of the Brody Claim and the Agreement into which Plaintiff thought he was entering, as well. MAB most certainly knew that he was doing just that.

Therefore, there is a substantial likelihood that Plaintiff will prevail on his civil theft claim.

### 3. Breach of Contract

To recover for breach of contract, a plaintiff must prove (1) the existence of a contract, (2) that he performed his duties thereunder, (3) that the defendant failed to perform the contract, and (4) damages. *W. Distrib. Co. v. Diodosio*, 841. P.2d 1053, 1058 (Colo. 1992) (en banc).

As described in the Brody Declaration and has been discussed herein, Plaintiff and MAB entered into an Agreement pursuant to which Plaintiff would assign the Brody Claim to MAB in exchange for the Fortem Shares and cash. Plaintiff performed, as demonstrated by the claim transfer information MAB filed in the Bankruptcy Case. MAB did not perform in any manner whatsoever. There is no reasonable—if any—factual question about MAB's breach.

## II.     Plaintiff will suffer irreparable harm in the absence of an injunction.

The most important element of the Court's injunction analysis is whether Plaintiff would suffer irreparable harm in the absence of an injunction. *Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*, 356 F.3d 1256, 1260 (10th Cir. 2004). Irreparable harm has generally been defined as "certain imminent harm for what a monetary award does not adequately compensate," but it is a "pliant term adaptable to unique circumstances that an individual case might present." *Gitlitz v. Bellock*, 171 P.3d 1274, 1278-79 (Colo. App. 2007). The concept "does not readily lend itself to definition." *Prairie Band of Potawatomi Indians v. Pierce*, 253 F.3d 1234, 1250 (10th Cir. 2001).

In the traditional sense, fraud, theft, and breach may not create irreparable harm, as those kinds of activities may ordinarily be remedied by money damages. But the doctrines of constructive trust and pre-judgment attachment were designed to address those situations where, even if money damages may technically remedy the harm, there may be no money available upon final judgment, and they describe the circumstances under which a Court should so find. Thus, where the Court finds that it "cannot remedy the injury following a final determination on the merits," the harm is irreparable. *Prairie Band of Potawatomi Indians*, 253 F.3d at 1250.

That is this case. As described in the Brody Declaration, MAB is believed to reside in three foreign countries and has no known residence in the United States. Nor has Plaintiff or his counsel been able to locate or obtain service on MAB anywhere, despite significant efforts. *See* Rollin Decl. MAB's effort to actively avoid service is reflected in his failure to respond to correspondence and even text messages on his mobile phone.

In addition to living abroad and his avoidance of service, which alone are enough to meet the requirements for prejudgment attachment, Colo. R. Civ. P. 102 (c)(1), MAB operates through foreign companies and maintains offshore bank accounts. Therefore, Plaintiff is justifiably concerned that any bankruptcy distributions will be moved immediately offshore and thus beyond the reach of the Court and beyond the reach of any creditors. See *Nat'l Un. Fire Ins. Co. of Pittsburgh, PA v. Kozeny*, 115 F. Supp. 2d 1210, 1239 (D. Colo. 2000) (entering injunction to avoid moving assets out of the United States).

Finally, nothing about MAB's behavior in the PetroHunter case suggests any willingness to do anything other than maneuver for an outsized personal benefit. The PretoHunter Trustee's experience with MAB—including its references to MAB's "fraudulent demands," "questionable offer," "fraudulent charges," "sham demand," "bad faith," "abuse of the bankruptcy system," and third parties' allegations of "fraud and racketeering"—confirm that MAB cannot be trusted to comply with any order of this Court.

These facts meet the requirements for both a constructive trust and prejudgment attachment. Therefore, the Court should find that it "cannot remedy the injury following a final determination on the merits" and find that irreparable harm would occur in the absence of constructive trust or prejudgment attachment. *Prairie Bank of Potawatomi Indians*, 253 F.3d at 1250.

**III.     The balance of the harms favors an injunction.**

When considering the relative harms of an injunction, the Court "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Colo. Christian Univ. v. Sebelius*, 51 F. Supp. 3d 1052, 1064 (D. Colo. 2014) (quoting *Amoco Prod. Co. v. Gambell*, 480 U.S. 531, 542, 107 S.Ct. 1396, 94 L.Ed.2s 542 (1987)).

