IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 19-CV-01091-RM-NRN

DAVID E. BRODY,

Plaintiff,

v.

MARC A. BRUNER, *et al*.

Defendants.

___

**RESPONSE TO BRODY'S MOTION FOR CONSTRUCTIVE TRUST OR, IN THE ALTERNATIVE, FOR PREJUDGMENT ATTACHMENT**
___

Defendants, The Bruner Family Trust ("BFT") and Marc E. Bruner ("MEB"), as Trustee of The Bruner Family Trust (together the "BFT Parties"), respond to Brody's Motion for Constructive Trust or, in the Alternative, for Prejudgment Attachment (the "Motion"), as follows.

**1.   Brody's Failure to Comply with Local Rules**

As an initial matter, this Court should deny Brody's Motion because he failed to comply with D.C.Colo.LCivR 7.1. Brody's Motion did not include a certificate of conferral because Brody did not bother to confer prior to filing his Motion with BFT Parties. *See also*, Judge Moore's Practice Standards at §IV(G)(2); Magistrate Judge Neureiter's Practice Standards at §E(1). Had Brody followed the rules, there would have been a good chance we would not be expending the Court's time and unnecessary costs.

**2.   This Court Lacks Jurisdiction**

The Amended Complaint claims jurisdiction under 28 U.S.C. §1334 (conferring jurisdiction for all cases arising under or related to title 11). This action, however, does not arise

1

74420399.2

under nor is it related to title 11.  This is a state-law, non-core, breach of contract and tort dispute. The fact that the dispute is between creditors of a bankrupt company and a former creditor does not make this case arise under or relate to title 11 because this dispute does not affect the validity of any claim, payments or distributions to any other creditors, or administration of the Debtor's estate. *See In re Gallucci,* 931 F.2d 738, 742 (11th Cir. 1991) ("If the action does not involve property of the estate, then not only is it a noncore proceeding, it is an unrelated matter completely beyond the bankruptcy court's subject matter jurisdiction").  This action does not implicate a federal question and there is no diversity because Brody and MEB are both Colorado residents.

**3.     Introduction**

Brody was Marc A. Bruner's ("MAB") personal attorney for over 16 years; he represented most business entities MAB formed including those entities wholly owned by MAB (Brody Decl. ¶5); he was involved in the creation of the BFT, was an attorney at the firm that represented the BFT, and was a partner of the attorney that served as BFT's co-trustee for nearly a decade.  His decision to sue his former clients, and utilize confidential information he gained through representation as their counsel should not be tolerated.

In the background of this dispute is the PetroHunter bankruptcy that has been pending since 2016[1]. PetroHunter is a company MAB founded and for which Brody served as Vice President and General Counsel.  The BFT has several claims against the PetroHunter bankruptcy estate (the "Debtor") totaling $4,158,963.82 (together, the "BFT Claim").  The BFT Claim is predicated on a series of loans the BFT made to PetroHunter from July 2007 to August 2008, with many signed by Brody in his capacity as General Counsel for PetroHunter.  Completely separate from the BFT

---

[1] Case No. 16-20197-KHT

74420399.2

Claim, Brody had a claim against the Debtor for $335.374.18 (the "Brody Claim"). By agreement, dated August 16, 2017 (the "Agreement"), Brody sold the Brody Claim to MAB in exchange for, first, the transfer of 150,000 shares of Fortem Resources, Inc. and, second, for two payments of $12,500 each. According to Brody, MAB breached the Agreement by failing to tender any of the shares or the money and now Brody seeks to recover *both* the unpaid consideration and the Brody Claim[2].

Brody's Amended Complaint and Motion make no specific substantive allegations against the BFT or MEB. All of his substantive allegations are against MAB and MAB's alleged breach of the Agreement to purchase the Brody Claim. In order to put pressure on MAB to settle, Brody fabricated a civil conspiracy claim against the BFT and MEB but provided no factual allegations to support it. Instead, Brody embarked on a smear campaign complaining about transactions that occurred well over a decade ago. Brody ignores that he signed documents for the transactions of which he now complains and he ignores that he and his law partners provided legal advice and approval for those very transactions. Brody also cites: (1) an unsubstantiated response brief filed by the Bankruptcy Trustee in PetroHunter's bankruptcy; (2) inadmissible hearsay; and (3) information he obtained as counsel to the parties he now sues. This Court should wholly ignore that purported evidence or recognize its lack of credibility.

