IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 19-cv-01091

DAVID E. BRODY,

Plaintiff,

v.

MARC A. BRUNER,
THE BRUNER FAMILY TRUST, and
MARC E. BRUNER, AS TRUSTEE OF THE BRUNER FAMILY TRUST

Defendants.

**RESPONSE TO BRODY'S MOTION FOR CONSTRUCTIVE TRUST OR, IN THE ALETERNATIVE, FOR PREJUDGMENT ATTACHMENT**

Defendant Marc A. Bruner ("MAB") hereby submits his Response to Plaintiff David E. Brody's Motion for Constructive Trust or, in the Alternative, for Prejudgment Attachment (the "Motion"), as follows.

**Statement Concerning Jurisdiction:** For the same reasons stated by Co-Defendants in their own Response [Doc. #30], MAB disputes whether this Court has jurisdiction. Plaintiff's Amended Complaint [Doc. #16] only alleges jurisdiction under 28 U.S.C. § 1334, pertaining to bankruptcy cases. The Court is aware of the jurisdictional defect based on its Minute Order [Doc. #31] dated August 12, 2020. MAB reserves the right to further object to jurisdiction after Plaintiff submits any response to the Minute Order.

1

## INTRODUCTION

This action arises out of a longstanding business dispute which the Plaintiff David Brody ("Brody") has just now declared an alleged emergency. But no emergency exists, and there is no basis to provide the extraordinary pre-judgment relief demanded by Brody. Indeed, this matter has been pending for over a year with no major development. Contrary to Brody's assertions, MAB willingly and voluntarily submits himself to this Court's jurisdiction, as indicated by the Waiver of Service dated August 12, 2020 and filed contemporaneously with this Response. There is no risk of immediate harm, nor does any other circumstance suggest Brody will not be able to pursue his desired remedy – monetary damages. For these reasons, Brody's Motion must be denied.

## FACTUAL BACKGROUND

Brody is a practicing attorney in the State of Colorado. *See* Brody Declaration [Doc. #29-3] ¶ 5. He has known MAB for over sixteen years, and has represented MAB, MEB, and the Trust in regard to their business practices. *Id.* ¶¶ 5-6. Brody claimed an interest in a Chapter 7 bankruptcy case, captioned *In re Petrohunter Energy Corp.*, Case No. 16-20197 KHT in the Bankruptcy Court for the District of Colorado (the "Bankruptcy Action"). On March 1, 2017, Brody filed his proof of claim in the Bankruptcy Action, in the amount of $335,374.18.

On August 16, 2017, Brody and MAB entered into an Agreement, pursuant to which Brody agreed to transfer his claim in the Bankruptcy Proceeding (the "Interest") to MAB. *See* Ex. A, Agreement. As consideration for the Interest, MAB would: (1) transfer 150,000 shares of common stock in Fortem Resources, Inc. (the "Fortem Shares") within 10 days of the Agreement to Brody;

2

4839-4715-1559.2

(2) make one payment of $12,500 within 30 days of the Agreement; and (3) issue a second payment of $12,500 within 60 days of the Agreement, and.  The Agreement further provided that:

> If the First Payment and/or the Second Payment are not paid in full or in a timely manner, Brody may elect either to retain all 150,000 Shares or to extend the due date for one or both cash payments that are due under Section 1(a). ***If one or both cash payments are not made, Brody waives the right to make a claim against Bruner for breach of this Agreement***.  The provisions of Section 1(a) shall apply equally to all 150,000 Shares.

*Id*. at ¶ 1(b) (emphasis added). On August 22, 2017, MAB filed a Transfer of Claim for Other than Security to effect the transfer of the Interest.  Brody alleges MAB never made any payment or transferred the Fortem Shares.  Brody further alleges this breach occurred shortly after August 22, 2017 Notice of Transfer.  Brody does not identify any other breach aside from the one which allegedly occurred in the late summer or fall of 2017.

