IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 19-cv-01091
DAVID E. BRODY,

    Plaintiff,

v.

MARC A. BRUNER,
THE BRUNER FAMILY TRUST, and
MARC E. BRUNER, AS TRUSTEE OF THE BRUNER FAMILY TRUST

    Defendants.

## PLAINTIFF'S RESPONSE TO THE COURT'S ORDER TO SHOW CAUSE

Plaintiff, David E. Brody, hereby responds to the Court's Order to Show Cause, Doc. 31, and respectfully states as follows:

### INTRODUCTION

This Court has always had subject matter jurisdiction of this matter under 28 U.S.C. § 1334 because it arises in or is related to *In re PetroHunter Energy Corp.*, Case No. 16-20197 KHT, in the United States Bankruptcy Court for the District of Colorado (the "Bankruptcy Case"), and because this Court has exclusive jurisdiction over the property of the PetroHunter bankruptcy estate. This is true notwithstanding that Plaintiff's first Complaint invoked diversity jurisdiction because, at the time, the sole defendant, Marc A. Bruner ("MAB"), was, and remains, a resident of a foreign country. Doc. 1, ¶ 4.

Defendants contend that the addition of Marc E. Bruner ("MEB") as a defendant due to his trusteeship over the Bruner Family Trust (the "BFT") destroyed diversity jurisdiction because he is a Colorado resident. However, the addition of a non-diverse party after filing does not necessarily

{00875928.DOCX / 1 }    1

destroy diversity. *See Freeport-McMoRan, Inc. v. K N Energy, Inc.*, 498 U.S. 426, 428, 111 S.Ct. 858, 860, 112 L.Ed.2d 951 (1991).[1]

Regardless of the question of diversity jurisdiction, however, the inextricable connection of this case to the Bankruptcy Case has been extant throughout and remains so. From its inception, the subject matter of this case has been well within this Court's "arising in" and/or "related to" jurisdiction, as well as its exclusive jurisdiction over estate property. This subject matter includes the fraudulent acquisition of a bankruptcy claim and its effect on the administration of the estate, i.e., ascertaining the true creditors of the estate, the distribution of estate property to creditors, and the prevention (or remedying) of any wrongful distribution. Indeed, federal jurisdiction has been bolstered since the Court's Order to Show Cause since the bankruptcy trustee has agreed, and the bankruptcy court has approved, interpleader of the Brody Claim in this Court. *See* Exhibit A.

Nor would it matter if this action pertained solely to "non-core" matters, as Defendants suggest. The distinction between core and non-core does not affect federal subject matter jurisdiction, but, instead, delineates the roles of the federal district courts and bankruptcy courts with respect to bankruptcy-related disputes. In other words, the core/non-core distinction deals with the allocation of responsibilities among Article III and Article I courts, not among federal courts and state courts.

Accordingly, this Court has subject matter jurisdiction of this action.

---

[1] In *Freeport-McMoRan, Inc.*, the Supreme Court held that once federal subject matter jurisdiction attaches, it cannot be lost by subsequent events, including the addition of a non-diverse party. The deciding factor is whether the added, non-diverse party was indispensable when the complaint was filed, and, if not, diversity jurisdiction is not defeated. *Id.* at 428, 111 S.Ct. at 860; *see also Salt Lake Tribune Pub. Co., LLC v. AT&T Corp.* 320 F.3d 1081, 1096 (10th Cir. 2003) (collecting cases). No Defendant has raised indispensability, nor is this Court's consideration of that issue necessary for its determination of federal jurisdiction under 28 U.S.C. §§ 1334(b) and 1334(e)(1). If the Court deems it necessary to hear the issue, preliminary discovery will be necessary into the question of whether the BFT corpus is the property of MAB, as is the default rule under RESTATEMENT (THIRD) OF TRUSTS, § 25 (2003) ("A trust that is created by the settlor's declaration of trust, or by inter vivos transfer to another…is ordinarily treated as though it were owned by the settlor."). If the trust documents do not show otherwise, MEB, as trustee, may not be an indispensable party. *See also* Plaintiff's Reply in Support of Constructive Trust or, in the alternative, for Prejudgment Attachment, at 2, n.1 (discussing trust corpus ownership issues).

