## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 19-cv-01091
DAVID E. BRODY,

      Plaintiff,

v.

MARC A. BRUNER,
THE BRUNER FAMILY TRUST, and
MARC E. BRUNER, AS TRUSTEE OF THE BRUNER FAMILY TRUST

      Defendants.

---

## PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR CONSTRUCTIVE TRUST OR, IN THE ALTERNATIVE, FOR PREJUDGMENT ATTACHMENT

---

Plaintiff, David E. Brody, hereby replies in support of his Motion for Constructive Trust or, in the Alternative, for Prejudgment Attachment, and as grounds therefor states as follows:

## DISCUSSION

**I.**    **Plaintiff meets the standard for constructive trust.**

    **A.**    **A motion for pre-judgment constructive trust considers the Rule 65 injunction factors.**

The Rule 65 factors apply to a pre-judgment motion for constructive trust. *E.g.*, *Lyons v. Jefferson Bank & Tr.*, 781 F.Supp. 1525, 1530 (D. Colo. 1992), *aff'd* 994 F.2d 716, 718 (10th Cir. 1993). The Bruner Family Trust (the "BFT") and its trustee, Marc E. Bruner ("MEB," and collectively with the BFT, the "BFT Defendants") agree. Doc. 30 at 5 ("To obtain *pre-judgment* relief Brody must satisfy the standard for obtaining a preliminary injunction…."").

Marc A. Bruner ("MAB") does not agree, and, instead, asserts that the Court cannot construe a trust before final judgment. Doc. 35 at 5-6. MAB's different view rests on a reading of

*Lyons* suggesting the court rejected the prejudgment constructive trust theory but nevertheless froze the assets in question. Doc. 35 at 6. But the *Lyons* court drew no such distinction, and MAB seeks to distinguish the indistinguishable. "Assets subject to a constructive trust may be frozen by a preliminary injunction to preserve the corpus of the constructive trust pending trial on the merits." *Lyons*, 781 F.Supp. at 1530; *see also In re Estate of Feldman*, 443 P.3d 66, 70 (Colo. 2019) (citing both *Lyons* and 2 Dan B. Dobbs, *Law of Remedies* § 6.1(5) (2d ed. 1993)). Plaintiff seeks nothing more.

Nor do Defendants effectively refute any of Plaintiff's factual positions supporting a constructive trust, attachment, or some other form of equitable relief. MAB gives no declaration at all, and MEB's declaration omits any evidence countering Plaintiff's claim that MAB commandeered the BFT and used its assets for his own benefit. If anything, MEB's declaration reinforces the need for preservation of the BFT assets because it concedes that the BFT has no assets other than the Distributions, i.e., the very property Plaintiff asks this Court to secure pending final resolution.

### 1. Success on the merits

As a threshold matter, it is important to be clear that Plaintiff asserts that the BFT is an instrumentality or alter ego of MAB. The BFT Defendants spend much of their opposition brief arguing—without evidence but with, as will be shown presently, inapposite legal arguments—that they did not commit fraud, theft, or breach of contract, but that is not the central point of Plaintiff's Motion as it pertains to the BFT Defendants. The central point is that MAB controls the BFT such that its assets are, or should be treated as, his assets and therefore may be held in trust or attached.[1]

---

[1] Putting a finer point on it, if the BFT is a revocable trust for which MAB is the settlor, then Delaware law, under which Plaintiff believes the BFT was formed, treats the trust corpus as MAB's property. *See generally Mitchell v. Reynolds*, C.A. No. 1451-VCN, 2009 WL 132881, at *12, n.105 (Del. Ch. Jan. 6, 2009) (citing RESTATEMENT (THIRD) OF TRUSTS, § 63 (2003)); *see also* RESTATEMENT (THIRD) OF TRUSTS, § 25 (2003) ("A trust that is created by the settlor's declaration of trust, or by inter vivos transfer to another… is ordinarily treated as though it were owned by the settlor."). Even if the trust corpus were not MAB's legal property, he has exercised control over it such that it is reasonable for the Court to conclude that he will continue to exercise control over it after the Distributions are made, thereby hindering judgment collection. Plaintiff does not have access to the trust documents and therefore is forced to rely on alternative arguments. MAB is noticeably silent about it, and while the BFT Defendants take positions about the BFT, they never provide a copy of any trust documents that would refute Plaintiff's argument that its assets are either the property of MAB or are

For this reason, the success on the merits section focuses first and foremost on MAB's liability for each of the fraud, theft, and breach of contract claims.

That said, the BFT Defendants are also culpable and their assets should be held in trust or attached on account of their own liability. The conspiracy count of the First Amended Complaint ("FAC") is not set out separately in Plaintiff's Motion because conspiracy liability is part and parcel of the substantive counts: fraud, theft, and breach of contract, in the BFT Defendants as co-wrongdoers, whether by their affirmative acts or by acquiescence in MAB's. Doc. 16, ¶¶ 61-62; *see also* Supplemental Declaration of David E. Brody ("Brody S. Decl."), ¶¶ 7-9, attached as Exhibit A.

Nor would it matter if "the BFT had done nothing improper," as the BFT Defendants assert. Doc. 30 at 5. Courts construe trusts even where the holder of the assets is innocent. *Lyons*, 781 F.Supp. at 1531; *Lyons*, 994 F.2d at 718 ("This is a case between two innocent parties…."). For this reason, too, the BFT Defendants misstate Colorado law when they claim, without authority, that constructive trusts apply only to "wrongfully obtained property." Doc. 30 at 3. Rather,

> [a] constructive trust need not apply to a specific *res*. Rather, a successful constructive trust plaintiff wins an *in personam* order requiring the defendant to transfer a like value of property in some form to the plaintiff.

