IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 19-cv-01091
DAVID E. BRODY,

    Plaintiff,

v.

MARC A. BRUNER,
THE BRUNER FAMILY TRUST, and
MARC E. BRUNER, AS TRUSTEE OF THE BRUNER FAMILY TRUST

    Defendants.

## PLAINTIFF'S RESPONSE IN OPPOSITION TO MOTION TO STRIKE

Plaintiff, David E. Brody, hereby responds in opposition to Defendants Marc E. Bruner and the Bruner Family Trust's (collectively the "BFT Defendants") Motion to Strike ("MTS"), Doc. 51, and as grounds therefor states as follows:

### LEGAL STANDARD

Motions to strike are governed by Rule 12(f) of the Federal Rules of Civil Procedure. *Lab. Corp. of Amer. Hldgs. v. Metabolite Labs., Inc.*, No. 04-cv-01662-ZLW-CBS, 2007 WL 9773660, at *1 (D. Colo. Nov. 9, 2007). Rule 12(f) is directed solely to pleadings. *Id.* Neither Rule 12(f) nor any other federal rule provides for striking motions, briefs, or declarations. *Searcy v. Social Sec. Admin.*, 956 F.2d 278, 1992 WL 43490, at *1 (10th Cir. Mar. 2, 1992) (unpublished) (citing James Moore & Jo Desha Lucas, 2A *Moore's Fed. Prac.* ¶ 12.21 at 12-164 (Matthew Bender, 2d ed. 1991)). Accordingly, "a Rule 12(f) motion to strike is not appropriate with regard to affidavits, parties, or other matter other than that contained in the actual pleadings." *Id*; *see also Ysias v. New Mexico Jud. Std. Comm'n*, 616 F.Supp.2d 1176, 1184 (D.N.M. 2009) (collecting cases).

1

# DISCUSSION

**I.   There is no legal authority to strike any part of the reply brief or the Brody and Rollin supplemental declarations.**

The Motion to Strike ("MTS") does not state the rule or standard under which it is filed, as it must. D.C.COLO.LCivR 7.1(d). There is, in fact, no federal rule authorizing a court to strike motions, briefs, or declarations. *See* "Legal Standard," *supra*. On this basis alone, the Court should deny the MTS.

**II.   The BFT Defendants' arguments in favor of striking are not supported by any law.**

The BFT Defendants assert that parts of the reply brief, as well as all of counsel's supplemental declaration and all of Plaintiff's supplemental declaration, should be stricken for various reasons. Even if there was a federal rule permitting this MTS, no part of any of the foregoing documents is improper in any way. Plaintiff addresses each document, in turn.

   A.   **The Reply Brief**

   1.   **Allegations that the BFT is "an instrumentality or alter ego of MAB" and that "MAB controls the BFT such that its assets are, or should be treated as, his assets and therefore may be attached."**

The BFT Defendants ask the Court to strike aspects of Plaintiff's reply brief, Doc. 48, on grounds that they are raised for the first time on reply. They specifically object to assertions that the BFT is "an instrumentality or alter ego of MAB" and that "MAB controls the BFT such that its assets are, or should be treated as, his assets and therefore may be attached." Doc. 51 at 1. In support, they cite *Found. Learning LLC v. Academic, Arts and Action Charter Academy*, Case No. 17-cv-03182-RM-KLM, 2018 WL 3382933, at *3 (D. Colo. May 18, 2018) and *Sadeghi v. I.N.S.*, 40 F.3d 1139, 1143 (10th Cir. 1994).

The BFT Defendants' position is both factually and legally incorrect. Factually, Plaintiff's arguments are not new. The First Amended Complaint ("FAC") alleges that MAB "directly or indirectly controls and/or has a management role in, and is a beneficiary of, BFT, and BFT is used

2

as a vehicle to shield assets from [MAB's] creditors, including Plaintiff." Doc. 16, ¶ 9(c); *see also id.*, ¶ 61 (alleging that MAB and the BFT "have conducted and treated the business activities of BFT, [MAB's] companies, and the BFT Trustee's companies as intertwined and interrelated entities…."). Plaintiff's Motion for Constructive Trust or, in the Alternative, for Prejudgment Attachment (the "Trust Motion") also alleged MAB's control of the BFT and its assets:

- MAB and MEB (collectively, the "Bruners") have used [the BFT] as a personal bank account since 2004 with which to advance their personal and business goals, including in ways that have contributed to the harm suffered by Plaintiff." Doc. 29 at 1; *see also* Doc. 29-3, ¶¶ 10-12, 25-32 (providing additional detail).

