14CA0367 GE Capital v Wattles Real Estate 01-22-2015

COLORADO COURT OF APPEALS

---

Court of Appeals No. 14CA0367
Adams County District Court Nos. 11CV1209 & 12CV106
Honorable Robert W. Kiesnowski, Judge

---

General Electric Capital Corporation, a Delaware corporation,

Plaintiff-Appellant,

v.

Wattles Real Estate Partners LLC, a Delaware limited liability company,

Defendant-Appellee.

---

JUDGMENT AFFIRMED

Division I
Opinion by JUDGE GABRIEL
Taubman and Booras, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(f)**
Announced January 22, 2015

---

Dorsey & Whitney LLP, Tucker K. Trautman, Van Aaron Hughes, Denver, Colorado, for Plaintiff-Appellant

Polsinelli PC, Ryan E. Warren, Bennett L. Cohen, Richard M. Murray, Denver, Colorado, for Defendant-Appellee

In this foreclosure action involving a series of agreements
between and among several entities, plaintiff, General Electric
Capital Corporation (GECC), appeals the district court's order
granting partial summary judgment to defendant, Wattles Real
Estate Partners, LLC (WREP), and holding that GECC lacked
standing to pursue debt-collection remedies on behalf of its affiliate,
GE Money Bank (GEMB).  We conclude that (1) GECC held a valid
security interest for GEMB's benefit in WREP's property; and
(2) although the district court erred in concluding that New York
law allows only full assignments of rights, the court correctly held
that GEMB did not authorize GECC, or assign to it the right, to
pursue GEMB's debt-collection remedies or otherwise to enforce
GEMB's interests under the documents at issue.  Accordingly, we
affirm.

## I. Background

At the times pertinent here, GEMB was a wholly-owned
subsidiary of GE Consumer Finance, Inc., which in turn was a
wholly-owned subsidiary of GECC.  Ultimate Acquisition Partners,
L.P. (UAP) was, like WREP, owned by Wattles Capital Management,
LLC.  UAP conducted business as Ultimate Electronics, a retail

consumer electronics chain.  This case arises from a series of
agreements between and among these parties.

As pertinent here, GECC and UAP signed a Loan and Security
Agreement (Loan Agreement) under which GECC agreed to extend
credit to UAP in the form of revolving loans and letters of credit.
UAP used an advance on this credit facility to fund, in part, its
purchase of Ultimate Electronics' headquarters in Thornton,
Colorado (Thornton property).  In connection therewith, UAP
executed a deed of trust pledging certain real and personal
property, including the Thornton property, as security for this and
future advances made on the credit facility.

On the same day that UAP signed the above-referenced deed of
trust, it transferred the Thornton property and associated personal
property to WREP, and WREP accepted the transfer subject to the
terms of the deed of trust.  In addition, WREP signed a Joinder
Agreement by which it became a party to and an additional
borrower in the Loan Agreement, and GECC, UAP, and WREP
signed a first amendment to the Loan Agreement, which, among
other things, altered certain terms of the Loan Agreement to
account for WREP's joinder in that Agreement.

Thereafter, GECC and GEMB signed an Intercreditor Agreement.  Under this agreement, GECC agreed to share with GEMB certain payments or distributions that GECC received as a result of any enforcement action or insolvency proceeding against, as pertinent here, UAP and WREP, relating to the Loan Agreement.

In addition, UAP and GEMB entered into a Private Label Consumer Credit Card Program Agreement (Program Agreement). Under this agreement, which continued a pre-existing Ultimate Electronics-branded credit card program, UAP paid GEMB fees in exchange for GEMB's issuing and underwriting United Electronics store credit cards.

UAP subsequently filed for bankruptcy protection, and GECC initiated the present foreclosure action against UAP and WREP, among others.  In this action, GECC alleged, as pertinent here, that (1) it was owed approximately $5.4 million under the Loan Agreement; (2) UAP owed GEMB approximately $3.7 million under the Program Agreement; (3) UAP's obligation to pay GEMB under the Program Agreement was an "obligation" under the Loan Agreement and was secured by UAP's deed of trust; (4) WREP was jointly and severally liable for all "obligations" under the Loan

3

Agreement and was bound by the deed of trust; and (5) GECC had

the right to enforce such "obligations," to foreclose on the Thornton

property to recover the alleged debt, and to recover its attorney fees.

