IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 19-cv-01091-RM-NRN

DAVID E. BRODY, Plaintiff,

v.

MARC A. BRUNER,
THE BRUNER FAMILY TRUST, and
MARC E. BRUNER, AS TRUSTEE OF THE BRUNER FAMILY TRUST,

Defendants.

## PLAINTIFF'S RESPONSE IN OPPOSITION TO MOTION TO DISMISS

Plaintiff, David E. Brody, hereby responds in opposition to Defendants the Bruner Family Trust (the "BFT") and Marc E. Bruner's ("MEB, and collectively with the BFT, the "BFT Parties") Motion to Dismiss, Doc. No 67, and Defendant Marc A. Bruner's ("Bruner") limited joinder, Doc. No. 69 (the "Motion"), and as grounds therefor states as follows:

## INTRODUCTION

The BFT Parties move to dismiss (1) the conspiracy claim for lack of three required elements (predicated on a requirement to plead with them particularity under Rule 9(b)) and (2) the conspiracy claim as to civil theft and its treble damages penalty as time barred. Bruner joins only in that part of the Motion that seeks dismissal of the treble damages penalty within the civil theft claim. As to the former, dismissal is not appropriate because Rule 9(b) does not apply to conspiracy with respect to the non-fraud claims and the fraud claim is pleaded with the requisite particularity. As to the latter, the BFT Parties misstate both accrual law and the pleadings and, in addition, the civil theft claim is timely under equitable tolling and estoppel doctrines as well as the relation back doctrine of Rule 15(c).

## LEGAL STANDARD

Plaintiff generally agrees with the legal standard as articulated by the BFT Parties except in one material respect. Toward the end of the legal standard section, the BFT Parties state: "Here, when examining *only the allegations against the BFT Parties*, Plaintiff's Amended Complaint lacks sufficient factual allegations to overcome this Motion." Motion at 4 (emphasis added). Setting aside that Plaintiff disagrees with this claim, as will be shown below, it is not a correct statement of the law that the Court is only to look at what the BFT Parties characterize as the allegations against them. *See id.* (suggesting that only 14 paragraphs contain allegations against them because only 14 paragraphs mention them by name). When evaluating compliance with Rule 9(b)—including as to multiple parties—a complaint is to be read as a whole. *George v. Urban Settlement Svcs.*, 833 F.3d 1242, 1255-57 (10th Cir. 2016). This rule is particularly apt where, as here, the conspiracy count incorporates by reference all of the preceding allegations, Doc. 16, ¶ 60.

In addition, the BFT Parties do not include a legal standard section with respect to its statute of limitations defense. Statute of limitations is an affirmative defense, and therefore dismissal under Rule 12(b)(6) is rarely appropriate. *Fernandez v. Clean House, LLC*, 883 F.3d 1296, 1299 (10th Cir. 2018). This is so because a plaintiff is not required to anticipate affirmative defenses. *Id.* Accordingly, dismissal on timeliness ground is only available where the defense is "impenetrable" from the information in the complaint. *Id.* Where, as here, facts pertaining to claim accrual and equitable doctrines are necessary to determine the timeliness of the action, dismissal is not appropriate. *See Nagim v. Jackson*, No. 10-cv-00328-PAB-KLM, 2010 WL 4318896, at *4 (D. Colo. Aug. 10, 2010) (citing *Dummar v. Lummis*, 543 F.3d 614, 619 (10th Cir. 2008) and *Alrich v. McCulloch Properties, Inc.*, 627 F.2d 1036, 1041, n.4 (10th Cir. 1980)).

## ARGUMENT

**I.       The conspiracy claim is appropriately pleaded under Rule 8(a), and to the extent it alleges fraud, it is pleaded with the requisite particularity under Rule 9(b).**

The elements of a civil conspiracy claim in Colorado are:

> (1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) an unlawful overt act, and (5) damages as to the proximate result.

*Nelson v. Elway*, 908 P.2d 102, 106 (Colo. 1995).

As to the non-fraud claims, i.e., Counts II-V of the First Amended Complaint (the "FAC"), the conspiracy elements need only be pleaded generally, consistent with Rule 8(a) of the Federal Rules of Civil Procedure. *See, e.g.*, *Mazo v. Merritt*, No. 18-cv-00831-RBJ, 2019 WL 339899, at *6 (D. Colo. Jan. 28, 2019) (citing *In re Qwest Commc'ns Int'l Inc. Sec. Litig.*, 387 F.Supp.2d 1130, 1153 (D. Colo. 2005)). That is, Plaintiff need only make a short and plain statement containing sufficient "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). In making this determination, the Court draws on its "judicial experience and common sense." *Id.* at 679, 129 S.Ct. at 1950.

