**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 19-CV-01091-RM-NRN

DAVID E. BRODY,

       Plaintiff,

v.

MARC A. BRUNER, et al.,

       Defendants.

---

**DEFENDANTS THE BRUNER FAMILY TRUST AND MARC E. BRUNER, AS
TRUSTEE OF THE BRUNER FAMILY TRUST'S
REPLY IN SUPPORT OF MOTION TO DISMISS**

---

Defendants The Bruner Family Trust ("BFT") and Marc E. Bruner ("MEB"), as Trustee of the BFT (together, the "BFT Parties"), reply in support of their Motion to Dismiss as follows.

### I.    SUMMARY

Plaintiff's First Amended Complaint ("FAC")[1] [Doc. #16] fails to state a claim upon which relief can be granted. As a matter of law, the BFT and its representatives do not form the two or more people required for a conspiracy. And other than generally claiming the BFT Parties participated in a conspiracy, Plaintiff musters no other factual allegations against them. Said another way, the allegations in the FAC fail to apprise the BFT Parties of their role in the overall alleged conspiracy (to defraud, breach, commit theft, or otherwise). Even if Marc A. Bruner ("MAB") did something wrong, there is no legal or factual basis for the BFT Parties to be dragged through this lawsuit on the anemic allegation that they were complicit in such wrong-

---

[1] The FAC will be cited and referred to throughout at the "FAC" and Plaintiff's original complaint [Doc. #1] will be cited and referred to throughout as the "Original Complaint."

1

76276516.2

doing. This is particularly true given that the BFT Parties were not a party to or involved with the Agreement that Plaintiff claims was breached. It appears Plaintiff sued the BFT Parties only because they bear the same name and a valuable claim against the PetroHunter bankruptcy estate.

Plaintiff variously claims the (1) BFT Parties admit certain facts and (2) rely on evidence outside of the pleadings. Both are false. Consistent with the Rule 12(b)(6) standard, the BFT Parties simply accepted for the purpose of their motion the factual allegations alleged in the FAC and explained how those allegations failed to allege a cognizable claim against them.

## II.     ARGUMENT

A.     **Plaintiff's claim for civil conspiracy fails as a matter of law.**

**1.     Plaintiff cannot establish two or more people needed to establish a conspiracy.**

Plaintiff argues this Court should not treat a trust like a legal entity when evaluating the intra-corporate doctrine. It is accurate that neither the BFT Parties nor Plaintiff located any case law directly applying this doctrine to a trust. However, all courts that have analyzed the doctrine do so in a manner consistent with BFT Parties application here. *Ziglar v. Abbasi,* 137 S.Ct. 1843, 1867 (2017). (Under the intracorporate-conspiracy doctrine, "an agreement between or among agents of the same legal entity, when the agents act in their official capacities, is not an unlawful conspiracy….Conspiracy requires an agreement—and in particular an agreement to do an unlawful act—between or among two or more separate persons.")

In support of his position, Plaintiff partially quotes the dicta from *North Carolina Dep't*

*of Revenue v. The Kimberly Rice Kaestner 1992 Family Trust*, 139 S.Ct. 2213, 2217 (2019)[2] as stating that a trust is just an arrangement between people that does not result in a distinct legal entity. Plaintiff did not provide this Court with the very next sentence from that opinion which states, "[i]n some contexts, however, trusts can be treated as if the trust itself has a 'separate legal existence' from its constituent parts." *Id*. at 2218.

