**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 19-CV-01091-RM-NRN

DAVID E. BRODY,

        Plaintiff,

  v.

MARC A. BRUNER, et al.,

        Defendants.

---

**DEFENDANTS THE BRUNER FAMILY TRUST AND MARC E. BRUNER, AS
TRUSTEE OF THE BRUNER FAMILY TRUST'S
RESPONSE TO PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS**

---

      Defendants The Bruner Family Trust ("BFT") and Marc E. Bruner ("MEB"), as Trustee of the BFT (together, the "BFT Parties"), Respond to Plaintiff's Motion for Partial Judgment on the Pleadings or, Alternatively, For Partial Summary Judgment (the "Motion") as follows.

**I.    SUMMARY**

      Plaintiff seeks relief under Rules 12(c) and 56(c). He is not entitled to relief under either rule. He is not entitled to Relief under Rule 12(c), which seeks judgment on the pleadings, because his motion is premature in that the pleadings plainly are not closed. He is not entitled to judgment under Rule 56(c) because questions of material fact preclude such relief. For example, there is a question as to whether the contract on which Plaintiff is suing MAB is void because it is a business transaction between a lawyer and client for which Plaintiff cannot establish compliance with Rule 1.8(a) of the Colorado Rules of Professional Conduct ("RPC"). And even if Plaintiff can establish a breach of contract occurred, which he cannot, he cannot prevail on his damage claim under Rule

1

78370781.2

56 because his damage model is unsupported based on his own pleadings and affidavits. Consequently, the Court should deny the Motion.

## II.     ARGUMENT

### A.     Plaintiff is not entitled to relief under Rule 12(c) because the pleadings are not yet closed.

F.R.C.P. 12(c) states:

> (c) Motion for Judgment on the Pleadings. <u>After the pleadings are closed</u>—but early enough not to delay trial—a party may move for judgment on the pleadings. (underlining added)

Rule 7(a) provides that the pleadings are closed upon the filing of a complaint and answer, unless a counterclaim, cross-claim or third-party claim is interposed, in which event the filing of a reply, cross-claim answer, or third-party answer normally will mark the close of the pleadings. *See also*, 5A, <u>Wright and Miller</u>, *Federal Practice and Procedure* § 1367 at fn 12 (1990). Here, the pleadings are not closed because <u>none of the defendants</u> have fully answered Plaintiff's Amended Complaint. First, the BFT Parties timely filed a Rule 12(b) motion to dismiss all claims asserted against them, which is still pending. Consequently, the BFT Parties have not yet answered at all. Second, MAB joined, in part, in the BFT Parties' motion to dismiss (*see* Doc. #68, ¶¶61-65) so he has not answered Plaintiff's civil conspiracy claim. Thus, the pleadings are not closed with respect to any defendant.

Anticipating that Plaintiff may claim the pleadings are closed as between Plaintiff and MAB, that argument fails. First, as noted above, the pleadings between Plaintiff and MAB are not closed because MAB joined, in part, in the BFT Parties' motion to dismiss. But second, the Court cannot look only at the status of the pleadings between Plaintiff and one defendant when determining whether the pleadings are closed. Rule 12(c) plainly states that a motion for judgment

2

78370781.2

on the pleadings can only be asserted after "the pleadings are closed." Even if the BFT Parties alone had filed the motion to dismiss, Plaintiff could not seek judgment on the pleadings because with the pleadings still open the BFT Parties could file an answer that would affect the relief Plaintiff seeks. Said another way, once the BFT Parties answer, their answer could include "well-pled factual allegations" and "reasonable inferences" and/or "material issues of fact" that preclude entry of judgment on the pleadings.

