IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 19-cv-01091-RM-NRN

DAVID E. BRODY,

Plaintiff,

v.

MARC A. BRUNER,
THE BRUNER FAMILY TRUST, and
MARC E. BRUNER, AS TRUSTEE OF THE BRUNER FAMILY TRUST

Defendants.

### DEFENDANT MARC A. BRUNER'S RESPONSE TO PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS

Defendant Marc A. Bruner ("MAB") hereby submits his Response to Plaintiff's Motion for Judgment on the Pleadings, as follows.

### INTRODUCTION

Judgment on the pleadings cannot enter for four separate and independent reasons. First, Plaintiff was MAB's long-time personal and professional attorney. Colorado law dictates that any business transaction between attorney and client (such as the one at issue here) is presumptively void as against public policy if it violates Rule 1.8 of the Colorado Rules of Professional Conduct ("Rule 1.8"). Because Plaintiff did not comply with Rule 1.8, the underlying agreement is void as against public policy. Second, Plaintiff waived his rights under the agreement by affirmatively telling MAB that he was content to wait for the transfer of the Fortem shares. Third, judgment on the pleadings cannot enter because such relief would be procedurally improper at this point based

1

on the present posture of this case. Fourth and finally, judgment should not enter because Plaintiff has failed to present adequate and non-speculative evidence of Plaintiff's claimed damages under Colorado law. For these reasons, genuine dispute of fact exist throughout this case, and judgment on the pleadings or, alternatively, summary judgment are both inappropriate.

## STANDARD OF REVIEW

Fed. R. Civ. P. 12(c) provides: "[a]fter the pleadings are closed--but early enough not to delay trial--a party may move for judgment on the pleadings." A motion for judgment on the pleadings is treated as a motion to dismiss under Rule 12(b)(6). *Atl. Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1160 (10th Cir. 2000). Under this standard, the court must accept all the well-pleaded allegations of the complaint as true and construe them in the light most favorable to the non-moving party. *Realmonte v. Reeves*, 169 F.3d 1280, 1283 (10th Cir. 1999). The defendant can succeed only "when it appears that the plaintiff can prove not set of facts in support of the claims that would entitled the plaintiff to relief." *Mock v. T.G. & Y. Stores Co.*, 971 F.2d 522, 528 (10th Cir. 1992). The determination of a Rule 12(c) motion is confined to the pleadings and to any documents attached as exhibits to the pleadings, including the defendant's answer. *Oxendine v. Kaplan*, 241 F.3d 1272, 1275 (10th Cir. 2001).

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it is essential to the proper disposition of the claim under the relevant substantive law. *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231-32 (10th Cir. 2001). A dispute is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee, Okl.*, 119 F.3d 837, 839 (10th Cir. 1997). When reviewing

motions for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. *Id*. The moving party bears the initial burden of demonstrating an absence of a genuine dispute of material fact and entitlement to judgment as a matter of law. *Id*.

Once the movant has met its initial burden, the burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). The nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Adler v. Wal-Mart Stores*, 144 F.3d 664, 671 (10th Cir. 1998) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Id*. All facts and evidence are viewed in the light most favorable to the non-moving party. *Atl. Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1148 (10th Cir. 2000).

## ARGUMENT

### I. MAB's Affirmative Defenses Create Genuine Disputes of Fact.

MAB pleads several affirmative defenses relevant here: failure to state a claim for relief, waiver, subsequent modifications to the contract, and the contract is void against public policy.[1] These defenses relate to the formation of the contract between Plaintiff and MAB and its later modifications.

---

[1] MAB filed an Unopposed Motion to Amend [Doc. #94] and a proposed First Amended Answer [Doc. #96-1] on June 17-18, 2021, before the deadline to amend. Although MAB believes that this specific defense may not actually be an affirmative defense and/or may already be covered by the original listing of affirmative defenses in the Answer, MAB filed the Unopposed Motion out of an abundance of caution to specifically reference Rule 1.8 within the affirmative defenses listed in the First Amended Answer.

