## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 19-cv-01091-RM-NRN

DAVID E. BRODY

Plaintiff,

v.

MARC A. BRUNER,
THE BRUNER FAMILY TRUST, and
MARC E. BRUNER, AS TRUSTEE OF THE BRUNER FAMILY TRUST

Defendants.

---

### PLAINTIFF'S RESPONSE TO DEFENDANTS' JOINT MOTION FOR ADDITIONAL TIME TO TAKE DISCOVERY PURSUANT TO FED. R. CIV. P. 56(d)

---

Plaintiff hereby responds in opposition to Defendants' Joint Motion for Additional Time to Take Discovery Pursuant to Fed. R. Civ. P. 56(d), ECF 99 (the "Motion" or the "56(d) Motion").

### REQUEST TO STRIKE FOR LACK OF CONFERRAL IN ACCORDANCE WITH THIS COURT'S PRACTICE STANDARDS

As a threshold and dispositive matter, the Court should strike the 56(d) Motion and impose appropriate sanctions on Defendants for failure to confer in accordance with this Court's Practice Standards. As set forth in the accompanying declaration of undersigned counsel, **Exhibit A**, Counsel for the Bruner Family Trust ("BFT") contacted Plaintiff's counsel by email on June 18, 2021 at 1:17 PM, ostensibly to confer about the Motion. Plaintiff's counsel responded at 2:29 PM asking what discovery Defendants wanted. After a short exchange about that, Plaintiff's counsel said he would contact Plaintiff about Defendants' request. This was 2:40 PM. Defendants filed the 56(d) Motion **17 minutes** later. *See* ECF 99 (entered on June 18, 2021 at 3:57 PM).

1

This is not reasonable, and it does not comply with this Court's Practice Standards. *See* N. Reid Neureiter, Magistrate Judge, Practice Standards for Civil Cases (rev. May 24, 2021), §§ E.1, E.3 (requiring that the parties take their conferral obligation seriously, that conferral be in person or by telephone, and that the moving party provide a reasonable amount of time to respond prior to raising a disputed issue with the Court). Nor was Defendants' certificate of conferral accurate *in any way*. It says that defense counsel was unsuccessful in reaching Plaintiff's counsel, but as shown by the email exchange attached to Exhibit A, the parties were mid-conferral when Defendants filed the Motion.

This Court's Practice Standards also provide that "[f]iling a disputed discovery motion without permission from the Court may result in the motion being stricken and the imposition of appropriate sanctions." Practice Standards, § E.3. To preserve the intended purpose of the Court's conferral requirements, ensure accurate conferral certifications, and deter future violations, Plaintiff so requests.

## INTRODUCTION

Plaintiff sold a bankruptcy claim to Marc A. Bruner ("MAB") pursuant to an August 16, 2017 contract (the "Contract"). MAB transferred the claim into his own name and used his new standing as a claimant to bolster his negotiating position with the bankruptcy trustee. *See*, *e.g.*, ECF 29-3, ¶ 30. MAB did not pay Plaintiff the Contract consideration so Plaintiff sued. Nearly four years later, MAB asserts for the first time that he should never have to pay because Plaintiff was allegedly MAB's personal lawyer. Therefore, according to Defendants, the Contract is void under Colorado Rule of Professional Conduct ("RPC") 1.8(a). ECF 98 at 4-9; ECF 100 at 4-8.

Rule 1.8(a) does not apply, and Defendants' use of the RPC is an unveiled threat to try to get Plaintiff to back away from his legitimate rights under fear of ethical repercussions. He will not, and Defendants' RPC threat against a lawyer with a sterling 47-year career to avoid a simple commercial obligation exceeds any reasonable boundaries of good conscience. What is more, Defendants' current stance directly contradicts MAB's representations to the bankruptcy court that "Brody has *effectively*

and *legally* transferred his claim to MAB…." ECF 48-1 at 19 (emphasis added). As a direct result of Plaintiff's full performance under the Contract, MAB received the claim and aggressively pursued the benefits of owning the claim and having standing in the bankruptcy court. Yet Defendants fail to include or recognize that fact while claiming in this case that the Contract is void. The Court should not tolerate MAB telling different courts different things about the same contract.

The lack of merit in Defendants' substantive position and their ethical assault aside, Defendants' Motion does not meet the Rule 56(d) standard. The Motion argues delay is necessary so Defendants can develop evidence on two points: first, whether Plaintiff complied with RPC 1.8(a) in entering into the subject agreement with MAB, and second, whether Plaintiff waived the right to assert a breach of the Contract. ECF 99 at 2.

However, no delay related to Rule 1.8(a) is necessary because even if the rule applied, MAB necessarily has the facts with which to invoke the defense. Defendants' briefing in response Plaintiff's Motion for Partial Judgment on the Pleadings or, Alternatively, for Partial Summary Judgment ("Plaintiff's Motion"), ECF 98 and 100, collectively devotes 8-9 pages of allegedly fact-based argument on this very issue and does not identify a single fact they need before they can respond. Defendants were also able to respond to each and every factual assertion made in Plaintiff's Motion and to assert allegedly undisputed facts of their own. ECF 97; ECF 101. Discovery from and a deposition of Plaintiff only serves to amplify the threat of ethical fallout and punish him for demanding payment under the contract that MAB *admittedly* entered into but failed to comply with. ECF 90 at 4 (citing MAB's Answer for these admissions); *see also* ECF 48-1 at 19 (admitting the legality of the contract).

