IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 19-cv-01091-RM-NRN

DAVID E. BRODY

Plaintiff,

v.

MARC A. BRUNER,
THE BRUNER FAMILY TRUST, and
MARC E. BRUNER, AS TRUSTEE OF THE BRUNER FAMILY TRUST

Defendants.

## PLAINTIFF'S REPLY IN SUPPORT OF HIS MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS OR, ALTERNATIVELY, FOR PARTIAL SUMMARY JUDGMENT

Plaintiff hereby replies in support of his Motion for Partial Judgment on the Pleadings or, Alternatively, for Partial Summary Judgment, ECF 90 (the Motion").

## INTRODUCTION

Plaintiff sold his $335,000 bankruptcy claim to Marc A. Bruner ("MAB") pursuant to an August 16, 2017 contract (the "Contract"). Reply Statement of Undisputed Material Facts ("Reply SUMF") No. 1.[1] MAB promptly transferred the claim into his own name and used his new standing as a claimant to bolster his negotiating position with the bankruptcy trustee. *Id.* No. 9. *See also* ECF 29-3, ¶ 30. MAB did not pay Plaintiff any of the Contract consideration, Reply SUMF No. 10, so Plaintiff sued. Nearly four years later, MAB asserts for the first time that he should never have to pay because Plaintiff was allegedly MAB's personal lawyer. Therefore, according to Defendants, the

---

[1] Unless otherwise stated, citation to the "Reply SUMF" refers to Plaintiff's reply to ECF 101, MAB's Response to Plaintiff's SUMF. Any material differences between MAB's responses and the BFT's responses, ECF 97, are noted.

1

Contract is void under Colorado Rule of Professional Conduct ("RPC") 1.8(a). ECF 98 at 4-9; ECF 100 at 4-8.

However, Rule 1.8(a) does not apply, and Defendants' use of the RPC is an unveiled threat to try to get Plaintiff to back away from his legitimate rights under fear of ethical repercussions. He will not, and Defendants' RPC threat against a lawyer with a sterling 47-year career to avoid a simple commercial obligation exceeds any reasonable boundaries of good conscience. What is more, Defendants' current stance directly contradicts MAB's representations to the bankruptcy court that "Brody has *effectively* and *legally* transferred his claim to MAB…." ECF 48-1 at 19 (emphasis added). Plaintiff performed under the Contract. MAB received the claim and aggressively pursued the benefits of owning the claim and having standing in the bankruptcy court. The Court should not tolerate MAB telling different courts different things about the same contract.

Further to MAB's effort to *never* pay for Plaintiff's claim, Defendants also assert that Plaintiff waived his right to be paid for the claim, ECF 98 at 10-11; ECF 100 at 8-9, but each of their three waiver theories fail on the merits and none create a genuine issue of material fact. *See* Reply SUMF Nos. 35-44.[2] The evidence is undisputed that after MAB refused to pay Plaintiff the Contract consideration, he vigorously pursued his rights through settlement negotiations, bankruptcy court filings, and this action. None of Defendants' arguments or authorities support their waiver theory.

Defendants also assert that the Court should deny Plaintiff's Motion because the damages asserted are too high or are speculative. *See* ECF 98 at 11 (counterfactually and without citation to any evidence asserting that Plaintiff could have sold the Fortem shares for a price as low as $2.00 each); 100 at 10-11 (arguing that the amount of damages asserted is speculative). These arguments are unavailing. The BFT's claim that damages are too high is actually an admission of damages of no less

---

[2] The BFT's allegations of fact with respect to the waiver theory and Plaintiff's responses are found in Plaintiff's Reply to the BFT Parties' Response to Plaintiff's Statement of Undisputed Fact at no. 13.

2

than $300,000, and, furthermore, Defendants do not dispute Plaintiff's assertion that he would have begun to sell the shares right away. Reply SUMF No. 13.[3] MAB's argument that the damages are speculative contradicts the very law he cited, which stands for the proposition that damages are impermissibly speculative only when the *fact* of damages is in dispute, not the *amount* of damages. *See* ECF 100, No. 10.

