IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 19-cv-01091
DAVID E. BRODY,

    Plaintiff,

v.

MARC A. BRUNER,
THE BRUNER FAMILY TRUST, and
MARC E. BRUNER, AS TRUSTEE OF THE BRUNER FAMILY TRUST

    Defendants.

## DECLARATION OF DAVID E. BRODY

I, David E. Brody, am the plaintiff in the above-entitled. I have personal knowledge of the matters set forth herein through my own experiences and observations. If called to testify, I would testify competently thereto.

1. I have reviewed the Defendants' briefs in opposition to summary judgment and motion for Rule 56(d) discovery, and all attachments thereto. The purpose of this declaration is to respond to several of the points made therein.

2. I have never been Marc A. Bruner's personal attorney on any matter. To the extent Mr. Bruner thought I was his attorney on any personal matter, that belief would have been unreasonable in light of my role for entities with which he was affiliated and I know of no personal matter of any kind for which I was engaged or with respect to which Mr. Bruner sought personal legal advice.

3. I have served as an attorney for several entities with which Mr. Bruner is or has been affiliated, but my duties were solely to the entities, and Mr. Bruner's suggestion that I was also performing personal legal services for him feigns a lack of sophistication on Mr. Bruner's part. Those entities, roles, and the dates thereof, are as follows:

1

EXHIBIT A

| Years | Entity | Bruner Role | Brody Role |
|---|---|---|---|
| 2005-9 | Falcon Oil & Gas, Ltd. | Founder, Chairman, CEO | General Counsel |
| 2005-10 | PetroHunter Energy Corp | Founder | SVP and General Counsel |
| 2017 | Paltar Petroleum Ltd. | Founder, Chairman, CEO | See Hogan engagement letter, attached |
| 2015-18 | Nation Energy, Inc. | Shareholder | See Hogan engagement letter, attached |
| 2017-18 | Fortem Resources, Inc. | Chairman and CEO | See Hogan engagement letter, attached |
| 2004-12 | Bruner Family Trust | Grantor | None. Partner in Patton Boggs |
| 2004-12 | MAB Resources, LLC | Founder, President | Outside Counsel (Patton Boggs) |

4. Over the years, Mr. Bruner and his companies have had many lawyers, such that his inference that I was necessarily the lawyer he relied on for personal matters is not credible. Indeed, at the time I sold Mr. Bruner my bankruptcy claim, he was represented by other lawyers in connection with the PetroHunter bankruptcy. To the best of my knowledge, Mr. Bruner's and/or his companies' other lawyers in the 2017-2018 timeframe were:

   a. Holland & Hart LLP (Tony Shaheen representing Marc A. Bruner personally and Paltar Petroleum Ltd.)

   b. Meinster & Associates, P.C. (representing Marc A. Bruner personally, in the PetroHunter bankruptcy, and MAB Resources, LLC)

   c. Rocco A. Dodson & Associates (representing Marc A. Bruner personally and MAB Resources, LLC)

   d. Ballard Spahr LLP (Ted Hartl representing Marc A. Bruner personally)

   e. G.W. Merrick & Associates, LLP (representing Marc A. Bruner personally and all the other "Bruner Entities" in the PetroHunter Bankruptcy)

   f. Clark Wilson LLP (Cam McTavish and Anna Sekunova representing Marc A. Bruner personally and Fortem Resources, Inc.)

   g. Dentons (representing Paltar, Nation Energy, Inc., and Fortem)

   h. Herbert Smith Freehills LLP (representing Paltar, Nation, and Fortem)

   i. Norton Rose Fulbright LLP (representing Paltar, Nation, and Fortem)

   j. Steptoe & Johnson, PLLC (representing Nation Energy, Inc.)

   k. Haynes and Boone, LLP (Alan Talesnick, my former partner at Patton Boggs, representing Fortem)

5. I have several relevant engagement letters as well as correspondence related to the above engagements and will produce them subject to appropriate protections and privilege waivers, if necessary. Each one of the eleven above engagements is reflected in public filings and set forth in

2

numerous pleadings in litigation in which Mr. Bruner's companies were involved during the 2017-18 period, except Steptoe & Johnson and Haynes and Boone. There are no engagement letters between me and Mr. Bruner, personally.

6. With respect to the at-issue transaction, I restate that Bruner approached me. These circumstances are explained in prior declarations that are referred to in my briefs. There was no reason for me to want to sell my claim, but as the bankruptcy trustee explained in his bankruptcy court filings, there was abundant reason for Mr. Bruner to use my claim to acquire standing in the bankruptcy case, and in fact Mr. Bruner included and has used my claim along with the other Bruner entities' claims in various respects in the bankruptcy proceedings since August 2017. And with respect to the claim that Mr. Bruner could have purchased other claims to gain standing, I do not know that to be true. I was never asked to find a claim for Mr. Bruner to buy. He simply asked to buy my claim.

7. Furthermore, Mr. Bruner's statement that he thought I was representing him in the transaction strains credulity. He is more sophisticated than that and, besides, I told him to get separate counsel to review and get comfortable with the contract before either of us would sign it. His declaration directly contradicts the emails I sent him on this subject at the time.

8. After Mr. Bruner signed the contract and I transferred my claim to him, I made efforts to collect the consideration or alternate consideration with equivalent value. At no time in these talks did Mr. Bruner ever take the position that the contract was void or that he wanted to unwind the transaction. Instead, he insisted on keeping the bankruptcy claim.

9. At no time prior to signing the contract did Mr. Bruner say or suggest that he could not transfer the Fortem shares. Mr. Bruner advised me during the original negotiations that the most liquid and accessible free-trading shares that he owned were Fortem shares held under the name of "Squin Switzerland", an entity with which I was not familiar and had never heard of. Mr. Bruner claimed he could deliver the shares within ten days after the parties signed the Contract, thus the

3

reason for that provision in the Contract. The notion that I agreed to accept non-trading shares is not only commercially absurd but contrary to the plain language of the contract, If it is Mr. Bruner's position that he signed a contract promising to deliver freely-trading shares within 10 days while knowing that they were not freely trading, then he is only bolstering my fraud claim.

I certify under penalty of perjury that the foregoing is true and accurate to the best of my knowledge.

*[signature]*
David E. Brody