The Court, however, should <u>not</u> consider any harm a party may suffer as a result of its own misconduct. *ClearOne Comm., Inc. v. Chiang*, No. 2:07-cv-37 TC, 2007 WL 3231524, at *11 (D. Utah Oct. 30, 2007) (citing *Utahns for Better Trans. v. U.S. Dept. of Transp.*, No. 01-4216, 01-4217, 01-4220, 2001 WL 1739 458 (10th Cir. Nov. 16, 2001) (granting injunction despite "substantial evidence that they will incur a financial loss if the injunction is granted, [because] it appears that much of this harm is self-inflicted")). *See also*, *e.g.*, *Cook, Inc. v. Boston Scientific Corp.*, No. 01 C 9479, 2002 WL 31236289, at *5 (N.D. Ill. Oct. 2, 2002) (denying preliminary injunction where the party "claim[ed] it would be harmed because it will be denied the fruits of its own wrong doing"); *Handel's Enter., Inc. v. Schulenberg*, No. 4:18CV508, 2018 WL 3077756, at *6-7 (N.D. Ohio June 22, 2018) (holding that in balancing the harms to the parties, the Court would not consider harm resulting from the defendants' own misconduct).

Here, if the Distributions are not held in constructive trust or attached, Plaintiff will be permanently deprived of the value or benefit of the Brody Claim and of the consideration MAB was required to pay for it, and will be deprived the ability to collect punitive or treble damages, together with fees and costs, to which he is entitled by law. By contrast, neither MAB not the BFT will be harmed at all. Defendants will simply be deprived the "fruits of [their] own wrong doing." Moreover, since the Distributions will be placed in trust or escrow until conclusion of this action, in the unlikely event they prevail, they will have lost nothing in the process.

Therefore, the Court should find that the balance of harms tips decidedly in Plaintiff's favor.

**IV.     A injunction is in the public interest.**

Injunctions may not disserve the public interest. *Nat'l Un. Fire Ins. Co. of Pittsburgh, PA*, 115 F. Supp. 2d at 1239. The facts here demonstrate that a constructive trust and/or prejudgment interest will met this standard because it is "inequitable and against the public interest to allow…a foreign citizen and…a foreign corporation[] to dissipate their assets in the United States and thereby immunize themselves from answering for frauds they are alleged to have committed." *Id.* at 123. Further, "the enforcement of valid contracts is in the public interest." *Stouder v. M&A Tech., Inc.*, No. 09-4113-JAR-KGS, 2009 WL 10706728, at *6 (D. Kan. Nov. 5, 2009); *see also Novus Franchising, Inc. v. Marrs*, No. 05-cv-01017-REB-OES, 2005 WL 8178077, at *2 (D. Colo. Dec. 27, 2007) ("The public interest is not disserved by requiring parties to honor their agreements….").

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter an order imposing a constructive trust on the Distributions to Marc A. Bruner and to the Bruner Family Trust, and on the Other Assets, or, in the alternative, attaching the Distributions and Other Assets until a final determination of Defendants' liability to Plaintiff and satisfaction of any judgment thereupon. Respectfully submitted, this 21st day of July, 2020.

FOSTER GRAHAM MILSTEIN & CALISHER LLP

*/s/ Michael A. Rollin*
Michael A. Rollin
360 South Garfield Street, Sixth Floor
Denver, Colorado 80209
(303) 333-9810
mrollin@fostergraham.com

*Attorneys for Plaintiff*

**CERTIFCATE OF SERVICE**

I hereby certify that on this 21st day of July, 2020, a true and correct copy of the foregoing **PLAINTIFF'S MOTION FOR CONSTRUCTIVE TRUST OR, IN THE ALTERNATIVE, FOR PREJUDGMENT ATTACHMENT** was electronically served upon the parties as follows:

William R. Meyer
1401 Lawrence Street, Suite 2300
Denver, Colorado 80202
(303) 572-9300
wmeyer@polsinelli.com

*Original signature on file at the offices of Foster Graham*
*Milstein & Calisher LLP pursuant to C.R.C.P. 121 §1-26(7)*

*/s/ Michael Kragness*
Michael Kragness, Paralegal