Brody is not entitled to the imposition of a constructive trust or prejudgment attachment against the BFT or MEB. Granting such relief would be inequitable. Although equity permits imposition of a constructive trust, it is limited to situations when property was obtained through a confidential relationship, fraud, or duress (i.e., wrongfully obtained property). Here, the BFT

---

[2] Of course, Plaintiff would be unjustly enriched were he to recover both the unpaid consideration and the Brody Claim.

Claim predates the Brody Claim and was not obtained improperly. The Brody Claim and the BFT Claim exist independently of each other. The BFT Claim is not the proceeds of, or traceable to, the Brody Claim. And, the BFT will not be unjustly enriched if its claim is paid. The BFT's claim is based on actual unpaid loans the BFT made to PetroHunter.

Even if this Court accepts Brody's wild conspiracy claims, it would not justify imposing a trust on the <u>BFT Claim</u> because Brody cannot, and does not, claim the <u>BFT Claim</u> was obtained improperly. Brody alleges only that the <u>Brody Claim</u> was obtained improperly. Consequently, the <u>BFT Claim</u> is not subject to a constructive trust or prejudgment attachment.

**4.    Brody is not entitled to a constructive trust**

The BFT Parties do not dispute that a constructive trust is a flexible equitable remedy that may be imposed to prevent unjust enrichment or that a constructive trust may be available to attach property obtained by fraud. Nothing Brody alleges about the BFT Parties, however, satisfies that standard or supports imposition of a constructive trust on payments due to the BFT from the PetroHunter bankruptcy.

The BFT Claim is predicated on a series of loans the BFT made to PetroHunter in 2007 and 2008. The BFT loans were evidenced by promissory notes that *Brody* signed on behalf of PetroHunter since Brody was PetroHunter's Vice President and General Counsel at the time. *See e.g.* <u>Exhibit A</u>. At that same time, Brody remained a partner at the Patton Boggs LLP law firm (Brody Decl. ¶5) and (1) Patton Boggs represented MAB personally[3], (2) Patton Boggs formed the BFT, and (3) Brody's law partner, Cynthia Gausvik, served as the BFT's trustee.[4] Brody cannot

---

[3] Plaintiff's declaration falsely states that he never represented MAB. Patton Boggs, where Brody was a partner, represented MAB. *See* <u>Exhibit</u> B. Patton Boggs represented MAB and the BFT. That representation is imputed to Plaintiff pursuant to Colorado's Rules of Professional Conduct Rule 1.10.

[4] *See* <u>Exhibit A</u>, ¶6.3.

4

74420399.2

challenge the validity of those loans since he and his law firm were on both sides of the transactions and he signed the promissory notes himself.

In short, the BFT has done nothing improper that would warrant this Court entering an order imposing a trust on funds that are properly payable to it. Years before Brody sold his claim to MAB, the BFT loaned money to PetroHunter. PetroHunter's Chapter 7 bankruptcy trustee (the "Trustee") determined there were funds in the estate to repay those loans. Allowing the Trustee to make that payment is equitable and would not unjustly enrich the BFT.

Even if the Court determines Brody might be entitled to a constructive trust, which the BFT denies, it is not entitled to such relief *pre-judgment*. To obtain *pre-judgment* relief Brody must satisfy the standard for obtaining a preliminary injunction, including the following factors: (1) a substantial likelihood of prevailing on the merits; (2) irreparable harm unless the preliminary injunction is granted; (3) the threatened injury outweighs the harm the preliminary injunction might cause the opposing party; and (4) that the granting of a preliminary injunction will not adversely affect the public interest. *Prairie Band of Potawatomi Indians v. Pierce*, 253 F.3d 1234, 1246 (10th Cir. 2001). A preliminary injunction is among the most extraordinary and drastic remedies a court can award. *O Centro Espirita Beneficiente Uniano Do Vegetal c. Ashcroft*, 389 F.3d 973, 976 (10th Cir. 2004). "Because a preliminary injunction is an extraordinary remedy, the right to relief must be clear and unequivocal." *Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*, 356 F.3d 1256, 1261 (10th Cir. 2004) (internal quotes and citation omitted). Brody cannot satisfy any of the foregoing factors, let alone clearly and unequivocally.

    **a.    Brody does not have a substantial likelihood of prevailing**

Brody does not have a substantial likelihood of prevailing on his conspiracy claim or claim for declaratory relief against the BFT and MEB—the only claims he alleged against the BFT

5

74420399.2

Parties. Brody's Motion admits as much. He argues only that he has a likelihood of success on three of his seven claims: fraud, civil theft, and breach of contract. Brody asserted those claims only against MAB—not the BFT Parties. Because Brody does not even argue he has a substantial likelihood of success on the only two claims he asserted against the BFT Parties, he is not entitled to imposition of a constructive trust over the BFT Parties' property (the BFT Claim).