On April 12, 2019, Brody filed this action, asserting claims for breach of contract and breach of the duty of good faith and fair dealing against MAB only.  The case then lingered.  No substantive action occurred for over a year.  On June 5, 2016, Brody filed his Amended Complaint [Doc. #16], adding new claims against MAB, as well as naming the Bruner Family Trust (the "Trust") and MAB's son, Marc E. Bruner ("MEB") as defendants.  Brody filed the Amended Complaint as a matter of course, pursuant to Fed. R. Civ. P. 15, as he had not served MAB and no party had filed an answer or other responsive pleading.

On June 8, 2020, mere days after filing the Amended Complaint, the Court issued an Order to Show Cause [Doc. #18].  The Court noted the lack of progress from the case's filing through the Amended Complaint, and noted, "Plaintiff did not comply with the Court's orders…[to serve MAB], and has offered no justification for his failure to do so." *Id.* at pp. 1-2.  The Court ordered Brody to telephonically appear for a Show Cause Hearing to explain why the case should not be

3

dismissed for failure to prosecute. *Id.* at pp. 2-3. The Court held the Show Cause Hearing on June 23, 2020. *See* Minute Order [Doc. #21]. It discharged the Show Cause Order, but ordered Brody to "serve at least one defendant within the next 45 days, subject to dismissal without prejudice for failure to serve within that time." *Id.* Upon information and belief, MAB understands the Trust and MEB were served during that time. MAB waived service on August 12, 2020.

On July 21, 2020, Brody filed the Motion. *See* [Doc. #29]. Brody seeks to impose a constructive trust on the Interest, thereby requiring MAB to transfer the Interest back to Brody. In the alternative, Brody requests a prejudgment attachment of the Interest. Brody contends that, without a constructive trust, MAB will abscond with the funds to one of his numerous international residences, and Brody will never be able to collect on a judgment.

In support of the Motion, Brody attaches two affidavits, from himself and his attorney. *See* Rollin Declaration [Doc. #29-2] and Brody Declaration [Doc. #29-3]. Brody asserts he has not been able to serve MAB because MAB resides internationally, "in Canada, Switzerland, and Italy, and perhaps other countries." *Id.* ¶ 7. The Rollin Declaration discusses some attempts to serve MAB, including: personal service in Colorado and Canada; a single call and text message to MAB; unidentified written correspondence to (also unidentified) Canadian business associates; phone calls to other attorneys who represented MAB; and requests to MAB's daughter-in-law. Rollins Declaration [Doc. #29-2] ¶¶ 1(a)-(f). Notably, it does not once refer to the Hague Convention on the Service of Judicial and Extrajudicial Documents in Civil or Commercial Matters (the "Hague Convention"), which sets forth the methods of serving international parties in at least some of the identified countries.

4

Brody also describes MAB's international business dealings, Brody's own travels to MAB's international residences and businesses, and other legal proceedings with which MAB has been involved. *See* Brody Declaration [Doc. #29-3] ¶¶ 35-38. Based on this information, Brody contends MAB is likely to transfer the Interest to one of his international holdings, where Brody will no longer be able to collect it. From Brody's Declaration, he is quite familiar with MAB's business associates, business enterprises, and residences. *See id.* ¶¶ 7-8, 11, 35-38. Although this case has been pending for well over a year, Brody never raised the concern of a fraudulent transfer until he filed the Motion.

## ARGUMENT

Brody asserts two extreme remedies in the Motion: a constructive trust, and pre-judgment attachment. Neither is appropriate under the circumstances of this case.

I. **A Constructive Trust is Not An Appropriate Pre-Judgment Remedy, as Brody has Failed to Satisfy Its Procedural and Substantive Requirements.**

Brody first argues this Court should apply a constructive trust, to effectively re-convey the Interest from MAB back to himself. However, Brody's argument is procedurally improper and should be denied for that reason alone. Nor has Brody demonstrated any substantive reason for his proposed remedy.