## STANDARD OF REVIEW

The federal courts have non-exclusive jurisdiction "of all civil proceedings…arising in or related to cases under title 11." 11 U.S.C. § 1334(b). A claim arises in a case under title 11 when it, "though not explicitly mentioned in the Code, would not exist outside of the bankruptcy, such as cases involving the administration of a bankruptcy." *In re Chapman*, 269 B.R. 201, 206 (Bankr E.D. Ill. 2001) (citing 1 *Collier on Bankruptcy* ¶ 3.01[4][c][iv] (Matthew Bender 15th ed. rev. 2001)); *see also In re Millennium Lab Hldgs. II, LLC*, 562 B.R. 614, 621 (Bankr D. Del. 2016) ("A proceeding 'arises in' title 11 if the proceeding by its nature, and not the particular factual circumstance, could arise only in the context of a bankruptcy case.") (citation and internal quotations omitted). Matters "arising in" a bankruptcy case for purposes of federal jurisdiction include, for example, allowance and disallowance of claims, *id.*, objections to claims, *In re Fong.*, No. 01-00242, 2005 WL 3964429, at *2 (Bankr D. Haw. Nov. 18, 2005), and the conduct of bankruptcy trustees, *In re Meier*, No. 14-bk-10105, 2014 WL 4084544, at *1 (Bankr N.D. Ill. Aug. 11, 2014). Proceedings arising in a bankruptcy case are so-called "core" matters. *In re Telluride Income Growth, L.P.*, 364 B.R. 390, 397-98 (10th Cir. B.A.P. 2007).

A case is related to a case under title 11 when its outcome "could conceivably have any effect on the estate being administered in bankruptcy." *In re Gardner*, 913 F.2d 1515, 1518 (10th Cir. 1990) (quoting *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984)). For "related to" jurisdiction to attach, "the proceeding need not be against the debtor or his property[; rather], the proceeding is related to the bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action in any way, thereby impacting on the handling and administration of the bankruptcy estate." *Id.* It is sufficient that the proceeding has "any conceivable effect" on the administration of the bankruptcy estate. *Pacor, Inc.*, 743 F.2d at 994. This includes an effect on "the amount of property available for distribution *or the allocation of property among creditors*." *RAF Fin. Corp. v. Resurgens Comm. Gr., Inc.*, 127 B.R. 458, 461 (Bankr D. Colo. 1991) (citing *In re Xonics*, 813 F.2d 127, 131 (7th Cir. 1987) (emphasis

added)). Suits alleging the filing of "bogus" bankruptcy claims are, "at a minimum…'related to' a case under Title 11." *In re AFY, Inc.*, 902 F.3d 884, 888 (8th Cir. 2018).

Furthermore, "[t]he district court in which a case under title 11 is commenced or is pending shall have exclusive jurisdiction…of all the property, wherever located, of the debtor…and of property of the estate." 28 U.S.C. § 1334(e)(1); *In re Gardner*, 913 F.2d at 1518 ("A bankruptcy court has jurisdiction regarding alleged property of the estate at the outset of the case."). Property of the estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case," 11 U.S.C. § 541(a)(1), and the "[p]roceeds, product, offspring, rents, or profits of or from property of the estate, *id.* § 541(a)(6). Indeed, "[a]djusting competing claims of creditors to the property of a bankrupt is the central function of bankruptcy law." *In re Xonics, Inc.*, 813 F.2d at 131 (cited favorably by the Tenth Circuit in *In re Gardner*, 913 F.2d at 518).

Federal jurisdiction under 28 U.S.C. § 1334 is an independent grant of jurisdiction and does not turn on whether the action arises under federal law, as set forth in 28 U.S.C. § 1331. *See In re AFY, Inc.*, 902 F.3d at 889. So long as the jurisdictional grant under section 1334 is satisfied, the plaintiff's labels or pleadings are irrelevant. *Cf. In re Carter*, 618 F.2d 1093, 1101 (5th Cir. 1980), cert. denied, 450 U.S. 949, 101 S.Ct. 1410, 67 L.Ed.2d 378 (1981) (applied in the context of removal); *see also* 14A Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Fed. Prac. & Pro. § 3722, at 276 (1985) (same).