*Lyons*, 781 F.Supp at 1530 (citing *In re Marriage of Allen*, 724 P.2d 651, 657 (Colo. 1986)). Moreover, a constructive trust (or attachment) should be sufficient to ensure payment of treble or punitive damages. *See Syfrett v. Pullen*, 209 P.3d 1167, 1172 (Colo. App. 2008).

### A. Fraud

MAB took possession of Plaintiff's $335,000 claim in the Bankruptcy Case under their August 16, 2017 agreement (the "Agreement") which required MAB to deliver 150,000 Fortem Shares (worth over $300,000 at the time) within ten days, and $25,000 cash payments thereafter. More than three years later, during which period MAB (Chairman and CEO of Fortem) has used

---

controlled by MAB. In the face of such accusations, the Court should reasonably expect Defendants to present counter-evidence and may take their silence as an adoptive admission. Fed. R. Evid. 801(d)(2)(B).

Plaintiff's Claim for his and BFT's benefit in the Bankruptcy Case, and has consistently engaged in a series of false representations that he would deliver the shares and about his efforts to deliver the shares, MAB has failed and refused to deliver even one Fortem share to Plaintiff and has failed and refused to deliver any equivalent consideration, even though Plaintiff has made it clear to MAB that he would accept equivalent substitute consideration. *See* Doc. 29 at 8-10; *see also* Brody S. Decl., ¶¶13, 17, 22, 26.

MAB offers no facts to refute these allegations. Instead, he argues that "there is no fact to suggest this statement was false when [he] made it, [sic] or that [he] otherwise concealed information about his financial situation." Doc. 35 at 7-8. This is inaccurate as Plaintiff's declaration states the basis for his belief that MAB never intended to transfer the Fortem Shares. Doc. 29-3, ¶¶ 17-22. MAB's approach of casting doubt on Plaintiff's beliefs as to MAB's intentions rather than directly stating his intentions and ability to pay himself is glaring in light of the fact that MAB admits that he "is presumably in better knowledge of his financial affairs than [Plaintiff]." Doc. 35 at 8.[2]

For their part, the BFT Defendants also do not refute any of Plaintiff's factual allegations concerning the fraud but instead argue two legal defenses: first, that the alleged misrepresentation was of a future fact and therefore not actionable; and second, that the fraud claim is barred by the economic loss rule. Neither is a correct statement of the law.

---

[2] MAB seeks to convince the Court that he would pay a judgment by touting his acceptance of service, though he never states that he will be able to pay a judgment unlike, for example, the defendant in *Lyons* (which, even that did not prevent the court from escrowing the funds). *Lyons*, 994 F.2d at 718, n.2. Participating in litigation and paying a subsequent judgment do not always go hand-in-hand, and, as shown in Plaintiff's supplemental declaration, not only has MAB been avoiding service, in part through false promises to pay for the Brody Claim, but he is deeply in debt to others, including to the tune of tens of millions of dollars to law firms. Brody S. Decl., ¶ 27. Thus, the Court should give no weight to MAB's recent tactical decision to accept service (a decision made so he can make this very argument) as a counterbalance against his long efforts to avoid it, inability or unwillingness to pay his debts, and documented record of seeking to gain personal advantage at the expense of others, including Plaintiff and creditors of the PetroHunter bankruptcy estate.

**1) Misrepresentations concerning future events are actionable.**

The BFT Defendants assert that any alleged misrepresentation by MAB was of a future fact and, therefore, cannot be fraud under Colorado law. Doc. 30 at 6. For this proposition, they cite to a 1967 case, *United Fire & Cas. Co. v. Nissan Motor Corp. in USA*, 433 P.2d 769, 771 (Colo. 1967). Doc. 30 at 6. However, in 1974, Colorado adopted what the Court of Appeals referred to as the "modern rule," under which a misrepresentation as to a future event combined with a present intention not to perform was actionable as fraud. *Stalos v. Booras*, 528 P.2d 254, 256 (Colo. App. 1974). This has been Colorado law ever since. *See Brody v. Bock*, 897 P.2d 769, 776 (Colo. 1995); *People v. Lewis*, 710 P.2d 1110, 1117 (Colo. App. 1985). Indeed, another case cited by the BFT Defendants acknowledges the same but their brief omits several key words from the opinion. *Compare* Doc. 30 at 6 ("statements of future intent, as Brody claims MAB made, are not actionable") *with Bd. of Cnty Comm'rs of Summit Cnty v. DeLozier*, 917 P.2d 714, 716 (Colo. 1996) ("A promise relating to future events *without a present intent not to fulfill the promise* is not actionable as a tortious misrepresentation of facts.") (emphasis added). The same is true for the two civil jury instructions they cite, 19:1 and 19:12. Colo. Jury Instr., Civil 19:1 does not preclude this form of fraud and Colo. Jury Instr., Civil 19:12 expressly provides for it: "A promise to do something in the future is a false representation if the person making the promise did not intend to keep the promise when (he) (she) made it"; "A statement of intent to do something in the future is a false representation if the person making the statement did not intend to do it when (he) (she) made the statement." Colo. Jury Instr., Civil 19:12.