- "MAB asked Plaintiff to sell him the Brody Claim, telling him that *he* planned to *combine or consolidate* it with the *BFT Claims* in the PetroHunter [B]ankruptcy Case." *Id.* at 5 (emphasis added); *see also* Doc. 29-3, ¶ 13 (same).

- "Once he gained standing in the Bankruptcy Case, MAB went on to commandeer the BFT Claims, as well, which he had done with other BFT assets since 2004…." *Id.* at 9.

- "MAB has a history of…co-mingling business and BFT assets for personal gain." Doc. 29 at 7.

- "As reflected in the [Bankruptcy] Trustee's Response, MAB's course of conduct in the PetroHunter case is entirely consistent with Plaintiff's allegations here. MAB, in his own name and through entities he controls [including the BFT], maneuvers through judicial processes attempting to obtain things of value to which he is not entitled." *Id.* at 11 (incorporating detailed allegations of MAB's control over the BFT and its assets found in the Brody Declaration, Doc. 29-3, and The Chapter 7 Trustee's Objection and Response in Opposition to the Motion to Convert the Case to Chapter 11, attached to the Brody Declaration).

Accordingly, allegations that the BFT is "an instrumentality or alter ego of MAB" and that "MAB controls the BFT such that its assets are, or should be treated as, his assets and therefore may be attached" are not new.

Nor does the law necessarily preclude even truly new facts and arguments on reply. Rather, a moving party may use its reply brief to respond to arguments made by the non-moving party, even if that response involves introducing matters not raised in the opening brief. *Sadeghi*, 40 F.3d at 1143; *Found. Learning LLC*, 2018 WL 3382933, at *3.

3

Here, the BFT Defendants challenged the imposition of a constructive trust or prejudgment attachment against them because "[a]ll of [Plaintiff's] substantive allegations are against MAB." Doc. 30 at 8-9; *see also id.* at 12-13 (asserting that "there is no evidence of any wrongdoing by the BFT Parties" and that the BFT beneficiaries would be harmed by an injunction); *id.* at 14 (arguing against attachment of BFT assets "since [Plaintiff] failed to argue any of [the Rule 102 causes] apply to the BFT Parties.").

Plaintiff's response was tied directly to these statements:

> "The BFT Defendants spend much of their opposition brief arguing—without evidence but with, as will be shown presently, inapposite legal arguments—that they did not commit fraud, theft, or breach of contract, but that is not the central point of Plaintiff's Motion as it pertains to the BFT Defendants. The central point is that MAB controls the BFT such that its assets are, or should be treated as, his assets and therefore may be held in trust or attached.

Doc. 48 at 2.

This is permissible. *Sadeghi*, 40 F.3d at 1143 (explaining that issues raised for the first time in a reply brief are not considered, *unless* the opposing party raises an argument not addressed in an opening brief); *Found. Learning LLC*, 2018 WL 3382933, at *3 (same).

Nor are the facts here anything like those in this Court's decision in *Found. Learning LLC* or the Tenth Circuit's decision in *Sadeghi*, which are the BFT Defendants' only cited authorities. In *Found. Learning LLC*, a plaintiff seeking preliminary injunction devoted only two sentences to the important question of irreparable harm. *Found. Learning LLC*, 2018 WL 3382933, at *1. The first asserted the existence of a presumption that did not exist in the law. *Id.* at *2. The second was a conclusory statement that the defendant's use of a trade name will "cause substantial harm through lost good will and students," which "provid[ed] the Court with nothing but to speculate as to whether any harm will be irreparable." *Id.* The Court noted that the plaintiff made a "somewhat better attempt at explaining the harm that may befall it," on reply but found the reply brief too late for "new arguments." *Id.*