WREP moved for partial summary judgment, contending that

GECC was not the real party in interest and lacked standing to

assert GEMB's claims because, among other things, there was no

evidence that GEMB had assigned its rights and claims to GECC.

In a thorough and detailed order, the district court granted

WREP's motion.  The court concluded, as pertinent here, that

(1) the Program Agreement itself did not give GECC the right to

enforce obligations owed to GEMB under the Program Agreement;

(2) GECC was not an assignee of the Program Agreement by virtue

of the Intercreditor Agreement because New York law required a

complete assignment (i.e., an assignment by which GEMB retained

no control over the authority to pursue obligations owed to it) and

the Intercreditor Agreement did not effectuate such an assignment;

(3) the terms of the Loan Agreement did not establish an agency

relationship between GEMB and GECC such that GECC could

enforce GEMB's rights; and (4) no provision of the Loan Agreement

reflected an assignment by GEMB to GECC of GEMB's right to

pursue remedies for monies owed to it, particularly given that
GEMB was not a party to the Loan Agreement.

Based on these rulings, the district court refused to include in
its ultimate judgment and decree of judicial foreclosure in favor of
GECC the debt then allegedly due GEMB under the Program
Agreement.

GECC now appeals this portion of the district court's
judgment.

## II. Preliminary Matters

Before proceeding to the substance of GECC's appellate
arguments, we address two preliminary matters.

First, WREP contends, and we agree, that GECC's opening
brief failed to contain, under a separate heading placed before the
discussion of each issue, a citation to the precise location in the
record where the issue was raised and ruled on, as required by
C.A.R. 28(k).  Although in this instance, GECC's citations to the
record allowed us to determine matters concerning issue
preservation, we remind counsel that the Colorado Appellate Rules
are not mere technicalities; they have a purpose, and we expect
counsel to read, be familiar with, and follow them.  *O'Quinn v. Baca,*

250 P.3d 629, 631 (Colo. App. 2010).

Second, we feel compelled to address the unnecessarily strident tone of WREP's answer brief. That brief repeatedly labels GECC's and its counsel's arguments with words like "absurd" and "nonsense." We, however, perceive no reasonable basis for such labels. To the contrary, GECC's arguments in this difficult and close case were thorough, well-supported, and helpful to the court.

WREP's brief also makes repeated personal attacks on GECC and its counsel, including accusing them of intentionally misdirecting and misleading the court (e.g., by creating lengthy and complex documents that allegedly were intended to deter courts from reading the documents so that the courts would simply take GECC's word for what they say or mean). There is no factual basis in the record to support these personal attacks and accusations, nor is there a proper place for such attacks in this or any other court. Moreover, we fail to see a useful purpose in suggesting to a court that it will not fulfill its judicial responsibilities.

The use of rhetoric like this is unpersuasive and unhelpful because it causes courts to "waste judicial resources hacking through the verbal brush to uncover the substance (if any) of the

[party's] arguments." *Martin v. Essrig*, 277 P.3d 857, 860 (Colo. App. 2011). We caution counsel against proceeding in this unproductive manner in the future.

### III. Standard of Review

We review de novo an order granting a motion for summary judgment. *Colo. Cmty. Bank v. Hoffman*, 2013 COA 146, ¶ 36, 338 P.3d 390, 396. Summary judgment is proper only when the pleadings and supporting documents show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. C.R.C.P. 56(c); *Colo. Cmty. Bank*, ¶ 36, 338 P.3d at 396. In determining whether summary judgment is proper, a court grants the nonmoving party any favorable inferences reasonably drawn from the facts and resolves all doubts in favor of the nonmoving party. *Colo. Cmty. Bank*, ¶ 36, 338 P.3d at 396. In responding to a properly supported summary judgment motion, however, the nonmoving party "may not rest upon mere allegations or denials in its pleadings, but must provide specific facts demonstrating the existence of a genuine issue for trial." *Sender v. Powell*, 902 P.2d 947, 950 (Colo. App. 1995); *accord* C.R.C.P. 56(e).