In this context, "plausibility" means based on facts rather than legal conclusions.[1] *Id.* at 678-79, 129 S.Ct. at 1949-50. However, pleading evidentiary facts is not required. *Seattle-First Nat. Bank v. Carlstedt*, 800 F.2d 1008, 1011 (10th Cir. 1986). In fact, pleading fact-based conclusions or "ultimate

---

[1] The BFT Parties confuse plausibility in the pleading sense with plausibility in the believability sense. *See* Motion at 8-9 (citing *Iqbal* for the plausibility standard but asserting that the claims are not plausible because some other explanation is allegedly more plausible). That is not what plausibility means in this context. *See Dream Finders Homes LLC v. Weyerhaeuser NR Co.*, No. 2017CV34801, 2018 WL 10418955, at *1 (Colo. Dist. Ct. June 20, 2018) (citing federal authority); *see also Tullius v. Metro. Prop. & Cas. Co.*, No. CIV-10-272-M, 2010 WL 3259837, at *4 (W.D. Okla. Aug. 17, 2010) (holding that even if the court finds another proposition more probable, a conspiracy claim is sufficiently pleaded if it "permits an inference of an unlawful agreement").

facts"[2] is *preferred* under the federal rules, *see, e.g., Out West Rest. Grp. Inc. v. Affiliated FM Ins. Co.*, Case No. 20-cv-06786-TSH, 2020 WL 7122512, at *3 (N.D. Cal. Dec. 4, 2020), and such conclusions are to be read to embrace the evidentiary facts that would support them, *Nat'l Org. for Women, Inc. v. Scheidler*, 510 U.S. 249, 255, 114 S.Ct. 798, 803, 127 L.Ed.2d 99 (1984) (holding that in examining a complaint at the motion to dismiss stage it is presumed "that general allegations embrace those specific facts that are necessary to support the claim").

Even "Rule 9(b) does not require the pleading of detailed evidentiary matter…. It only requires identification of the circumstances constituting fraud or mistake." *Seattle-First Nat. Bank v. Carlstedt*, 800 F.2d at 1011 (citation, quotation, and alteration omitted). Rule 9(b) also "does not require particularity to the degree so as to supplant general discovery methods." *Sunbird Air Svcs., Inc. v. Beech Aircraft Corp.*, 789 F.Supp. 364, 366 (D. Kan. 1992) (citation omitted).

Rule 9(b) applies to the conspiracy claim only with respect to the fraud claim, i.e., Count I of the FAC, and the Motion does not challenge any element of any non-fraud claim. For these reasons, the Court should confine the BFT Parties' challenge to the conspiracy to commit fraud, not conspiracy with respect to any other count.[3] And, as set forth immediately below, Plaintiff's conspiracy-to-commit-fraud allegations are sufficiently particular.

Even within the conspiracy to commit fraud, the BFT Parties do not challenge all of the fraud elements. Instead, they assert only that Plaintiff has not pleaded three elements with particularity: (1) two or more persons, (2) a meeting of the minds, and (3) BFT's engagement in an unlawful overt act. Motion at 3. In this regard, they allege that Plaintiff "offers no facts," *id.* at 5, and "little more than a statement that the defendants agreed to defraud him, *id.* at 8. This is demonstrably untrue.

---

[2] *See Baca v. Helm*, 682 P.2d 474, 478-79 (Colo. 1984) (Neighbors, J., concurring) (collecting cases for the proposition that "[u]ltimate facts are the conclusions drawn from the evidentiary facts").

[3] Plaintiff's arguments as to the sufficiency of its pleading of conspiracy to commit fraud apply with equal or greater force to the conspiracy with respect to all of the counts.

*Two or more persons*

The BFT Parties assert that Plaintiff has not alleged that two or more persons were involved in the conspiracy because (1) Bruner and the BFT are one in the same, and (2) Carmen Lotito is "a representative and beneficiary" of the BFT. Motion at 6. As a consequence, they should all be deemed a single "person," and, because a person cannot conspire with him or herself, the conspiracy claim fails on this element. *Id.* at 6-7.

The first reason this argument is incorrect is because there is no law to support it. The BFT Parties' cases relate to corporations, not trusts. *See id.* But contrary to the BFT Parties' request to extend corporations law to the BFT, a trust—unlike a corporation—is not a person or entity but a relationship among different people.