The BFT is a single economic unit and a legal entity. It acts through its representatives like any other legal entity. It owns property, including claims against PetroHunter that underlie this dispute, and it pursues and defends claims in its own name. It strains credulity for Plaintiff to claim the BFT is not an entity after suing it as a stand-alone entity and alleging the BFT is domiciled in Colorado. [*See* FAC generally and at ¶10(c)]. Plaintiff's argument *du jour* that the BFT is just a "relationship among different people" is a fallacy that is contradicted by the FAC and should be rejected.[3]

Plaintiff alleges: (1) MAB is a beneficiary and in control of the BFT [FAC, ¶ 9(c)]; (2) MEB is the BFT's trustee [FAC, ¶7]; and (3) Lotito serves in "various capacities with respect to…. BFT…." [FAC, ¶61]. Plaintiff alleges the purpose of the conspiracy was to obtain the Disputed Claim so it could be combined with the BFT's claim against PetroHunter to strengthen the BFT's "claims and position in the PetroHunter Bankruptcy." [FAC, ¶9(b)][4]. As alleged, MAB, MEB, the BFT, and Lotito are a single economic unit, no different than a corporation and

---

[2] This case resolved whether North Carolina could tax the corpus of a trust that was administered in New York and Massachusetts solely because a beneficiary of the trust lived in North Carolina.

[3] Perhaps if the Court agrees with Plaintiff then all claims against the BFT should be dismissed because it is not an entity capable of being sued.

[4] The FAC alleges the purpose was to strengthen Defendants' "collective claioms" but BFT was the only claimant before MAB obtained the Disputed Claim.

3

76276516.2

its representatives, allegedly pursuing the single goal of improving the BFT's position in the PetroHunter bankruptcy for the benefit of itself and its beneficiaries. Consequently, they do not satisfy the two or more people required for a conspiracy.

The intra-corporate doctrine recognizes that an entity can only act through its representatives and it would not be appropriate to find the "two or more people" element satisfied when the only participants are the entity and its representatives. This doctrine stems from basic agency principles that "attribute the acts of agents of a corporation to the corporation, so that all of their acts are considered to be those of a single legal actor. *Dickerson v. Alachua County Com'n*, 200 F.3d 761, 767 (11th Cir. 2000).

> When two agents of the same legal entity make an agreement in the course of their official duties, however, as a practical and legal matter their acts are attributed to their principal. And it then follows that there has not been an agreement between two or more separate people.

*Ziglar v. Abbasi*, 137 S.Ct. 1843, 1867 (2017). This is the situation presently before the Court.

Plaintiff next argues that, even if MAB and the BFT do not constitute two or more people, the inclusion of Lotito satisfies this requirement. Plaintiff now claims Lotito acted more than just for the benefit of the BFT, but the allegations of the FAC do not support that. Whether Lotito has served in other capacities with MAB or his companies has no bearing on his purported involvement in this conspiracy. With respect to this conspiracy, as alleged, Lotito's involvement only plausibly relates to an effort to benefit the BFT. As clearly set forth in the FAC, Plaintiff alleges MAB, the BFT Parties, and Lotito conspired to obtain the Disputed Claim to "add [the Disputed Claim] to the bankruptcy claims held by the BFT in order to strengthen Defendants' collective claims and position in the PetroHunter Bankruptcy." [Doc. #16, ¶9(b)]. Said another way, Plaintiff alleges Defendants' purpose in obtaining the Disputed Claim was to strengthen

4

claims the BFT already possessed and potentially increase the value of those claims. With that goal, the only logical reason for Lotito's involvement is because he "serve[s] in various capacities with respect to ….. BFT." [FAC, ¶61] His involvement in any other MAB-related entity would not incentivize him to try to improve the BFT's position in the PetroHunter bankruptcy; and Plaintiff did not allege it would.

Plaintiff next suggests the Motion to Dismiss "adds facts from outside the pleadings." The allegedly added "facts" include that MAB controls the BFT, that Lotito served in various capacities with the BFT, and that the conspiratorial efforts were to benefit the BFT. It is noteworthy that page 6 of the Response complains these facts were not included in the pleadings, yet page 7 of the Response takes the opposite position admitting, "Plaintiff alleged that [MAB] asked Plaintiff to sell him his bankruptcy claim for the clear purpose of strengthening the BFT's bankruptcy claims….which [MAB] controls." Plaintiff cannot have it both ways. A simple reading of the Motion to Dismiss confirms that every "fact" relied on in the Motion to Dismiss is cited to the FAC. The BFT Parties do not confess any of these "facts." Consistent with a motion to dismiss standard, the BFT Parties' position is that even if each of Plaintiff's allegations were true, his claims should be dismissed.