Other courts have addressed similar situations and found the pleadings remained open and therefore denied a Rule 12(c) motion because it was premature. For example, in *Gorenc v. Klaassen*, 2009 WL 2523566 (U.S. Dist. KS 2019)[1] a defendant moved for judgment on the pleadings before other defendants filed their answers and the court denied the motion because the pleadings were not yet closed. *Id*. at *1. The court reasoned that when a plaintiff files an action against multiple defendants, "[t]he pleadings are not closed until all defendants have filed an answer, even when one defendant has filed a motion to dismiss instead of an answer….And, until all defendants have filed an answer, "a remedy under Rule 12(c) is not available" *Id* at *2 (citations omitted); *see also Santa Fe Alliance for Public Health and Safety v. City of Santa Fe, NM*, 993 F.3d 802 at fn 3 (Tenth Cir. 2021) ("a Rule 12(c) motion would have been premature because the pleadings were not closed where the other two defendants filed Rule 12(b) motions and had not filed answers").

Here, Plaintiff cannot avoid the fact that the pleadings are not closed and that his Motion, therefore, is premature and should be denied.

---

[1] Collecting authorities standing for the proposition that the pleadings are not closed until all defendants file an answer.

3

### B. Plaintiff is not entitled to relief under Rule 56(c)[2] because of disputed questions of material fact.

#### 1. There is a question of material fact regarding whether the contract on which Plaintiff seeks judgment is void.

Rule 1.8 of Colorado's Rules of Professional Conduct precludes a lawyer from entering into a business transaction with a client unless the lawyer satisfies certain requirements. If the lawyer fails to satisfy those requirements, the contract is presumptively void. *Calvert v. Mayberry*, 440 P.3d 424, 430 and 432 (Colo. 2019) ("we hold that when an attorney enters into a contract without complying with Rule 1.8(a), the contract is presumptively void as against the public policy underlying the Rule"). This is because, in part, of the unbalanced nature of the attorney-client relationship and lawyers potentially wielding inherent advantage and influence over a client. *Id.* at 431; *see also* RPC 1.8 comment 1   Rule 1.8(a) is "designed to protect clients from being taken advantage of in a financial transaction by someone with whom they share confidential information and on whom they rely for advice." *Id.* All of these considerations apply to Plaintiff convincing MAB to enter into the Agreement.

RPC Rule 1.8 states:

(a) A lawyer shall not enter into a business transaction with a client or knowingly acquire an ownership, possessory, security or other pecuniary interest adverse to a client unless:
    (1) the transaction and terms on which the lawyer acquires the interest are fair and reasonable to the client and are fully disclosed and transmitted in writing in a manner that can be reasonably understood by the client;
    (2) the client is advised in writing of the desirability of seeking and is given a reasonable opportunity to seek the advice of independent legal counsel on the transaction; and

---

[2] All of the following bases to deny Rule 56 relief apply equally to Plaintiff's Rule 12(c) motion.

4

78370781.2

> (3) the client gives informed consent, in a writing signed by the client, to the essential terms of the transaction and the lawyer's role in the transaction, including whether the lawyer is representing the client in the transaction.

Plaintiff admits he entered into a business transaction with MAB. (MSUMF 1). The next question is whether MAB was Plaintiff's client. An attorney-client relationship is "established when it is shown that the client seeks and receives the advice of the lawyer on the legal consequences of the client's past or contemplated actions." *People v. Bennett*, 810 P.2d 661, 664 (Colo. 1991) (citing *People v. Morley,* 725 P.2d 510, 517 (Colo.1986)). The relationship may be inferred from the conduct of the parties. *Id.* The proper test is a subjective one, and an important factor is whether the client believes that the relationship existed. *In re Petrie,* 154 Ariz. 295, 299–300, 742 P.2d 796, 800–01 (1987).

Although Plaintiff obviously denies being MAB's lawyer[3], his denial is not credible and the Court can reasonably infer from the evidence before it that Plaintiff and MAB had an attorney-client relationship for years, since 1999 through August 2017 when they signed the Agreement. The following facts cannot be disputed because they come from Plaintiff's declarations:

- Plaintiff was a partner at Patton Boggs from 1999 through 2012. (OSUMF 15).
- Patton Boggs formed PetroHunter for MAB in 2005. (OSUMF 16).
- Patton Boggs represented MAB in the formation of the BFT. (OSUMF 17).
- Plaintiff "played an important role for [MAB's] companies as <u>his</u> primary legal advisor from 2004 through 2009…." (OSUMF 18) (underline added).
- From July 2004 through March 2018, Plaintiff "represented several of MAB's oil

---

[3] Plaintiff denied that in his capacity as an attorney with the firms of Patton Boggs LLP and Hogal Lovells US LLP that he represented MAB personally. (Doc. 20-3, ¶9). Such a conclusory denial is not credible and should be disregarded. And to the extent Plaintiff's firms represented MAB and his companies, the representation should be imputed to Plaintiff.