3

    A. <u>The Agreement Between Plaintiff and MAB is Void Because Plaintiff Was MAB's Attorney.</u>

        i. <u>Colorado Law Dictates That Any Business Transaction Between A Lawyer And A Client Is Void As Against Public Policy Unless The Transaction Complies With All Provisions Of Rule 1.8.</u>

Rule 1.8 of Colorado's Rules of Professional Conduct precludes a lawyer from entering into a business transaction with a client unless the lawyer satisfies several specific requirements. The contract is presumptively void as against public policy if the lawyer fails to meet those requirements. *Calvert v. Mayberry*, 440 P.3d 424, 430 and 432 (Colo. 2019). In this way, the rule protects against a lawyer exercising undue influence and his position of power over a disadvantaged, less sophisticated client. *Id.* at 431; *see also* RPC 1.8 comment 1. Thus, Rule 1.8(a) "protect[s] clients from being taken advantage of in a financial transaction by someone with whom they share confidential information and on whom they rely for advice." *Id*.

In *Calvert*, the Colorado Supreme Court recently addressed a business transaction between an attorney and a former client. 440 P.3d at 427. The attorney, Calvert, entered into a business transaction with his former client, under which he gave her approximately $193,000. *Id.* at 428. He later alleged the funds were to be repaid after a sale of the former client's house. *Id.* He did not advise the client to seek independent legal advice or otherwise take the steps required under Rule 1.8. *Id.* at 428-30. The Court discussed the important public policy considerations behind Rule 1.8, including the need to protect clients from the "unbalanced" attorney-client relationship. *Id.* at 431-32. In considering cases from other jurisdictions as well as Colorado's own public policy interests, the Court held that a contract that violates Rule 1.8(a) is presumptively void. *Id.*

4

at 432.[2]

Under RPC 1.8(a), a lawyer engaging in a business transaction with a client must fulfill all three of the following requirements:

> (1) the transaction and terms on which the lawyer acquires the interest are fair and reasonable to the client and are fully disclosed and transmitted in writing in a manner that can be reasonably understood by the client;
>
> (2) the client is advised in writing of the desirability of seeking and is given a reasonable opportunity to seek the advice of independent legal counsel on the transaction; and
>
> (3) the client gives informed consent, in a writing signed by the client, to the essential terms of the transaction and the lawyer's role in the transaction, including whether the lawyer is representing the client in the transaction.

### ii. *Plaintiff Brody Was MAB's Long-Time Personal And Professional Attorney.*

MAB has known Plaintiff for over 20 years. Statement of Additional Facts ("SAF") ¶ 14. Throughout that time, Plaintiff has been a friend, confidant, and attorney of MAB. *Id.* ¶ 15. Plaintiff worked as MAB's attorney at several law firms, including Patton Boggs and Hogan Lovells. *Id.* ¶ 16. While Plaintiff worked as an attorney for business entities affiliated with MAB, he also served as MAB's personal attorney consistently over this 20-year period. *Id.* ¶¶ 16-22. For example, MAB acted as an officer or director of three entities: Ultra Petroleum, Falcon Oil & Gas, and PetroHunter. *Id.* ¶ 17. Plaintiff acted as primary legal counsel for all three entities. *Id.* ¶ 18. Plaintiff also represented MAB in negotiating, drafting, and executing several agreements

---

[2] Courts in Colorado and other jurisdictions have applied the requirements of Rule 1.8(a) to both current and former clients, as well as to personal and business interests. *See, e.g., In re Berg*, 387 B.R. 524 (Bankr. N.D. Ill. 2008) (discussing 20-year relationship between attorney and client in disputed transaction); *In re: Wollrab*, 420 P.3d 960 (Colo. 2018) (disputed transaction when attorney represented party in personal and business matters).

between MAB and PetroHunter, which involved personal compensation to MAB. *Id.* ¶¶ 19-22. Similarly, Plaintiff represented MAB in a multi-million dollar loan financing transaction involving Ultra Petroleum. *Id.* ¶ 20.