Nor is discovery into the alleged waiver cause for delay. Defendants assert that Plaintiff waived his rights under the contract under three theories. ECF 98 at 10-11; ECF 100 at 8-9. Each theory is meritless, but, more importantly in this posture, Defendants were able to make the waiver arguments in their response briefs. *Id.*; ECF 97; ECF 101. Accordingly, the Court should deny the Motion.

3

## LEGAL STANDARD

"[A] party seeking to defer a ruling on summary judgment under Rule 56(f) must provide an affidavit explaining why facts precluding summary judgment cannot be presented." *Valley Forge Ins. Co. v. Health Care Mgmt. Partners, Ltd.*, 616 F.3d 1086, 1096 (10th Cir. 2010) (internal quotations omitted and applying Rule 56(d)'s substantially identical predecessor).[1] Such explanation "includes identifying (1) the probable facts not available, (2) why those facts cannot be presented currently, (3) what steps have been taken to obtain these facts, and (4) how additional time will enable the party to obtain those facts and rebut the motion for summary judgment." *Id.* (internal quotations omitted).

"Rule 56(d) requires…specificity; vague or conclusory statements are insufficient." *McLaughlin v. Experian Info. Sols., Inc.*, No. 16-CV-01337-RM-KHR, 2017 WL 8294271, at *2 (D. Colo. Dec. 28, 2017) (citing *Birch v. Polaris Indus., Inc.*, 812 F.3d 1238, 1249 (10th Cir. 2015); *Trask v. Franco*, 446 F.3d 1036, 1041–42 (10th Cir. 2006)). "Rule 56(d)…is not a license for a 'fishing expedition,'" *id.* (citing *JL v. New Mexico Dep't of Health*, 131 F.Supp.3d 1248, 1251 (D.N.M. 2015) (quoting *Lewis v. Ft. Collins*, 903 F.2d 752, 758 (10th Cir. 1990)), and mere "[s]peculation cannot support a Rule 56(d) motion," *id.* (quoting *F.D.I.C. v. Arciero*, 741 F.3d 1111, 1116 (10th Cir. 2013)). Rather, the requested discovery must concern facts "essential" to rebutting summary judgment. *McLaughlin*, 2017 WL 8294271, at *6.

## ARGUMENT

### I.    The Motion does not satisfy Rule 56(d).

#### A.    MAB has not submitted a declaration in support of the Motion.

Rule 56(d) requires the party seeking to defer a summary judgment ruling to show by affidavit or declaration the "specified reasons[] it cannot present facts essential to justify its opposition…." Fed. R. Civ. P. 56(d). MAB has not submitted such a declaration, which, (a) does not meet the

---

[1] *See* Fed. R. Civ. P. 56(d) advisory committee's note (2010) ("Subdivision (d) carries forward without substantial change the provisions of former subdivision (f)").

requirements of the rule and (b) confirms Plaintiff's position that MAB needs no further information before responding. This alone is basis to deny the Motion. *Rocky Mtn. Wild, Inc. v. United States Bureau of Land Mgmt.*, 455 F.Supp.3d 1005, 1015 (D. Colo. 2020) (collecting authorities).

Further, MAB demonstrably does not need discovery before responding because he has already responded, and he has asserted in his declaration what he believes the facts to be. *See* ECF 101-1. Nor does the waiver claim require delay because every fact Defendants assert for their waiver argument is a matter of record in this case, as discussed further below.

The requirement of a declaration or affidavit is not a mere technicality. It "is a separate requirement of Rule 56(d) that ensures that the party is invoking the protections of Rule 56(d) in good faith." *Rocky Mtn. Wild, Inc.*, 455 F.Supp.3d at 1015 (quoting *Handy v. City of Sheridan*, 636 F.App'x 728, 735 (10th Cir. 2016) (unpublished)). The lack of a declaration from MAB is dispositive of MAB's request because "the [C]ourt [is] not permitted to look beyond the [declaration] in considering a Rule 56(d) request." *Id.* (citing *Cerveny v. Aventis, Inc.*, 855 F.3d 1091, 1110 (10th Cir. 2017) (affirming District Court's decision not to consider the requesting party's separate summary judgment affidavits to support the Rule 56(d) request)). *See also Cmte. for First Amend. v. Campbell*, 962 F.2d 1517, 1522 (10th Cir. 1992) (refusing to accept summary judgment briefing in support of 56(d) motion).

Counsel for the BFT did file a declaration that purports, as a kind of surrogate, to advance *MAB's* reasons for delay. However, this is not proper because "Federal courts as a general rule allow litigants to assert only their own legal rights and interests, and not the legal rights and interests of third parties." *Crosby v. Nelson*, No. 12–cv–01995–PAB–KLM, 2013 WL 3866612, at *3 (D. Colo. July 26, 2013) (citation omitted); *see also Rohm & Hass Texas, Inc. v. Ortiz Bros. Insulation, Inc.*, 32 F3d 205, 208 (5th Cir 1994) (holding and citing authorities in the appellate context for the proposition that a party may not champion the rights of another, even if party as a financial stake in the other party's claims).