Finally, the BFT asserts that Plaintiff's Motion comes too early because Defendants have not yet answered. It is true that the BFT has a motion to dismiss pending, but that is irrelevant both because the BFT has no right to respond to Plaintiff's Motion and because its citations to authorities are incorrect. It is also not true that MAB has not answered. He answered in full even though he also joined in the BFT's motion to dismiss. Further, the ripeness argument applies, if at all, only to Rule 12(c). A summary judgment motion may be filed at any time. Fed. R. Civ. P. 56(b). Thus, Plaintiff's Motion is ripe.

For these reasons, Plaintiff requests that the Court grant his Motion for Partial Judgment on the Pleadings or, Alternatively, for Partial Summary Judgment.

## ARGUMENT

I.  **The Court should disregard the BFT's arguments because it is not an adverse party to Plaintiff's Motion.**

As a threshold matter, the Court should disregard the BFT's response and related materials because it is not a party to Plaintiff's Motion. Plaintiff's Motion is directed solely to MAB because only Plaintiff and MAB are parties to the Contract, and MAB admitted he did not pay any of the consideration due under the Contract. Reply SUMF No. 10. The BFT's intercession is improper because only the party against whom a motion for summary judgment is made has standing to respond:

---

[3] The BFT's response to this statement of fact asserts that Plaintiff offered to accept alternative consideration and does not respond to Plaintiff's statement.

3

"The adverse party to a motion for summary judgment may serve opposing affidavits in response to a motion for summary judgment." *Johnson v. Holmes*, No. CIV-02-1239 JB/KBM, 2004 WL 7337654, at *6 (D.N.M. Apr. 7, 2004) (interpreting Fed. R. Civ. P. 56); *see also Garcia v. Estate of Arribas*, No. 04-1159-MLB, 2006 WL 8440054, at *3 (D. Kan. Jan. 25, 2006) (disregarding briefs of co-parties against whom summary judgment was not filed).

The BFT cites no authority for why it may respond to a motion that does not assert any claim against it. It is expected that the BFT will argue (though briefing is now closed) that it should be allowed to respond to Plaintiff's Motion because if MAB is found liable on the breach of contract claim, the BFT may be held liable on Plaintiff's conspiracy claim, which is Plaintiff's only claim against the BFT. This might fit within the *Johnson v. Holmes* analysis but only if it were true, which it is not. In *Johnson*, the co-party against whom summary judgment was <u>not</u> directed was allowed to respond because the specific determination at issue could have resulted in liability to the other parties. *Johnson*, 2004 WL 7337654, at *6. Here, however, if MAB is found to have breached the Contract with Plaintiff, only MAB will be held liable. Proving the BFT's conspiracy requires additional elements:

> There are five elements required to establish a civil conspiracy in Colorado. There must be (1) two or more persons…; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful overt acts; and (5) damages as the proximate result thereof.

*Walker v. Van Laningham*, 148 P.3d 391, 396 (Colo. App. 2006). Thus, a finding that MAB breached the Contract will not result in liability to the BFT and, therefore, the Court should not permit the BFT to intervene in the narrowly-tailored motions practice between the contracting parties.

The fact that the BFT is not really looking to defend against the conspiracy claim is borne out in its response brief, which does not challenge the elements of civil conspiracy. Rather, the BFT makes the same arguments as MAB against MAB's breach of contract liability; that is, the BFT is improperly acting as MAB's champion.

4

If there is any doubt about whether the BFT should be permitted to respond to Plaintiff's Motion, that doubt may be resolved with a "no" by understanding that the purpose of summary judgment "is to determine whether trial is necessary." *E.g.*, *White v. York Int'l Corp.*, 45 F.3d 357, 360 (10th Cir. 1995). With that purpose in mind, Plaintiff filed its Motion only against MAB and only on the breach of contract claim. If Plaintiff's Motion is successful, trial on the breach of contract claim against MAB—and only the breach of contract claim against MAB—will not be necessary. For this reason, the only parties to Plaintiff's Motion are—or should be—Plaintiff and MAB.