Even if a constructive trust could be imposed against the BFT Parties based on claims pleaded against another defendant, which it cannot, Brody does not have a substantial likelihood of prevailing on those claims.

i. Fraud

Brody has no likelihood of prevailing on his fraud claim. First, Brody's Amended Complaint contains no allegations that the BFT or MEB made any representations, let alone false representations. As Brody admits, fraud requires a showing that the party "made a false representation of a material fact…." A plain reading of the Amended Complaint confirms Brody does not claim the BFT Parties made any representations. *See* Amended Compl. ¶¶1, 6, 7, 9(a)-(c), 10(a) & (c), 29, 61 – 69 (the only paragraphs referencing the BFT Parties). Brody's fraud claim is only against MAB for allegedly making a false representation that he would perform on an executory contract. *See* Amended Compl. ¶17-19. That leads to the next reason Brody cannot succeed on his fraud claim. Second, an essential element of fraud is that a misrepresentation must be of existing or past material fact. Said another way, statements of future intent, as Brody claims MAB made, are not actionable. *See United Fire & Casualty Co. v. Nissan Motor Corp. in USA*, 433 P.2d 769, 771 (Colo. 1967); CJI-Civ. 19:1; CJI-Civ. 19:12; *see also Bd. of Cty. Comm. of Summit Cty. v. DeLozier*, 917 P.2d 714, 716 (Colo. 1996). It is pure speculation by Brody, without any evidence, that MAB never intended to perform. Third, Brody's fraud claim is legally

6

precluded by the economic loss rule. *Hamon Contractors, Inc. v. Carter & Burgess, Inc.*, 229 P.3d 282, 290-295 (Colo. App. 2009) (holding fraud claims cannot proceed where they arise from duties implicated by the parties' contracts). Brody alleges he had a written contract with MAB that defined MAB's obligations. Brody then alleges MAB breached the contract by failing to perform those obligations. And Brody's damages for his fraud and for his breach of contract claims are identical. *Id*. Thus, Brody's fraud claim is precluded by the economic loss rule. *See Hamon Contractors, Inc. v. Carter & Burgess, Inc.,* 229 P.3d at 295 ("simply put, whether a party negligently breaches a contract or fraudulently does so, the duty allegedly breached is not independent of the contract").

### ii.    Civil Theft

Brody cannot prevail on his civil theft claim against the BFT Parties or his claim for treble damages against the BFT Parties or MAB. The statute of limitations for civil theft is two years and the statute of limitations to recover the treble damages penalty is one year. *See Tisch v. Tisch*, 439 P.3d 89, 101 (Colo. App. 2019) (recognizing a two-year statute of limitations for civil theft claims and a one-year statute of limitations for recovery of treble damage penalties under the civil theft statute). Brody claims MAB failed to deliver consideration under the Agreement in August 2017, but he did not initiate this action until April 2019 (against MAB only), and he did not assert any claims against the BFT Parties until June 2020. Thus, all applicable statutes of limitations expired before Brody sought to amend his complaint to assert claims against the BFT Parties, and the one year limitation for recovery of treble damages expired before Brody sued MAB.

Additionally, Brody's Amended Complaint contains no allegations that the BFT or MEB knowingly obtained anything of value from Brody without authorization. To the contrary, all of Brody's allegations are that MAB obtained the Brody Claim and then failed to tender the

7

74420399.2

contractually agreed-upon consideration. Brody does not claim the BFT Parties ever possessed the Brody Claim, did so without authorization, or had a culpable mental state.

### iii. Breach of Contract

Brody does not and cannot claim the BFT Parties were parties to the Agreement he alleges MAB breached. That Agreement, which Brody drafted, is only between MAB and Brody. Its opening paragraph confirms, "This AGREEMENT …. is entered into …. by and between David E. Brody …. And Marc[] A. Bruner…." It is elementary that the BFT Parties could not have breached a contract to which they were not a party.

MAB also could not have breached the Agreement because of the following contractual waiver language that *Brody* drafted:

> hereto. If the First Payment and/or the Second Payment are not paid in full or in a timely manner, Brody may elect either to retain all 150,000 Shares or to extend the due date for one or both cash payments that are due under Section 1(a). If one or both cash payments are not made, Brody waives the right to make a claim against Bruner for breach of this Agreement. The provisions of Section 1(a) shall apply equally to all 150,000 Shares.