A constructive trust is an equitable remedy, imposed by the court to prevent unjust enrichment. *Lawry v. Palm*, 192 P.3d 550, 562 (Colo. App. 2008). Constructive trusts typically arise when one party has acquired property by fraud or duress, or other circumstances exist which render it unjust to retain the property. *Page v. Clark*, 592 P.2d 792, 798 (Colo. 1979). "By imposing a constructive trust, a court awards *the successful plaintiff* a personal order requiring the defendant to transfer specific property to the plaintiff." *Lawry*, 192 P.3d at 562. (emphasis added).

5

A claim for constructive trust is frequently asserted as its own unique claim or a post-judgment remedy, rather than a form of pre-judgment relief. *See generally Lyons v. Jefferson Bank & Tr.*, 781 F. Supp. 1525, 1530-31 (D. Colo. 1992) (discussing preliminary injunction in the context of a plaintiff's claim for constructive trust). Accordingly, "[a]ssets subject to a constructive trust may be frozen by a preliminary injunction to preserve the corpus of the constructive trust pending trial on the merits." *Id.* at 1530. Thus, in *Lyons*, the plaintiff asserted a claim for constructive trust, and separately moved for a preliminary injunction to preserve the disputed property. *See id.* The *Lyons* court focused on whether the plaintiff would ultimately prevail on the merits of a constructive trust claim. *Id.* It did not impose a constructive trust at the beginning of the action, as Brody seeks to do. Instead, the Court granted the preliminary injunction and froze the disputed assets. *Id.* at 1531.

That is not the situation here. Tellingly, Brody's Motion is captioned as "Plaintiff's Motion for Constructive Trust or, In the Alternative, for Prejudgment Attachment." *See* [Doc. #29]. There is no rule or case law that allows for a "Motion for Constructive Trust"; to the contrary, a constructive trust is typically imposed at the end of a lawsuit. The Motion is not the appropriate mechanism for Brody to assert a constructive trust, let alone at this early stage. Rather, Brody must follow the procedures set forth in Fed. R. Civ. P. 65 to obtain a preliminary injunction. He has not done so, and his Motion is appropriately denied for that reason alone.

However, even recognizing that a constructive trust may implicate the elements of a preliminary injunction, the Motion still fails. A preliminary injunction is a drastic form of relief. It should be permitted only in the most extraordinary circumstances. *O Centro Espirita Beneficiente Uniano Do Vegetal c. Ashcroft*, 389 F.3d 973, 976 (10th Cir. 2004). "Because a

6

4839-4715-1559.2

preliminary injunction is an extraordinary remedy, the right to relief must be clear and unequivocal." *Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*, 356 F.3d 1256, 1261 (10th Cir. 2004). A preliminary injunction requires: (1) a substantial likelihood of prevailing on the merits; (2) the plaintiff will suffer irreparable harm unless the preliminary injunction is granted; (3) the threatened injury outweighs the harm the preliminary injunction might cause the opposing party; and (4) the granting of a preliminary injunction will not adversely affect the public interest. *Prairie Band of Potawatomi Indians v. Pierce*, 253 F.3d 1234, 1246 (10th Cir. 2001). Brody cannot meet any of these four requirements.

### A. *Brody Does Not Possess a Substantial Likelihood of Prevailing on the Merits.*

Brody asserts seven causes of action against MAB: (1) fraud; (2) civil theft; (3) breach of contract; (4) breach of the duty of good faith and fair dealing; (5) promissory estoppel; (6) civil conspiracy; and (7) declaratory judgment. The sheer number of claims does not increase the dim prospects for Brody to prevail on any of them. While MAB contests Brody's ability to prove any element of these claims, a few points are illustrative for this Response as specifically relevant to the issues raised in this Motion.