**FACTS**

1.  In or about August 2017, MAB asked Plaintiff to sell him the Brody Claim, telling him that he planned to combine or consolidate it with the bankruptcy claims held by the Bruner Family Trust (the "BFT," and, with its claims which have been combined into one claim, the "BFT Claim"), an *inter vivos* trust MAB purported to establish for family beneficiaries but which he commandeered for investments in his businesses, including PetroHunter, and has since depleted. *See* Doc. 29-3, ¶¶ 2,

{00875928.DOCX / 1}                                4

10-11, 30-33 (describing MAB's personal use of BFT assets, including millions of dollars of loans to PetroHunter, of which MAB was the largest shareholder and which he controlled during the time the BFT loans were made); *see also* Doc. 30-3 (Declaration of Marc E. Bruner), ¶¶ 11-12 (admitting that "the BFT has no other assets beyond the BFT Claim"); Doc. 29-3, ¶ 38 (recounting the admission of Ghislaine Bruner, spouse of MEB, that the BFT has no assets other than the BFT Claim).

2. As requested by MAB, Plaintiff entered into an agreement to transfer the Brody Claim to MAB, which the parties memorialized on August 16, 2017. *Id.* ¶¶ 14. The Agreement required that MAB deliver 150,000 shares in Fortem Resources Inc. (the "Fortem Shares") to Plaintiff within 10 days of the Agreement along with two payments of $12,500 each. *Id.* ¶¶ 13-14. The value of the Fortem Shares at the time of the Agreement was about $300,000. *Id.* ¶ 20.

3. Plaintiff transferred the Brody Claim, as agreed, but MAB never transferred any of the Fortem Shares or paid any of the $25,000 in cash. *Id.* ¶¶ 15-16. Indeed, shortly after transferring the Brody Claim to himself, MAB told Plaintiff that he could not pay the $25,000 and that he did not have any freely tradable Fortem stock. *Id.* ¶ 17.

4. Plaintiff had no prior knowledge that MAB either could not or would not transfer the Fortem Shares or pay the cash consideration, though he relied on MAB's promise in the Agreement that he would, *id.* ¶ 19, and it now seems that MAB never intended to perform, *id.* ¶ 18. This belief is informed by various facts, including that as Chief Executive Officer of Fortem Resources Inc. and owner of millions of Fortem shares of stock, MAB could have easily done so at any time. *Id.*

5. Plaintiff also became convinced that MAB would never and did not intend to transfer the Fortem Shares when he heard from co-counsel who was representing one of the same MAB entities Plaintiff had been representing that MAB intended to contribute $15 million in Fortem stock to Beetaloo Basin Partners, an Australian company controlled by MAB, and was planning to liquidate

or otherwise use his Fortem stock for that purpose and other purposes. *Id.* ¶ 21. At that point, Plaintiff filed this lawsuit. *Id.* ¶ 22.

6. The PetroHunter bankruptcy estate possesses the assets of the debtor. Final distributions of estate assets are not expected for several years due to their illiquidity. *See* Exhibit B (Motion for Authority to Pay Interim Distribution and Interim Trustee Fee, dated May 20, 2020 (Bankr Doc 514)), ¶¶ 7-8, 10.

7. Plaintiff filed a limited objection to the Brody and BFT Claims, a proof of claim asserting his legal right to the Brody Claim, and an adversary proceeding in the bankruptcy court.

8. Thereafter, Plaintiff, Defendants, and the PetroHunter bankruptcy trustee agreed that Plaintiff will withdraw the foregoing in exchange for the bankruptcy trustee's interpleader of the Brody Claim in the registry of this Court, the rights to which (along with the rights to the proceeds of the BFT Claim) Plaintiff seeks to adjudicate in this action. Exhibit A.

## DISCUSSION

### I. Plaintiff's claims arise in or are related to the Bankruptcy Case.

Plaintiff's claims against Defendants are a product of the Bankruptcy Case. In that case and here, Plaintiff asserts that he—not MAB—is the true creditor and holder of the Brody Claim by operation of Colo. Rev. Stat. § 18-4-405 and because MAB acquired the Brody Claim by fraud. To assert his right to the Brody Claim, Plaintiff filed a limited objection to interim distributions, a proof of claim in his own name, and an adversary proceeding against the bankruptcy trustee and Defendants. Plaintiff has now agreed to withdraw those actions only in exchange for having the Brody Claim interpleaded in this Court so that it may be adjudicated together with rights to the proceeds of the BFT Claim.