Plaintiff's claim satisfies this law precisely, and he states facts available to him showing MAB's then-present intention not to perform under the Agreement. There is no contrary evidence. Accordingly, Plaintiff is substantially likely to prevail on his fraud claim.

**2)    The economic loss rule does not bar the fraud claim.**

Defendants also assert that the economic loss rule bars the fraud claim. Doc. 30 at 6-7; Doc.

35 at 8, n.1. For this, they cite to *Hamon Contrs., Inc. v. Carter & Burgess, Inc.*, 229 P.3d 282, 289 (Colo.

App. 2009), an off-point case that involved *post*-contractual misrepresentations. *See Duffield v. MPC

Pipelines, Inc.*, Civil Action No. 17-cv-00115-MSK-STV, 2017 WL 7311884, at *5, n.7 (D. Colo. Apr.

27, 2017) (identifying *Hamon Contrs., Inc.* as "inapposite" to a case involving fraud in the formation

of a contract).

Indeed, the BFT Defendants go as far as to suggest that the economic loss rule bars *any*

fraud claim where it arises from duties "implicated" by a contract. Doc. 30 at 7.[3] But neither *Hamon*

nor *Town of Alma v. AZCO Constr., Inc.*, 10 P.3d 1256 (Colo. 2000), the seminal case on Colorado's

economic loss rule, go that far. To the contrary, they reject Defendants' overbroad application of the

economic loss rule. *See Hamon Contrs., Inc.*, 229 P.3d at 290-91 (citing *Town of Alma*, 10 P.3d at 1262,

and focusing on whether the source of the duty arose by contract or independently, by law).

Colorado law is clear: a misrepresentation made in connection with the formation of a

contract—as alleged here—is not barred by the economic loss rule: "As *Town of Alma's* reference to

*Brody*[, 897 P.2d at 776] and *Keller* [*v. A.O. Smith Harvestore Prods., Inc.*, 819 P.2d 69, 73 (Colo. 1991)]

make clear, the common law imposes a duty of care to avoid fraud and negligent misrepresentation

in the negotiation of contracts that often is independent of the obligations defined in the

agreement." *Duffield*, 2017 WL 7311884, at *5; *see also id.* at *5-6 (collecting and analyzing Colorado

authorities). Accordingly, the economic loss rule does not bar Plaintiff's fraud claim.

**B.  Civil Theft**

MAB challenges the civil theft claim on grounds that Plaintiff authorized the transfer of the

Brody Claim to him, that there was no threat, and that Plaintiff only "hints at an alleged deception

---

[3] MAB stops short of such a broad application, stating that "it is likely that any claim for fraud or a tort is barred by the economic loss rule…." Doc. 35 at 8, n.1.

by MAB," and, therefore, there can be no theft under Colo. Rev. Stat. § 18-4-401. Doc. 35 at 8. This argument is wrong on the facts and the law.

Factually, Plaintiff does not "hint" but states plainly that MAB deceived him. Doc. 16, ¶¶ 23-24; Doc. 29-3, ¶¶ 13-18, 21. Legally, MAB's deceit constitutes theft, as does his retention of the Brody Claim. Colo. Rev. Stat. § 18-4-401(1). Furthermore, MAB's intentions "may be inferred from [his] conduct and the circumstances of the case…." *Pinon Sun Condominium Ass'n v. Atain Speciality Ins. Co.*, No. 17-cv-01595-CMA-NRN, 2019 WL 4747673, at *10 (D. Colo. Sept. 27, 2019).

Thus, MAB's counterfactual arguments concerning the FAC and the Motion, as well as his underreading of Colorado's theft statute, do not undermine the civil theft claim. He, in fact, offers no evidence whatsoever to refute the central allegation: MAB acquired and continues to deprive Plaintiff of the value and benefit of the Brody Claim.

The BFT Defendants take a different approach. Their only challenge to the civil theft claim is that it is time-barred as to them. As discussed above, that is not the primary point of Plaintiff's Motion; rather, the BFT corpus is MAB property or should be viewed as such and thus attached so Plaintiff may obtain a full recovery. *See* n.1, *supra*.

The statute of limitations for civil theft is two years from the date on which the plaintiff knew or reasonably should have known of the theft. *Martinez v. Nash Finch Co.*, 886 F.Supp.2d 1212, 1221 (D. Colo. 2012). The lawsuit against MAB was filed within two years of the transaction, and therefore within the statute of limitations even without application of the discovery rule.[4]

As to the BFT Defendants, again, the civil theft is pursued primarily against MAB. The BFT Claim Distributions are a source of recovery on that timely cause of action. Furthermore, MAB's promises to transfer the Fortem Shares throughout 2019 induced Plaintiff to forebear on any further

---

[4] The civil theft claims relate back to the original complaint because the "basis of the claim…was discernable from the original complaint" and "ar[o]se from the same conduct, transaction or occurrence." *Banks v. St. Mary's Hosp. and Med. Ctr.*, 558 F.Supp 1334, 1337-38 (D. Colo. 1983) (applying Fed. R. Civ. P. 15(c)).

action against him or the BFT Defendants. MABs misleading promises left open the question—now answered, at a minimum by MAB's silence in response to the accusation, Fed. R. Evid. 801(d)(2)(B)—about whether he intended to permanently deprive Plaintiff of the value and benefit of the Brody Claim, and constitute cause for equitable tolling or equitable estoppel. *See generally Dean Witter Reynolds, Inc. v. Hartman*, 911 P.2d 1094, 1096-97 (Colo. 1996) ("The principle underlying equitable tolling in these circumstances is that a person should not be permitted to benefit from his or her own wrongdoing."); *Strader v. Ben. Fin. Co. of Aurora*, 551 P.2d 720, 724 (Colo. 1976) ("Where…a party by its acts or omissions contributes to the running of a statute of limitations, the doctrine of equitable estoppel will prevent its raising that defense.").