4

Similarly, in *Sadeghi*, the circuit court considered an appeal from a case denying asylum to an Iranian citizen who overstayed his visa in the United States. *Sadeghi*, 40 F.3d at 1141. The plaintiff asserted a right to asylum on grounds that he would be subject to criminal prosecution if returned to Iran and that criminal prosecutions in Iran are often disguised political or religious *persecutions*, which would qualify him for asylum in the United States. *Id.* at 1142. The INS opposed, arguing that Iranian law could punish the plaintiff for interfering with its efforts in the Iran-Iraq war of the 1980s, which would disqualify him from asylum. *Id* at 1143. On reply, the plaintiff introduced new *non-criminal* theories of asylum, including membership in a group targeted for persecution and contentious objector status. *Id.* at 1142-43. The circuit court rejected this effort. *Id.* at 1143.

Here, by contrast, Plaintiff's allegations concerning MAB's control and use of the BFT are in the FAC as well as the Trust Motion, and to the extent elaboration was necessary, it was in response to the BFT Defendants' counterfactual[1] assertion that there are no accusations of any wrongdoing by them.

Therefore, there is neither factual nor legal authority supporting the BFT Defendants' request to strike Plaintiff's assertion that the BFT is "an instrumentality or alter ego of MAB" and that "MAB controls the BFT such that its assets are, or should be treated as, his assets and therefore may be attached."

### 2. Allegations of irreparable harm

The BFT Defendants also ask the Court to strike any references to irreparable harm because the parties entered into a stipulation by which the bankruptcy trustee will deposit the interim distributions on account of the Brody Claim into the Court's registry. Doc. 51 at 6.

This argument is incorrect in four respects:

---

[1] *E.g.*, Doc. 29 at 1(alleging participation of the BFT Trustee "including in ways that have contributed to the harm suffered by Plaintiff"); *id.* at 7 (alleging MAB cooption of the BFT); *id.* at 10 (alleging the BFT Trustee's acquiescence).

5

First, it suggests that Plaintiff effectively waived any rights to pursue the Trust Motion by taking collectability off the table. That would be contrary to the Stipulation itself, in which Defendants agreed that "[n]othing in this Stipulation shall be construed as, or deemed an admission of, any fact or conclusion of law as it may relate to the Amended Complaint, the Prejudgment Attachment Motion or any other pleading filed, or to be filed, in the District Court Action." Doc. 46-1, ¶ 6. In fact, the BFT Defendants' effort to use the Stipulation to undermine the Trust Motion in this regard violates both the spirit and the letter of the Stipulation, which was entered as an Order of the Bankruptcy Court. Doc. 46-2. The Court should not countenance that sort of inequitable conduct.

Second, even if the entire Brody Claim amount of $335,374.18 were to be collected by Plaintiff over the next several years through the possible interim and final distributions to the creditors in the Bankruptcy Case, the amount of the Brody Claim would be insufficient to satisfy Plaintiff's claim. Plaintiff bargained for the value of 150,000 Fortem Shares which were supposed to be delivered to him within 10 days of the August 16, 2017 Agreement in exchange for the Brody Claim. As reflected in public records, 150,000 shares of freely tradeable Fortem stock had a market value (on two stock exchanges) of more than $300,000 at the time Plaintiff and MAB signed the Agreement. Within about one year after the date the shares were supposed to be delivered to Plaintiff by MAB, the market value of 150,000 shares of Fortem stock rose to over $500,000. Thereafter, the value declined sharply to the shares current value of about $100,000. *See* Doc. 48-1 at 11. If Plaintiff were to receive the bankruptcy trustee's deposit of the entire $335,374.18 amount of the Brody Claim even *today*, that would be three years after the Fortem Shares were supposed to be delivered to him. Thus, that amount would definitionally and materially fail to compensate Plaintiff for: (a) his lost opportunities to liquidate all or a portion of the shares, (b) the time-value of money (reflected in statutory interest), (c) the past three years of attorney's fees and costs to which he is

entitled both under the Agreement and Colorado law, and (d) the punitive or treble damages he seeks. *E.g.*, Doc. 29-3, ¶¶ 3-4; Doc. 16 at 13.