IV. Security Interest and Assignment

GECC contends that reading the above-described agreements together establishes that (1) these agreements created an enforceable security interest for GEMB's benefit and (2) GEMB validly assigned to GECC its right to enforce that security interest. We conclude that the agreements at issue created a valid security interest in GECC for GEMB's benefit. We further conclude, however, that the district court correctly held that GEMB did not authorize GECC, or assign to it the right, to pursue the debt owed to GEMB under the Program Agreement, although our analysis differs from that of the district court.

A. Preservation

As an initial matter, we reject WREP's assertion that GECC did not preserve its present appellate contentions.

In the district court, GECC argued that (1) the Loan Agreement provided that GECC could enforce all "obligations," as that term was defined in the Agreement; (2) the Program Agreement was one such "obligation"; and (3) GECC was a real party in interest with standing to assert the judicial foreclosure claim at issue, which claim was supported, in part, by the balance due GEMB under the

Program Agreement.  In our view, this is precisely the same argument that GECC is advancing here.

Nor are we persuaded that GECC failed to preserve its argument that the district court erred in not considering the parties' various agreements as a whole.  As noted above, the substance of GECC's argument in the district court was that the agreements at issue needed to be construed together.  Moreover, to the extent that GECC believed that the district court had failed so to construe the agreements, the first time that GECC could have asserted such an alleged error was after it had received the court's ruling, and a litigant is not required to file a post-judgment motion before challenging an allegedly erroneous judgment on appeal.  C.R.C.P. 59(b).

## B. Security Interest

Turning to the merits, we note that WREP does not contest GECC's contention that New York law should be applied in interpreting the Loan Agreement.  Nor does WREP dispute GECC's contention that a valid security agreement can be established by reading several documents together.  Thus,

[f]or there to be a valid and enforceable

9

> security agreement, a formal and separately
> signed document labeled "security agreement"
> is not necessary.  Rather courts have read
> several documents together and looked at the
> surrounding circumstances to find the
> existence of security agreements.  Almost any
> combination of documents can be used to
> prove the existence of a security agreement so
> long as the documents embody the intention of
> the parties to create a security interest.

*In re Bucala*, 464 B.R. 626, 631 (Bankr. S.D.N.Y. 2012) (citations omitted).

Accordingly, we must consider whether the agreements at issue, when read together, created an enforceable security interest for GEMB's benefit.

Under New York law, we must read agreements as a whole to determine the parties' purpose and intent, giving a practical interpretation to the language employed so that the parties' reasonable expectations are realized.  *See Snug Harbor Square Venture v. Never Home Laundry*, 675 N.Y.S.2d 365, 366 (N.Y. App. Div. 1998).  In doing so, we must give words and phrases their "ordinary, plain meaning."  *Wallace v. 600 Partners Co.*, 618 N.Y.S.2d 298, 302 (N.Y. App. Div. 1994), *aff'd*, 658 N.E.2d 715 (N.Y. 1995).

Here, Section 4.1 of the Loan Agreement, as amended,

provided, in pertinent part:

> Each Borrower hereby grants to Agent [i.e.
> GECC], for the benefit of the Lender Group and
> *any other holder of Obligations* (other than
> Credit Parties), a continuing security interest
> in, and so pledges and assigns to Agent, *for the
> benefit of* Lender Group and *any other holder of
> Obligations* (other than Credit Parties), all of its
> right, title, and interest in all currently existing
> and hereafter acquired or arising Collateral in
> order to secure prompt repayment of any and
> all of the Obligations in accordance with the
> terms and conditions of the Loan Document
> and the other Credit Documents and in order
> to secure prompt performance by Borrowers of
> each of their covenants and duties under the
> Loan Documents and the other Credit
> Documents.

(Emphasis added.)

Thus, as pertinent here, UAP and WREP granted to GECC a

security interest in the Thornton property for the benefit of any

other "holder of Obligations."