> In its simplest form, a trust is created when one person (a "settlor" or "grantor") transfers property to a third party (a "trustee") to administer for the benefit of another (a "beneficiary"). As traditionally understood, the arrangement that results is not a distinct legal entity, but a fiduciary relationship between multiple people.

*North Carolina Dep't of Revenue v. The Kimberly Rice Kaestner 1992 Family Trust*, --- U.S. --- 139 S.Ct. 2213, 2217-18, 204 L.Ed.2d 621 (2019) (citing George Gleason Bogert, et al., *The Law of Trusts and Trustees* ("*Bogert's*") § 1 and additional authorities) (citations and quotations omitted).[4]

With this law in mind, the BFT Parties make no argument, nor could they, that the trustee, MEB, and Bruner do not constitute two or more persons.[5] There is also no argument to support that Lotito is not also another—third—person. Although the BFT Parties assert that he was a

---

[4] At a minimum, to make a contrary argument the BFT Parties would have to disclose the BFT documents to determine whether it has the status of a juridical person or otherwise contains terms showing control. *E.g.*, *Wingert v. Auto-Owners Ins. Co.*, No. 19-cv-01917-PAB, 2019 WL 3024752, at *2, n.1 (D. Colo. July 10, 2019) (addressed in the jurisdiction context); *see also Bogert's* § 551 (noting that trust terms may retain power for settlors and others).

[5] To the extent Plaintiff pleads Bruner is an alter ego of the BFT or vice versa, that pleading is governed by Rule 8(a), not 9(b). *Wiebe v. Benefits Mgmt. Corp.*, No. 93-1005-PFK, 1993 WL 246096, at *1 (D. Kan. June 17, 1993) (collecting authorities). *See also id.* at * 2 ("[W]here [the] underlying fraud [was] pled with particularity and allegations of control by alter ego [were] pled generally, the complaint was sufficient to establish the complete domination required to pierce the corporate veil.") (citations and quotations omitted).

representative of the BFT and a beneficiary, they include no law suggesting that he is to be treated as one in the same with the BFT or Bruner, much less both. In fact, the foregoing black letter law is expressly to the contrary.

The second reason this argument fails is because it mischaracterizes the allegations in the FAC, especially with respect to the last two bullet points on page 7 of the Motion. Those bullets assert that Lotito's *only* relationship to Defendants is as a BFT representative and beneficiary and that *everything* he did was to benefit the BFT. Motion at 7. That, however, is not what is pleaded in the FAC. While Plaintiff indeed alleged that the BFT Parties, Bruner, and Lotito were intertwined in various enterprises, Doc. No. 16, ¶ 61, it is not accurate to suggest that Lotito *only* served in various capacities with the BFT. Instead, Plaintiff pleaded that Lotito "has served in various capacities with respect to Bruner and the BFT Trustee…and their respective joint companies, *as well as* with BFT…." Doc. No. 16, ¶ 61 (emphasis added). Nor did Plaintiff allege that "*[a]ll* of the allegedly conspiratorial efforts were to benefit the BFT," which is also required for the BFT Parties' argument. Motion at 7 (emphasis added). Rather, Plaintiff pleaded that Defendants "worked cooperatively" against Plaintiff to "enrich themselves," Doc. No. 16, ¶ 62, and for Bruner's benefit "and/or" the BFT's benefit, *id.*, ¶ 63. That is, the conspiracy was to benefit some or all of Defendants, not just the BFT.

The third reason the argument fails is because it adds facts from outside of the pleadings. To the extent the BFT Parties confess, as a matter of fact, that Bruner actually controls the assets in the BFT, Lotito served in various capacities with the BFT, and all of the alleged conspiratorial efforts were to benefit the BFT, those confessions may well limit the matters in dispute, but as of this writing they remain disputed facts. *See* Doc. No. 68 (Bruner Answer denying paragraphs 9(b), 9(c), 61, 62, and 63, and not responding to paragraph 10(a)). The Court cannot decide a motion under Rule 12(b)(6) based on facts outside the pleadings. *E.g.*, *Hall v. Bellmon*, 935 F.2d 1106, 1109 (10th Cir. 1991).

6

*Meeting of the minds*

The BFT Parties also claim there is insufficient pleading of a meeting of the minds. Motion at 7-8. They assert that "Plaintiff offered little more than a statement that the defendants agreed to defraud him" and that is not enough. *Id.* at 8. This is not a fair characterization of either the FAC or the law.