### 2. Plaintiff failed to plead there was a meeting of the minds.

The BFT Parties acknowledge Plaintiff alleged that (1) MAB stated he wanted the Disputed Claim to combine it with the BFT Parties' claims and (2) that Lotito told Plaintiff that MAB intended to pay him. The defect in Plaintiff's claims against the BFT Parties is that Plaintiff did not, and cannot, allege the BFT Parties were aware of, or approved, MAB's supposed plan. Said another way, Plaintiff did not establish an indicia of an agreement, let alone

5

a meeting of the minds, to defraud, steal, breach a contract or do anything else.  Even if the BFT Parties had an interest in MAB obtaining the Disputed Claim, not a single allegation in the FAC (or in Plaintiff's Response) suggests they agreed or wanted that accomplished through any improper means.  And it is noteworthy that in all of the detail Plaintiff alleged about MAB and Lotito, Plaintiff provided no such claims about the BFT's participation.

In fact, Plaintiff concedes the FAC failed to allege a meeting of the minds with the BFT Parties.  If it were not deficient, Plaintiff's response would not argue this Court should take judicial notice of Doc. #29.  By asking the Court to look outside of the pleadings to try to cure an obvious defect in the FAC, Plaintiff admits this claim should be dismissed.  And, even if this Court took judicial notice of Doc. #29, which it should not, Plaintiff's claims would not survive because judicial notice does not establish the truth of facts alleged in any documents contained in the court's record; it only establishes the documents were filed.  *McNees v. OCWEN Loan Servicing, LLC*, 2018 WL 636598, *4 (D. Colo. 2018) (noting that while a court may take judicial notice of its own files, facts that are of public record, and filings in related cases, it may do so only "to show their contents, not to prove the truth of the matters asserted therein" and further finding there that such notice was not sufficient to overcome a motion to dismiss).

Even if a court can infer an agreement, here it should not.  Other than formulaically alleging conclusory claims, Plaintiff offered no allegations that the BFT Parties had an agreement to obtain the Disputed Claim through wrongful conduct.  There is no indicia of an agreement sufficient to prove that the Defendants consciously conspired and deliberately pursued a common plan or design that resulted in a tortious act.

6

### 3. The BFT Parties did not commit an unlawful overt act.

As recited on page 10 of the Response, the FAC contains claims of various purported wrong-doing by MAB. Those claims, however, have no bearing on the alleged conspiracy to take the Disputed Claim for the purpose of strengthening the BFT's claims against PetroHunter. For example, even if MAB used the BFT to shield assets—which is denied—that has nothing to do with the conspiracy alleged in the FAC. And none of the bullet points on page 10 of the Response allege the BFT Parties did anything wrong. Although some of the allegations cast a wide net by stating "together with BFT," each allegation is obviously directed at actions by MAB or Lotito and not the BFT Parties. Plaintiff did not allege and cannot show any overt wrongful act by the BFT Parties.

### B. Plaintiff's claim for conspiracy to commit civil theft against the BFT Parties is barred by the statute of limitations.

Plaintiff agrees that there is a two-year statute of limitations for civil theft and a one-year statute of limitations for the treble damage penalty associated with civil theft. [Response, p. 11]. To escape the fact both statutes of limitations were long-expired with respect to the BFT Parties when he filed his original Complaint, let alone the FAC, Plaintiff argues: (1) his civil theft claim did not accrue until May 2020 because he claims that is when he first discovered the alleged theft; (2) the BFT Parties should be equitably estoppel from asserting a statute of limitations defense or it should be tolled; and (3) the civil theft claim alleged against the BFT Parties should relate back to the date of the original complaint. Each of these arguments is easily refuted based on Plaintiff's own allegations.