5

78370781.2

- and gas companies…." (OSUMF 19).

- From 2005 through 2009, Plaintiff was "available 24/7 to respond to [MAB's] legal and business issues that arose daily…." (OSUMF 20).

- Plaintiff had a large and talented team of attorneys available to MAB at Patton Boggs to address the various aspects of his companies' businesses. (OSUMF 21).

- Plaintiff has been senior counsel at Hogan Lovells US LLP since January 2013. (OSUMF 22).

- In July 2017, Hogan Lovells resumed representation of two of MAB's companies. (OSUMF 23).

- Plaintiff recognized an apparent conflict of interest between him and the BFT as a competing creditors in the PetroHunter Bankruptcy. (OSUMF 24).

- Plaintiff disclosed to Hogan Lovells that he entered into the Agreement with MAB. (OSUMF 25).

- Plaintiff has known MAB since 2004, and had over a 16-year relationship with MAB and his business enterprises. (OSUMF 26).

- From 2004 to 2011 Plaintiff "represented Marc A. Bruner's companies…." and "traveled with [MAB] on numerous occasions for business meetings at his residences in Vancouver and Zurich…." (OSUMF 27).

- Based on his purported business dealings with MAB, Brody signed an affidavit attesting to MAB's personal bank accounts, and his personal ownership in several companies. (OSUMF 28).

Plaintiff's representation of MAB is reasonably inferred and confirmed from Plaintiff's above admissions. First, Plaintiff admits he recognized an apparent conflict of interest in him pursuing a claim against PetroHunter at the same time as the BFT. This only could be a conflict if Plaintiff believed he represented MAB or the BFT. And based on that conflict, Plaintiff disclosed to his own law firm, Hogan Lovells, that he entered into a business transaction with MAB. He made that disclosure because MAB was a client. It is inconceivable that he made that disclosure to his own law firm yet failed to comply with RPC 1.8's disclosure requirements to

6

MAB.

The history of Plaintiff's and MAB's relationship further confirms the attorney-client relationship. Plaintiff and MAB had a personal and professional attorney-client relationship for almost two decades. Plaintiff was MAB's primary legal advisor and responded to MAB "24/7." Plaintiff supplied MAB with a team of attorneys and provided regular advice to MAB for all of MAB's affairs including MAB's companies. Plaintiff was a partner at Patton Boggs when it formed the BFT and PetroHunter <u>for MAB</u>. Plaintiff's representation required him to travel extensively around the world with MAB on high dollar matters for MAB's companies. Through his representation, Plaintiff obtained information about MAB's personal bank accounts and his personal ownership in various companies, which Plaintiff disclosed in his two declarations.

Plaintiff also produced documents in this action that support the reasonable inference that he represented MAB. For example, Plaintiff produced an email in which he advised that he was "an attorney with Hogan Lovells in Denver" and was contacting the recipient "at [MAB's] request" to direct the recipient of the email to transfer MAB's shares in Fortem to Plaintiff. (OSUMF 29) To the extent that through this statement Plaintiff did not admit he was MAB's lawyer, at the very minimum, Plaintiff strongly implied that he was MAB's lawyer by stating that he was an attorney at Hogan Lovells calling on behalf of MAB and that MAB directed him to have the Fortem shares transferred.