Plaintiff performed extensive personal legal work for MAB personally, including but not limited to: drafting legal documents, providing legal advice on personal matters, and providing legal advice on personal trust matters. *Id.* ¶¶ 19-22. Plaintiff even drafted the original trust documents for the Bruner Family Trust, also a named defendant in this lawsuit. *Id.* ¶ 20. MAB viewed Plaintiff as a trusted attorney and turned to him regularly for both business and personal matters, and MAB relied on Plaintiff's legal guidance and counsel in his personal affairs. *Id.* ¶¶ 16-22. Further, Plaintiff has consulted with other lawyers on MAB's legal team when circumstances warranted. *Id.* ¶ 22. On those occasions, MAB and his other attorneys consulted and relied on Plaintiff's advice. *Id.* Indeed, until this lawsuit was filed, MAB understood Plaintiff was currently acting as his attorney on business and personal affairs. *Id.* ¶ 23.

        iii.    <u>The Agreement Is Void As Against Public Policy For Failure To Comply With Rule 1.8.</u>

Plaintiff and MAB entered into a contract (the "Agreement") on August 16, 2017. *See* SUF #1. Under the relevant terms of the Agreement, Plaintiff transferred his claim against the PetroHunter Bankruptcy Estate to MAB. *Id.* As consideration, MAB agreed to pay Plaintiff $25,000, made in two installments, and transfer 150,000 shares in Fortem Resources, Inc. ("Fortem") to MAB. There can be no dispute that this constitutes a "business transaction" between an attorney and a client, and as such, all the requirements of Rule 1.8 must be met for the agreement to be legally valid.

6

Plaintiff failed to meet Rule 1.8(a)'s requirements when he entered into the Agreement with MAB. When negotiating the Agreement, Plaintiff failed to comply with any of Rule 1.8(a)'s three requirements. Indeed, Plaintiff first approached MAB about selling his claim in the PetroHunter bankruptcy. *Id.* ¶ 24. Plaintiff contacted MAB, explained the transaction, and stated it would be "good for [MAB]" and would benefit him by allowing MAB to participate in the PetroHunter bankruptcy. *Id.* ¶¶ 24-25. Plaintiff drafted the Agreement, facilitating a business transaction between an attorney (Plaintiff) and his client, MAB. *Id.* ¶¶ 26-27. MAB did not discuss the terms of the Agreement with any other attorney, and he believed Plaintiff was looking to protect his best interests. *Id.* ¶¶ 28-29. MAB does not recall being advised in writing to seek outside legal counsel in this transaction. *Id.* ¶ 30. Nor does he remember signing any document giving informed consent to Plaintiff's direct role in the transaction, including whether Plaintiff represented MAB. *Id.* ¶ 31. MAB does not recall signing any waiver for this transaction, or even being asked to sign one. *Id.* ¶ 32. Rather, MAB understood and believed that Plaintiff represented him in the Agreement. *Id.* ¶ 33.

Along with the Colorado Supreme Court's clear holding in *Calvert v. Mayberry*, 440 P.3d 424 (Colo. 2019), Plaintiff's own actions violate RPC 1.8. Plaintiff represented MAB, in both personal and business matters, for 20 years. When he first approached MAB about the Agreement and the purchase of his bankruptcy claim, Plaintiff told MAB it would benefit him. Considering the parties' lengthy relationship and Plaintiff's history of providing legal advice to MAB, both personally and professionally, it is logical that MAB understood Plaintiff represented his interests in the Agreement and trusted that Plaintiff, as his attorney, would protect those interests. Nevertheless, Plaintiff – an attorney bound by the Rules of Professional Conduct – failed to take

7

4847-3546-5199.6

any step under Rule 1.8. He did not advise MAB to seek independent legal counsel, give him the opportunity to do so, or provide a writing for MAB to give informed consent to the transaction. Under *Calvert* and Rule 1.8, therefore, the Agreement is void against public policy. For this reason alone, judgment on the pleadings would be improper.

    B. *Plaintiff Waived His Rights in the Agreement.*

Even accepting the Agreement is enforceable in the face of its violation of Rule 1.8, Plaintiff waived his rights, and MAB expressly pled waiver as an affirmative defense. The party asserting waiver must show a "voluntary relinquishment of a known right." *Cordillera Corp. v. Heard*, 612 P.2d 92, 93 (Colo. 1980). Mere acquiescence or inaction is insufficient. *See W. Cities Broadcasting, Inc. v. Schueller*, 830 P.2d 1074, 1079 (Colo. App. 1991). Thus, waiver typically requires some kind of affirmative conduct.