Furthermore, all the BFT's lawyer says about MAB is that he "would likely benefit from such discovery from Plaintiff to establish that Plaintiff subjectively believed he was MAB's lawyer as well." ECF 99 -1, ¶ 5. However, stating that MAB would "likely benefit" is not "specified reasons[] [MAB] cannot present facts essential to justify [his] opposition" and does not acknowledge or satisfy any of the four requirements articulated in *Valley Forge* and other case law.

In *Valley Forge*, the Tenth Circuit found the requesting party's affidavit lacking even where it listed the information the party requested because the affidavit failed to "identify what efforts the…Defendants had made already to obtain the information they sought, or why at least some of that information wasn't already available to them." *Valley Forge Ins. Co.*, 616 F.3d at 1096. Likewise, in *Cerveny*, the Tenth Circuit rejected an appellant's argument that the District Court abused its discretion in denying its Rule 56(d) requests because, as here, the appellant's affidavit did not "identify discovery steps that had been taken or explain how additional discovery would rebut [a] defense." *Cerveny*, 855 F.3d at 1110. *See also*, *e.g.*, *Estate of Saenz v. Bitterman*, No. 20-cv-00848-NRN, 2020 WL 6119469, at *2 (D. Colo. Oct. 15, 2020) (denying oral 56(d) motion for lack of required declaration or explanation).

Without a declaration, MAB's Motion fails under the requirements applied in this Circuit.

**B.    The Court should disregard the BFT's arguments because the discovery and delay sought by the BFT is not contemplated by Rule 56(d).**

**1.    The BFT is not an adverse party to Plaintiff's Motion.**

Plaintiff's Motion is directed solely to MAB because only Plaintiff and MAB are parties to the Contract, and MAB admitted he did not pay any of the consideration due under the Contract. The BFT's intercession is improper because only the party against whom a motion for summary judgment is made has standing to respond: "The adverse party to a motion for summary judgment may serve opposing affidavits in response to a motion for summary judgment." *Johnson v. Holmes*, No. CIV-02-1239 JB/KBM, 2004 WL 7337654, at *6 (D.N.M. Apr. 7, 2004) (interpreting Fed. R. Civ. P. 56); *see*

*also Garcia v. Estate of Arribas*, No. 04-1159-MLB, 2006 WL 8440054, at *3 (D. Kan. Jan. 25, 2006)

(disregarding briefs of co-parties against whom summary judgment was not filed).

The BFT will argue that it should be allowed to respond to Plaintiff's Motion because if MAB

is found liable on the breach of contract claim, the BFT may be held liable on Plaintiff's conspiracy

claim, which is Plaintiff's only claim against the BFT. This might fit within the *Johnson v. Holmes* analysis

but only if it were true, which it is not. In *Johnson*, the co-party against whom summary judgment was

<u>not</u> directed was allowed to respond because the specific determination at issue could have resulted

in liability to the other parties. *Johnson*, 2004 WL 7337654, at *6. Here, however, if MAB is found to

have breached the Contract with Plaintiff, only MAB will be held liable. Proving the BFT's conspiracy

requires additional elements:

> There are five elements required to establish a civil conspiracy in Colorado. There
> must be (1) two or more persons…; (2) an object to be accomplished; (3) a meeting
> of the minds on the object or course of action; (4) one or more unlawful overt acts;
> and (5) damages as the proximate result thereof.

*Walker v. Van Laningham*, 148 P.3d 391, 396 (Colo. App. 2006). Thus, a finding that MAB breached

the Contract will not result in liability to the BFT and, therefore, the Court should not permit the BFT

to intervene in the narrowly-tailored motions practice between the contracting parties.

The fact that the BFT is not really looking to defend against the conspiracy claim is borne out

in both its response brief and the 56(d) Motion, neither of which challenge the elements of civil

conspiracy. Rather, the BFT makes the same arguments as MAB against MAB's breach of contract

liability; that is, the BFT is improperly acting as MAB's champion.

If there is any doubt about whether the BFT should be permitted to respond to Plaintiff's

Motion, that doubt may be resolved with a "no" by understanding that the purpose of summary

judgment "is to determine whether trial is necessary." *E.g.*, *White v. York Int'l Corp.*, 45 F.3d 357, 360

(10th Cir. 1995). With that purpose in mind, Plaintiff filed its Motion only against MAB and only on

the breach of contract claim. If Plaintiff's Motion is successful, trial on the breach of contract claim

against MAB—and only the breach of contract claim against MAB—will not be necessary. For this reason, the only parties to Plaintiff's Motion are—or should be—Plaintiff and MAB.

> **2.     Absent a right to oppose Plaintiff's Motion, Rule 56(d) does not apply to the BFT.**

By extension, the BFT also may not avail itself of Rule 56(d), which applies where "a nonmovant shows by affidavit or declaration that, for specified reasons, [that] *it* cannot present facts essential to justify *its* opposition…." Fed. R. Civ. P. 56(d) (emphasis added). Since the BFT has no procedural right to respond to Plaintiff's Motion at all, it definitionally cannot need discovery for "its opposition." Fed. R. Civ. P. 56(d). The Court disregard the BFT's participation in the 56(d) Motion.