There are also prudential reasons to limit responses to the parties who are actually adverse in a summary judgment motion. This case provides a small example. Here, Plaintiff filed a narrow motion for partial judgment on the pleadings or for partial summary judgment based only on one of its several claims and only because MAB *admitted* that he did not pay under the Contract. A favorable ruling would significantly narrow the case. However, the BFT has now inserted itself into the summary judgment proceedings—not to take up its own defense to the conspiracy claim, which is not at issue, but to defend MAB on the breach of contract claim against him alone. This, in turn, requires both Plaintiff and the Court to expend more resources addressing the briefs. The whole process runs counter to Rule 1, which requires the Court *and the parties* to "construe[], administer[], and employ[]…the rules…to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1 (emphasis added).

While the needless multiplication of proceedings in this small case should be avoided, it must be guarded against in large, multi-party cases. However, a ruling allowing the BFT to respond here would be cited in favor of a free-for-all in larger cases that would undermine a primary purpose of summary judgment—to resolve disputes at an early stage of the proceedings. Mary Kay Kane, 10A Fed. Prac. & Proc. Civ. § 2712 (4th ed.) (2021). *See also* Fed. R. Civ. P. 1. The Court should nip this in the bud.

**II.     RPC 1.8(a) is inapplicable.**

    **A.    MAB has never been Plaintiff's client and Plaintiff's clients do not have a sufficient interest in the Contract consideration to trigger Rule 1.8(a).**

Rule 1.8(a) applies where a lawyer enters into a business transaction with a client or, alternatively, with a non-client but only when an attorney "knowingly acquires a possessory interest adverse to a client." *In re Wollrab*, 420 P.3d 960, 965, 2018 CO 64, ¶ 21 (Colo. 2018) (quoting RPC 1.8(a) (internal quotations and alterations omitted)). The rule does not apply to a lawyer's former clients. *Compare* RPC 1.8(a) (referring to a "client") *with* RPC 1.8(h) (referring to a "former client").[4] The rule also applies only to an individual lawyer; that is, there is no imputation from other lawyers associated in the same firm. RPC 1.8, cmt. 20 ("The prohibitions set forth in paragraphs (a)…are personal and are not applied to associated lawyers.").[5] To establish a Rule 1.8(a) violation, Defendants' burden of proof is clear and convincing evidence. *See In re Egbune*, 971 P.2d 1065, 1072 (Colo. 1999).

Plaintiff was never MAB's personal attorney. *E.g.*, Reply SUMF No. 15; ECF 29-3, ¶¶ 5, 9; 48-1, ¶¶ 2, 3, 5, 10, 11, 32(a). MAB's bald, self-serving assertions, ECF 101-1, are insufficient to create a *genuine* issue of material fact. *E.g.*, *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 679 (10th Cir. 1998); *LNV Corp. v. Hook*, No. 14-cv-00955-RM-CBS, 2017 WL 11487877, at *4 (D. Colo. Mar. 14, 2017). For example, MAB says he thought Plaintiff was his personal lawyer but in so doing he blurs the line between Plaintiff's representation of fictitious entities, including publicly-traded corporations, with a non-existent personal representation. *E.g.*, ECF 101-1, ¶ 9. Nor does MAB offer any back-up documentation or engagement letters for these alleged representations.

---

[4] MAB asserts that 1.8(a) applies to former clients but his authorities do not say that. ECF 100 at 5, n.2. *In re Wollrab* does not speak to former clients, and *In re Berg* found that the client was a *current* client under Illinois fiduciary duty law, which is different from Colorado's RPC. 387 B.R. 524, 546-47 (Bankr. N.D. Ill 2008), *abrogated on other grounds by In re Crane*, 724 F.3d 702, 708 (7th Cir. 2013).

[5] The BFT's suggestion that imputation applies, ECF 98 at 5, n.3, is contrary to this law. *See also* RPC 1.8(k).