This language expressly waives Brody's "right to make a claim against [MAB] for breach of this Agreement" if MAB failed to make either cash payment, which is exactly what Brody alleges MAB did in Paragraph 18 of his Amended Complaint. *See, e.g., Ad Two, Inc. v. City and County of Denver*, 9 P.3d 373, 376 (Colo. 2000) ("The primary goal of contract interpretation is to determine and give effect to the intent of the parties…. The intent of the parties to a contract is to be determined primarily from the language of the instrument itself.") (internal citations omitted). Based on this, Brody cannot show he has a reasonable likelihood of prevailing on his breach of contract claim because he drafted the language waiving such a claim.

Brody also cannot show a substantial likelihood of prevailing on *any* claim against the BFT Parties. Brody has not made a single substantive allegation against them. All of his allegations

8

are against MAB. With respect to the BFT Parties, Brody provides only vague unsubstantiated claims that are conclusory, lack any credibility, and are not actionable.

### b. Brody will not suffer irreparable harm if an injunction is denied

Brody's claim of irreparable harm is totally undermined by his own delay. According to Brody, he should have known MAB committed fraud, civil theft, and breach in the days after signing the Agreement in August 2017, when MAB failed to tender the contractual consideration. Yet, Brody waited until April 12, 2019 to initiate this suit. Then the only claims he asserted were for breach of contract and breach of the duty of good faith and fair dealing. He did not amend his complaint to assert fraud, civil theft, and conspiracy until June 5, 2020; and even then, he did not seek imposition of a constructive trust. He did not seek a constructive trust until July 21, 2020— nearly three years after the alleged breach. If Brody was truly concerned about suffering certain, great, and immediate harm (i.e., irreparable), he should have asserted it sooner.

Even if his delay were not reason enough to deny his Motion, which it is, Brody offers no substantive support for a constructive trust against the BFT Parties. All of Brody's claims about irreparable harm pertain to MAB exclusively. Conversely, the BFT Parties willingly accepted service. The BFT Parties do not operate internationally. The BFT Parties maintain domestic bank accounts. If the BFT Claim is paid, the BFT plans to retain those funds for its beneficiaries. *See* Exhibit C, ¶¶ 6-9. Brody's unsupported speculation that, in the unlikely event he prevails, he will not be able to recover damages is not a basis to enter pre-judgment attachment.

To establish irreparable harm, the injury "must be both certain and great, and that it must not be merely serious or substantial." *Dominion Video Satellite, Inc. v. Echostar Satellite Corp*., 356 F.3d 1256, 1263 (10th Cir. 2004). Cases also note that "irreparable harm is often suffered when the injury can[not] be adequately atoned for in money or when the district court cannot remedy

9

74420399.2

[the injury] following a final determination on the merits." *Prairie Band of Potawatomi Indians v. Pierce*, 253 F.3d 1234, 1250 (10th Cir. 2001) (internal quotes and citation omitted); *see also Gitlitz v. Bellock*, 714 P.3d 1274, 1279 (Colo App. 2007) (defining irreparable harm as harm "for which a monetary award does not adequately compensate" or "where money damages are difficult to ascertain or where there exists no pecuniary standard for the measurement of the damages.").. Here, Brody cannot show any danger of irreparable injury if the Court denies his request to impose a pre-judgment constructive trust against the BFT Parties because money damages are available to resolve Brody's claims. He alleged the exact value of his claim in paragraph 13 of the Amended Complaint.

Brody argues that MAB (not the BFT or MEB) resides out of the country, has avoided service of process, and operates through foreign companies utilizing offshore bank accounts. Brody then liberally quotes the Chapter 7 bankruptcy trustee's response brief to establish MAB (again – not the BFT or MEB) is a "fraud," "sham," and generally bad guy. Each of these claims is easily refuted.