First, fraud requires that the defendant either knowingly misrepresent or knowingly conceal a material fact. *Williams v. Boyle*, 72 P.3d 392, 399 (Colo. App. 2003). Brody relies on MAB's alleged representation that he would transfer the Fortem Shares and make two payments, totaling $25,000, to Brody in exchange for the Interest. However, there is no fact to suggest this statement

7

4839-4715-1559.2

was false when MAB allegedly made it, or that MAB otherwise concealed information about his financial situation.[1]

The statements in Brody's Declaration [Doc. #29-3] on this subject are both conflicting and conclusory. For example, Brody argues MAB could have transferred the Fortem Shares simply because of his position as Fortem's CEO. *Id.* ¶ 18. This disregards another apparent statement from MAB, in which MAB informed Brody he did not have any freely tradeable stock in Fortem. *Id.* ¶ 17. MAB is presumably in better knowledge of his financial affairs than Brody, who fully admits he has no personal knowledge of MAB's financial condition. *Id.* ¶ 19. While Brody asserts he does not "believe" that MAB intended to transfer the $25,000 payment or the Fortem Shares, he does not point to any evidence whatsoever in support of that belief, aside from his own subjective opinion. *Id.* ¶ 18.

Brody's fraud claim relies on speculation and hearsay. Such conflicting factual testimony by Brody in a single affidavit creates material issues of fact. It does not provide any sufficient evidence to establish a reasonable likelihood of success on the merits.

Next, civil theft occurs when a defendant "knowingly obtains, retains, or exercises control over anything of value of another *without authorization or by threat or deception*." C.R.S. 18-4-401(1) (emphasis added). This, too, is inapplicable. The Interest was transferred to MAB, but the transfer was performed with Brody's full authorization. Nor was the transfer done by threat or deception; Brody has never alleged a threat. Although he hints at an alleged deception by MAB,

---

[1] In addition, the gravamen of Brody's seven claims all sound in contract – essentially dressing up a single, garden-variety breach of contract claim as seven different claims. As relevant to fraud and the other alleged torts, it is likely that any claim for fraud or a tort is barred by the economic loss rule and thus legally deficient as a matter of law. *See Hamon Contrs., Inc. v. Carter & Burgess, Inc.*, 229 P.3d 282, 289 (Colo. App. 2009) (applying economic loss rule to fraud claims when they arise out of contractual duties).

his accusations are conclusory and vague at best. He does not point to any specific fact, in his Declaration or otherwise, that MAB deceived him at or around the time of the transfer. Brody therefore cannot establish the first requirement of a civil theft claim. While MAB disputes the remaining elements, too, there cannot be a substantial likelihood of success on the merits when the first element of civil theft fails.

As to breach of contract, Brody ignores crucial language in the Agreement. Paragraph 1(b) provides, "If one or both cash payments [to Brody] are not made, Brody waives the right to make acclaim against [MAB] for breach of this Agreement." Ex. A, Agreement ¶ 1(b). This is precisely the situation that Brody alleges. He asserts the payments of $25,000, allegedly owed to him by MAB, were not paid. Brody has never disputed that he entered into the Agreement, nor has he contended it is unenforceable. Moreover, Brody himself is an experienced attorney. This is not a situation where one party of minimal bargaining power was duped by another more sophisticated party. Brody is presumably familiar with negotiating contracts, and he expressly and unequivocally waived his breach of contract claim pursuant to the Agreement.

Brody's claim for breach of the implied covenant of good faith and fair dealing fares no better. In Colorado, this claim applies "only when the manner of performance under specific contract term allows for discretion on the part of either party." *Amoco Oil Co. v. Ervin*, 908 P.2d 493, 498 (Colo. 1995). It examines whether one party retains the discretion to determine certain essential terms, "such as quantity, price, or time." *Id.* Brody has not pointed to any discretionary term under the Agreement. Rather, his claim is limited to an alleged non-payment – a breach of the Agreement's mandatory terms. Moreover, the timing and amounts of the payments due under the Agreement are clearly set forth; they are not deferred to another time at MAB's sole discretion.

9

A claim for breach of the implied duty of good faith and fair dealing is inapplicable under these circumstances.