These matters go directly to the administration of the estate: the allowance and disallowance of claims, the distribution to creditors and the allocation among creditors, and the bankruptcy trustee's

obligations to creditors—together with potential liability for wrongful distribution. Any one of these issues, and certainly all of them, has a conceivable effect on the administration of the bankruptcy estate. *See In re Millennium Lab Hldgs. II, LLC*, 562 B.R. at 621; *In re Fong.*, 2005 WL 3964429, at *2; *In re Meier*, 2014 WL 4084544, at *1; *In re Xonics*, 813 at 131; *In re AFY, Inc.*, 902 F.3d at 888.

Whether a civil proceeding has "any conceivable effect" on the administration of a bankruptcy estate is to be construed broadly, in favor of bankruptcy jurisdiction. *See Celotex Corp., v. Edwards*, 514 U.S. 300, 308, 115 S.Ct. 1493, 1499, 131 L.Ed.2d 403 (1995). At an absolute minimum, the dispute will affect the administration of the estate because, as explained by Judge Easterbrook in *Xonics*, intercreditor disputes about the allocation of estate assets "may prevent final distribution of estate assets and so prevent entry of a final order closing the estate." *In re Xonics, Inc.*, 813 F.2d at 129-30. As a result of the interpleader, the final resolution of the PetroHunter bankruptcy estate will not occur until this action is resolved, and, indeed, the bankruptcy trustee should be joining himself to this action, as "interpleader is a form of joinder open to one who does not know to which of several claimants it is liable." *Amoco Prod. Co. v. Aspen Gr.*, 59 F.Supp.2d 1112, 1114 (D. Colo. 1999).

**II.     The assets subject to distribution on account of the Brody Claim and the BFT Claim are property of the estate and, therefore, this Court has exclusive jurisdiction over them.**

Entirely separate from the "arising under," "arising in," and "related to" analyses under section 1334(b), the bankruptcy court has independent and exclusive jurisdiction over the assets of the PetroHunter bankruptcy estate. 28 U.S.C. § 1334(e)(1); *In re Gardner*, 913 F.2d at 1518 ("A bankruptcy court has jurisdiction regarding alleged property of the estate at the outset of the case."); *see also In re Amerson*, 839 F.3d 1290, 1298 (10th Cir. 2016) ("In short, § 1334(e)(1) affords a bankruptcy court with 'exclusive [*in rem*] jurisdiction over a debtor's property, wherever located, and over the estate.'"(citing *Tenn. Student Assistance Corp. v. Hood*, 541 U.S. 440, 447, 124 S.Ct. 1905, 158 L.Ed.2d 764 (2004)).

Property of the estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case," 11 U.S.C. § 541(a)(1), and the "[p]roceeds, product, offspring, rents, or profits of or from property of the estate, *id.* § 541(a)(6).

As reflected in Exhibit B, the estate still possesses the assets earmarked for distribution on the Brody Claim and the BFT Claim, and will for years into the future. Accordingly, this matter is within the subject matter jurisdiction of the federal courts.

### III. Defendants' position does not appreciate the inextricable connection between this case and the Bankruptcy Case.

Defendants MEB and the BFT assert that this Court lacks subject matter jurisdiction under 28 U.S.C. § 1334 because "[t]his is a state law, non-core, breach of contract and tort dispute" that "does not affect the validity of any claim, payments or distributions to any other creditors, or administration of the Debtor's estate." Doc. 30 at 2. Embedded in Defendants' analysis and citation to an inapposite Eleventh Circuit case is a presupposition that this case simply "does not involve property of the [PetroHunter bankruptcy] estate." *Id.* (citing *In re Gallucci*, 931 F.2d 738, 742 (11th Cir. 1991)).

As shown by the foregoing authorities, this statement was not accurate when made and it is even less accurate in light of the impending interpleader of the Brody Claim. Property of the estate is directly in issue and is (or will soon be) deposited into the registry of this Court.