All of these issues will certainly be briefed in due course when Defendants file their foreshadowed motions to dismiss, but Defendants' counterfactual and legally thin arguments do not refute the core facts or law underlying the civil theft claim.

## C. Breach of Contract

Plaintiff pleaded a breach of contract claim. Doc. 16, ¶¶ 12-19, 41-46. Quoting and relying on the following incomplete portion of Section 1(b) of the Agreement, Defendants assert that Plaintiff waived any breach of contract claim he may have had. Defendants' partial excerpt reads:

> If the First Payment and/or the Second Payment are not paid in full or in a timely manner, Brody may elect to either retain all 150,000 Shares or to extend the due date for one or both cash payments that are due under Section 1(a). If one or both cash payments are not made, Brody waives the right to make a claim against Bruner for breach of this Agreement. The provisions of Section 1(a) shall apply equally to all 150,000 Shares.

Doc. 30 at 8; Doc 35 at 3.

As Plaintiff explains in detail in his supplemental declaration, this is misleading. Brody S. Decl., ¶¶ 13-21. Defendants did not quote or reproduce the most important sentence in Section 1(b), which states:

In the event the First Payment and the Second Payment are made by the due date, Brody shall promptly return to Bruner 25,000 Shares represented by the Stock Power attached hereto.

Section 1(a) of the Agreement required MAB to deliver 150,000 shares of Fortem stock within ten days after the date of the Agreement. As noted, MAB failed to deliver any shares. Under the above sentence in Section 1(b) that Defendants omitted, MAB was given the choice of making the $25,000 cash payment, in which case Plaintiff would "return to Bruner 25,000 Shares," or if MAB chose not to make the payment, Plaintiff would have the right to retain all 150,000 shares. This choice was a provision that MAB requested during negotiations. Brody S. Decl., ¶ 16.

The above sentence was omitted from Defendants' three pleadings (here and in Bankruptcy Court), yet it fully explains the other sentence in Section 1(b) about Plaintiff waiving a claim for breach. Plaintiff did not waive the right to bring a breach of contract claim. He only waived the right to sue MAB if MAB had delivered the 150,000 shares and chose not to pay the cash, since Plaintiff would have received the agreed-upon consideration of all 150,000 shares. But since not no shares were delivered, the "waiver sentence" does not apply. *Id.*

Nor is Defendants' waiver argument consistent with other parts of the Agreement, most notably paragraphs 3(e) and 3(f), providing for choice of law, jurisdiction, venue, and fee shifting for any *breach of contract* action. Doc. 35-1, ¶ 3(e). Courts are to read contracts as a whole and strive to give meaning to all of their parts. *E.g., Gardner v. City of Englewood*, 282 P.2d 1084, 1088 (Colo. 1955). Defendants do not read all of paragraph 1(b) nor does their analysis try to harmonize their partial reading of paragraph 1(b) with paragraphs 3(e) and 3(f).

However, Defendants do make an important admission about the breach of contract claim: "the timing and amounts of the payments due under the Agreement are clearly set forth…." Doc. 35 at 9; Doc. 43 (joining in MAB's arguments). Plaintiff agrees.

### 2. Irreparable harm

Defendants do not analyze the irreparable harm prong or cite to any authority that goes specifically to the issue that concerns Plaintiff—whether there will be assets to satisfy a judgment. Instead, they cite only to general statements of the rule that harm must be irreparable. *E.g.*, *Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*, 356 F.3d 1256, 1260 (10th Cir. 2004); *Prairie Band of Potawatomi Indians v. Pierce*, 253 F.3d 1234, 1250 (10th Cir. 2001); *Gitlitz v. Bellock*, 171 P.3d 1274, 1278-79 (Colo. App. 2007).

Plaintiff agrees, but in the context of prejudgment escrow of funds, the irreparable injury comes from "[d]ifficulty satisfying…a judgment if the funds are not set aside now…." *Lyons*, 781 F.Supp. at 1531; *see also Tri-State Generation & Transmission Ass'n, Inc. v. Shoshone River Power, Inc.*, 805 F.2d 351, 355 (10th Cir. 1986) ("If [Plaintiff] cannot collect a money judgment, then failure to enter the preliminary injunction would irreparably harm it."); *Central States, Southeast & Southwest Areas Pension Fund v. Admiral Merchants Motor Freight, Inc.,* 511 F.Supp. 38, 43 (D. Minn.1980) (injury may be irreparable if defendants will be financially unable to pay damages), *aff'd per curiam sub nom. Central States, Southeast & Southwest Areas Pension Fund v. Jack Cole-Dixie Highway Co.,* 642 F.2d 1122 (8th Cir.1981); *Philipp Brothers Division of Engelhard Minerals & Chemicals Corp. v. El Salto, S.A.*, 487 F.Supp. 91, 95 (S.D.N.Y. 1980) (difficulty in collecting money judgment may support irreparable harm).