Third, the amount of the first interim distribution on the Brody Claim that has been deposited in the registry of this Court is about $39,000. The date and the amount of the next and subsequent interim distributions by the Trustee in the Bankruptcy Case, if any, are unknown and uncertain. The date and amount of the final distribution, if any, are also unknown and uncertain. The trustee in the Bankruptcy Case has not issued any information or notices to creditors regarding whether there will be further distributions and, if so, the dates or amounts of any such distributions. The trustee does not currently have any authority to issue any such notice or state the amount of any such distribution. The BFT Defendants state that "Plaintiff already effectively has a constructive trust over amounts due on the claim that is the basis of this action…. [T]here is no risk of MAB dissipating funds, because the funds will be held by this Court." Doc. 51 at 6. However, "funds held by this Court" currently means only $39,000 of Plaintiff's total claims which are over $1,000,000. Any future funds held by this Court over and above $39,000 are speculative.

Finally, the Stipulation applies only to the Brody Claim, not the BFT Claim or MAB's Other Assets, which are also the subject of the Trust Motion. Doc. 29 at 1-2, 15.

Thus, even if part of a brief could be stricken under the federal rules, which it cannot, there is no basis on which to strike Plaintiff's irreparable harm arguments or any other.

### B.     The Rollin Supplemental Declaration

The BFT Defendants move to strike the Rollin supplemental declaration, Doc. 48-2, "because it asserts new facts regarding alleged efforts to serve MAB." Doc. 51 at 3. However, each of the facts in the supplemental declaration were stated in the initial declaration, Doc. 29-2, which Defendants implied—without any basis—was not credible. *See* Doc. 30 at 11. In response, Plaintiff's counsel provided more detail. Compare:

7

| Initial Declaration | Supplemental Declaration |
|---|---|
| Personal service in Colorado and Canada | Members of my prior law firm investigated whether MAB had any property or residences in Colorado and identified a potential residence located at 1555 Blake Street, suite 1002, Denver, Colorado. The process server attempted service at that address on September 3, 2019 but was informed by the doorman that MAB may have been a former resident of the building but did not reside there at the time.<br><br>On September 3, 2019, members of my prior law firm unsuccessfully attempted to serve the Complaint on MAB at the Colorado home of Marc E. Bruner, in the event it would be possible to characterize it as MAB's domicile under Colorado law. An individual who identified himself as Marc E. Bruner told the process server that MAB was his father and did not reside there.<br><br>On August 14, 2019, members of my prior law firm unsuccessfully attempted service of the Complaint under Article 10(b) of the Hague Convention (direct service under Canadian law) at the Calgary offices of Fortem, but Alberta law requires personal service and the process server was unable to locate MAB personally. The process server was also told that MAB usually is not in the office and does not have set office hours. |
| Written correspondence to his business address in Canada and associates who had previously facilitated communications with Plaintiff | On April 2, 2019, I sent correspondence to Marc A. Bruner ("MAB") in an effort to resolve the dispute between him and Plaintiff. FedEx confirmed delivery at the Calgary, Alberta, Canada address of Fortem Resources, Inc. ("Fortem") on April 3, 2019.<br><br>On April 16, 2019 and May 20, 2019, I sent correspondence to Marc A. Bruner ("MAB") requesting that he accept/waive service of them Complaint. FedEx confirmed both deliveries at the offices of Fortem Resources, Inc., in Calgary, Alberta, Canada. MAB never replied. |
| A call to his personal cell phone | I made further attempts to contact MAB directly as reflected in my first declaration. |
| A text message to his personal cell phone | I made further attempts to contact MAB directly as reflected in my first declaration. |
| Calls and written correspondence to 3 lawyers who did at the time or have in the past represented him | I also contacted several lawyers who I understood represented MAB or his companies and asked each to facilitate or accept/waive service of the Complaint. All three declined. These lawyers and the dates and substance of our communications are [detailed in paragraphs 8-18]. |
| Requests to his daughter-in-law, a Denver attorney. | Not addressed in the supplement. |