"Obligations" under the Loan Agreement were defined to

include:

> all obligations *of any Credit Party* arising out of
> or in connection with *any Bank Products,*
> whether direct or indirect, absolute or
> contingent, due or to become due, now existing
> or hereafter arising and whether such

> obligations, liabilities and indebtedness shall
> be joint, several, joint and several or
> individual.  Any reference in this Agreement or
> in the Loan Documents to the Obligations
> shall include all amendments, changes,
> extensions, modifications, renewals
> replacements [sic], substitutions, and
> supplements, thereto and thereof, as
> applicable, both prior and subsequent to any
> Insolvency Proceeding.

(Emphasis added.)

The "Credit Parties" to the Loan Agreement, as amended,
included UAP, each of its subsidiaries, and WREP.

"Bank Products" were defined as:

> (a) any service or facility extended to Parent
> [i.e., UAP] or its Subsidiaries in the ordinary
> course of business by Agent, *any Lender or
> any Affiliate thereof* in the nature of: (i) ACH
> transactions, (ii) cash management, including
> controlled disbursement, accounts or services,
> (iii) Hedge Agreements, and (b) all advances,
> debts, liabilities and obligations for the
> performance of covenants, tasks or duties or
> for payment of monetary amounts . . . owing
> by any Credit Party to GECC *or any of its
> Affiliates* and *not evidenced by any Loan
> Documents*, and all covenants and duties
> regarding such amounts, of any kind or
> nature, present or future, including, without
> limitation, all advances, debts, liabilities and
> obligations arising under any agreement, note,
> instrument, lease or guarantee heretofore, now
> or hereafter executed or issued by any Credit
> Party in favor of GECC or any of its Affiliates

> and all principal, interest . . . , fees, charges,
> expenses, attorneys' fees and any other sum
> chargeable by GECC or any Affiliate of GECC
> to any Credit Party.

(Emphasis added.)

"Affiliates" were defined as follows:

> [A]s applied to any Person, any other Person
> who, directly or indirectly, controls, is
> controlled by, or is under common control
> with, such Person. For purposes of this
> definition, "control" means the possession,
> directly or indirectly, of the power to direct the
> management and policies of a Person, whether
> through the ownership of Stock, by contract,
> or otherwise . . . .

Finally, "Loan Documents" included, as pertinent here, "all Credit Card Agreements," and "Credit Card Agreements" were defined as "those certain credit card receipts agreements, each in form and substance reasonably satisfactory to Agent [i.e., GECC] and each of which is among Agent, the applicable Credit Party and the applicable Credit Parties' Credit Card Processors."

Here, it is undisputed that GEMB was a wholly-owned subsidiary of GE Consumer Finance, which in turn was a wholly-owned subsidiary of GECC. Thus, GEMB was an "Affiliate" of GECC, pursuant to the above-quoted definition.

Moreover, pursuant to the above-quoted definitions, money owed by UAP (a "Credit Party") to GEMB (an "Affiliate" of GECC) was a "Bank Product" if the money owed was not evidenced by the Loan Documents, which we conclude to be the case here. Specifically, as noted above, "Loan Documents" included "Credit Card Agreements," which, as pertinent here, were agreements among Agent (GECC), the Credit Party (UAP), and the Credit Card Processor. Because GECC was not a party to the Program Agreement, however, the Program Agreement was not a "Credit Card Agreement," and, thus, it was not a "Loan Document." Accordingly, UAP's obligation to GEMB under the Program Agreement was a "Bank Product" under the Loan Agreement, because the obligation was not evidenced by the "Loan Documents."

Finally, because UAP's obligation to GEMB was an obligation of a "Credit Party" arising out of a "Bank Product," it was an "Obligation" under the Loan Agreement. And because the Loan Agreement granted to GECC for the benefit of any holders of Obligations a continuing security interest in all of the borrower's right, title, and interest in all currently existing and hereafter acquired or arising collateral, we conclude that the Loan Agreement

established a security interest in GECC for GEMB's benefit in the
Thornton property.