In the FAC, Plaintiff alleged that Bruner asked Plaintiff to sell him his bankruptcy claim for the clear purpose of strengthening the BFT's bankruptcy claims, Doc. No. 16, ¶ 9(b), which Bruner controls, *id.*, ¶ 9(c). In fact, details of the BFT Parties' common scheme with Bruner are laid out in detail in Doc. No. 29 and its exhibits, most notably Doc. No. 29-3, of which the Court may take judicial notice. *McNees v. Ocwen Loan Servicing, LLC*, No. 16-cv-01055-WJM-KLM, 2018 WL 636598, at *4 (D. Colo. Jan. 31, 2018). This also makes clear that Bruner and the BFT acted in concert by combining the Brody Claim and the BFT Claim in their dealings with the PetroHunter bankruptcy estate, as alleged in paragraphs 62 and 63 of the FAC. *See* Doc. No. 16, ¶¶ 62, 63. In addition, when Plaintiff made repeated efforts to collect the consideration he was owed:

> Lotito, on behalf of Defendants…repeatedly misled Plaintiff into believing that Bruner would fulfill his obligations under the Agreement, but instead allowed distributions on bankruptcy claims, including the Brody Claim, to become imminent…[and]…falsely tell[] Plaintiff that Bruner intended to pay and would pay the consideration under the Agreement.

Doc. No. 16, ¶ 64; *see also* Doc. No. 48-1, ¶ 22 (detailing additional misrepresentations by Bruner and various people representing him).[6]

Thus, it is not accurate to state that "Plaintiff offered little more than a statement that the defendants agreed to defraud him." Motion at 8.

---

[6] In anticipation of a reply from Defendants asserting that Plaintiff should have included the facts from other court filings in the FAC, Plaintiff preemptively notes that (1) it is not required to since those allegations can be judicially noticed, and (2) pleading these types of evidentiary facts is disfavored under the federal rules. *E.g., Out West Rest. Grp. Inc. v. Affiliated FM Ins. Co.*, 2020 WL 7122512, at *3 (citing *In re Beef Industry Antitrust Litigation*, 600 F.2d 1148, 1169 (5th Cir. 1979)).

Furthermore, legally, Plaintiff is not required to plead the meeting of the minds with particularity. All that is required is "some indicia of an agreement sufficient to prove that the defendants consciously conspired and deliberately pursued a common plan or design that resulted in a tortious act." *Church v. Dana Kepner Co., Inc.*, No. 11-cv-02632-CMA-MEH, 2012 WL 4086517, at *4 (D. Colo. Sept. 16, 2012) (citing *Resolution Trust Corp. v. Heiserman*, 898 P.2d 1049, 1057 (Colo. 1995) (applied in the context of Colorado's joint liability statute)). Thus, this Court may infer an agreement from the context. *See In re Qwest Commc'ns Int'l Inc. Sec. Litig.*, 387 F.Supp.2d at 1153.

Plaintiff respectfully submits that its pleading of Defendants' collective efforts meets that standard, and the BFT Parties' legal authorities do not suggest a different result. The BFT Parties cite two cases in their meeting-of-the-minds argument. The first is *FDIC v. First Interstate Bank of Denver*, 937 F.Supp. 1461, 1473 (D. Colo. 1996), for the proposition that "a court will not infer the necessary agreement." Motion at 7-8. The second is *Buhendwa v. Reg'l Transp. Dist.*, 82 F.Supp.3d 1259, 1269 (D. Colo. 2015), for the proposition that formulaic pleading is insufficient, which is offered in support of the counterfactual (*see* above) notion that "Plaintiff did not allege any facts showing an agreement between [Bruner], the BFT Parties, and Lotito." Motion at 8.

*FDIC* cuts against the BFT Parties' argument because it distinguished inferring an agreement, which it rejected, from finding "indicia of an agreement" from the circumstances, which it endorsed. *FDIC v. First Interstate Bank of Denver*, 937 F.Supp. at 1473. In fact, the *FDIC* court noted that "[b]y its very nature a conspiracy is seldom provable by direct evidence." *Id.* Hence, "an express agreement is not necessary." *Id.* This directly undercuts the BFT Parties' use of *FDIC*. Furthermore, the *FDIC* court's rejection of inference is best read as bad law after the U.S. Supreme Court's subsequent decision in *Iqbal*, which expressly permits a court to draw reasonable inferences. *Ashcroft v. Iqbal*, 556 U.S. at 678, 129 S.Ct. at 1949.