### 1. Plaintiff's civil theft claim accrued in 2017; not in 2020.

Plaintiff argues the theft did not accrue when the theft occurred but when Plaintiff knew

7

or should have known of it. [Response, §II]. In making this argument, Plaintiff conveniently ignores that he knew of the alleged theft when it occurred, and he alleged so in his Original Complaint and FAC. Consequently, the BFT Parties have an "impenetrable defense" that is based solely on the pleadings.

Plaintiff now claims he did not discover the alleged theft until May 2020. The May 2020 date correlates to when Plaintiff claims he received a bankruptcy notice of an upcoming distribution. It is not clear how a bankruptcy trustee's notice of distribution would provide notice to Plaintiff of the theft.

Plaintiff originally sued MAB on April 12, 2019, for failing to perform under the Agreement. *See generally*, Original Complaint. At that point, there can be no question that Plaintiff knew or should have known that he had a potential civil theft claim against MAB based on his allegations. Plaintiff alleged in the Original Complaint:

> Plaintiff recently learned that [MAB] may liquidate or transfer some or all of his shares in Fortem as part of a separate transaction, potentially depriving Plaintiff of the benefit of the Agreement. Thereafter, Plaintiff demanded compliance with the Agreement or assurances that [MAB] would comply. [MAB] has neither complied nor given assurances of future compliance." [Doc. #1, ¶1]

> Plaintiff has further learned that [MAB] intends to contribute $15 million worth of his shares of Fortem to third party Beetaloo Basin Partners and is liquidating or otherwise using his Fortem shares for that purpose/or for other purposes. [Doc. #1, ¶13]

> [MAB]'s contribution of his interest in Fortem to a third party is likely to deprive Plaintiff of the benefit of the Agreement. [Doc. #1, ¶14]

Plaintiff cannot escape these admissions. As of April 12, 2019, Plaintiff admits he was aware that (i) MAB was considering liquidating the Fortem shares, (ii) MAB would not provide assurance that he would honor the Agreement, (iii) MAB intended to contribute proceeds from the Fortem Shares to a third party, and (iv) that contribution was likely to deprive Plaintiff of the

8

76276516.2

benefit of the Agreement.  *At the very latest*, Plaintiff's civil theft claim accrued on the date he filed his Original Complaint, yet Plaintiff then waited until June 5, 2020, over a year later, to file the FAC and assert a civil theft claim (by virtue of an alleged conspiracy) against the BFT Parties.  During that fourteen month period, the one-year treble damage penalty associated with civil theft expired.

In reality, however, Plaintiff's civil theft claim accrued much earlier.  Plaintiff alleged MAB never intended to perform on the Agreement based on the following "several facts:"

> (a)   Under the Agreement, [MAB] agreed to pay the $25,000 cash payment within thirty days after the date of the Agreement. ***However, immediately after Plaintiff assigned his bankruptcy claim to [MAB], [MAB] advised Plaintiff that he did not have the ability to make the cash payment within such thirty-day period***; (b) Under the Agreement, [MAB] agreed to assign the Fortem Shares to Plaintiff within ten days of the date of the Agreement.  ***However, immediately after Plaintiff assigned his bankruptcy claim to [MAB], [MAB] advised Plaintiff that: (i) [MAB] did not own any Fortem shares that were freely tradable***, (ii) [MAB] would have to obtain the Fortem Shares from a third party in Europe, (iii) [MAB] did not know when any Fortem shares would be obtainable or freely-tradeable, and (iv) Despite Plaintiff advising [MAB] that Plaintiff would accept other shares or other equivalent consideration in place of the Fortem Shares, [MAB] failed and refused to make any attempt to substitute other consideration of any kind in place of the Fortem Shares.  [Doc. #16, ¶23] (emphasis added)