Based on the foregoing, it is clear that both Plaintiff and MAB subjectively thought, acted among them, and plainly held themselves out to the world as if they were in an attorney-client relationship. But even if the Court does not conclusively decide whether MAB was Plaintiff's client yet, at least, this is a question of material fact that precludes Rule 56 relief because—if so—

7

Plaintiff was required to comply with RPC 1.8(a) or the Agreement is presumptively void. *See Calvert, supra.* To rebut this presumption, Plaintiff must show that the Agreement does not offend the public policy considerations underlying Rule 1.8(a) meaning (1) the terms of the agreement were fair and reasonable, (2) the terms of the agreement were unambiguous, and (3) he did not overreach or unduly influence MAB into entering the Agreement. *See Calvert, supra*, at 432 & 433. As set forth below, Plaintiff cannot rebut the presumption that the Agreement is void.

Plaintiff cannot show that the transaction (i.e. the Agreement) was fair or reasonable. The Agreement contemplated MAB purchasing Plaintiff's bankruptcy claim against PetroHunter <u>for full value</u>. That alone is not fair or reasonable because general unsecured claims in a bankruptcy are rarely, if ever, paid at full value and in 2017, when the Agreement was signed, there was no indication the PetroHunter bankruptcy estate would pay any claims. Having MAB agree to pay full value for an unsecured claim resulted in a total windfall to Plaintiff while putting the full risk of non-payment on MAB. Plaintiff's scheme to foist the Disputed Claim on MAB at face value was an impermissible overreach.

Plaintiff claims that MAB wanted the bankruptcy claim to establish standing so he could participate in the PetroHunter bankruptcy (*see e.g.* Doc. 29-3, ¶30). Even if that were true, however, then Plaintiff should have advised MAB that smaller claims were available from other creditors of the bankruptcy estate that also could have conferred standing. Schedules from the PetroHunter Bankruptcy show numerous secured and unsecured claims that MAB could have purchased for significantly less than Plaintiff's claim[4]. (OSUMF 30). Instead, taking Plaintiff's allegations and interpretation of the Agreement as true, Plaintiff convinced MAB to pay full value

---

[4] The Court can take judicial notice of filings from this District's Bankruptcy Court.

8

to purchase Plaintiff's claim and dispose of Plaintiff's risk of non-payment in the bankruptcy. And to the extent Plaintiff claims he fully disclosed all of this to MAB (*e.g.* the fact he was paying full value, that there might be ways that MAB could gain standing such as by purchasing a different smaller claim, or purchasing a portion of another claim), it had to be in writing, but Plaintiff cannot produce any such writing showing compliance with RPC 1.8(a)(1).

Next, Plaintiff cannot show that he advised MAB in writing of the desirability or option for MAB to seek independent legal counsel regarding the Agreement or that MAB was given reasonable opportunity to seek such advice. Plaintiff produced one email, dated August 15, 2017, in which Plaintiff told MAB to speak with another attorney. (OSUMF 33). That advice, however, must be read in context to understand it. Plaintiff was not advising MAB to seek legal counsel with respect to the terms of the Agreement. Instead, Plaintiff was referring MAB to counsel to assist in the PetroHunter Bankruptcy *after* they signed the Agreement. Plaintiff was simply advising MAB to use the same lawyer Plaintiff had been using to pursue the bankruptcy claim. In that same email chain, Plaintiff had already offered to send MAB his signature on the Agreement without having told MAB to seek independent legal counsel. *Id.* Plaintiff did not, as he was required to do, advise MAB in writing to seek independent legal counsel about the terms of the Agreement or give MAB time to obtain such counsel.

Finally, there is no evidence that MAB gave informed consent to Plaintiff, in writing, to the essential terms of the Agreement or Plaintiff's role in the transaction. Even if the Court determines Plaintiff's email about speaking with counsel satisfied Plaintiff's obligation under RPC 1.8(a)(2), Plaintiff cannot produce a writing signed by MAB giving informed consent as to the terms of the Agreement associated with Plaintiff's underhanded attempt to obtain full value for a

9

bankruptcy claim whose value was significantly if not disproportionately less than full value.

In short, Plaintiff had an obvious conflict of interest in a transaction with a client and that renders the Agreement void. Consequently, the Court should deny Plaintiff's Motion.