There are three important aspects related to waiver. First, at the Agreement's inception (and even before it was signed), Plaintiff understood that the shares in Fortem were not presently tradeable. SAF ¶ 34. Nevertheless, Plaintiff agreed to move forward with the transaction, and he and Bruner executed the Agreement.

Second, Plaintiff waived his right to enforce the Agreement by failing to object in the PetroHunter bankruptcy matter. On August 22, 2017, Plaintiff filed a Transfer of Claim Other Than for Security, advising the Court that he was transferring his claim to MAB. SAF ¶ 40. The Transfer expressly names MAB as the "transferee" of the claim, and Plaintiff as the "transferor." *Id.* ¶ 41. On August 25, 2017, the bankruptcy court issued a notice. *Id.* ¶ 42. The notice provides:

> The alleged transferor of the claim is hereby notified that objections must be filed with the court within twenty-one (21) days of the mailing of this notice. If no objection is timely received by the court, the transferee will be substituted as the original claimant without further order of the Court.

8

4847-3546-5199.6

*Id.* ¶ 43.  21 days from August 25, 2017 is September 19, 2017.  By Plaintiff's own statements, the Fortem shares were originally due to him on August 26, 2017.  SUF ¶ 2.  The deadline for the first payment was September 15, 2017.  *Id.* ¶ 6.  Plaintiff further states that MAB did not deliver the Fortem shares by August 26, 2017 or make payment on September 15, 2017.  *Id.* ¶ 10.  Thus, by the time the objection deadline in the bankruptcy proceeding arrived, Plaintiff was already aware of two missed deadlines and could have objected to the transfer and prevented it.  He did not.  As a result, MAB was substituted as the original claimant, as anticipated by the original transfer.

Finally, after the Agreement's execution, MAB spoke with Plaintiff on two separate occasions about its terms and the ability to transfer the Fortem shares.  *Id.* ¶ 36.  Both times, MAB told Plaintiff that he was working on being able to transfer the Fortem stock.  *Id.* ¶ 37.  Plaintiff responded only that MAB should continue to work on this part of the transaction.  *Id.* ¶ 38.  He did not make any statement about enforcing the Agreement or needing the shares immediately, or even within a particular time frame.  *See id.*  As a result, MAB understood Plaintiff did not object to the delay and agreed to the additional time.  *Id.* ¶ 39.  Plaintiff's conduct, and especially his failure to object to the bankruptcy notice (despite clear notice), amounts to affirmative statements by Plaintiff waived his right to enforce the transaction as he now attempts.

II. **The Pleadings Have Not Closed, and Judgment on the Pleadings is Procedurally Improper.**

Relief is also improper under Fed. R. Civ. P. 12(c) because the pleadings have not closed.  Fed. R. Civ. P. 12(c) provides that a party may only move for judgment on the pleadings *after* all pleadings are closed.  Under Fed. R. Civ. P. 7(a), the pleadings are closed upon the filing of a complaint and answer (or, in cases involving a counterclaim, cross-claim or third-party claim, once

9

those pleadings are answered). Here, the pleadings are not closed because <u>none of the defendants</u> have fully answered Plaintiff's Amended Complaint.

First, MAB has not answered Plaintiff's claim for civil conspiracy. *See* [Doc. #68 ¶¶ 61-65]. Instead, MAB joined the BFT Parties' Motion to Dismiss with regard to that claim. Thus, if the Motion to Dismiss is denied, MAB will still have the opportunity to submit an amended answer. Further, the BFT Parties moved to dismiss all of Plaintiff's claims. As a result, they have not answered <u>at all</u>. The pleadings are not closed with respect to any defendant, and this alone renders judgment on the pleadings inappropriate.