Beyond the plain language of the rule, there are prudential reasons to limit Rule 56(d) to the parties who are actually adverse in a summary judgment motion. This case provides a small example. Here, Plaintiff filed a narrow motion for partial judgment on the pleadings or for partial summary judgment based only on one of its several claims and only because MAB *admitted* that he did not pay under the Contract. A favorable ruling would significantly narrow the case. However, declining to leave the matter of the Contract between Plaintiff and MAB well enough alone, the BFT has now inserted itself into the summary judgment proceedings—not to take up its own defense to the conspiracy claim, which is not at issue, but to defend MAB on the breach of contract claim against him alone. The BFT's summary judgment briefing confirms the point in that it merely duplicates MAB's arguments and elaborates on some of them, effectively just giving MAB more pages to make the same arguments. This, in turn, requires both Plaintiff and the Court to expend more resources addressing the briefs. The whole process runs counter to Rule 1, which requires the Court *and the parties* to "construe[], administer[], and employ[]…the rules…to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1 (emphasis added).

While the needless multiplication of proceedings in this small case should be avoided, it must be guarded against in large, multi-party cases. But a novel ruling allowing Rule 56(d) discovery and

delay to every defendant here would be cited in favor of a free-for-all in larger cases that would thoroughly undermine one of the primary purposes of summary judgment—to resolve disputes at an early stage of the proceedings. Mary Kay Kane, 10A FED. PRAC. & PROC. CIV. § 2712 (4th ed.) (2021). *See also* Fed. R. Civ. P. 1. The Court should nip this in the bud and preclude the BFT from seeking a delay to oppose a motion that it has no procedural right to oppose in the first place.

### C.    Neither the Motion nor the declaration satisfy the Rule 56(d) requirements.

The Motion and the BFT's lawyer's declaration (even if the Court were to consider them) do not satisfy Rule 56(d). The entire substantive argument in the Motion reads:

> As stated, the Court should deny Plaintiff's Motion. To the extent the Court is inclined to grant it, Defendants request that, instead, the Court either deny the Motion or defer ruling on it in order to allow them time to take appropriate discovery into, *inter alia*, (1) whether MAB or Plaintiff subjectively believed they were in an attorney-client relationship, (2) whether Plaintiff provided any written notices as required by RPC 1.8(a), and (3) whether and to what extent Plaintiff and MAB waived or modified the requirements in the Agreement.
>
> Contemporaneously with this Motion, Defendants submit a Declaration of Marc A. Bruner, detailing his dealings with Plaintiff and Plaintiff's ongoing legal representation of him in personal and business matters. *See* Exhibit 1, Bruner Declaration. Defendants expect to further probe this relationship through discovery, and it is anticipated that Plaintiff will also have extensive discovery on this subject. As a result, it is extremely premature for entry of summary judgment. For example, no written discovery has been answered and no depositions have been taken. Further supporting this, the BFT Parties, as non-parties to the Agreement, have not had access to documents and information that are exclusively in Plaintiff's and/or MAB's possession and such evidence is likely to bear on the BFT Parties' response to Plaintiff's Motion. *See* Exhibit 2, Affidavit of William Meyer. Without access to such information, Defendants will be unduly prejudiced in defending Plaintiff's claims, including defending a breach of contract that Plaintiff alleged the BFT Parties conspired to breach.

ECF 99 at 2-3.

BFT's counsel's declaration, in turn, states only that:

4.      Defendants—and the BFT Parties in particular— are not presently able to present facts essential to justify their opposition to Plaintiff's motion because, essentially, no discovery has occurred yet in this action.

5.      Presently, the parties exchanged initial disclosures but the parties have not engaged in written discovery or taken depositions.  Defendants require discovery to adequately respond to Plaintiff's motion.  For example, one defense to Plaintiff's breach of contract claim is that the contract is void under Rule of Professional Conduct 1.8.  The BFT Parties were not a party to the alleged contract or relationship between Plaintiff and MAB.  The BFT Parties, therefore, require discovery into that relationship to present a potentially viable defense.  MAB likely also would benefit from such discovery from Plaintiff to establish that Plaintiff subjectively believed he was MAB's lawyer as well.  Defendant also cannot present essential facts pertaining to whether Plaintiff waived his claims or right to recover all or some portion of damages.

ECF 99-1, ¶¶ 4-5.

Little of this is factually accurate and none of it satisfies Rule 56(d). Factually, Plaintiff has made significant document disclosures and submitted multiple declarations explaining the facts of the case. *See* ECF 29-3; 48-1; 91-1. Plaintiff has also made his initial disclosures. By contrast, Defendants have a few non-substantive declarations and neither has provided any initial disclosure documents— indeed, the irony in Defendants' demand for discovery while failing to meet their basic disclosure requirements is thick. Thus, the representation that Defendants have not had access to the information necessary to respond is not accurate.

Legally, Rule 56(d) requires Defendants to set forth "(1) the probable facts not available, (2) why those facts cannot be presented currently, (3) what steps have been taken to obtain these facts, and (4) how additional time will enable the party to obtain those facts and rebut the motion for summary judgment." *Valley Forge*, 616 F.3d at 1096. Neither the Motion nor the declaration state the specific "probable facts" or "essential facts" they need, why they cannot offer them now, what they have done to try to obtain those facts, or how long it will take to get them. As then-Judge Gorsuch

explained in *Valley Forge*, an affidavit that "fails to identify what efforts the [moving parties] had made already to obtain the information they sought, or why at least some of that information wasn't already available to them" fails to meet the requirements of Rule 56(d). *Id.* This is also true where, as alleged here, the moving party "request[ed] additional time to study the 'nature and length of the professional relationship' between the [moving parties] and the attorneys who represented them." *Id.*

For these reasons as well as under the authorities set forth in Section I(A) above, the Court should deny the Motion. The "vague, general statements of what [Defendants] hope[] to discover…are a far cry from the facts essential to justify [their] opposition required by 56(d)." *Trans-Western Petroleum, Inc. v. United States Gypsum Co.*, 830 F.3d 1171, 1175 (10th Cir. 2016) (internal quotations omitted).