6

Therefore, Rule 1.8(a) is only triggered if Plaintiff's transaction with MAB resulted in a possessory interest adverse to one of Plaintiff's corporate clients. *Id.* Defendants offer no evidence or law to support the proposition that when Plaintiff sold a personal asset to MAB in exchange for a personal asset of MAB, that transaction gave Plaintiff an interest adverse to any client. *See* ECF 29-3 at 51 (claim transfer documentation showing MAB's *personal* interest in the bankruptcy claim); ECF 48-1 at 19-20 (describing the transaction in personal terms). The only interest Plaintiff was supposed to acquire in a client (but did not because of MAB's breach of the Contract) was 150,000 publicly-traded shares in Fortem Resources, Inc. However, acquiring *publicly-traded* stock is neither possessory nor adverse. By placing its stock on a public exchange, Fortem does not possess the stock and is definitionally agnostic as to who holds it. Furthermore, Defendants have not established by any standard of proof that MAB does not regularly trade stock for other assets, which would also defeat a Rule 1.8(a) defense. *See Calvert v. Mayberry*, 440 P.3d 424, 431, 2019 CO 23, ¶ 23 (Colo. 2019) (noting that the rule "does not apply to standard commercial transactions between the lawyer and the client for products and services that the client generally markets to others, because in such transactions, the lawyer has no advantage in dealing with the client.") (internal quotations omitted).

This case is entirely unlike the Rule 1.8(a) cases cited in Defendants' response briefs. In *Wollrab*, for example, the lawyer obtained an option to buy property owned by, and entered into a lease agreement with, a closely-held company that his client managed and in which the client "owned a substantial interest" *Id.* The lease was for use as the lawyer's office space, and the lawyer both negotiated below-market rent for life and stripped any tenant obligations out of the standard lease (along with 13 of the lease's 14 pages). *Id.* at 963, 2018 CO 64, ¶¶ 9-10. After a falling out, the lawyer recorded the option and the lifetime lease, clouding title to the property. *Id.*, 2018 CO 64, ¶ 11.

Likewise, in *Calvert*, a disbarred lawyer sued a client to recover money he allegedly loaned her, but the Supreme Court rejected the lawyer's argument that the transaction was valid because the lawyer

7

had already admitted in disciplinary proceedings that he hadn't complied with 1.8(a). 440 P.3d at 427, 2019 CO 23, ¶¶ 2, 14. Furthermore, it was clear that the lawyer attempted to acquire a *possessory* interest *adverse* to his client by securing a deed to the client's house in the name of another set of clients and then trying to convince those clients to transfer it to a company he owned. *Id.*, 2019 CO 23, ¶¶ 4-6.

In this case, by contrast, Plaintiff acquired no interest—directly or indirectly—adverse to any client, much less the kind of adverse possessory interest—possession of real property belonging to another—at issue in *Wollrab* and *Calvert*. This was an arms-length transaction in which MAB bought Plaintiff's personally-held bankruptcy claim in exchange for cash and stock personally held by MAB. Rule 1.8(a) does not apply.

### B.  Rule 1.8(a)'s underlying policy is not implicated.

Even if Plaintiff had been MAB's lawyer, the Contract does not implicate the rule. Defendants assume without authority that Rule 1.8(a) applies to all transactions between lawyers and clients, but it does not. Lawyers may rebut it by showing that the contract does not contravene public policy. *Calvert*, 440 P.3d at 430, 2019 CO 23, ¶ 20. To make this showing, the lawyer "must demonstrate by a preponderance of the evidence that (1) the contract's terms are fair and reasonable, (2) the terms of the agreement are unambiguous, and (3) there was no undue influence or overreaching." *Id.* at 432, 2019 CO 23, ¶ 31. Plaintiff makes this showing; therefore, the contract is enforceable. *Id.*

First, the transaction is *fair and reasonable* because Plaintiff sold his $335,374.18 bankruptcy claim for $25,000 in cash and 125,000 Fortem shares (had MAB timely paid the $25,000) valued at approximately $311,000 on the first date Plaintiff could have sold at least some of the shares. Reply SUMF No. 13; *see also* ECF 48-1 at 19, ¶ A.2; 91-1 at 8 (showing market report). In addition, the claim also had value to MAB beyond its potential payout because he was using it as leverage to negotiate for other assets of the PetroHunter bankruptcy estate. *See* ECF 29-3 at 13-37.