Brody admits he has known MAB for at least 16 years and during that time represented numerous companies MAB founded. (Brody Decl. ¶¶5-6) Brody admits he personally travelled with MAB to his international residences and banking institutions as part of his representation. (Brody Decl. ¶7-37(a)). Hence, Brody knows exactly where MAB lives and does business. As part of Brody's representation of MAB and his entities, Brody helped advise on the international business practices that he now claims are "nefarious" and will result in his irreparable harm. That is an untenable position. Brody cannot argue MAB acting consistently with Brody's advice will

10

cause him irreparable harm.[5]  Further, Brody—as an experienced attorney who works at the #27 firm ranked by the AMLAW100— knew exactly with whom he was contracting when he entered the Agreement.  He knew that if there was an actionable breach, he might have to enforce the agreement against a party who resides, operates businesses, and banks internationally.  He is an attorney with a global practice[6], he drafted the Agreement, and he could have required security as part of the Agreement but he chose not to.  He assumed the risk of recovery in a contract with someone he knew lived out of this country.  That was part of Brody's bargained-for-exchange.  Although the risk that he might have to utilize the Hague Convention to pursue his claim might be substantial, it does not create such a certain or great harm that it rises to the level of irreparable or anything unique to anyone who works internationally.

      Brody claims that MAB has been dodging service.  Brody has not established this.  Brody's sole support is his lawyer's declaration with the conclusory statement that service was attempted in Colorado and Canada.  (Rollin's Decl. ¶1(a))  Contradicting Rollin however, Brody's declaration states that MAB does not reside in Colorado.  (Brody's Decl. ¶¶7 & 37(a))  The remainder of Rollin's declaration contains general information about purported phone calls placed and letters sent to businesses and associates of MAB.  Those efforts do not constitute service or show avoidance of service. Rollin's generalization that service was attempted in Colorado and Canada fails to provide enough information to establish what was actually attempted.  It is not

---

[5] Plaintiff's use of this information appears to violate Rule 1.9(c) of the Colorado Rules of Professional Conduct, which precludes a lawyer who has formerly represented a client from utilizing information relating to the representation to the disadvantage of the former client.

[6] Plaintiff's firm bio reads in part: "With more than 40 years of focusing on domestic and international oil and gas transactions, David Brody has the experience, knowledge, and skills to represent oil and gas clients on any and every aspect of their business. In addition to 20 years in private practice, he has also served as an officer and in-house general counsel for a major oil company and for independent oil companies operating throughout the Western U.S., and around the globe." https://www.hoganlovells.com/en/david-e-brody (reviewed 8/3/2020)

74420399.2

clear whether, *inter alia*, Brody retained a process server, what address was used for service, the number of times or time of day service was attempted, or whether Brody utilized the Hague Convention. Similarly, Rollin's declaration fails to provide sufficient detail to discern anything about the phone calls or letters he allegedly sent. It also is puzzling why Brody's declaration states he is aware that MAB has residences in Switzerland and Italy (Brody's Decl. ¶¶7 & 37(a)), but Brody's lawyer's declaration says nothing about efforts to locate MAB in either location. In short, there is no evidence that Brody made any effort to actually serve MAB yet he complains repeatedly that MAB is avoiding service to support his claim of irreparable harm.

Brody also generously quotes from a response brief the Trustee filed almost two years ago. Brody is trying to sway the Court with inadmissible character evidence (i.e., the Trustee called MAB a fox in a chicken coop so this Court should presume everything MAB does is bad). *See* F.R.E. 404(a)(1). Those statements are not admissible or relevant. The Trustee's brief contains the Trustee's position based on allegations at the time; and MAB, BFT, and others disputed the Trustee's characterizations. All of that is hearsay. *See* F.R.E. 802. The Bankruptcy Court did not enter findings or conclusions affirming the Trustee's allegations and there is no collateral estoppel regardless. And more importantly, the Trustee now believes the BFT Claim is payable to the BFT.

Brody's claim of irreparable harm is unsupported. Money damages are available if he prevails. And having to potentially pursue a judgment internationally does not constitute irreparable harm. That is the cost of doing business for a global attorney like Brody.

    **c.**     **Any threatened injury to Brody will not outweigh the harm the preliminary injunction might cause the BFT Parties.**

Balancing the threatened injury to Brody against the harm of an injunction to the BFT Parties clearly weighs in the BFT Parties' favor. As noted above, there is no evidence of any

12

wrongdoing by the BFT Parties. Denying the imposition of a constructive trust will not allow the BFT Parties to benefit from the "fruits of their own wrong doing" because Brody has not claimed they did anything wrong.