Civil conspiracy requires an agreement between two or more persons to accomplish a particular goal, a meeting of the minds on the goal or course of action, and an unlawful overt act. *Nelson v. Elway*, 908 P.2d 102, 106) (Colo. 1995). "The court will not infer the agreement necessary to form a conspiracy; evidence of such an agreement must be presented by the plaintiff." *Id.* Further, the conspiracy's purpose "must involve an unlawful act or unlawful means. A party may not be held liable for doing in a proper manner that which it had a lawful right to do." *Id.* Once more, Brody's allegations of an agreement are vague and indefinite. There is nothing to indicate he will be able to present credible evidence about an agreement or an unlawful objective. Indeed, Brody himself acted as a lawyer for MAB, the Trust, and others allegedly involved in these events. Consulting an attorney suggests the opposite conclusion – that MAB wished to comply with legal requirements and obtained advice to ensure his compliance with applicable law and regulations.

Brody asserts seven claims for relief. None of these claims, either individually or cumulatively, provide a clear likelihood of success on the merits. Brody cannot even show a substantial likelihood of prevailing on any single claim. This alone renders a constructive trust, or other preliminary relief, improper.

> B. *Brody Will Not Suffer Irreparable Harm Because the Alleged Injury Can be Fully Compensated by an Award of Damages.*

To establish irreparable harm, the injury "must be both certain and great, and…must not be merely serious or substantial." *Dominion*, 356 F.3d at 1263. Importantly, "irreparable harm is often suffered when the injury can[not] be adequately atoned for in money or when the district

court cannot remedy [the injury] following a final determination on the merits." *Prairie Band*, 253 F.3d at 1250 (internal quotes and citation omitted); *see also Gitlitz v. Bellock*, 714 P.3d 1274, 1279 (Colo App. 2007) (defining irreparable harm as harm "for which a monetary award does not adequately compensate" or "where money damages are difficult to ascertain or where there exists no pecuniary standard for the measurement of the damages.").

Brody's asserted relief is monetary damages. His Amended Complaint includes economic damages, punitive damages, and attorney's fees and costs. These are all forms of monetary relief. Brody himself identifies $1 million in damages; a cursory review of this number suggests it includes damages for breach of contract and treble damages. Moreover, the non-monetary relief Brody identifies is intertwined with his monetary relief. His Motion is indicative; although Brody seeks a constructive trust, the sole purpose of the trust is to convey funds from MAB to Brody.

Nor is there anything to suggest that Brody will suffer other any non-economic injury. Brody contends that he will suffer irreparable harm because of anticipated actions by MAB, and in particular, the risk MAB may transfer assets to another jurisdiction. Brody's logic is flawed for several reasons. First, MAB is voluntarily submitting himself to this Court's jurisdiction. He has waived service, and he is before the Court to defend this action.

Next, the physical location of the Fortem Shares or any cash held by MAB is a red herring. The main reason for Brody's conclusion appears to be that he has not been able to serve MAB, who resides internationally. However, the two affidavits from Brody and his attorney describe only minimal attempts at service. For example, despite Brody having knowledge of MAB's residences, neither affidavit mentions any attempt at service under the Hague Convention. This is insufficient to show that MAB has been evading service, let alone that he will actively try to thwart

11

a judgment. Brody's arguments are further undermined by MAB's actions: as stated, MAB has waived service and submits himself to this Court's jurisdiction.

There is no other indication – from Brody or otherwise – that MAB intends to convey or otherwise dissipate the Interest. Such statements from Brody are speculative at best. They are further undermined by MAB's participation in this action. It is entirely illogical to anticipate MAB would fraudulently convey assets when he plans to participate in this action, as indicated by the filing of this Response. Additionally, MAB's multiple residences may ultimately give Brody a benefit. Should Brody prevail, and obtain a monetary judgment against MAB, there are multiple jurisdictions in which he can pursue collection efforts. Irreparable harm cannot exist under these circumstances.

Finally, it is disingenuous for Brody to assert irreparable harm given his own actions. MAB and Brody entered into the Agreement in August 2017. Brody alleges the Agreement was breached shortly after that. Nevertheless, Brody waited until April 2019 to file this lawsuit. Brody took only minimal action for the next year. This case lingered until Brody filed his Amended Complaint [Doc. #16] on June 5, 2020, followed by the Motion on July 21, 2020. Indeed, this Court even indicated dismissal for failure to prosecute may be appropriate because of Brody's inaction. *See* Order to Show Cause [Doc. #18]. For Brody to now assert that immediate action is required, after taking only minimal steps to prosecute the case for over a year, contradicts any finding of irreparable harm.