For this reason, Defendants' reliance on *In re Gallucci* is misplaced. There, the bankruptcy court entered a turnover order for property owned pre-bankruptcy by a third party. 931 F.2d at 740-41. On appeal, the Eleventh Circuit reversed, holding that the property was not property of the estate under 11 U.S.C. § 541 and thus beyond the reach of the bankruptcy court. *Id.* at 743-44. The deciding factor was the trustee's concession that "the debtor never had an interest in the…property." *Id.* at 743. Had the court found the turnover sought "property of the bankruptcy estate," it would have been a core proceeding. *Id.* at 741 (noting that "[a]pplications for turnover orders ordinarily are core proceedings

{00875928.DOCX / 1}                                              8

within the jurisdiction of the bankruptcy courts" provided that the trustee "establish[es]…that the property he seeks to recover in the turnover action is 'property of the bankruptcy estate'").

Here, by contrast, there can be no serious contention here that the money and assets held by the PetroHunter estate and are to be distributed on account of the Brody and BFT Claims are not estate property. *See* Exhibit B. Consequently, the dispute over claim ownership and the right to proceeds of the estate is, unlike in *In re Gallucci*, a matter well within the Court's core jurisdiction. *In re Xonics, Inc.*, 813 F.2d at 131.

Regardless, the core/non-core dichotomy Defendants set up in their brief argument does not determine whether there is federal subject matter jurisdiction; rather, it determines whether the bankruptcy court can enter a final order in a matter (core) or must issue a report and recommendation to the *federal* district court (non-core). *See*; *e.g.*, *Phar-Mor, Inc. c. Coopers & Lybrand*, 22 F.3d 1228, 1234-35 (3d Cir. 1994); *see also In re Lemco Gypsum, Inc.*, 910 F.2d 784, 786-87 (11th Cir. 1990) (explaining that the core/non-core distinction does not remove or reduce federal jurisdiction but "merely alter[s] the 'placement' of jurisdictional power between Article III and Article I judges").

So long as a civil proceeding is at least related to a bankruptcy case, as addressed above, federal district courts have subject matter jurisdiction. *In re S. and S. Comm. Specialists, Inc.*, No 16-80762-TRC, 2017 WL 888594, at * 4 (Bankr. E.D. Okla. Mar. 1, 2017) ("The phrase 'related to cases under title 11' is the broadest of the specified categories in 28 U.S.C. § 1334, and this Court need only determine whether the Interpleader Action is *at least* 'related to' the debtor's bankruptcy case to determine whether federal jurisdiction attaches.").

*In re S and S Comm. Specialists, Inc.* is far more instructive than *Gallucci*. There, the debtor's insurance company interpleaded policy limits into the bankruptcy court to be fought over by non-debtors asserting state law claims. *Id.* at *4-5. The interpleader defendants moved to dismiss for lack of federal subject matter jurisdiction. *Id.* at *1. The bankruptcy court disagreed, finding that the

interpleading of disputed estate property, "*at a minimum*, related to the Debtor's bankruptcy case." *Id.* at \*5. Other bankruptcy courts have held substantially the same. *See, e.g.*, *In re Strawberry*, 464 B.R. 443, 447 (Bankr. N.D. Fla. 2012); *In re Texas Turn-Key Operators, Inc.*, 70 B.R. 193, 196 (S.D. Tex. 1986); *In re Naylor and Co., Inc.*, 67 B.R. 184, 189-90 (Bankr. M.D. La. 1986)

The same result should follow here.

## CONCLUSION

Accordingly, Plaintiff respectfully asserts that this Court has federal subject matter jurisdiction, and requests that the Court discharge the Order to Show Cause.

Respectfully submitted, this 31st of August, 2020.

> FOSTER GRAHAM MILSTEIN & CALISHER LLP
>
> */s/ Michael A. Rollin*
> Michael A. Rollin
> Mallory A. Revel
> Lindsey Idelberg
> 360 South Garfield Street, Sixth Floor
> Denver, Colorado 80209
> (303) 333-9810
> mrollin@fostergraham.com
> mrevel@fostergraham.com
> lidelberg@fostergraham.com
>
> *Attorneys for Plaintiff*