At most, Defendants argue that MAB can be tracked down abroad for collection. If anything, that argument makes Plaintiff's point: international judgment collection is difficult, costly, and time-consuming. *See, e.g.*, *Canon, Inc. v. GCC Intern. Ltd.*, 450 F.Supp.2d 243, 256 (S.D.N.Y. 2006) ("Defendants' operations are far-flung, and locating and attaching assets sufficient to satisfy a money judgment would be exceedingly difficult."). Consequently, this court has enjoined the movement of assets out of the United States, *Nat'l Un. Fire Ins. Co. of Pittsburgh, PA v. Kozeny*, 115 F.Supp.2d 1210, 1239 (D. Colo. 2000), and should do so here.

Nor have Defendants offered a declaration that they have funds to satisfy any judgment. In fact, the BFT Defendants state exactly the opposite: the BFT Claims are the BFT's only asset. And while they speculated that MAB would be able to pay a judgment, MAB himself provides no such assurances. Nor would any assurance be dispositive. *See Lyons*, 994 F.2d at 718, n.2 (ordering pre-judgment escrow notwithstanding the defendant-bank's assurances that it could pay any judgment).

By contrast, Plaintiff, whose relationship with MAB of late is both attenuated and uncooperative, has adduced evidence that MAB is not good for his debts. Doc. 29-3, ¶¶ 34-36; Brody S. Decl., ¶ 27. Indeed, as explained in his supplemental declaration, Plaintiff goes on to elaborate on the instances in which MAB has continued to mislead him into thinking that MAB would transfer the Fortem Shares—promises he continually broke. Brody S. Decl., ¶ 22 (refuting MAB's effort at blaming Plaintiff for the delay in pursuing this action).

The Court should therefore find that Plaintiff has established that he will be irreparably harmed absent a constructive trust, prejudgment attachment, or other equitable relief ensuring that assets will be held to satisfy any judgment.

### 3. Balance of harms

When considering the relative harms of an injunction, the Court "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Colo. Christian Univ. v. Sebelius*, 51 F.Supp.3d 1052, 1064 (D. Colo. 2014) (quoting *Amoco Prod. Co. v. Gambell*, 480 U.S. 531, 542, 107 S.Ct. 1396, 94 L.Ed.2d 542 (1987)). The Court, however, should *not* consider any harm a party may suffer as a result of its own misconduct. *ClearOne Comm., Inc. v. Chiang*, No. 2:07-cv-37 TC, 2007 WL 3231524, at *11 (D. Utah Oct. 30, 2007) (citing *Utahns for Better Trans. v. U.S. Dept. of Transp.*, No. 01-4216, 01-4217, 01-4220, 2001 WL 1739458 (10th Cir. Nov. 16, 2001) (granting injunction despite "substantial evidence that they will incur a financial loss if the injunction is granted, [because] it appears that much of this harm

is self-inflicted")). *See also*, *e.g.*, *Cook, Inc. v. Boston Scientific Corp.*, No. 01 C 9479, 2002 WL 31236289, at *5 (N.D. Ill. Oct. 2, 2002) (balancing harms in favor of injunction where the resisting party "claim[ed] it would be harmed because it will be denied the fruits of its own wrong doing"); *Handel's Enter., Inc. v. Schulenberg*, No. 4:18CV508, 2018 WL 3077756, at *6-7 (N.D. Ohio June 22, 2018) (holding that in balancing the harms to the parties, the Court would not consider harm resulting from the defendants' own misconduct).

Defendants' counter-argument is devoid of any law whatsoever. MAB argues, also without facts, that he will be harmed if he is forced to convey what he calls "the Interest" (which understates the scope of Plaintiff's request for relief). Doc. 35 at 13. But this position ignores all of the law cited above: he cannot be "harmed" by giving up that which is not his, *see* Colo. Rev. Stat. § 18-4-405 (establishing that stolen property belongs to the true owner), and the harm he brings upon himself is not to be considered in the Court's balancing of relative harms.

The BFT Defendants argue that imposition of a constructive trust will be "devastating" to the BFT because "[i]t has multiple beneficiaries to answer to for recovery of claims against the Debtor that have been pending for years." Doc. 30 at 13. This statement requires some unpacking:

*First*, there is no evidence that the beneficiaries will be harmed by a constructive trust or other sequestration of the funds. If the BFT is liable, then they are not entitled to the funds and if it is not, they will receive the funds. *See Lyons*, 781 F.Supp. at 1531 (rejected the proposition that temporary loss of use of funds outweighed the plaintiff's potential permanent loss absent an injunction because "[i]f defendant wins on the merits, then these funds go back to it with interest").

*Second*, Defendants also have not offered evidence that the beneficiaries are entitled to the funds at this point. That is a function of the trust documents, which Defendants have not provided for the Court's consideration. Ordinarily, an *inter vivos* trust's corpus is treated as the property of the settlor. RESTATEMENT (THIRD) OF TRUSTS, §§ 25 (2003). If anything, the evidence is that the

beneficiaries are *not* entitled to the funds because MEB's declaration states that the BFT plans to *retain* the Distributions. Doc. 30-3, ¶ 9 (emphasis added). Therefore, the beneficiaries would suffer no harm from having the funds escrowed because the BFT intends to hold the funds anyway.

*Finally*, it stretches credulity for MAB or MEB to state that they are concerned about the "devastating" effect of a constructive trust when, beginning 16 years ago, they carried out the reckless destruction of the beneficiaries' interests by causing the BFT to make over $20 million in loans and investments into companies that MAB and MEB controlled, as reflected in SEC filings.