More detail, especially in the face of implicit and unfounded skepticism of counsel's declaration, is not *new* information. *E.g.*, *Daneshevar v. Graphic Tech., Inc.*, 433 F.Supp.2d 1244, 1247, n.3 (D. Kan. 2006) (rejecting motion to strike a supplemental affidavit that provided additional detail around matters raised in an initial affidavit); *see also id.* at 1250, n.7 (finding it "significant" that the motion to strike the supplemental affidavit did not dispute, like here, its substance). Plaintiff also notes with some professional dismay that the BFT Defendants still question counsel's efforts to serve MAB as merely "alleged," Doc. 51 at 3, yet offer nothing to contradict it.

8

Nor would it matter. Rule 102 of the Colorado Rules of Civil Procedure does not require any particular degree of specificity in the affidavit concerning service. Rather, the affidavit "must show what efforts have been made to obtain service over the defendant." Colo. R. Civ. P. 102(c)(2). Plaintiff respectfully submits that the first declaration stated what efforts were made, but faced with Defendants' accusations, counsel gave more detail around the exact same facts.[2]

Therefore, there is no basis on which to strike the Rollin supplemental declaration and doing so would have no effect on the merits of the Trust Motion.

### C. The Brody Supplemental Declaration

Finally, the BFT Defendants claim that parts of Plaintiff's supplemental declaration are improper in the following respects, and on that basis they ask the Court to strike the entire supplemental declaration: (1) it is an argumentative brief in excess of page limits, (2) parts lack personal knowledge, (3) it introduces parol evidence to interpret an unambiguous contract, and (4) it includes *ad hominem* attacks on defense counsel. Plaintiff disputes the facts and, in any event, none of these is a valid basis to strike.

#### 1. Plaintiff's supplemental declaration is not a reply brief and therefore is not subject to any page limitations.

The BFT Defendants assert that Plaintiff's supplemental declaration is a reply brief and therefore should be subject to the Court's limit of 15 pages. Doc. 51 at 3-4. This position is predicated on the assertion that it contains legal argument. *Id.* at 4. But the only legal argument they cite is Plaintiff's reference to the Rules of Professional Conduct. *Id.*  This does convert the supplemental declaration into a brief.

Defendants have attempted to make the argument that Plaintiff waived his right to claim that MAB breached the Agreement. *See* Doc. 48-1, ¶ 21. As Defendants' sole support for that

---

[2] Counsel was in the midst of a firm change while briefing the Trust Motion and was (and is) still receiving case information from his prior firm.

9

argument, they removed a material provision of Section 1(b) of the Agreement when purporting to quote that section in three separate pleadings in this Court and in the Bankruptcy Case. Plaintiff's reference to the Rules of Professional Conduct was not offered as support for the Trust Motion, but to underscore the seriousness of defense counsels' deliberate omission of the material provision from their quotation of Section 1(b) of the Agreement and suggestion to this Court that Section 1(b) did not include that sentence.

In the MTS, the BFT Defendants admit they omitted the critical language from their waiver arguments and now argue that the omission was acceptable because "the Court will review all documents filed…." Doc 51 at 6. Plaintiff regarded the BFT Defendants' repeated material omissions from the most important document in this case as a noteworthy fact, as viewed under the Rules of Professional Conduct. Thus, under no reasonable interpretation could Plaintiff's supplemental declaration be defined a "brief."

Moreover, it is entirely appropriate (indeed, required under Colorado's prejudgment attachment rule) for the movant to support his positions with declaration. This is all the more true where, as here, Defendants attacked Plaintiff's initial declaration as, among other things, "conflicting and conclusory," Doc. 35 at 8, and "lack[ing] any credibility," Doc. 30 at 9, and claimed that Plaintiff "ignores crucial language in the Agreement," Doc. 35 at 9 (an argument that, itself, excludes those material provisions of the Agreement supporting Plaintiff's interpretation.)

### 2. Plaintiff has personal knowledge of the matters in his supplemental declaration and, where he drew reasonable inferences from facts and experience, he stated so.