We are not persuaded otherwise by WREP's argument that
GEMB could not have a security interest in the Thornton property
because WREP took possession of that property prior to the
Program Agreement and was not a party to that Agreement.
Although WREP was not a party to the Program Agreement, it was a
party to the Loan Agreement, and it acquired the Thornton property
subject to the deed of trust securing UAP's "Obligations" under the
Loan Agreement, which "Obligations" ultimately included UAP's
obligations to GEMB under the Program Agreement.

## C. Assignment/Authorization

The foregoing analysis does not end our inquiry, however,
because the mere fact that the agreements at issue created a
security interest for GEMB's benefit does not mean that GEMB
assigned the right, or otherwise authorized GECC, to enforce
GEMB's interests or to pursue action to collect its debts.  We thus
turn to that question.

As an initial matter, we agree with GECC's assertion that the
district court erred in concluding that New York law allows only

15

assignments in which the assignor retains no control over the thing
assigned.  Although New York law requires full assignments in
certain circumstances, *see, e.g.*, *Miller v. Wells Fargo Bank Int'l
Corp.*, 540 F.2d 548, 557 (2d Cir. 1976), it also allows for partial
assignments of claims for their collection, *see, e.g.*, *Robinson v.
Kamens*, 664 F. Supp. 118, 120 (S.D.N.Y. 1987) ("Under New York
law, where there has been a partial assignment, such as an
assignment for collection, the assignor and assignee each retain an
interest in the claim and are both real parties in interest."); *see also
Schoonmaker v. Lawrence Brunoli, Inc.*, 828 A.2d 64, 80 (Conn.
2003) (contrasting assignments requiring that the assignee have
exclusive ownership of the assignor's rights with assignments for
collection, in which the assignor retains an equitable ownership
and, therefore, substantial rights in the action assigned).  Indeed,
courts applying New York law have enforced partial assignments in
circumstances that are similar to those at issue here, namely,
where nonparties have designated an "agent" to enforce the
nonparties' rights.  *See, e.g., Chase Manhattan Bank v. Motorola,
Inc.*, 136 F. Supp. 2d 265, 270-73 (S.D.N.Y. 2001) (enforcing an
agreement giving a bank, on behalf of a twenty-four bank

16

consortium, the right to pursue certain claims on behalf of the
consortium, and rejecting the bank's claim that the citizenship of
each member of the consortium needed to be considered for
purposes of determining federal diversity jurisdiction).

Despite the district court's error, we may affirm the grant of
partial summary judgment if we agree with the district court that
there is no genuine issue of material fact as to whether GEMB made
a valid assignment to GECC or otherwise authorized GECC to act
on its behalf. *See, e.g., Norwest Bank Lakewood, N.A. v. GCC
P'ship*, 886 P.2d 299, 301 (Colo. App. 1994) ("A correct judgment
will not be disturbed on review, even if the reason for the trial
court's ruling may be wrong."). Although we perceive the issue as
somewhat close, we so conclude here.

On appeal, GECC contends that (1) the Intercreditor
Agreement, read in light of the Loan Agreement, comprised a valid
assignment or authorization to pursue claims because it recognized
GECC's ability to initiate enforcement actions and required GECC
to share its subsequent recoveries with GEMB; and (2) the Loan
Agreement comprised a valid assignment or authorization to pursue
claims because it authorized GECC to enforce the rights of holders

17

of "Obligations," which is sufficient authorization under New York law even though GEMB was not a party to the Loan Agreement. We are not persuaded by either argument.

With respect to the Intercreditor Agreement, that Agreement contained a provision defining "Enforcement Action" to include the taking of action by Agent (i.e., GECC):

> to collect or enforce all or any part of the Obligations payable to Agent, Lenders or any other holders of Obligations or any claims in respect thereof against any Credit Party or any Collateral, including the taking of control or possession of any Collateral of any Credit Party or the sale or other disposition of any interest in such Collateral.

Notwithstanding GECC's assertion to the contrary, however, we perceive nothing in this provision assigning any rights from GEMB to GECC or amounting to an authorization by GEMB to allow GECC to pursue claims on its behalf. Rather, this provision merely summarized certain of GECC's rights under the Loan Agreement.