8

The BFT Parties' use of *Buhendwa* is unhelpful because it is entirely inapposite. The case does not consider the issue under review—whether a plaintiff sufficiently pleaded a meeting of the minds between two or more people for conspiracy purposes. Instead, it concerned alleged civil rights violations stemming from the plaintiff's injury while riding an RTD bus. *Buhendwa v. Reg'l Transp. Dist.*, 82 F.Supp.3d at 1268. There is no mention of conspiracy at all.

For these reasons both the facts and the law support a finding that Plaintiff has adequately alleged a meeting of the minds.

### *Unlawful overt act*

The BFT Parties assert that Plaintiff failed to plead the unlawful overt act with particularity because he "does not claim the BFT parties negotiated with him regarding the Agreement or that they encouraged [Bruner] to breach the Agreement." Motion at 9. This is a straw argument. If the BFT Parties negotiated the agreement or breached the agreement themselves, then they would be principal defendants to those claims. *Cf. Upshaw v. U.S.*, 157 F.2d 716, 717 (10th Cir. 1946) ("[A] a conspiracy to commit a crime is a different offense from the crime which is the object of the conspiracy.").

For conspiracy liability to attach, the BFT Parties need not be the principals so long as the elements of civil conspiracy are met, and among them, *an* unlawful[7] overt act, not necessarily an unlawful overt act *by the BFT Parties*. *See* Colo. Jury Instr., Civil 27:1 (providing that while the agreement must be among two or more people, there need only be a single unlawful act); *see also, e.g.*, *Church v. Dana Kepner Co., Inc.*, 2012 WL 4086517, at *4 (finding an overt act sufficiently pleaded where the unlawful act was committed by a single defendant who conspired with others).

With this framework in mind, not only did Plaintiff plead unlawful overt acts throughout the FAC—in summary, Bruner stole the Brody Claim to create leverage for him and the BFT in the

---

[7] Even if the BFT Parties' acts were lawful, they are still subject to conspiracy liability if the effect was unlawful. *E.g.*, *Contract Maint. Co. v. Local No 105, Bldg. Svc. Emp. Intern. Union*, 415 P.2d 855, 856-57 (Colo. 1966).

9

PetroHunter bankruptcy case—but the BFT Parties themselves concede that Plaintiff pleaded unlawful overt acts: "The allegations in the Amended Complaint, instead, describe [Bruner's] wrongs. *Those allegations are specific.*" Motion at 5 (emphasis added). Therefore, Plaintiff has met the heightened pleading standard.

In addition, though, the BFT Parties' unlawful overt acts are also pleaded:

- "Plaintiff believes that Bruner never intended to perform under the Agreement, but, instead, together with BFT, defrauded Plaintiff of the Brody Claim by making a promise he did not intend to keep." Doc. No. 16, ¶ 1.
- "BFT is used as a vehicle to shield assets from Bruner's creditors, including Plaintiff." *Id.*, ¶ 9(c).
- "Defendants agreed and worked cooperatively to defraud Plaintiff of and steal the Brody Claim, use the Brody Claim, and/or retain the benefit of the Brody Claim…and/or retain the benefit of Bruner's breach, in order to enrich themselves at the expense of Plaintiff." *Id.*, ¶ 62.
- "Defendants' object has been accomplished, as Bruner filed papers in the PetroHunter Bankruptcy to transfer the Brody Claim to himself for his benefit and/or the benefit of BFT." *Id.*, ¶ 63.
- "Lotito, on behalf of Defendants and potentially on behalf of himself, as well, repeatedly misled Plaintiff into believing that Bruner would fulfill his obligations under the Agreement, but instead allowed distributions on bankruptcy claims, including the Brody Claim, to become imminent. Lotito did so by stating to Plaintiff on several occasions that Lotito would provide Bruner with Plaintiff's communications that Plaintiff seeks to resolve the dispute amicably, and then for almost three years falsely telling Plaintiff that Bruner intended to pay and would pay the consideration required under the Agreement." *Id.*, ¶ 64.

*See also* Doc. No. 29-3, ¶¶ 25-33 (further detailing the Bruner/BFT combined actions, including with respect to acquiring and using the Brody Claim).

Here, again, the BFT Parties' authorities do not suggest otherwise. Their only case for the proposition that a conspiracy claim alleging an underlying fraud must be pleaded with particularity is *Jackson Cnty. Fed. Sav. And Loan Ass'n v. Maduff Mortg. Co.*, 649 F.Supp 6, 8 (D. Colo. 1986), Motion at 5, but it is not helpful to the analysis. In *Jackson County* the plaintiff withdrew the conspiracy claim and conceded that it was not pleaded with particularity. *Id.* The court's *dictum*—that it agreed that the claim was not pleaded with particularity—did not include any of the analysis the BFT Parties suggest in their

10

parenthetical. *See* Motion at 5 (suggesting that the *Jackson County* court analyzed and dismissed the conspiracy claim on particularity grounds).