In short, Plaintiff alleges he had knowledge of MAB's intent to commit civil theft all based on events that occurred in August 2017.  Each of the "facts" on which Plaintiff relied occurred, "immediately after Plaintiff assigned his bankruptcy claim" to MAB, on or about August 22, 2017, when MAB purportedly told Plaintiff he would not perform.  Plaintiff also admits that *for almost three years* he sought assurances that MAB would perform but MAB "has never complied nor given any credible assurances of future compliance."  [FAC, ¶¶3 and 25].  Thus, Plaintiff actually knew the "facts" giving rise to his civil theft claim in August 2017, but failed to assert a conspiracy/civil theft claim until the FAC in June 2020.  At that point even the two-year

9

statute of limitations had long expired.

A claim for civil theft accrues, "on the date both the injury and its cause are known or should have been known by the exercise of reasonable diligence." *Tisch v. Tisch*, 439. P.3d 89, 101 (Colo. App. 2019); *see* C.R.S. §13-80-108(1). Plaintiff admits entering into the Agreement with MAB on August 16, 2017. Plaintiff also admits: (1) MAB was required to tender the Fortem shares within ten days of the Agreement; (2) MAB was required to tender payments within sixty days of the Agreement; and (3) MAB immediately advised Plaintiff that he would not perform. Thus, when MAB failed to tender the Fortem shares by August 26, 2017, Plaintiff knew he was injured and he knew the cause. Moreover, when MAB failed to tender any payments by October 26, 2017 (sixty days later), Plaintiff had additional knowledge of his alleged injury and the cause.

By October 26, 2017, *at the latest*, Plaintiff had actual knowledge that MAB failed to deliver the Fortem shares or payments required under the Agreement. Thus, Plaintiff knew he was allegedly injured and he knew MAB's failure to deliver consideration under the Agreement was the cause of the injury. Consequently, the civil theft-related claims stemming from that occurrence accrued no later than October 2017, triggering both the two-year statute of limitations to assert a civil theft claim and the one-year statute of limitations to seek the treble damages penalty. Plaintiff waited, however, until June 5, 2020 to first assert any claims against the BFT Parties. At that point Plaintiff's civil theft claim against the BFT Parties had expired eight months earlier. And Plaintiff's treble damages claim expired in October 2018, before he filed his Original Complaint.

10

**2. Nothing triggered equitable estoppel or tolling**

Plaintiff claims the statute of limitations on his civil theft claim should be equitably tolled and/or Defendants should be equitably estopped from asserting a statute of limitations defense because the statute of limitations expired as a result of Defendant's wrongful conduct.

Colorado can apply, "equitable tolling where the defendant's wrongful conduct prevented the plaintiff from asserting his or her claims in a timely manner." *Dean Witter Reynolds, Inc. v. Hartman*, 911 P.2d 1094, 1096 (Colo. 1996). However, "under Colorado law, courts rarely apply the doctrine." *Escobar v. Reid*, 668 F. Fupp2d 1260, 1272 (D. Colo. 2009). Application of equitable tolling is limited to, "situations in which either the defendant has wrongfully impeded the plaintiff's ability to bring the claim or truly extraordinary circumstances prevented the plaintiff from filing his or her claim despite diligent efforts." *Dean Witter Reynolds, Inc., supra* at 1099.

Plaintiff does not allege exceptional circumstances and instead claims Defendants impeded Plaintiff from bringing this claim. Examples of a defendant wrongfully impeding a plaintiff's ability to bring a claim include, a defendant wrongfully withholding documents that disclose a claim or are needed to assert a claim, fraudulent concealment of facts underlying the wrong, and mental incapacity resulting from an assault and battery. *Id*. at 1096 (collecting cases). Plaintiff cites no cases providing for equitable tolling based on facts similar to his.