### 2. There is a question of material fact regarding Plaintiff's claimed damages.

Waiver is the intentional abandonment of a known right. The elements are (1) an existing right, (2) knowledge of such right, (3) and an intention to relinquish or surrender it. *Yates v. American Republics Corp*. 163 F.2d 178, 179 (10th Cir. 1947). Whether a party intended to waive a right is a question of fact left to the court or jury. *Id*. at 180.

Here, Plaintiff claims he is entitled to recover damages based on the value of the 150,000 shares of Fortem Resources (the "Fortem Shares") at either the time they were to be delivered or a high-watermark occurring about a month later. Plaintiff's claim fails because he waived any ability to recover the value of the Fortem Shares on those dates by repeatedly offering to accept the shares later, after they had declined in value. Plaintiff readily admits that between August 2017 and (at least) March 2020, he offered to accept alternative consideration so there is a question of fact Plaintiff's purported damages. (OSUMF 31)

Plaintiff filed a declaration in which he swore, "I have told MAB that I would accept other consideration in lieu of the Fortem Shares…." (OSUMF 31). Plaintiff reiterated this in his supplemental declaration in which he admitted that through March 2020, "I repeatedly told [MAB] I would accept substitute consideration…." (OSUMF 31). This is consistent with Plaintiff's other admissions. In the Amended Complaint, Plaintiff admits, "[f]rom time-to-time after the date of the Agreement, Plaintiff advised [MAB] that Plaintiff would accept other shares or other equivalent consideration in place of the Fortem Shares…." (OSUMF 31). If Plaintiff was willing

10

to accept other consideration, then – at least—there is a question of fact about the value of such consideration that precludes entry of judgment.

Additionally, the value of the Fortem Shares was less than Plaintiff claims on August 28, 2017 (OSUMF 11) and it plummeted to below $2.00 during the time period Plaintiff was asking that the shares be turned over or alternative consideration be paid. (OSUMF 14). Because Plaintiff later offered to accept either the Fortem Shares or alternative consideration, his damages, if any, are capped at the value of those shares when he admits he would have accepted them between August 2017 and March 2020. Plaintiff's claim that he intended to sell the Fortem Shares when, in retrospect, they were at their highest value, is self-serving and not credible.

Also, undermining Plaintiff's claim is that, in addition to being MAB's lawyer, he was Fortem's lawyer. (OSUMF 32). The transaction underlying Plaintiff's claim involves him entering an agreement with his client, MAB, to facilitate Plaintiff taking an ownership interest in his other client, Fortem. In addition to creating another RPC 1.8 issue for Plaintiff, as Fortem's lawyer he knew the shares might be impossible to convey or the transfer could be delayed. It is reasonably inferable that this is why Plaintiff was willing to accept alternative consideration, because he knew performance under the Agreement was impossible. *See generally Madison Park Townhouses Homeowners Assoc. v. County Mutual Insurance Co.*, 2015 WL 5221515, *7 (U.S. Dist. Colo. 2015) (discussing impossibility of performance). The defense of impossibility also precludes entry of judgment. Regardless of theory, Plaintiff failed to present credible evidence of his damages and his Motion should be denied.

### III.   CONCLUSION

The BFT Parties request the Court deny Plaintiff's Motion in full. It is premature for a

11

78370781.2

Rule 12(c) motion because the pleadings are not closed.  With respect to Plaintiff's motion under Rule 56, questions of fact preclude entry of judgment.

Respectfully submitted this 18th day of June, 2021.

          POLSINELLI PC

          */s/ William R. Meyer*
          William R. Meyer, #34012
          1401 Lawrence Street, Suite 2300
          Denver, CO 80202
          Telephone: 303-572-9300
          Email: wmeyer@polsinelli.com

          *Attorneys for Defendants the Bruner Family Trust and Marc. E. Bruner, as Trustee for the Bruner Family Trust*

12

**CERTIFICATE OF SERVICE**

I hereby certify that on this 18th day of June, 2021, a true and correct copy of the foregoing document was electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all attorneys of record.

*/s/ William R. Meyer*

13

78370781.2