### III. <u>Plaintiff Asserts Only Speculative Damages.</u>

Finally, Plaintiff's requested relief and his claimed amount of damages is speculative. As the Court is aware, this case involves only state law claims. Colorado law does not allow a party to collect speculative damages. A party in a contract case is entitled only to the amount of damages necessary to make him whole. *Pomeranz v. McDonald's Corp.*, 843 P.3d 1378 (Colo. 1993). Future damages, therefore, must be established with reasonable certainty. *Id.* at 1381. "The purpose of the reasonable certainty rule is to avoid making compensatory damages awards for lost profits which are fabricated or based on mere conjecture or speculation." *Vanderbeek v. Vernon Corp.*, 50 P.3d 866, 873 (Colo. 2002) (internal quotations omitted). The rule applies where the fact, but not the amount, of damages is uncertain. *Id.* at 873. If a plaintiff cannot establish that he is entitled to an award of damages, they are too speculative and cannot be awarded. *See id.*

*Vanderbeek* is illustrative. In that case, the plaintiff asserted damages based on lost profits related to company shares. He purchased 95,000 shares of the company, and his damages related to those shares were ascertainable with reasonable certainty. *Id.* at 874. However, he also

contended that he wanted to purchase another 105,000 shares of the company, and was unable. *Id.* He claimed lost profits based on the unpurchased 105,000 shares. *Id.* Since he never purchased these shares, any related lost profits were not ascertainable with reasonable certainty and were too speculative to be awarded. *Id.*

Plaintiff's claimed damages involve lost profits: the amount he contends he would have made if he had purchased and begun trading the Fortem shares. This assumes too many speculative facts. First, Plaintiff claims he would have begun immediately trading the Fortem shares. There is no evidence to corroborate Plaintiff's statement. It is purely self-serving and relies on the same speculation as the *Vanderbeek* plaintiff. Plaintiff cannot simply state he "would have" traded the shares, particularly when there is no evidence that Plaintiff took any affirmative steps related to trading. Instead, Plaintiff recognized the delay in obtaining the shares, and he knew at the time of the Agreement's execution that the shares were not tradeable. SAF ¶¶ 34-35. His position lacks any credibility, particularly when he insists that all shares would have been traded by September 2018, at the highest value of Fortem shares. Like *Vanderbeek*, since Plaintiff never obtained the shares, his claimed lost profits from trading them are speculative, and they cannot be awarded. At the very least, Plaintiff cannot establish their value as a matter of law.

## CONCLUSION

Plaintiff's Motion for Judgment on the Pleadings fails. Judgment is wholly unwarranted because the underlying agreement – between a lawyer and a client – is void as against public policy. Furthermore, Plaintiff's own actions and inaction constitute a waiver which would bar Plaintiff's claims. Any judgment on the pleadings would be procedurally improper at this stage of the case. Finally, Plaintiff fails to present any material and non-speculative damages which

11

would be a pre-requisite to any recovery by Plaintiff. Plaintiff cannot establish his burden for either judgment on the pleadings or summary judgment, and his Motion must be denied.

WHEREFORE Defendant Marc A. Bruner respectfully requests the Court deny Plaintiff's Motion for Judgment on the Pleadings, deny entering judgment against MAB on Plaintiff's breach of contract claim, and for such other and further relief as the Court deems appropriate.

DATED this 18th day of June, 2021.

**MOYE WHITE LLP**

By: /s/ *Tanya A. Sevy*
William F. Jones
Timothy M. Swanson
Tanya A. Sevy
1400 16th Street, 6th Floor
Denver, Colorado 80202
Phone: (303) 292-2900
Email: billy.jones@moyewhite.com
tim.swanson@moyewhite.com
tanya.sevy@moyewhite.com

*Attorneys for Defendant Marc A. Bruner*

4847-3546-5199.6

# CERTIFICATE OF SERVICE

I hereby certify that on the 18th day of June, 2021, I electronically filed the foregoing **DEFENDANT MARC A. BRUNER'S RESPONSE TO PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS** with the Clerk of Court using the CM/ECF system, which was electronically served to the following:

Michael A. Rollin
FOSTER GRAHAM MILSTEIN & CALISHER LLP

*Attorneys for Plaintiff David E. Brody*

William R. Meyer
Ghislaine Bruner
POLSINELLI PC

*Attorneys for Defendants Bruner*
*Family Trust and Marc E. Bruner*

Patrick D. Vellone
Lance Henry
ALLEN VELLONE WOLF HELFRICH & FACTOR PC

*Attorneys for Interpleader Plaintiff*
*Jeffrey L. Hill, Chapter 7 Trustee of*
*PetroHunter Energy Corporation*

                                                                      */s/ Tanya A. Sevy*

4847-3546-5199.6