## II.    Aside from the dispositive procedural deficiencies in the Motion, discovery and delay would be improper because Defendants demonstrably have the facts.

The reason Defendants do not lay out any of the four Rule 56(d) elements is because they cannot meet them. Defendants have the facts, both because MAB was the direct counterparty in the transaction and because of Plaintiff's disclosures. Looking at the three topics the 56(d) Motion says Defendants need to know about, those very items are in the record.

### A.    Defendants have asserted facts about the relationship.

Defendants seek discovery from Plaintiff to learn about whether he was MAB's lawyer. ECF 99 at 2. However, Plaintiff has already provided evidence about this, *see* ECF 29-3, ¶¶ 5, 9; 48-1, ¶¶ 2, 3, 5, 10, 11, 32(a), and MAB purports to know all about his relationship with Plaintiff, ECF 101-1. While Plaintiff disputes much of this, *see* **Exhibit B**, it does not mean discovery or delay is necessary. It means the Court has to consider whether MAB has created a *genuine* issue of fact about whether Plaintiff was his lawyer. This, he will not be able to do since his bald, self-serving assertions are insufficient to create a *genuine* issue of material fact. *E.g., Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 679 (10th Cir. 1998); *LNV Corp. v. Hook*, No. 14-cv-00955-RM-CBS, 2017 WL 11487877, at *4 (D. Colo. Mar. 14, 2017). For example, MAB says he thought Plaintiff was his personal lawyer but in so

doing he blurs the line between Plaintiff's representation of fictious entities, including publicly-traded corporations, with a non-existent personal representation. *E.g.*, ECF 101-1, ¶ 9. Nor does MAB offer any back-up documentation or engagement letters for these allegedly personal representations, which he necessarily has or has access to through these corporations. Under *Valley Forge*, failing to explain why one does not have engagement letters to which he has access weighs against Rule 56(d) discovery into professional relationships. *Valley Forge*, 616 F.3d at 1096. In addition, the Court ought not credit the assertions of a party who takes different positions in different courts about the same transaction.

**B.    Defendants have asserted facts about Plaintiff's disclosures to MAB.**

Defendants offer into evidence an email from Plaintiff to MAB in which Plaintiff told MAB to have the agreement reviewed by separate counsel. ECF 97-6 ("The one remaining important piece is for you to talk with Ted [Hartl, Ballard Spahr, LLP] before we sign this agreement…. If you're both comfortable, you and I can then sign our agreement."). Though Defendants characterize the email as inadequate under Rule 1.8(a), the Court can take that issue up—together with other evidence Plaintiff has put into the record—on the merits. For example, record evidence shows not only that Plaintiff advised MAB to have separate counsel, but also that MAB knew about, understood, and ratified the Contract. ECF 48-1, ¶ 22 (recounting Plaintiff's communication with MAB and his representatives); ECF 29-3 at 51 (documentation showing MAB's ratifying the transaction by transferring the bankruptcy claim into his own name).

Perhaps most revealing is a document filed by MAB in bankruptcy court. In that document, MAB responded to Plaintiff's bankruptcy claim objection, arguing that "Brody has *effectively* and *legally* transferred his claim to MAB…." ECF 48-1 at 19 (emphasis added). Indeed, the very purpose of MAB's bankruptcy court filing was to ensure that he, and not Plaintiff, would *be paid* from the assets of the PetroHunter bankruptcy estate on the claim he purchased but which he now argues is void:

## Conclusion

29.    The outcome of this dispute is straightforward: (i) there is nothing left for this Court to resolve on Brody's Limited Objection because he failed to object to the 3001(e)(2) Notice and has now waived the right to contest MAB's rights as a creditor in this Chapter 7 case; (ii) because Brody effectively transferred the Claim he does not have standing to assert the Limited Objection and Adversary Proceeding; and (iii) Brody's remedy, if any, is available to him in the District Court Action which has been pending since April of 2019.  Accordingly, this Court should summarily overrule the Limited Objection and grant the Motion.

ECF 48-1 at 24, ¶ 29.

This evidence, along with the Contract itself, shows that MAB first proposed that he and Plaintiff enter into the Contract, and that MAB's entry into the transaction was informed and intentional. "Equitable estoppel precludes a party from enjoying the rights and benefits under a contract while at the same time avoiding its burdens and obligations." *N.A. Rugby Union LLC v. United States of Amer. Rugby Football Union*, 442 P.3d 859, 866, 2019 CO 56, ¶ 38 (Colo. 2019) (authorities omitted); *see also W. Cities Broadcasting, Inc. v. Schueller*, 830 P.2d 1074, 1080 (Colo. App. 1991) (same).