8

Second, the terms are *unambiguous*, and MAB admits they are unambiguous. ECF 51 at 5 ("Additionally, it is well-settled that parol evidence cannot be used to alter the plain meaning of an unambiguous contract…."). *E.g.*, *Magnetic Copy Servs., Inc. v. Seismic Specialists, Inc.*, 805 P.2d 1161, 1164 (Colo. App. 1990) (cited by Defendants in prior pleadings).

Third, there was no undue influence or overreaching because, as shown in the pre-contract email exchanges, Plaintiff told MAB to get counsel and have him review the contract before MAB signed. ECF 97-6. It is also clear from the communications that MAB weighed in on the Contract, and Plaintiff made revisions accordingly: "I revised and simplified this, as on our last conversation…." *Id.* In fact, advancing a 1.8(a) defense in this case turns both the rule and its policy underpinnings on their ear. On his own behalf and on behalf of his companies, MAB has personally negotiated transactions involving billions of dollars. MAB is highly sophisticated, so much so that: (a) he duped his friend (who was counsel for his entities at the time of the Contract) into turning over a valuable asset, (b) used that asset to try to get more assets in the PetroHunter bankruptcy, (c) argued vigorously against having the claim revert to Plaintiff, (d) did not notify Plaintiff that the trustee was beginning distributions to all claimants in the bankruptcy, including interim distributions on MAB's $335,000 claim for which to this date MAB has paid nothing to Plaintiff, and (e) then came up with various excuses why he should not have to pay for the claim, including voiding the Contract that is the only basis for MAB having participated in that bankruptcy proceeding in the first place. This is not a case where the lawyer has an "advantage in dealing with the client." *Calvert*, 440 P.3d at 431, 2018 CO 23, ¶ 23.

Perhaps most revealing on this issue is a document filed by MAB in bankruptcy court. In that document, MAB responded to Plaintiff's bankruptcy claim objection, arguing that "Brody has *effectively* and *legally* transferred his claim to MAB…." ECF 48-1 at 19 (emphasis added). Indeed, the very purpose of MAB's bankruptcy court filing was to ensure that he, and not Plaintiff, would *be paid* from

9

the assets of the PetroHunter bankruptcy estate on the claim he purchased but which he now argues is void:

> **Conclusion**
>
> 29. The outcome of this dispute is straightforward: (i) there is nothing left for this Court to resolve on Brody's Limited Objection because he failed to object to the 3001(e)(2) Notice and has now waived the right to contest MAB's rights as a creditor in this Chapter 7 case; (ii) because Brody effectively transferred the Claim he does not have standing to assert the Limited Objection and Adversary Proceeding; and (iii) Brody's remedy, if any, is available to him in the District Court Action which has been pending since April of 2019. Accordingly, this Court should summarily overrule the Limited Objection and grant the Motion.

ECF 48-1 at 24, ¶ 29.

This evidence, along with the Contract itself, shows that MAB's entry into the transaction was informed and intentional and that he has accepted the benefits of it. "Equitable estoppel precludes a party from enjoying the rights and benefits under a contract while at the same time avoiding its burdens and obligations." *N.A. Rugby Union LLC v. United States of Amer. Rugby Football Union*, 442 P.3d 859, 866, 2019 CO 56, ¶ 38 (Colo. 2019) (authorities omitted); *see also W. Cities Broadcasting, Inc. v. Schueller*, 830 P.2d 1074, 1080 (Colo. App. 1991) (same).

Thus, MAB ought not be allowed to argue that the Contract is void. MAB's bankruptcy court filing shows that he *admits* that Plaintiff effectively and legally sold his bankruptcy claim to him, and in his Answer, MAB does not dispute that he did not pay any portion of the consideration required under the Contract. *See* ECF 90 at 4; Reply SUMF No. 10. The fact is that MAB has made all the admissions that are necessary to the bankruptcy court and to this Court.