All of Brody's allegations are directed at MAB. And most of Brody's allegations are highly speculative or based on completely inadmissible "evidence." The harm of imposing a constructive trust, however, will be devastating to the BFT. It has multiple beneficiaries to answer to for recovery of claims against the Debtor that have been pending for years. *See* Exhibit C, ¶ 10. The BFT has no other assets beyond the BFT Claim. *Id. at* ¶ 11-12. Without that claim, it will be materially prejudiced in defending unfounded claims by Brody in multiple courts. *Id*. Brody initiated this action and now filed an adversary proceeding pursuing claims identical to those he is pursing here. Limiting the BFT Parties' access to funds by filing objections to prevent the bankruptcy court form making the BFT interim distribution and this motion for constructive trust will ensure Brody prevails not on the merits of his claims but because the BFT's ability to defend itself will be severely prejudiced due to lack of funds through prejudgment attachment. *Id*.

Conversely, maintaining the status quo, not imposing a prejudgment constructive trust, will not harm Brody at all. His delay in seeking imposition of a constructive trust is evidence that he will not suffer any harm if it is denied. Brody waited approximately three years to seek a constructive trust (and did not ask for it on an emergency or expedited basis), which shows the additional time will not harm him at all. Brody also presented no support for his unfounded fear that MAB or the BFT Parties will permanently deprive him of the value or benefit of the Brody Claim.

13

      d.      **The granting of a preliminary injunction will adversely affect the public interest**

Brody concedes the enforcement of valid contracts is in the public interest. He also admits he is a lawyer who has practiced for 40 years at prestigious firms and knew with whom he was contracting. Brody drafted this contract with an international client (not the BFT Parties) that created a potentially unsecured claim and he now asks the Court to re-write the Agreement to make it secured *and* then enforce it against non-parties to that Agreement. Granting Brody's relief would adversely affect the public interest by re-writing the Agreement to benefit one party over another.

**5.**      **Brody is not entitled to prejudgment attachment**

Brody seeks prejudgment attachment pursuant to Colorado Rules of Civil Procedure Rule 102. C.R.C.P. 102(c) identifies nine causes for which prejudgment attachment can be granted. Brody cites section c(2)–(9) but does not specifically argue under any of these sections. As noted above, none of these sections apply to the BFT Parties. The BFT Parties have not (a) been absent from Colorado at all (C.R.C.P. 102(c)(2)), (b) concealed themselves from process of law (C.R.C.P. 102(c)(3)), (c) made any effort or formed an intent to remove or conceal property to hinder a creditor (C.R.C.P. 102(c)(4), (6) & (8), (d) fraudulently conveyed or planned to fraudulently convey any property to anyone (C.R.C.P. 102(c)(5) & (7), or (e) departed or formed plans to depart from Colorado (C.R.C.P. 102(c)(9)). Brody has not satisfied his burden of establishing any of these causes against MAB, let alone the BFT Parties. Assuming *arguendo* that it has however, that would not permit prejudgment attachment of the <u>BFT Claim</u> since Brody failed to argue any of these apply to the <u>BFT Parties</u>.

**6.     Brody should be required to post a bond**

If the Court approves Brody's request for prejudgment attachment, then under C.R.C.P. 102(d) the Court must require Brody to post an appropriate bond not less than the amount of the BFT Claim which is $4,158,963.82. C.R.C.P. 102(d) states in relevant part, "Before the issuance of a writ of attachment the Brody <u>shall</u> furnish a bond…" (underline added). Although the amount of the bond is subject to the court's discretion, the posting of a bond is not. Here, with respect to the BFT Parties and Claim, the bond should be equal to the amount of the BFT Claim.

**7.     Conclusion**

Brody seeks extraordinary relief. He seeks a prejudgment constructive trust and/or prejudgment attachment against the BFT Parties notwithstanding having presented no evidence the BFT Parties did anything wrong. Instead, Brody's whole case is that MAB breached a contract and somehow the BFT Parties were accomplices. They were not. Consequently, the Court should deny Brody's request and award the BFT Parties their attorney's fees and costs incurred responding to Brody's groundless and frivolous Motion.

Dated this 11th day of August, 2020.        */s/ William R. Meyer*
                                             William R. Meyer, Attorney Reg. 34012
                                             POLSINELLI PC
                                             1401 Lawrence Street, Suite 2300
                                             Denver, CO 80202
                                             Phone: (303) 572-9300
                                             Fax: (303) 572-7883
                                             E-mail: wmeyer@polsinelli.com

                                             *Attorneys for The Bruner Family Trust and Marc E. Bruner, as trustee for the Bruner Family Trust*

15

74420399.2

## CERTIFICATE OF SERVICE

      The undersigned certifies that on August 11, 2020, the foregoing was served by CM/ECF to all parties of record using the e-mail addresses on file with the Court:

*/s/William R. Meyer*          

74420399.2