    C. <u>The Harm to MAB from the Grant of a Preliminary Injunction Outweighs the Injury to Brody.</u>

The alleged injury to Brody does not outweigh the harm the preliminary injunction will cause to MAB, either. The only harm Brody allegedly suffers is that he will not immediately

4839-4715-1559.2

receive the payment owed under the Agreement. Brody has been in this position, as he freely admits, for nearly three years. This is not a substantial injury; it is merely a continuation of the status quo. On the other hand, MAB will suffer great harm if he is forced to convey the Interest to Brody before a trial on the merits. It is questionable whether Brody will be able to prove his claims. Mandating that MAB transfer the Interest before trial, when Brody offers only vague accusations of fraud and breach, works a significant harm on MAB.

### D. *Granting an Injunction Will Adversely Affect the Public Interest.*

Finally, the grant of an injunction adversely affects the public interest. Brody's claim is based on the Agreement, which in part, contains a waiver of his claims against MAB in the event of nonpayment. This is a term to which Brody – an experienced commercial attorney – expressly agreed. Thus, granting the injunction would enforce the Agreement against its express terms. This is contrary to the public interest. *See, e.g., Univ. Engraving, Inc. v. Duarte*, 519 F. Supp. 2d 1140, 1149-50 & n.21 (D. Kan. 2007).

For these reasons, Brody cannot establish any element required for a preliminary injunction. Consequently, a constructive trust – especially one imposed before trial – is entirely inappropriate.

### II. **Brody Cannot Demonstrate that a Pre-Judgment Attachment is Warranted.**

Alternatively, Brody seeks prejudgment attachment pursuant to Colorado Rule of Civil Procedure Rule 102. Rules authorizing prejudgment attachment, including C.R.C.P. 102, are in derogation of the common law and are therefore strictly construed. *Old Republic Nat'l Title Ins. Co. v. Kornegay*, 292 P.3d 1111, 1114 (Colo. App. 2012); *see also Conry v. Baker*, 2015 WL 4538720, 2015 U.S. Dist. LEXIS 98311, at *9 (D. Colo. July 28, 2015) (applying C.R.C.P. 102

and Fed. R. Civ. P. 64 and determining, based on strict construction, that the plaintiff's affidavit did not meet the requirements for pre-judgment attachment).

C.R.C.P 102(c) identifies nine scenarios for which prejudgment attachment can be granted. Brody cites to eight of the listed scenarios (those set forth in subsections (c)(2) through (9)) in his attempt to seek pre-judgment attachment. All of the cited sections reference fraud, and in particular, the potential for fraudulent transfers in the absence of a pre-judgment attachment. *See* C.R.C.P. 102(c)(2)-(9). However, Brody fails to identify any specific facts to establish the likelihood of a fraudulent transfer, in his Affidavit or otherwise.

Mere speculation that a defendant may transfer assets is insufficient to show that pre-judgment attachment is appropriate. *Conry*, at *10. In *Conry*, the plaintiff sought to attach $250,000 held by the Weld County District Court, asserting that without the attachment, the defendant was likely to fraudulently convey or remove the funds. *Id.* at *2, *6-7. As here, she relied on C.R.C.P. 102(c)(4) and (c)(7)-(9). *Id.* The plaintiff asserted "Defendants are in a position to fraudulently conceal, remove, or dispose of his/her/their real and/or personal property or effects, or a material part thereof, so as to hinder or delay [Plaintiff], or to render process of execution unavailing if judgment is obtained." *Id.* at *9-10. She also argued the defendants had left Colorado, and could possibly remove their property, as well. *Id.* at *10.