If the Distributions are not held for Plaintiff, Plaintiff will be permanently deprived of the value or benefit of the Brody Claim or the consideration MAB was required to pay for it, and will lose the ability to collect punitive or treble damages, together with fees and costs, to which he is entitled by law. *See* Brody S. Decl., ¶¶ 25-33. By contrast, neither MAB nor the BFT will be harmed at all. Defendants will simply be deprived the "fruits of [their] own wrong doing," *Cook, Inc.*, 2002 WL 31236289, at *5, or the temporary use of funds, *Lyons*, 781 F.Supp. at 1531.

Therefore, the Court should find that the balance of harms tips decidedly in Plaintiff's favor.

### 4. Public interest

Injunctions may not disserve the public interest. *Nat'l Un. Fire Ins. Co. of Pittsburgh, PA*, 115 F.Supp.2d at 1239. A constructive trust and/or prejudgment attachment will met this standard because it is "inequitable and against the public interest to allow…a foreign citizen and…a foreign corporation[] to dissipate their assets in the United States and thereby immunize themselves from answering for frauds they are alleged to have committed." *Id.* at 123.

"The public interest [is also] best served by furtherance of the legislature's purpose for a statute." *Baker Hughes Oilfield Ops., Inc. v. Beard*, No. 15-cv-02231-PAB-KMT, 2016 WL 471390, at *2 (D. Colo. Feb. 8, 2016) (citations omitted). Colorado's "Rights in Stolen Property" statute, reads:

> All property obtained by theft, robbery, or burglary shall be restored to the owner, and no sale, whether in good faith on the part of the purchaser or not, shall divest

> the owner of his right to such property. The owner may maintain an action not only against the taker thereof but also against any person in whose possession he finds the property. In any such action, the owner may recover two hundred dollars or three times the amount of the actual damages sustained by him, whichever is greater, and may also recover costs of the action and reasonable attorney fees; but monetary damages and attorney fees shall not be recoverable from a good-faith purchaser or good-faith holder of the property.

Colo. Rev. Stat. § 18-4-405.

The Colorado "legislature enacted the civil theft statute for 'a punitive...purpose by depriving thieves...of the immediate fruits of their criminal activities and by making such persons pay damages that by definition are three times greater than the amount necessary to compensate their victims.'" *Bermel v. BlueRadios, Inc.*, 442 P.3d 923, 926 (Colo. App. 2017) (quoting *In re Marriage of Allen*, 724 P.2d at 656), *aff'd* 440 P.3d 1150 (Colo. 2019). As in *Baker Hughes Oilfield Ops., Inc.*, the legislature's purpose should be enforced by injunction.

Finally, "entry of a preliminary injunction would serve the public interest by enforcing valid contractual provisions freely entered into by the parties, by promoting stability and certainty in business relationships…." *Baker Hughes Oilfield Ops., Inc.*, 2016 WL 471390, at *2 (internal alterations, quotations, and citations omitted); *see also Novus Franchising, Inc. v. Marrs*, No. 05-cv-01017-REB-OES, 2005 WL 8178077, at *2 (D. Colo. Dec. 27, 2007) ("The public interest is not disserved by requiring parties to honor their agreements….").

Defendants only counter argument on the public interest prong is that an injunction would disserve the public interest because it would rewrite Plaintiff's alleged waiver of breach of contract claims. Doc. 30 at 14; Doc. 35 at 13. This argument ignores the public interest in avoiding offshoring of assets and enforcing statutes. It also rests entirely on Defendants' misleading quote of only part of Section 1(b) of the Agreement, addressed above. The requested relief, in fact, enforces the Agreement.

For each of these independent reasons, the Court should find that the public interest is not disserved by constructive of a trust, attachment, or other equitable relief to secure assets necessary to satisfy a judgment in Plaintiff's favor.

## II.    Plaintiff meets the standard for prejudgment attachment

To obtain prejudgment attachment, Rule 102 requires that:

The plaintiff file an affidavit "that the defendant is indebted to the plaintiff…or liable in damages to the plaintiff for a tort committed against the person or property of a resident of this state, stating the nature and amount of such indebtedness or claim for damages and setting forth facts showing one or more of the causes of attachment of section (c) of [the] Rule."

Colo. R. Civ. P. 102(b).

Plaintiff's declaration and supplemental declaration meet the requirements of the rule: Defendants' indebtedness or liability is set forth in paragraphs 3 and 13-24 of Plaintiff's declaration and paragraphs 7 and 13 of Plaintiff's supplemental declaration. The amount is set forth in the introductory paragraph and paragraphs 4, 14, 16, and 20 of Plaintiff's declaration and the introductory paragraph and paragraph 31 of Plaintiff's supplemental declaration. Defendants do not contest these elements and offer no contrary facts.

Defendants also do not contest the causes for attachment set forth in the Motion or Plaintiff's declaration. Instead, they argue that Plaintiff did not state them with sufficient particularity. Doc. 35 at 14; Doc. 43 (joining in MAB's arguments). Defendants' only authority for this alleged deficiency is *Conry v. Baker*, No. 14-cv-02672-CMA-KLM, 2015 WL 4538720, at *9 (D. Colo. July 28, 2015), but *Conry* is readily distinguishable.

There, the plaintiff made two arguments for attachment: (1) that the defendant was a California corporation without authority to do business in Colorado, and (2) that the defendant was *in a position* to fraudulently conceal, remove, or dispose of assets and that the defendants had left the state and *may* have intentions of having assets removed from the state. *Id.* at *4.