The BFT Defendants cast aspersions on Plaintiff, asserting that he made "numerous guesses cloaked as fact." Doc. 51 at 4. The BFT Defendants then present four bullet points to support that proposition:

- The first concedes that Plaintiff does not know where MAB's other assets are located but states that in recent years MAB has divested himself of U.S. assets. Plaintiff's support for this statement is in paragraph 37 of Plaintiff's declaration, Doc. 29-3 and paragraph 32 of his supplemental declaration, Doc. 48-1.

- The second states that Plaintiff has "no direct knowledge of the amount or nature of BFT assets." But the BFT Defendants do not say how this is a guess cloaked as a fact.

- The third states that MAB likely controls the BFT assets, a reasonable inference Plaintiff draws from facts concerning MAB's control of BFT assets, as discussed in Section II(A)(i), *supra*, as well as the possibility—still unrefuted—that the BFT corpus belongs to MAB as a matter of trust law, *see* Doc. 48 at 2, n.1.

- The fourth states that funds could be transferred offshore. Plaintiff also states, elsewhere, that MEB has a record of transferring assets offshore. Doc. 29-3, ¶ 37; Doc. 48-1 ¶ 32. The BFT Defendants do not explain how this statement is untrue or not within Plaintiff's personal knowledge.

None of these are guesses. Where Plaintiff does not know something, he has said so and he has provided the factual basis for his reasonable inferences. "Sometimes personal knowledge may be inferred from the content or context of the affidavit." *Felps v. Mewbourne Oil Co., Inc.*, No. CIV 18-811 MV/GJF, 2020 WL 2543792, at *2 (D.N.M. May 19, 2020) (citing 11 *Moore's Fed. Prac.*, § 56.94[2][b]). "If personal knowledge is to be inferred, the basis for the inference must be contained in the affidavit or declaration." *Id. See also id.* (collecting cases, including from the Tenth Circuit, where a person's position, experience, or presence gave rise to a reasonable inference of their personal knowledge); *see also Portley-El v. Bivens*, No. CIV-08-160-D, 2009 WL 806793, at 6 (W.D. Okla. Mar. 24, 2009) (same).

The BFT Defendants' position on this is also inconsistent with their prior statements that Plaintiff's relationship with MAB should have made him aware of MAB's affairs. *See* Doc. 30 at 10-11. If so, then the above law permits Plaintiff to draw reasonable inferences based on his own observations. And it remains noteworthy, as well, that neither MAB nor the BFT Defendants have yet to offer any declaration or argument contesting any of the facts set forth in Plaintiff's two declarations or contesting any other aspect of the substance of Plaintiff's evidence. *See Daneshevar*, 433 F.Supp.2d at 1250, n.7.

### 3. Parol evidence is admissible at this stage.

The BFT Defendants ask the Court to strike parol evidence concerning the Agreement. Doc. 51 at 5. This argument is premature and not applicable. The parol evidence rule is not a rule of evidence, but substantive contract law, *e.g.*, *Glover v. Innis*, 252 P.3d 1204, 1208 (Colo. App. 2011), and its application turns on a predicate determination regarding ambiguity, *e.g.*, *Kickapoo Tribe of Indians of Kickapoo Res. in Kan. v. Black*, No. 06-2248-CM, 2013 WL 3878007, at *2 (D. Kan. July 26, 2013) (rejecting motion to strike before a threshold determination of ambiguity).

### 4. Plaintiff's statements about the waiver argument are directed to Defendants' misleading citations to and argument about the Agreement. Identifying the maker of the arguments is not *ad hominem*.

The BFT Defendants assert that Plaintiff's supplemental declaration included *ad hominem* attacks against counsel. Doc. 51 at 5-6. *Ad hominem* is an attack on "an opponent's character *rather than* an opponent's assertions." *Black's Law Dict.* at 41 (7th ed. 1999) (emphasis added). It is not *ad hominem* to call out the person who made the misleading arguments; it is *ad hominem* to eschew merit-based arguments and focus the reader's attention solely on the personal characteristics of the opponent.