Nor did the provisions of the Intercreditor Agreement requiring GECC to share with GEMB certain payments received by GECC evince either an assignment of any rights from GEMB or an

authorization by GEMB to allow GECC to pursue claims on its behalf. Section 2.3(e)(i) of the Loan Agreement set forth the priority in which GECC was to apply aggregate principal and interest payments, as well as fees and expenses, that GECC received under the Loan Agreement. In the Intercreditor Agreement, GECC and GEMB altered these priorities by agreeing that GECC would share with GEMB, in a specified manner, certain payments that GECC had received. The Intercreditor Agreement further provided, however, that any payments that GECC made to GEMB under the above-described provisions of the Intercreditor Agreement would *not* constitute a discharge or satisfaction of amounts owed to GEMB by the borrowers under the Program Agreement.

Because payments received by GEMB from GECC would not have discharged or satisfied UAP's obligations to GEMB under the Program Agreement, we fail to see how such payments reflected an assignment of rights by GEMB to GECC or an authorization by GEMB to allow GECC to pursue claims on its behalf. Had GEMB provided such an authorization or assigned such rights, then receipt of payments by GECC in the exercise of those rights would have discharged or satisfied UAP's obligations, at least to the extent

19

of the monies received on GEMB's behalf.

With respect to the Loan Agreement, although no particular words are necessary to effect an assignment, there must be a perfected transaction between the assignor and the assignee that is intended by those parties to vest in the assignee present rights in the things assigned. *See Leon v. Martinez*, 638 N.E.2d 511, 513 (N.Y. 1994); *see also Tawil v. Finkelstein Bruckman Wohl Most & Rothman*, 646 N.Y.S.2d 691, 692 (N.Y. App. Div. 1996) ("No special form or language is necessary to effect an assignment as long as the language shows the intention of the owner of a right to transfer it."). Here, however, GECC does not point us to any language in the Loan Agreement evincing an assignment by GEMB to GECC of the former's rights of collection under the Program Agreement. Instead, GECC contends only that an "express" or "formal" assignment by GEMB was not necessary under New York law and that the Loan Agreement was therefore sufficient to effect an assignment, even though GEMB was not a party to that Agreement. The case law on which GECC relies for this proposition, however, is unpersuasive.

GECC argues that in cases in which one party was permitted to bring suit pursuant to a contract authorizing it to act on behalf

of certain nonparties, the courts did not suggest that a formal
assignment of the nonparties' claims was necessary.  *See, e.g.,
Oscar Gruss & Son, Inc. v. Hollander*, 337 F.3d 186, 195 (2d Cir.
2003); *Chase Manhattan Bank*, 136 F. Supp. 2d at 270-73.  The
validity of the assignments of the right to bring claims on behalf of
the nonparties in those cases, however, was not disputed.
Moreover, none of the courts in those cases indicated that a formal
assignment of the right to bring claims was unnecessary.  To the
contrary, in several of the cases, the courts expressly noted and
relied on the contractual language effectuating the assignments.
*See, e.g., Oscar Gruss & Son, Inc.*, 337 F.3d at 195 ("[T]he
agreement entered into between OGSI and its former employees
gave OGSI the express power to act on their behalf with regard to
their rights in the warrants."); *Chase Manhattan Bank*,
136 F. Supp. 2d at 270-71 ("The agreements in the case before me
give Chase, and not the other banks in the syndicate, the right to
require Motorola to execute and deliver its Guarantee.").

      Nor are we persuaded by GECC's argument that the contract
provisions discussed at length above demonstrated GEMB's intent
to assign rights to GECC or to authorize GECC to pursue claims on

21

its behalf.  Even if the provisions could be read to reflect such intentions, GEMB's general expressions of its intent are insufficient, in and of themselves, to establish that GEMB actually granted authorization or assigned any rights to GEMB.  *See Leon*, 638 N.E.2d at 513; *Tawil*, 646 N.Y.S.2d at 692.

Accordingly, we conclude that the district court correctly held that GECC had failed, as a matter of law, to establish that it had the right to pursue judicial foreclosure claims on GEMB's behalf.

## V. Conclusion

For these reasons, the judgment is affirmed.

JUDGE TAUBMAN and JUDGE BOORAS concur.