Accordingly, Plaintiff's pleading of conspiracy to commit fraud is well within Rule 9(b) and precedent.

II. **The civil theft claim (and the damages component) did not accrue when the theft occurred but when Plaintiff knew or should have known of it, which Defendants do not address and which, in any event, was within the timeframe for filing.**

The statute of limitations for civil theft is two years, and the statute of limitations for its treble damages penalty provision is one year. *Tisch v. Tisch*, 439 P.3d 89, 101 (Colo. App. 2019). A civil theft claim is governed by the discovery rule and accrues when the plaintiff knew or should have known of all elements of the claim. *Id.*, at 101-02; *see generally Miller v. Armstrong World Indus.*, 817 P.2d 111, 113 (Colo. 1991) (holding that a claim does not accrue until the plaintiff knows or should know "all material facts essential to show the elements of that cause of action").

The Motion asserts two arguments concerning civil theft: (1) the whole claim is time barred because it accrued more than two years before Plaintiff filed this lawsuit, and (2) the treble damages penalty is time barred because it accrued more than one year before Plaintiff filed this lawsuit. They are both predicated on an assumption that the claim accrued on the date of the theft because, *ipse dixit*, that is the date on which Plaintiff knew or should have known of it. Motion at 10.

As discussed in the legal standard section, dismissal on statute of limitations grounds is not appropriate unless the complaint clearly shows an "impenetrable defense." *Fernandez v. Clean House, LLC*, 883 F.3d at 1299. The BFT Parties' *ipse dixit* is, aside from being demonstrably counterfactual (see below), a matter outside the pleading and therefore the Court should not consider it. *Hall v. Bellmon*, 935 F.2d at 1109.

11

Regardless, Plaintiff's civil theft claim is timely because (1) it accrued in May, 2020 and certainly no earlier than October, 2019, (2) equitable doctrines bar application of the statute of limitations or require more factual development, and (3) the civil theft claims relate back to the original complaint.

### A. Plaintiff was misled into believing he would be paid and therefore did not know and should not have known of all elements of the theft until May, 2020.

It is now confessed that Bruner did not pay the consideration for the Brody Claim when it was due, Doc. 68, ¶¶ 18, 19 (Bruner Answer admitting same), but it does not follow that Plaintiff knew or should have known of all of the elements of his civil theft claim at that time. In fact, the record is to the contrary.

Starting with the elements, "to recover on a claim for civil theft under section 18-4-405, a rightful owner of stolen property must establish the statutory elements of criminal theft, including the requisite culpable mental state." *Bermel v. Blueradios, Inc.*, 440 P.3d 1150, 1157 (2019). "A person commits theft when he or she knowingly obtains, retains, or exercises control over anything of value of another without authorization or by threat or deception; or receives, loans money by pawn or pledge on, or disposes of anything of value or belonging to another that he or she knows or believes to have been stolen, and:

- (a) Intends to deprive the other person permanently of the use or benefit of the thing of value;
- (b) Knowingly uses, conceals, or abandons the thing of value in such manner as to deprive the other person permanently of its use or benefit;
- (c) Uses, conceals, or abandons the thing of value intending that such use, concealment, or abandonment will deprive the other person permanently of its use or benefit;
- (d) Demands any consideration to which he or she is not legally entitled as a condition of restoring the thing of value to the other person; or
- (e) Knowingly retains the thing of value more than seventy-two hours after the agreed-upon time of return in any lease or hire agreement."

§ 18-4-401(1), C.R.S.

As Plaintiff explains in the FAC, Bruner (directly and through Lotito) repeatedly misled Plaintiff into believing that Bruner intended to pay him the consideration for the Brody Claim. Doc. No. 16, ¶ 64; *see also* Doc. No. 48-1, ¶ 22 (detailing misleading statements by Bruner, Lotito, and Michael Caetano through April 20, 2019). After Plaintiff learned that Bruner planned to contribute $15 million in Fortem shares to a third party, Plaintiff decided to sue. *See* Doc. No. 48-1, ¶ 22 (discussing March 22, 2019 conversation). Still, as late as October, 2019 (after Plaintiff filed the original complaint), Bruner's Canadian lawyer Cam McTavish told Plaintiff (through counsel) that the Fortem shares would be released, after which Bruner would pay him. *Id.* It was not until the PetroHunter bankruptcy trustee announced first interim distributions to Bruner on account of the Brody Claim that Plaintiff developed a belief that that Bruner deceived him and intended to keep *both* the Brody Claim *and* its proceeds, i.e., intended to permanently deprive Plaintiff of the value of the claim. Doc. No. 16, ¶¶ 26-29; Doc. No. 48-1, ¶ 23. Plaintiff received that trustee notice on May 25, 2020, Doc. No. 48-1, ¶ 22, and filed the FAC 11 days later.