Unlike situations where courts applied equitable tolling, here, Defendants did nothing to actually impede Plaintiff from timely asserting a claim. As explained above, Plaintiff had actual knowledge of the basis for his claim in 2017. Plaintiff chose not to initiate this lawsuit until 2019, and he chose not to amend his complaint and sue the BFT Parties until 2020. Nothing

11

changed factually for Plaintiff between August 2017 and when he initiated this action, which demonstrates Defendants did not impede his ability to assert claims. And Plaintiff's claims that he made this decision to delay bringing this action because someone— other than MAB— told him MAB intended to perform on the Agreement is directly refuted by his admission that for three years (i) MAB never said he would perform and (ii) MAB refused to provide any assurance that he would. [FAC, ¶¶3 and 25]. In these circumstances, Defendants—and especially the BFT Parties— did nothing to impede Plaintiff from asserting his claims and equitable tolling is not applicable.

A similar argument was rejected in *Branch v. United Parcel Service*, 2019 WL 3940934, *2 (D. Colo. 2019. Although summary in nature, *Branch* noted, "[i]n his objection, plaintiff argues that equitable tolling is appropriate in cases where the plaintiff has been deemed to be mentally incompetent at the time and the parties were engaged in good faith negotiation[] to resolve [the] dispute." *Id.* (internal quotes omitted). The court determined that standard did not apply in Colorado and those circumstances did not establish entitlement to equitable tolling. *Id*. Plaintiff's similar claim that the limitation period should be tolled because Plaintiff was told MAB would honor his obligations should also be rejected.

Plaintiff cites two cases arguing his equitable estoppel argument raises, at least, a question of fact. Both are distinguishable. In *Wensleydale Way, Inc. v. Fleet Car Lease Inc.*, 2019 WL 295674 (D. Colo. 2019), the defendant allegedly concealed documentation that would have shown payment violations under an agreement. That is an example of a defendant impeding a plaintiff that does not exist in this case. Here conversely, Plaintiff knew and possessed all information he needed to assert a claim in 2017. Likewise, *Campbell v. Milyard*,

12

2010 WL 3023368 (D. Colo. 2010) involved a *pro se* inmate who was delayed in pursuing claims related to medical treatment because (1) he was required to exhaust administrative remedies and (2) of representations of forthcoming treatment. Here, unlike in *Campbell*, Plaintiff is a lawyer and had representation at all relevant times. And, Plaintiff admits that for three years MAB refused to provide any assurance that he would perform. [FAC, ¶3 and 25].

Plaintiff also argues the BFT Parties should be equitably estopped from asserting a statute of limitations defense. Although Plaintiff recites the elements of equitable estoppel, he does not apply those elements to the facts. [Response, p. 14]. Consequently, he failed to satisfy his burden of proof and the Court should reject this argument. Plaintiff cited *Cork v. Sentry Ins.*, *194 P.3d 422, 427 (Colo. App. 2008)*, which noted, "equitable estoppel[] is not favored…." and then rejected plaintiff's equitable estoppel claim. Equitable estoppel should be rejected here too because, as with equitable tolling, Defendants did not conceal or misrepresent anything that impeded Plaintiff's ability to pursue his claims. To the contrary, Plaintiff was aware of his claims in 2017 and sought assurances for almost three years but MAB refused to provide any assurances that he would perform.

3. **Plaintiff's civil theft claim against the BFT Parties does not relate back to the filing of the Original Complaint.**

As an initial matter, even if relation back applies, that does not save Plaintiff's claim for treble damages, which is subject to a one-year statute of limitations that expired before the Original Complaint was filed.

"In order for an amendment adding a new party to relate back to the date of the original complaint under Rule 15(c), all the conditions set forth in F.R.Civ.P. 15(c) must be met." *Watson v. Unipress, Inc.*, 733 F.2d 1386, 1389 (10th Cir. 1984). When adding new parties, for an

13

76276516.2

amendment to relate back to the date of the original pleading, the plaintiff also must establish: "(1) same transaction or occurrence; (2) the new party had notice of the *action*, prior to the expiration of the statute of limitations; and (3) he knew or should have known that but for a mistake in identity the action would have been brought against him." *Id.* at 1390 (emphasis added).