Thus, MAB ought not be allowed to argue that the Contract is void and, therefore, no discovery delay with respect to that issue is necessary. Moreover, on the merits, MAB's bankruptcy court filing shows that he *admits* that Plaintiff effectively and legally sold his bankruptcy claim to him, and in his Answer, MAB admits that he did not pay any portion of the consideration required under the Contract. *See* ECF 90 at 4. The fact is that MAB has made all the admissions that are necessary to the bankruptcy court and to this Court.

### C.    Defendants have asserted facts about Plaintiff's alleged waiver.

The waiver arguments also turn on undisputed facts and record evidence. Defendants have three waiver theories: (1) Plaintiff knew MAB could not pay him in Fortem shares, (2) Plaintiff did not object to the transfer of his bankruptcy claim into MAB's name, and (3) Plaintiff offered to accept alternative consideration. None of these have merit.

1.     <u>Could not pay in Fortem shares</u>. This statement is false and inadmissible. The Contract plainly says that MAB will deliver 150,000 Fortem shares. Whether or not MAB said he could not before making that agreement, Doc. 101-1 (which he did not, *see* Exhibit B, ¶9) is inadmissible parol evidence.

2.     <u>Plaintiff failed to object to the bankruptcy claim transfer</u>. This statement is also false. Plaintiff did not initially object because the Contract provided that MAB would transfer the claim into his name. *See generally* ECF 38-1. There was no basis to object until it became clear that MAB intended *never* to pay Plaintiff for the claim, *see* ECF 48-1 at 11—a conclusion now bolstered by the very arguments Defendants are making in their responses to Plaintiff's Motion. Then, after Plaintiff filed his bankruptcy court objection, Defendants negotiated a stipulation with him under which he would withdraw the objection to have the merits litigated in this case. ECF 46-1; 46-2; *see also* ECF 48-1 at 23, ¶¶ 25-26 (arguing that the dispute should be heard in this Court). Now, incredibly, they seek to use the withdrawal they procured as evidence of a waiver. Aside from being untrue, this argument is inequitable, and Defendants should be estopped to make it. *N.A. Rugby Union LLC*, 442 P.3d at 866, 2019 CO 56, ¶ 38; *W. Cities Broadcasting, Inc.*, 830 P.2d at 1080 (applied specifically in the waiver context). This entire waiver story is in the record; neither discovery nor delay is necessary.

3.     <u>Plaintiff offered to accept alternate consideration</u>. After MAB failed to pay the Contract consideration, Plaintiff tried to negotiate with MAB by offering to accept alternate consideration of equivalent value in the event it would be easier for MAB to deliver shares other than the Fortem shares held by MAB in the name of Squin Switzerland. *See* ECF 48-1 at 8-11; Exhibit B, ¶ 9. Defendants offer no authority for how Plaintiff's efforts to resolve the dispute constitute waiver. In fact, finding waiver through these efforts would disserve the policy underpinnings of both settlement negotiations and the duty to mitigate. MAB claimed he could deliver the shares within ten days after the parties signed the Contract, thus the reason for that provision in the Contract. Plaintiff

demanded delivery of the shares after the due date. MAB refused. Plaintiff tried to negotiate a resolution. That is hardly the voluntary relinquishment of a known right. *W. Cities Broadcasting, Inc.*, 830 P.2d at 1079 (finding no waiver through efforts to compromise dispute); *see generally Stanspec Corp. v. Jelco, Inc.*, 464 F.2d 1184, 1187 (10th Cir. 1972) ("A damaged party entitled to the benefit of a contract is under a duty to mitigate his damages, and generally speaking his rights are not diminished if the circumstances force him to deal with the party in default.").

There is no basis for the discovery before Defendants' responses—they already filed their responses. Whatever purposes this 56(d) Motion is intended to accomplish, obtaining discovery necessary to respond to Plaintiff's Motion is not one of them.

## III.    There is no basis for Rule 56(d) discovery and delay because Defendants have not made out a *prima facie* case for either the 1.8(a) or waiver defense.

As shown above, Defendants would need no Rule 56(d) discovery into their defenses even if they were valid. But, furthermore, absent a *prima facie* showing of the defenses, 56(d) discovery is improper. *McLaughlin*, 2017 WL 8294271, at *5; *see also Routh v. Johnson*, 16-CV-797-MV/KMB, 2018 WL 4685570, at *7 (D.N.M Sept. 28, 2018) (denying Rule 56(d) discovery where undisputed facts showed no underlying violation).

To establish a Rule 1.8(a) violation, Defendants' burden of proof is clear and convincing evidence. *See In re Egbune*, 971 P.2d 1065, 1072 (Colo. 1999). Their burden on the waiver defense is a preponderance of the evidence. *E.g.*, *Johnson v. Indus. Com'n of State of Colo.*, 761 P.2d 1140, 1146 (Colo. 1988). Defendants' response briefs establish neither.

### A.    RPC 1.8(a) is inapplicable.

#### 1.    MAB has never been Plaintiff's client and Plaintiff's clients do not have a sufficient interest in the contract consideration to trigger Rule 1.8(a).