### III. There is no merit in Defendants' waiver theories.

There is no basis for Defendants' waiver theory, either. Waiver is the voluntary relinquishment of a known right. *Cordillera Corp. v. Heard*, 612 P.2d 92, 93 (Colo. 1980). Mere acquiescence or inaction is insufficient. *See W. Cities Broadcasting, Inc.*, 830 P.2d at 1079. Instead, a party asserting waiver must establish that the other "engage[d] in conduct manifesting his intention to relinquish the right, but the

10

conduct alleged as a waiver must be free from ambiguity so as to manifest clearly such an intention." *Id.* Defendants bear the burden of proving waiver by a preponderance of the evidence. *E.g.*, *Johnson v. Indus. Com'n of State of Colo.*, 761 P.2d 1140, 1146 (Colo. 1988).

The waiver arguments turn on undisputed facts and record evidence. Defendants have three waiver theories: (1) Plaintiff knew MAB could not pay him in Fortem shares, (2) Plaintiff did not object to the transfer of his bankruptcy claim into MAB's name, and (3) Plaintiff offered to accept alternative consideration. None of these have merit.

1. <u>Could not pay in Fortem shares</u>. This statement is false and inadmissible. Reply SUMF Nos. 34-35. The Contract plainly says that MAB will deliver 150,000 Fortem shares. Whatever MAB said about this before contracting, Doc. 101-1 (which was nothing) is inadmissible parol evidence. *Magnetic Copy Servs., Inc.*, 805 P.2d at 1164. This is especially true because the Contract contains an integration clause. *Keller v. A.O. Smith Harvestore Prods., Inc.*, 819 P.2d 69, 72 (Colo. 1991) ("[T]he terms of a contract intended to represent a final and complete integration of the parties' agreement are enforceable and parol evidence offered to establish the existence of prior or contemporaneous agreements is inadmissible to vary the terms of such contract."). Here, that clause reads: "<u>Entire Agreement</u>. This Agreement constitutes and incorporates the entire agreement of the Parties concerning the subject matter of this Agreement and supersedes any prior agreements concerning the subject matter hereof." ECF 91-1 at 5, ¶ 3(b). Thus, the Court should reject this waiver argument as a matter of law.

2. <u>Plaintiff failed to object to the bankruptcy claim transfer</u>. This statement is also false. Plaintiff did not initially object because the Contract provided that MAB would transfer the claim into his name. *See generally* ECF 38-1. There was no basis to object until it became clear that MAB intended *never* to pay, *see* ECF 48-1 at 11—a conclusion now bolstered by the very arguments Defendants are making in their response briefs. Then, after Plaintiff filed his bankruptcy court objection, Defendants

11

negotiated a stipulation with him under which he would withdraw the objection to have the merits litigated in this case. ECF 46-1; 46-2; *see also* ECF 48-1 at 23, ¶¶ 25-26 (arguing that the dispute should be heard in this Court). Now, incredibly, they seek to use the withdrawal they procured as evidence of a waiver. Aside from being untrue, this argument is inequitable, and Defendants should be estopped to make it. *N.A. Rugby Union LLC*, 442 P.3d at 866, 2019 CO 56, ¶ 38; *W. Cities Broadcasting, Inc.*, 830 P.2d at 1080 (applied specifically in the waiver context).

3. <u>Plaintiff offered to accept alternate consideration</u>. After MAB failed to pay the Contract consideration, Plaintiff tried to negotiate with MAB by offering to accept alternate consideration of equivalent value in the event it would be easier for MAB to deliver shares other than the Fortem shares that were then held by MAB in the name of Squin Switzerland. *See* ECF 48-1 at 8-11; Brody declaration, ¶ 9. Defendants offer no authority for how Plaintiff's efforts to resolve the dispute constitute waiver. In fact, finding waiver through these efforts would disserve the policy underpinnings of both settlement negotiations and the duty to mitigate. MAB promised to deliver the shares within ten days after the parties signed the Contract, thus the reason for that provision in the Contract. Plaintiff demanded delivery of the shares after the due date. MAB refused. Plaintiff tried to negotiate a resolution. That is hardly the voluntary relinquishment of a known right. *W. Cities Broadcasting, Inc.*, 830 P.2d at 1079 (finding no waiver through efforts to compromise dispute); *see generally Stanspec Corp. v. Jelco, Inc.*, 464 F.2d 1184, 1187 (10th Cir. 1972) ("A damaged party entitled to the benefit of a contract is under a duty to mitigate his damages, and generally speaking his rights are not diminished if the circumstances force him to deal with the party in default.").