The Court held the plaintiff had not satisfied the requirements for pre-judgment attachment. *Id.* at *11. First, the Court noted "the test [for pre-judgment attachment] is not whether the asset-holder is in a position to rid itself of assets." *Id.* at *10. Instead, the plaintiff must show by a preponderance of the evidence "that there is a reasonable probability that [Defendants] made or intended to make a fraudulent conveyance or intended to make collection more difficult." *Id.*

14

(quoting *Haney v. Castle Meadows, Inc.*, 816 F. Supp. 655, 657 (D. Colo. 1993)).  A plaintiff seeking pre-judgment attachment does not need to show the defendants "acted with a dishonest motive" or with intent to deprive the plaintiff of the benefit of a judgment, but the plaintiff "must still demonstrate that [Defendants] at least intended to hinder or delay [the plaintiff] from collecting on a judgment." *Id.* (quoting *Haney*, 816 F. Supp. at 657).  The plaintiff's conclusory affidavit and statements failed to meet this burden. *Id.* at *8-11.  She did not offer any evidence to substantiate her allegations of a fraudulent conveyance or a risk that the funds would be transferred or become unreachable. *See id.*  Additionally, one defendant specifically stated he did not oppose the attachment, which countered a finding that he would prevent the plaintiff from ultimately collecting a judgment. *Id.* at *11.

As in *Conry*, Brody fails to demonstrate MAB (or any other defendant) will act to hinder or delay him from collecting any future judgment.  He appears to contend that, because MAB resides internationally and has some international assets, he will presumably transfer the Interest to an international entity.  However, Brody has failed to point to any specific evidence supporting his speculative conclusion.  To the contrary, MAB voluntarily appears in this action, to determine the owner of the Interest and any damages.  Further, as stated, Brody's awareness of MAB's international holdings may ultimately prove beneficial, as he has multiple jurisdictions (and, by his allegations, a plethora of assets) to pursue any judgment against MAB.  Pre-judgment attachment is not merited under these circumstances.

## **CONCLUSION**

Brody cannot establish any right to the extraordinary relief he seeks.  His Motion is procedurally improper, and he cannot establish the immediate harm (or any other factor) required

15

4839-4715-1559.2

for a preliminary injunction.  Nor can he assert a right to pre-judgment attachment under C.R.C.P. 102.  Brody filed this action and then allowed it to linger for over a year.  Only now (after the specter of dismissal arose), Brody claims there is any immediacy to this action.  Brody's own delay cannot serve as the basis for a constructive trust, a preliminary injunction, or other pre-judgment relief.  His Motion must be denied.

WHEREFORE Defendant Marc A. Bruner respectfully requests this Court deny Plaintiff's Motion for Constructive Trust or, In the Alternative, for Prejudgment Attachment, and for such other and further relief as the Court deems appropriate.

DATED this 18th day of August, 2020.

**MOYE WHITE LLP**

By: /s/ *Tanya A. Sevy*
William F. Jones
Timothy M. Swanson
Tanya A. Sevy
1400 16th Street, 6th Floor
Denver, Colorado  80202
Phone: (303) 292-2900
Email: billy.jones@moyewhite.com
tim.swanson@moyewhite.com
tanya.sevy@moyewhite.com

*Attorneys for Defendant Marc A. Bruner*

## CERTIFICATE OF SERVICE

      I hereby certify that on the 18th day of August, 2020, I electronically filed the foregoing **RESPONSE TO BRODY'S MOTION FOR CONSTRUCTIVE TRUST OR, IN THE ALETERNATIVE, FOR PREJUDGMENT ATTACHMENT** with the Clerk of Court using the CM/ECF system, which was electronically served to the following:

Michael A. Rollin
Esther H. Lee
Edgar O. Barraza
FOX ROTHSCHILD LLP
1225 17th Street, Suite 2200
Denver, CO 80202

*Attorneys for Plaintiff David E. Brody*

William R. Meyer
Ghislaine Bruner
POLSINELLI PC
1401 Lawrence Street, Suite 2300
Denver, CO 80202

*Attorneys for Defendants Bruner*
*Family Trust and Marc E. Bruner*

                                                             */s/ Lisa Ray*

4839-4715-1559.2