The court found this evidence insufficient. As to the question of the defendant's authority to do business in Colorado, the court noted that the plaintiff had no supporting evidence and could not explain how such fact was in her personal knowledge. *Id.* at *4. As to the more germane point concerning potential asset transfer, the court found the affidavit inadequate because "the test is not whether the asset-holder is in a position to rid itself of assets" but whether there is "a reasonable probability that [the defendants] made or intended to make a fraudulent conveyance or intended to make collection more difficult...." *Id.* (internal quotations and citations omitted)

The first problem with Defendants' reliance on *Conry* is that it did not address cause under two of the provisions that Plaintiff relies on here: Rule 102 subsections (c)(2) and (c)(3). A case is not precedent for an issue not considered. *Merrifield v. Bd. of Cnty. Comm'rs for Cnty of Santa Fe*, 654 F.3d 7073, 1084 (10th Cir. 2011).

Furthermore, there is cause for attachment under Rule 102(c)(2) because:

1.  MAB has been absent from the state for more than four months, Doc. 29-3, ¶ 7; *or*

2.  his whereabouts are unknown, Brody S. Decl., ¶ 4; Supplemental Declaration of Michael A. Rollin ("Rollin S. Decl."), attached as Exhibit B, ¶¶ 6; *or*

3.  he is a nonresident of this state, Doc. 29-3, ¶¶ 7, 36; Brody S. Decl., ¶ 32; *and*

4.  all reasonable efforts to obtain *in personam* jurisdiction over him failed, Rollin S. Decl., ¶¶ 2-7, 9-10, 16, 18.[5]

Independently, there is also cause for attachment under Rule 102(c)(3), which applies because of MAB's maneuvering to avoid service of process. *See also* Sheila K. Hyatt and Stephen A. Hess, 5 COPRAC R 102.3 (5th ed. 2020). (same)

The second problem with relying on *Conry* is that the speculative 3-paragraph affidavit in that case is nothing like the detailed ones in this case. Here, MAB has a history of removing, and is likely

---

[5] The BFT Defendants accuse Plaintiff and his lawyer of inconsistency where Plaintiff asserts that MAB does not reside in Colorado but counsel tried to serve him in Colorado. Doc. 30 at 11. There is no contradiction. Counsel directed members of his firm to try to serve MAB at MEB's home and at a residence identified as potentially belonging to MAB. Rollin S. Decl., ¶¶ 3-4.

to remove, his assets from this state with intent to defraud, delay, or hinder one or more of his creditors, or to render process of execution unavailing if judgment is obtained." Colo. R. Civ. P. 102(c)(4); Colo. R. Civ. P. 102(c)(6). As explained by Plaintiff:

- MAB is likely to have divested himself of all U.S. assets. Doc. 29-3, ¶36; Brody S. Decl., ¶ 4.

- MAB never advised Plaintiff of the Fortem Cease Trading Order, that the bankruptcy trustee had moved for interim distributions, or that he "was waiting quietly to receive those first distributions…." Brody S. Decl., ¶ 26.

- MAB "personally and his entities owed a minimum of ten law firms millions of dollars in legal fees, which accumulated during 2015-2018." *Id.* ¶ 27.

- MAB has a history of secreting assets or moving them offshore. Doc. 29-3, ¶ 36; Brody S. Decl., ¶ 32.

- The BFT's only assets are the BFT Claim distributions, which MAB either owns or controls. Brody S. Decl., ¶ 33; Doc. 30-3, ¶¶ 11-12.

To establish cause, all that must be shown is an intent to hinder or delay. *Chaffin, Inc. v. Wallain*, 689 P.2d 684, 688 (Colo. App. 1984). This is already manifest. Plaintiff has for months and years attempted to collect consideration for the Brody Claim, and MAB has made and broken numerous promises and misdirected Plaintiff throughout, lying in wait to collect the proceed of Plaintiff's bankruptcy claim and any other benefit he could by its use in the Bankruptcy Case.

Finally, unlike *Conry*, Plaintiff describes the basis for his knowledge of these facts, whereas no Defendant—not even MAB himself, with his superior knowledge of his own assets and financial condition, Doc. 35 at 8—offers any counter evidence.

Accordingly, Defendants' argument that Plaintiff has not stated cause for attachment lacks factual and legal support, and the Court should order prejudgment attachment of the Brody and BFT Claim Distributions and any other attachable assets of MAB that may be found.

III.    **In equity and good conscience, MAB and the BFT Defendants should not retain control of the Brody Claim Distribution, BFT Claim Distributions or MAB's Other Assets.**

Plaintiff is the owner of the Brody Claim and its Distributions as a matter of law. Colo. Rev. Stat. § 18-4-405. In fact, Defendants do not refute that MAB committed some breach to acquire that property and at least tacitly acknowledge wrongdoing when they argue that Plaintiff should have been on guard in light of MAB's history as well as when they agreed that the bankruptcy trustee may interplead the Brody Claim. *See* Exhibit C. Nor would actual fraud be required, *Weeks v. Esch*, 568 P.2d 494, 496 (Colo. App. 1977), so long as "in equity and good conscience [the property] does not belong to the constructive trustee," *Lowry v. Palm*, 192 P.3d 550, 562 (Colo. App. 2008). Defendants also do not refute that the BFT is an instrumentality, if not an alter ego, of MAB.