Plaintiff is a 46-year member of the Colorado bar. Defendants have attacked Plaintiff as both naive and unethical. Rather than respond in kind, Plaintiff has highlighted Defendants' material omissions in the course of their legal arguments to this Court. Thus, the portions of Plaintiff's supplemental declaration about which the BFT Defendants now complain were focused on Defendants' departure from appropriate standards of practice, not Defendants' counsel's personal characteristics. Unlike *Gen. Elec. Cap. Corp. v. Wattles Real Estate Ptnrs. LLC*, Case No. 14CA0367, at *6 (Colo. App. Jan 22, 2015) (unreported and attached hereto for the Court's convenience), or the case on which it relies, *Martin v. Essrig*, 277 P.3d 857, 860 (Colo. App. 2011), Plaintiff has a factual basis for his serious misgivings about how Defendants are litigating this case.

12

Thus, Plaintiff is not trying to win by "calling [his] opponent names." *See Huntington Beach City Council v. Superior Ct.*, 94 Cal.App.4th 1417, 1430 (Cal. App. Jan. 8, 2002). Instead, he is rightfully identifying misleading arguments to the Court. *PFW, Inc. v. Residences at Little Nell Dev., LLC*, 292 P.3d 1094, 1101 (Colo. App. 2012).

### III.     The Motion to Strike is filed for improper purposes.

#### A.     The Motion to Strike is needlessly delaying the Court's review of the Trust Motion.

Even where permitted by rule, "striking a pleading or part of a pleading is a drastic remedy" and motions to strike are disfavored, in part "because such motions may often be made as a dilatory tactic…." *Teliax, Inc. v. Verizon Svcs. Corp.*, Civil Action No. 1:18-cv-00104-RM-MEH, 2019 WL 1755290, at *1 (D. Colo. Apr. 19, 2019) (applied to striking of defenses); *Ramos v. Hertz Corp.*, Civil Action No. 17-cv-02576-CMA-NRN, 2018 WL 4635972, at *4 (D. Colo. Sept. 26, 2018) (same), *accord SFF-TIR, LLC v. Stephenson*, 250 F.Supp.3d 856, 978-79 (N.D. Okla 2017) (applied to affidavit); *Orchestrate HR, Inc. v. Blue Cross Blue Shield Kan.*, Case No. 5:19-CV-04007-HLT-TJJ, 2019 WL 6330477, at * 9 (D. Kan. Nov. 26, 2019) (applied to declaration). Such is the case here.

On August 28, 2020, Plaintiff agreed to allow Defendants to respond to the FAC within 21 days after this Court's ruling on the Trust Motion. Briefing on the Trust Motion closed on September 1, 2020 when Plaintiff filed his reply brief. It is ripe for determination. By filing a motion to strike for which there is no authorizing federal rule, the BFT Defendants extended that timeline by creating a whole new briefing schedule on the MTS. This not only causes the delay courts are concerned about in motions to strike but has needlessly multiplied the costs of these proceedings both in capital and effort.

**B.     The Motion to Strike includes an unauthorized surreply on the issue of irreparable harm.**

Furthermore, the BFT Defendants' irreparable harm arguments within the MTS are an improper attempt at a surreply, Civ. Practice Standard IV.E.3., which the Court should disregard for that procedural reason and because, as stated above, the bankruptcy trustee's deposit of incremental proceeds of the Brody Claim into the Court's registry are and will be insufficient to cover Plaintiff's damages claim, statutory interest, fees, or costs.

## CONCLUSION

For each of these reasons, Plaintiff respectfully requests that the Court deny the BFT Defendants' Motion to Strike.

Respectfully submitted, this 11th day of September 2020.

FOSTER GRAHAM MILSTEIN & CALISHER LLP

*/s/Michael A. Rollin*
Michael A. Rollin
Mallory A. Revel
Lindsey Idelberg
360 South Garfield Street, Sixth Floor
Denver, Colorado 80209
(303) 333-9810
mrollin@fostergraham.com
mrevel@fostergraham.com
lidelberg@fostergraham.com

*Attorneys for Plaintiff*