For this reason, the BFT Parties' timeline, Motion at 11, is misleading. It ignores the law that civil theft claims are governed by the discovery rule as well as all of the evidence in the record (of which, as discussed above, the Court may take judicial notice) in which Plaintiff details that he was misled—as late as October, 2019—into believing that Bruner intended to pay him.[8] Since the FAC was filed on June 5, 2020, both the civil theft claim and the treble damage penalty are timely.

### B.  Defendants' misleading conduct triggers equitable estoppel and/or tolling.

In addition to the fact that the civil theft claim did not accrue until May, 2020 (or at least some time after October, 2019), the statute of limitations should be tolled or Defendants should be estopped

---

[8] That Bruner never intends to pay Plaintiff was finally fleshed out with certainty in his and the BFT Parties' court filings, wrongly asserting that Plaintiff waived the right to payment. *See, e.g.*, Doc. No. 30 at 8, Doc. No. 38 at 9.

from asserting a statute of limitations defense because they caused Plaintiff to delay making the civil theft claim by promising payment.

Equitable tolling applies where a party alleged to have breached an obligation "prevails upon the other to forego enforcing [her] right until the statutory time has lapsed." *Hicks v. Sprint Nextel Corp.*, No. 14-cv-02857-RBJ-MWJ, 2016 WL 1028267, at *3 (D. Colo. Mar. 15, 2016). "The principle underlying equitable tolling…is that a person should not be permitted to benefit from his or her own wrongdoing." *Dean Whitter Reynolds, Inc. v. Hartman*, 911 P.2d 1094, 1096-97 (Colo. 1996) (collecting cases).

In addition,[9] "where…a party by its acts or omissions contributes to the running of a statute of limitations, the doctrine of equitable estoppel will prevent its raising that defense." *Strader v. Ben. Fin. Co. of Aurora*, 551 P.2d 720, 724 (Colo. 1976). Equitable estoppel applies where "(1) [t]he party to be estopped must know the facts; (2) this party also must intend that her conduct be acted on or must so act that the party asserting the estoppel has a right to believe the other party's conduct is so intended; (3) the party asserting the estoppel must be ignorant of the true facts; and (4) the party asserting the estoppel must rely on the other party's conduct to her injury." *Cork v. Sentry, Ins.*, 194 P.3d 422, 427 (Colo. App. 2008).

Plaintiff's allegations plausibly support a right to equitable tolling and/or estoppel. Defendants and their representatives' misrepresentations of facts known to them and unknown to Plaintiff, i.e., that Bruner would not pay, caused Plaintiff to forbear on pursuing his civil theft claim. These facts implicate both equitable tolling and estoppel and, at a minimum, create an issue of fact to be ferreted out in discovery. *See, e.g.*, *Wensleydale Way, Inc., v. Fleet Car Lease Inc.*, No. 17-cv-02863-RBJ, 2019 WL

---

[9] Some courts conflate the two doctrines, such as in *Olson v. State Farm Mut. Auto. Ins. Co.*, where the court affixed the "equitable tolling" label to the equitable estoppel elements. 174 P.2d 849, 858 (Colo. App. 2007). The doctrines, however, are different. *Shell Western E&P., Inc. v. Dolores County Bd. of Com'rs*, 948 P.2d 1002, 1007-08 (Colo. 1997) (articulating both doctrines and relying on equitable tolling, not equitable estoppel, for its judgment). While both avoid unjust results, equitable tolling is not subject to a multi-factor analysis. *Id.* at 1008-09.

295674, at *4 (D. Colo. Jan. 23, 2019); *Campbell v. Milyard*, No. 09-cv-01041-CMA-KLM, 2010 WL 3023368, at *7 (D. Colo. May 4, 2010).