Here, Plaintiff seeks to add new parties so he must—but cannot— satisfy these additional requirements. First, Plaintiff cannot establish—and did not even argue—the BFT Parties had knowledge of this *action* prior to the expiration of the statute of limitations. Rather, Plaintiff argued the BFT Parties "had notice of the *claims* at and before filing of the original complaint." [Response, p. 16, subpara. 2. (emphasis added)]. Even accepting Plaintiff's position, notice of the claims does not satisfy Rule 15(c). For relation back, the BFT Parties needed to have notice of the action, not notice of the claims, and Plaintiff does not argue such notice was given. Second, Plaintiff does not claim the BFT Parties knew that but for a mistake concerning the identity of the proper party, the action would have been brought against them. He does not claim a mistake at all. [Response, p. 16, subpara. 3. (emphasis added)]. The reason is clear, there was no mistake concerning the proper party to this action. Plaintiff was aware of claims and properly chose to sue MAB in the Original Complaint, because the Original Complaint involved a dispute over an Agreement to which the BFT Parties are not a party.

Plaintiff also suggests that MAB and the BFT Parties are one-and-the-same based on the BFT Parties argument that Plaintiff's conspiracy claim fails due to the intra-corporate doctrine. The BFT Parties make that argument based on the allegations contained in the FAC, not as an admission regarding Plaintiff's claim that MAB controls the BFT. But either way, the BFT

14

Parties should prevail on their Motion to Dismiss. If they are one-and-the same, then the intra-corporate doctrine precludes Plaintiff's conspiracy claim. If they are not, then Plaintiff's FAC cannot relate back and Plaintiff's civil theft claim (at least) is precluded by the statute of limitations. And more appropriately, both the intra-corporate doctrine applies and Plaintiff's FAC does not relate back.

## V. CONCLUSION

As noted in the Motion to Dismiss, the Court should not countenance Plaintiff's blatantly over-pled complaint. Whether MAB breached a contract or not, factually the BFT Parties were not a party to that contract and they had no involvement with it whatsoever. The Court should dismiss the BFT Parties from this action. As a matter of law, there could not have been a conspiracy between the BFT and its representatives because, legally, they are the same. Additionally, Plaintiff failed to allege fraud with particularity and he failed to plead a meeting of the minds or unlawful act other than with a formulaic recitation of the elements of conspiracy. To the extent the Court does not dismiss the conspiracy claim outright, it still should dismiss the civil theft claim and conspiracy to the extent it is based on civil theft because the statute of limitations on civil theft expired long before Plaintiff initiated this action.

WHEREFORE, the Court should dismiss with prejudice all claims Plaintiff asserted against the BFT Parties (civil conspiracy and declaratory relief[5]) pursuant to Rule 12(b)(6). The BFT Parties renew their request for the Court to award BFT Parties with all fees and costs incurred defending both Plaintiff's frivolous claims in this action, including fees and costs incurred in this action and in the bankruptcy court proceedings wherein Plaintiff attempted to

---

[5] Although Plaintiff's claim for declaratory relief states it is against all Defendants, the only relief sought pertains to the Disputed Claim, in which the BFT Parties have no interest.

76276516.2

prevent the distribution of the funds to BFT Parties.

      Respectfully submitted this 29th day of January, 2021.

                                      POLSINELLI PC

                                      */s/     William R. Meyer*
                                      William R. Meyer, #34012
                                      1401 Lawrence Street, Suite 2300
                                      Denver, CO 80202
                                      Telephone: 303-572-9300
                                      Email: wmeyer@polsinelli.com

                                      *Attorneys for Defendants The Bruner Family Trust and Marc. E. Bruner, as Trustee for the Bruner Family Trust*

16

**CERTIFICATE OF SERVICE**

I hereby certify that on this 29th day of January, 2021, a true and correct copy of the foregoing document was electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all attorneys of record.

/s/ William R. Meyer

17

76276516.2