Rule 1.8(a) applies where a lawyer enters into a business transaction with a client or, alternatively, with a non-client but only when an attorney "knowingly acquires a possessory interest

adverse to a client." *In re Wollrab*, 420 P.3d 960, 965, 2018 CO 64, ¶ 21 (Colo. 2018) (quoting RPC 1.8(a) (internal quotations and alterations omitted)). The rule does not apply to a lawyer's former clients. *Compare* RPC 1.8(a) (referring to a "client") *with* RPC 1.8(h) (referring to a "former client").[2] The rule also applies only to an individual lawyer; that is, there is no imputation from other lawyers associated in the same firm. RPC 1.8, cmt. 20 ("The prohibitions set forth in paragraphs (a)…are personal and are not applied to associated lawyers.").[3]

As described above, Plaintiff was never MAB's personal attorney, and MAB's bald, self-serving statements to the contrary do not create a genuine issue of material fact on that point—and certainly not by clear and convincing evidence. Plaintiff represented several entities in which MAB was an officer or board member but not MAB. Therefore, Rule 1.8(a) is only triggered if Plaintiff's transaction with MAB resulted in a possessory interest adverse to one of Plaintiff's corporate clients. *Id.*

Defendants offer no evidence in their 56(d) Motion or response briefs to support the proposition that when Plaintiff sold a personal asset to MAB in exchange for a personal asset of MAB, that transaction gave Plaintiff an interest adverse to any client. *See* ECF 29-3 at 51 (claim transfer documentation showing MAB's *personal* interest in the bankruptcy claim); ECF 48-1 at 19-20 (describing the transaction in personal terms). The only interest Plaintiff acquired in a client was 150,000 publicly-traded shares in Fortem Resources, Inc. But acquiring *publicly-traded* stock is not adverse. By placing its stock on a public exchange, Fortem is definitionally agnostic as to who holds its stock. Furthermore, Defendants have not established by any standard of proof that MAB does not regularly trade stock for other assets, which would also defeat a Rule 1.8(a) defense. *See Calvert v. Mayberry*, 440 P.3d 424, 431, 2019 CO 23, ¶ 23 (Colo. 2019) (noting that the rule "does not apply to

---

[2] MAB asserts that 1.8(a) applies to former clients but his authorities do not say that. ECF 100 at 5, n.2. *In re Wollrab* does not speak to former clients, and *In re Berg* found that the client was a *current* client under Illinois fiduciary duty law, which is different from Colorado's RPC. 387 B.R. 524, 546-47 (Bankr. N.D. Ill 2008), *abrogated on other grounds by In re Crane*, 724 F.3d 702, 708 (7th Cir. 2013).

[3] The BFT's suggestion that imputation applies, ECF 98 at 5, n.3, is contrary to this law. *See also* RPC 1.8(k).

standard commercial transactions between the lawyer and the client for products and services that the client generally markets to others, because in such transactions, the lawyer has no advantage in dealing with the client.") (internal quotations omitted).

This case is entirely unlike the Rule 1.8(a) cases cited in Defendants' response briefs. In *Wollrab*, for example, the lawyer obtained an option to buy property owned by, and entered into a lease agreement with, a closely-held company that his client managed and in which the client "owned a substantial interest" *Id.* The lease was for use as the lawyer's office space, and the lawyer both negotiated below-market rent for life and stripped any tenant obligations out of the standard lease (along with 13 of the lease's 14 pages). *Id.* at 963, 2018 CO 64, ¶¶ 9-10. After a falling out, the lawyer recorded the option and the lifetime lease, clouding title to the property. *Id.*, 2018 CO 64, ¶ 11.

Likewise, in *Calvert*, a disbarred lawyer sued a client to recover money he allegedly loaned her, but the Supreme Court rejected the lawyer's argument that the transaction was valid because the lawyer had already admitted in disciplinary proceedings that he hadn't complied with 1.8(a). 440 P.3d at 427, 2019 CO 23, ¶¶ 2, 14. Furthermore, it was clear that the lawyer attempted to acquire a *possessory* interest *adverse* to his client by securing a deed to the client's house in the name of another set of clients and then trying to convince those clients to transfer it to a company he owned. *Id.*, 2019 CO 23, ¶¶ 4-6.

In this case, by contrast, Plaintiff acquired no interest—directly or indirectly—adverse to any client, much less the kind of adverse possessory interest—possession of real property belonging to another—at issue in *Wollrab* and *Calvert*. This was an arms-length transaction in which MAB bought Plaintiff's personally-held bankruptcy claim—at MAB's request—in exchange for cash and stock personally held by MAB. Therefore, Defendants' Rule 1.8(a) defense fails on the first prong.

### 2.     Rule 1.8(a)'s underlying policy is not implicated.

Furthermore, the Contract between Plaintiff and MAB does not implicate the rule. Defendants assume without authority that Rule 1.8(a) applies to all transactions between lawyers and clients, but

it does not. Lawyers may rebut it by showing that the contract does not contravene public policy. *Calvert*, 440 P.3d at 430, 2019 CO 23, ¶ 20. To make this showing, the lawyer "must demonstrate by a preponderance of the evidence that (1) the contract's terms are fair and reasonable, (2) the terms of the agreement are unambiguous, and (3) there was no undue influence or overreaching." *Id.* at 432, 2019 CO 23, ¶ 31. If the lawyer makes this showing, the contract is enforceable. *Id.*

MAB's own pleadings in bankruptcy court prove these requirements and the inapplicability of the rule to these circumstances. MAB made clear to the bankruptcy court that he wanted to keep the claim he bought from Plaintiff and resisted Plaintiff's effort to have the claim revested in him due to MAB's breach. If the transaction was unfavorable to MAB, he would have taken the opportunity to unwind the sale. He did just the opposite, arguing that it was legal and effective. ECF 48-1 at 24, ¶ 29.