*W. Cities Broadcasting, Inc.* is instructive. There, parties to a lease agreement for space in a communications building and antenna tower. 830 P.2d at 1076. The owner alleged that the lessor did not perform under the lease agreement and served a notice to quit. *Id.* The lessor, in turn, sued for a determination of the parties' respective rights. *Id.* The competing claims went to trial, and jury returned

12

verdicts in favor of both parties. *Id.* at 1077. One of the issues on appeal was whether the owner waived its right to complain about the breach when it accepted rent after becoming aware of the lease violation. *Id.* at 1079. The lessor's allegation was that though aware of the lease violations, the owner allowed the lessor to stay on site and pay rent. *Id.* The evidence was that during the time of the violation, the owner was trying to resolve the lessor's violations and the lessor, for its part, stayed on the premises, enjoyed the benefit of broadcasting from the antenna, and did not seek to cancel or rescind the lease for the owner's alleged fraud in the inducement of the lease. *Id.* 1079-80. The Court of Appeals found no waiver. *Id.* at 1080. Same here.

**IV.     Plaintiff's damages evidence is sufficient and appropriate under the circumstances.**

The BFT argues that Plaintiff's damages claim is too high because the Fortem stock dropped to $2.00 a share. ECF 98 at 11. Rather than undermining Plaintiff's Motion, this is actually an admission of damages of not less than $300,000 plus the additional $25,000. Moreover, though, the BFT does not refute with any evidence Plaintiff's declaration that he would have started selling stock when he received it, and the stock price ranged between $2.00 and $3.95, with a price of $2.68[6] on the first date Plaintiff could have started to sell. ECF 91-1, Exhibit A, thereto, ¶¶ 11-13; Reply SUMF Nos. 11, 12. Unlike the BFT, who self-servingly asserts that Plaintiff necessarily would have sold the stock at its *lowest* point, Plaintiff did not assert he would have sold the stock at its highest point. He would have sold the stock over time, accepting the consequences of both positive and negative fluctuation. *Id.* For purposes of his Motion, Plaintiff asserted the *low* end of the realistic range. ECF 90 at 5. This is conservative, reasonable, and demonstrably not self-serving, and, moreover, Defendants offer no countervailing evidence.

---

[6] The BFT asserts that the share price on this date was $2.50. ECF 97, at No. 11.

13

For his part, MAB asserts that Plaintiff's damages are speculative, ECF 100 at 10-11, but his authorities say the opposite. *Vanderbeek v. Vernon Corp.* stands for the proposition that damages are impermissibly speculative only when the *fact* of damages is in dispute, not the *amount* of damages. 25 P.3d 1242, 1246 (Colo. App. 2000), *aff'd*, 50 P.3d 866, 875 (Colo. 2002). Damages can be computed by comparing the value of the stock when delivered (here, $0 because it was never delivered) and the fair market value of the stock when it should have been delivered. *E.g.*, *Van Schaack v. Van Schaack Hldgs., Ltd.*, 856 P.2d 15, 23 (Colo. App. 1992). The fair market value of stock is price at which a party could have bought or sold it. *E.g.*, *Slack v. Stephens*, 76 P. 741, 743 (Colo. App. 1904). Here, that number is $2.68 per share—plus $25,000 cash, statutory interest, and attorney's fees under the Contract.