In an effort to bolster his side of the equities, MAB suggests that he is of better character than Plaintiff gives him credit for when he touts accepted service, but not before refusing to accept service several times before, not allowing his other lawyers to accept service, and repeatedly making and breaking promises to make good on the Agreement. Brody S. Decl., ¶ 22; Rollin S. Decl., ¶¶ 2-7, 9-10, 16, 18.

On this point, MAB reveals his credibility gap when he argues, "*Contrary to Brody's assertions*, MAB willingly and voluntarily submits himself to this Court's jurisdiction," Doc. 35 at 1 (emphasis added), but omits the key fact that when Plaintiff filed his Motion, MAB had *not* willingly or voluntarily submitted himself to this Court's jurisdiction. Thus, Brody's assertions were factual when made. Nor should the Court accept MAB's favorable self-description when even the BFT Defendants state that Plaintiff should have been on guard against him. Doc. 30 at 11.

Further to the credibility issue, unlike Plaintiff, MAB has not submitted a declaration to refute Plaintiff's evidence nor have the BFT Defendants offered any evidence of substance. Instead, they have relied on misstatements of the law, a mischaracterization of the contract, inapplicable

evidentiary objections,[6] and an indirect form of *ad hominem* in which they extoll Plaintiff's sophistication as a lawyer and then ridicule him for being misled by MAB: "That is the cost of doing business for a global attorney like Brody." Doc. 30 at 12. This victim-shaming only underscores Defendants' lack of factual or legal arguments and the inequity Plaintiff's Motion seeks to rebalance.

Regardless of how the parties characterize one another, a constructive trust is appropriate where there is some basis on which the holder of the property should not, in conscience, be permitted to retain it. *Mancuso v. United Bank of Pueblo*, 818 P.2d 731, 737 (Colo. 1991) ("In general, 'a constructive trust is imposed...because the person holding the title to property would profit by a wrong or would be unjustly enriched if he were permitted to keep the property.'"); *Page v. Clark*, 592 P.2d 792, 798 (Colo. 1979) ("When property has been acquired in such circumstances that the holder of legal title may not in good conscience retain the beneficial interest, equity converts him into a trustee."). No one refutes that. The same is true for prejudgment attachment: it protects a Plaintiff from an empty victory where the defendant is reasonably likely to avoid paying, even without traditional fraudulent intent:

> Creditors have the right to use the machinery of the law for the collection of their debts. A disposition by the debtor of his property which puts it beyond the reach of legal process hinders and delays them; and if his intention in making the transfer is to deprive them of the benefit of their legal remedies, even though he also intends that eventually the proceeds of the property shall be applied in payment of their claims, the transaction is fraudulent. It is the intent to delay creditors which constitutes the act a fraud upon them.

*Curran v. Rothschild*, 60 P. 1111, 1112 (Colo. App. 1900).

MAB's activities in this transaction, in bankruptcy court, and beyond demonstrate that he is untrustworthy such that equity and good conscience require attachment of his assets necessary to satisfy a judgment for Plaintiff.

---

[6] The rules of evidence do not apply in injunction practice. *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1188 (10th Cir. 2003).

**IV.    The Court should not require a bond.**

Rule 102(d) requires a successful plaintiff to post a bond, but the Court may set that bond at zero dollars where there is no evidence that the enjoined party will be unable to collect from the plaintiff in the event the attachment was wrongful. *Old Republic Nat. Title Ins. Co. v. Kornegay*, 292 P.3d 111, 1118 (Colo. App. 2012). The same rule applies to preliminary injunctions. *Id.* (collecting cases). Likewise, because MAB owns no interest in the Brody Claim, Colo. Rev. Stat. § 18-4-405, this Court should require no bond. *Roda Drilling Co. v. Siegal*, 552 F.3d 1203, 1215 (10th Cir. 2009) (upholding magistrate judge's decision not to require a bond where the enjoined party had no ownership interest in the subject property). Plaintiff seeks only to have assets held in escrow pending the outcome of the case. The assets will be allocated in accordance with the Court's decision. There is no risk that a prevailing party will not receive that to which it is entitled.

Respectfully submitted, this 1st day of September, 2020.

FOSTER GRAHAM MILSTEIN & CALISHER LLP

*/s/ Michael A. Rollin*
Michael A. Rollin
Mallory A. Revel
Lindsey Idelberg
360 South Garfield Street, Sixth Floor
Denver, Colorado 80209
(303) 333-9810
mrollin@fostergraham.com
mrevel@fostergraham.com
lidelberg@fostergraham.com
*Attorneys for Plaintiff*

**CERTIFCATE OF SERVICE**

I hereby certify that on this 1st day of September 2020, a true and correct copy of the foregoing **PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR CONSTRUCTIVE TRUST OR, IN THE ALTERNATIVE, FOR PREJUDGMENT ATTACHMENT** was electronically served by CM/ECF to all parties of record using the email addresses on file with the Court:

William R. Meyer
POLSINELLI PC
1401 Lawrence Street, Suite 2300
Denver, Colorado 80202
wmeyer@polsinelli.com
*Counsel for The Bruner Family Trust*
*and Marc E. Bruner, as trustee for the Bruner Family Trust*

Timothy M. Swanson
William F. Jones
Tanya A. Sevy
Moye White LLP
1400 16th Street, Suite 600
Denver, CO 80202
tim.swanson@moyewhite.com

billy.jones@moyewhite.com
tanya.sevy@moyewhite.com

*Counsel for Defendant, Marc A. Bruner*

/s/ Michael Kragness
Michael Kragness, Paralegal