### C. The civil theft claim relates back to the original complaint.

Finally, even if the discovery rule and estoppel/tolling did not apply, the FAC relates back to the original complaint, which was filed within two years of the transaction. This is so because the "basis of the claim…was discernable from the original complaint" and "ar[o]se from the same conduct, transaction or occurrence." *Banks v. St. Mary's Hosp. and Med. Ctr.*, 558 F.Supp 1334, 1337-38 (D. Colo. 1983) (applying Fed. R. Civ. P. 15(c)). All elements of the new claim need not be present in the amended complaint; rather, the claims must arise from a common core of operative facts and fair notice of the general theory of liability must be given to the defendant:

> For a new claim to relate back to the original complaint, for purposes of the applicable statute of limitations, a common core of operative facts must exist that unites the original and newly asserted claims and that common core exists if the opposing party has had fair notice of the general fact situation and legal theory upon which the amending party proceeds.

Arthur R. Miller, et al., 6A *Fed. Prac. & Proc. Civ.* § 1498.2 (3d ed. 2020) (cited authorities omitted). As elaborated upon in this district:

> Amendments will relate back if they amplify the facts previously alleged, correct a technical defect in the prior complaint, assert a new theory of relief, or add another claim arising out of the same facts…. As long as there is a factual nexus between the original and amended complaints, the amended claim is liberally construed to relate back to the original complaint if the defendant had notice of the claim and will not be prejudiced by the amendment.

*Griffin v. Gorman*, No. 17-cv-03019-MSK-KMT, 2019 WL 4464021, at *6 (D. Colo. Sept. 18, 2019) (citing *Benton v. Bd. of Cnty. Comm'rs*, No. 06-cv-01406–PSF, 2007 WL 4105175, at *3 (D. Colo. Nov. 14, 2007), *aff'd*, 303 F.App'x 625 (10th Cir. 2008)) (internal quotations omitted).

Here, the civil theft claims arise from the same common core of facts alleged in the original complaint, add a new theory of relief, and add another claim arising out of the same facts. *See* Doc.

15

No. 1, ¶¶ 1, 8-16 (alleging Bruner's breach of the agreement to pay for the Brody Claim). Therefore, relation back applies to the civil theft claim against Bruner.

However, where adding a new party,[10] the party seeking to relate claims back to the original complaint must also demonstrate: "(1) same transaction or occurrence; (2) the new party had notice of the action, prior to the expiration of the statute of limitations; and (3) he knew or should have known that but for a mistake in identity the action would have been brought against him." *Watson v. Unipress, Inc.*, 733 F.2d 1386, 1390 (10th Cir. 1984).

Here:

1. As discussed immediately above, the civil theft claim arises from the same transaction or occurrence as the breach of contract pleaded in the original complaint.
2. The new party—the BFT and its trustee—had notice of the claims at and before filing of the original complaint, at a minimum because Plaintiff and Lotito, a representative of the BFT, Motion at 6, communicated about the claims multiple times before and after the original complaint was filed, Doc. No. 48-3, ¶¶ 22. Further, as alleged by the BFT Parties, Bruner is the settlor of and potentially one in the same as the BFT, Motion at 6.
3. The BFT Parties also knew facts that Plaintiff did not know about their involvement in the underlying fraud. As shown in bankruptcy court filings, the BFT Parties and Bruner were working together to leverage the combined Brody and BFT Claims. *See* Doc. No. 29-3, ¶¶ 25-33.

Therefore, the Court may relate the civil theft conspiracy claim against the BFT Parties back to the original complaint. Of course, the need to resort to relation back assumes—contrary to law—that the discovery rule does not apply and equitable doctrines would not otherwise render the civil theft claim conspiracy claim timely.

On any one of the foregoing theories, the civil theft claim and its treble damages penalty were timely filed, and Defendants surely have not carried their burden to prove that the statute of limitations defense is "impenetrable."

WHEREFORE, Plaintiff respectfully requests that this Court deny the Motion in its entirety.

---

[10] If Bruner and the BFT are, as the BFT Parties assert, one in the same, then adding the BFT is not the addition of a "new party."

Respectfully submitted, this 15th day of January, 2021.

        FOSTER GRAHAM MILSTEIN & CALISHER LLP

        */s/Michael A. Rollin*
        Michael A. Rollin
        Mallory A. Revel
        Lindsey Idelberg
        360 South Garfield Street, Sixth Floor
        Denver, Colorado 80209
        (303) 333-9810
        mrollin@fostergraham.com
        mrevel@fostergraham.com
        lidelberg@fostergraham.com

        *Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on January 15, 2021, I electronically filed the foregoing **PLAINTIFF'S RESPONSE IN OPPOSITION TO MOTION TO DISMISS** with the Clerk of Court using the CM/ECF system, which was electronically served to all counsel of record.

By: <u>*/s/ Angelica McClurg*</u>
Angelica McClurg, Paralegal