Though dispositive in and of themselves, the Court need not rely solely on MAB's prior judicial representations because the evidence shows that the transaction is beyond the scope or intentions of Rule 1.8(a).

First, the transaction is *fair and reasonable* because Plaintiff sold his $335,374.18 bankruptcy claim for $25,000 in cash and 125,000 Fortem shares valued at approximately $311,000 on the first date Plaintiff could have sold at least some of the shares. *See* ECF 48-1 at 19, ¶ A.2; 91-1 at 8 (showing market report). In addition, the claim also had value to MAB beyond its potential payout because he was using it to as leverage to negotiate for other assets of the PetroHunter bankruptcy estate. *See* ECF 29-3 at 13-37. The fact that MAB was represented by independent counsel in connection with the transaction, *see* ECF 97-6, is also evidence that the terms of the transaction were fair and reasonable. RPC 1.8(a), cmt. 4.

Second, the terms are *unambiguous*, and MAB admits they are unambiguous. ECF 51 at 5 ("Additionally, it is well-settled that parol evidence cannot be used to alter the plain meaning of an unambiguous contract….").

Third, there was *no undue influence or overreaching* because, as shown in the pre-contract email exchanges, Plaintiff not only told MAB to get counsel and have him review the contract before MAB signed, but he even contacted the lawyer for MAB. ECF 97-6. It is also clear from the communications that MAB weighed in on the contract, and Plaintiff made revisions accordingly: "I revised and simplified this, as on our last conversation…." *Id.* In fact, advancing a 1.8(a) defense in this case turns both the rule and its policy underpinnings on their ear. On his own behalf and on behalf of his companies, MAB has personally negotiated transactions involving billions of dollars. MAB is highly sophisticated, so much so that: (a) he duped his friend (who was counsel for his entities at the time of the Contract) into turning over a valuable asset, (b) used that asset to try to get more assets in the PetroHunter bankruptcy, (c) argued vigorously against having the claim revert to Plaintiff, (d) did not notify Plaintiff that the trustee was beginning distributions to all claimants in the bankruptcy, including MAB's claim for which he paid nothing, and (e) then came up with various excuses why he should not have to pay for it, including voiding the Contract that is the only basis for MAB having participated in that bankruptcy proceeding in the first place. This is not a case where the lawyer has an "advantage in dealing with the client." *Calvert* 440 P.3d at 431, 2018 CO 23, ¶ 23.

Accordingly, Rule 1.8(a) does not apply, and the Contract is enforceable. And, for purposes of this Motion, absent a *prima facie* showing that 1.8(a) applies, no discovery or delay is appropriate.

### B.    There is no merit in Defendants' waiver theories.

As shown above, there is no basis for Defendants' waiver theory, either. Waiver is the voluntary relinquishment of a known right. *Cordillera Corp. v. Heard*, 612 P.2d 92, 93 (Colo. 1980). Mere acquiescence or inaction is insufficient. *See W. Cities Broadcasting, Inc.*, 830 P.2d at 1079. Instead, a party asserting waiver must establish that the other "engage[d] in conduct manifesting his intention to relinquish the right, but the conduct alleged as a waiver must be free from ambiguity so as to manifest clearly such an intention." *Id.*

19

As detailed above, neither the 56(d) Motion nor Defendants' response briefs show any good faith basis for arguing that Plaintiff waived his right to collect under the contract. If anything, all of the evidence is to the contrary. Plaintiff has demonstrably been trying to enforce his rights, and MAB has made Plaintiff chase him through a maze of delays and excuses, for years.

WHEREFORE, Plaintiff respectfully requests that this Court deny the 56(d) Motion in its entirety.

Respectfully submitted this 2nd day of July, 2021.

By: */s/ Michael A. Rollin*
   Michael. A. Rollin, Esq.
   Mallory A. Revel, Esq.
   Lindsey Idelberg, Esq.
   FOSTER GRAHAM MILSTEIN & CALISHER LLP
   360 South Garfield Street,
   Sixth Floor
   Denver, Colorado 80209
   mrollin@fostergraham.com
   mrevel@fostergraham.com
   lidelberg@fostergraham.com
   Tel: (303) 333-9810
   Fax: (303) 333-9786
   *Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on July 2, 2021, I served the foregoing **PLAINTIFF'S RESPONSE TO DEFENDANTS' JOINT MOTION FOR ADDITIONAL TIME TO TAKE DISCOVERY PURSUANT TO Fed. R. Civ. P. 56(d)** via CM/ECF to the following:

William R. Meyer, Esq.
POLSINELLI PC
1401 Lawrence Street,
Suite 2300
Denver, CO 80202
wmeyer@polsinelli.com

and

Timothy M. Swanson
William F. Jones
Tanya A. Sevy
MOYE WHITE LLP
1400 16th Street,
Suite 600
Denver, CO 80202
tim.swanson@moyewhite.com
billy.jones@moyewhite.com
tanya.sevy@moyewhite.com

and

Lance Henry
Allen Vellone Wolf Helfrich & Factor PC
1600 Stout Street,
Suite 1900
Denver, CO 80202
lhenry@allen-vellone.com

By:    */s/ Michael A. Rollin*
       Michael. A. Rollin, Esq.