## V. Plaintiff's Motion is ripe.

Defendants assert that the Motion is not ripe because neither has fully answered. ECF 98 at 2-3; 100 at 9-10. To that end, MAB asserts that he did not answer the conspiracy claim. ECF 100 at 10. This is not true; MAB denied the allegations in his Answer even if he also joined in the BFT's motion to dismiss. ECF 68, ¶¶ 61-65. "Pleadings are closed within the meaning of Rule 12(c) if no counter or cross claims are at issue when a complaint and an answer have been filed." *Tuttle v. Nationwide Affinity Ins. Co. of Am.*, No. 19-cv-00526-NYW, 2019 WL 2208513, at * 2, n.1 (D. Colo. May 22, 2019). As between Plaintiff and MAB, the only parties to Plaintiff's Motion and to the breach of contract claim, the pleadings are therefore closed. Defendants' reliance on *Gorenc v. Klaassen* is misplaced because it does not speak to the situation in which the non-answering defendants were not defendants to the claim at issue in the 12(c) motion. No. 18-2403-DDC-JPO, 2019 WL 2523566, at *1-2 (D. Kan. June 19, 2019). Indeed, the Wright & Miller treatise instructs the opposite of Defendants' position: "A Rule 12(c) motion may be made before all of the defendants have filed an answer provided the plaintiff cannot point to prejudice and the issues in the premature motion have been raised in the answer." Mary Kay Kane & A. Benjamin Spencer, 5C FED. PRAC. & PROC. § 1367,

14

n.10 (3d ed.) (2001) (citing authorities). This makes sense because withholding judgment otherwise available because defendants as to *different claims* moved to dismiss those *other claims* defeats the purpose of early resolution under 12(c). Nor has the BFT argued that it would be prejudiced by the Court ruling on Plaintiff's Motion notwithstanding its pending motion to dismiss.

Moreover, the rule against 12(c) motions before an answer applies, if at all, only to Plaintiff's 12(c) motion, not to its motion for summary judgment. Motions for summary judgment may be filed at any time. Fed. R. Civ. P. 56(b). This rule also defeats the argument that the Motion is premature as to the BFT because of its pending motion to dismiss (even if the BFT has a right to respond to the motion for summary judgment, which it ought not for the reasons explained above). Granting the Motion will have no effect on the BFT's pending motion to dismiss, so that should not (either prudentially or legally) be a reason to hold up a ruling that could narrow the scope of the case.

WHEREFORE, Plaintiff respectfully requests that this Court grant Plaintiff's Motion for Partial Judgment on the Pleadings or, Alternatively, for Partial Summary Judgment.

Respectfully submitted this 7th day of July, 2021.

By:   */s/ Michael A. Rollin*
      Michael. A. Rollin, Esq.
      Mallory A. Revel, Esq.
      Lindsey Idelberg, Esq.
      FOSTER GRAHAM MILSTEIN & CALISHER LLP
      360 South Garfield Street,
      Sixth Floor
      Denver, Colorado 80209
      mrollin@fostergraham.com
      mrevel@fostergraham.com
      lidelberg@fostergraham.com
      Tel: (303) 333-9810
      Fax: (303) 333-9786
      *Attorneys for Plaintiff*

15

4817-9094-1169, v. 1

## CERTIFICATE OF SERVICE

  I hereby certify that on July 7, 2021, I served the foregoing **PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS OR, ALTERNATIVELY, FOR PARTIAL SUMMARY JUDGMENT** via CM/ECF to the following:

William R. Meyer, Esq.
POLSINELLI PC
1401 Lawrence Street,
Suite 2300
Denver, CO 80202
wmeyer@polsinelli.com

and

Timothy M. Swanson
William F. Jones
Tanya A. Sevy
MOYE WHITE LLP
1400 16th Street,
Suite 600
Denver, CO 80202
tim.swanson@moyewhite.com
billy.jones@moyewhite.com
tanya.sevy@moyewhite.com

and

Lance Henry
Allen Vellone Wolf Helfrich & Factor PC
1600 Stout Street,
Suite 1900
Denver, CO 80202
lhenry@allen-vellone.com

             By: */s/ Michael A. Rollin*
                Michael. A. Rollin, Esq.