## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF COLORADO

Civil Action No. 19-cv-01091-RM-NRN

DAVID E. BRODY,

Plaintiff,

v.

MARC A. BRUNER,
THE BRUNER FAMILY TRUST, and
MARC E. BRUNER, AS TRUSTEE OF THE BRUNER FAMILY TRUST

Defendants.

---

## THE BFT PARTIES' MOTION FOR AN AWARD OF MANDATORY FEES AND COSTS

---

Defendant the Bruner Family Trust ("BFT") and Marc E. Bruner ("MEB"), as Trustee of the BFT (together, the "BFT Parties"), move the Court for a mandatory award of fees and costs.

### *D.C.Colo.L.CivR 7.1 Certificate of Conferral*

Counsel for the BFT Parties conferred via email with counsel for Plaintiff regarding the relief requested herein. Plaintiff opposes the relief requested herein.

1. **OVERVIEW**

Plaintiff brought a single tort claim against the BFT Parties for conspiracy, arising from the BFT Parties' purported tortious conduct in relation to defendant Marc A. Bruner's ("MAB") purchase of a bankruptcy claim from Plaintiff. On the BFT Parties' Rule 12(b)(6) motion, the Court dismissed Plaintiff's tort-claim against the BFT Parties. Under well-established Colorado law, the BFT Parties are therefore entitled to a <u>mandatory</u> award of their reasonable fees and costs incurred in defending against the entire action. The BFT Parties also seek an award of

MEYEW\80071053.3

their attorney's fees and costs because Plaintiff's claim lacked substantial justification and was frivolous and vexatious.

    2.    **LEGAL FRAMEWORK FOR MANDATORY AWARDS FOR FEES AND COSTS**

        a.    **Colorado substantive law <u>mandates</u> an award of fees and costs when a tort claim is dismissed under Rule 12(b).**

            i.    **Applicable law.**

Although the American Rule normally precludes a prevailing litigant from, "collecting reasonable attorney fees from the loser," Colorado law creates an exception for defendants to a tort action who prevail on a motion to dismiss. *Craters & Freighters Franchise Co. v. Benz*, 2018 WL 10911746, 1 (Dist. Colo. 2018). "Both the plain language of the statute and numerous court decisions make clear that an award of attorney's fees is *mandatory* when a trial court dismisses an action under Rule 12(b)."[1] *Id.* (emphasis in original). Section 13-17-201 is titled "Award of reasonable attorney fees in certain cases" and provides:

> In all actions brought as a result of . . . injury to person or property occasioned by the tort of any other person, where any such action is dismissed on motion of the defendant prior to trial under rule 12(b) of the Colorado rules of civil procedure, such defendant <u>shall have judgment for his reasonable attorney fees in defending the action</u>.

§ 13-17-201, C.R.S. (underline added). This statute, "applies not only to tort actions involving death or injury to person or property, but also to tort actions involving mere economic injury." *Building on Our Best LLC v. Sentinel Insurance Company Limited*, 2016 WL 1756488, *2 (Dist. Colo. 2016).

---

[1] To recover fees pursuant to C.R.S. §13-17-201, a defendant must prevail on the entire action as to that defendant even when claims continue against other defendants. *Building on Our Best LLC v. Sentinel Insurance Company Limited*, 2016 WL 1756488, *2 (Dist. Colo. 2016).

This "statute is considered 'substantive,' and thus, the United States District Court for the district of Colorado applies it in cases premised upon state law claims." *Torres v. Am. Family Mut. Inc. Co*. 606 F.Supp. 2d 1286, 1287 (Dist. Colo. 2009) (citing *Jones v. Denver Post Corp*., 203 F.3d 748, 757 (10th Cir. 2000); *see also Craters & Freighters Franchise Co. v. Benz*, 2018 WL 10911746, *supra* at *1 ("a defendant does not lose his statutory entitlement to attorney fees under Colo. Rev. Stat. §13-17-201 merely because the action in question was brought in federal court and dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6)").

"The purpose of C.R.S. §13-17-201 was to discourage the filing of baseless tort claims." *Torres v. Am. Family Mut. Inc. Co*. 606 F.Supp. 2d *supra* at 1291. "In enacting § 13-17-201, the General Assembly sought to discourage and deter the institution or maintenance of unnecessary litigation concerning tort claims. To this end, the statute requires that defendants be awarded their reasonable attorney fees whenever a tort action is dismissed prior to trial on the basis of a motion under C.R.C.P. 12(b)." *Aztec Minerals Corp.*, 987 P.2d at 897 (citing *Employers Ins. of Wausau v. RREEF USA Fund-II (Colo.), Inc.*, 805 P.2d 1186 (Colo. App. 1991)); *see also Jaffe v. City & County of Denver*, 15 P.3d 806, 813-14 (Colo. App. 2000); *Snowmass Vill.*, 919 P.2d at 872 ("Section 13-17-201 was enacted to discourage unnecessary litigation of tort claims."); *Houdek v. Mobil Oil Corp.*, 879 P.2d 417, 424 (Colo. App. 1994).

C.R.S. §13-17-201 "is applicable where both tort claims and non-tort claims are pled and dismissed under Rule 12." *Craters & Freighters Franchise Co. v. Benz*, 2018 WL 10911746, *supra* at *3 (rejecting argument that inclusion of a claim for declaratory judgment precluded an attorney fee award). And apportionment of attorney fees among tort and non-tort claims is not required. *Id*.

The BFT Parties also seek an award of their costs pursuant to Colorado statute and the Federal Rules of Civil Procedure. F.R.C.P. 54(d)(1) provides in relevant part that, "costs—other than attorney's fees—should be allowed to the prevailing party."

ii.    **The BFT Parties are entitled to a mandatory award of their fees and costs.**

Plaintiff initiated this action on April 12, 2019, by filing his Complaint. [Doc. #1] At that time, Plaintiff asserted claims for breach of contract and breach of the duty of good faith and fair dealing against only MAB. But on June 5, 2020, Plaintiff filed his Amended Complaint after finding out that BFT Parties were about to receive a distribution on a PetroHunter Energy Inc. ("PetroHunter") bankruptcy claim that nobody, not even Plaintiff, ever thought would be paid. [Doc. #16].

The first two claims in the Amended Complaint are against only MAB and tort-based claims for fraud and civil theft. Plaintiff brought a third claim against the BFT Parties for civil conspiracy. Plaintiff had no contractual relationship with the BFT Parties thus he had no right of recovery against them under a contract theory. *See e.g. Building on Our Best LLC v. Sentinel Insurance Company Limited*, 2016 WL 1756488, *3 (Dist. Colo. 2016). Consequently, in the conspiracy claim against BFT Parties Plaintiff claimed they:

> agreed and worked cooperatively to defraud Plaintiff of and steal the Brody Claim, use the Brody Claim, and/or retain the benefit of the Brody Claim, or, in the alternative to breach [MAB's] contractual obligation to pay consideration and act in good faith under the Agreement, and/or retain the benefit of [MAB's] breach….

[Doc #16, ¶62]. The thrust of the Amended Complaint sounds in tort asserting claims the BFT Parties (and MAB) conspired to "defraud" and "steal" from Plaintiff. *Galvin Investment Co., LLC v. Smith,* 2020 WL 6743779, *2 (Dist. Colo. 2020)(a court determining whether an action sounds in tort should "rely on the pleading party's characterization of its claims and should not consider what the party should or might have pleaded."*)*

Moreover, the only claim Plaintiff asserted against the BFT Parties is for conspiracy, which "the Colorado Supreme Court has recognized [is] a tort claim."[2] *Building on Our Best LLC v. Sentinel Insurance Company Limited*, 2016 WL 1756488, *2 (Dist. Colo. 2016) (citing *Ingold v. AIMCO/Bluffs, L.L.C. Apartments*, 159 P.3d 116, 122 (Colo. 2007)). Plaintiff also characterized his claim for conspiracy as a, "conspiracy [] to defraud Plaintiff." [Doc. #16, ¶1].

Plaintiff alleged the conspiracy to defraud him "resulted in damages…. [i]n an amount to be determined at trial" and sought treble and/or punitive damages. [Doc. #16, ¶¶65 and Request for Relief]. Thus, Plaintiff brought an action as a result of an alleged injury to his property (economic damages) occasioned by the alleged tort of the BFT Parties, thereby triggering application of Section 13-17-201 upon a Rule 12(b) dismissal.

On January 4, 2021, the BFT Parties filed their F.R.C.P. 12(b)(6) motion to dismiss seeking dismissal of Plaintiff's single conspiracy claim against them (the "MTD"). [Doc. #67]. On September 20, 2021, the Court entered its Order granting the BFT Parties' MTD [Doc. #123], thereby dismissing with prejudice all claims against the BFT Parties pursuant to F.R.C.P. 12(b)(6).

Based upon the law in the preceding sections and in light of the "shall" language in the in Section § 13-17-201, C.R.S., as a result dismissal of this action under Rule 12(b), pursuant to Section 13-17-201, C.R.S., the BFT Parties are entitled to an Order awarding them their reasonable fees and costs in defending against the entire action.

    b.    **The BFT Parties are entitled to an award of their fees and costs incurred in this action and the related bankruptcy proceeding because Plaintiff's claim lacked substantial justification.**

The BFT Parties also are entitled to an award of their fees and costs because Plaintiff's claims against them lacked substantial justification. *See* C.R.S. §13-17-102; *see Lorillard Tobacco*

---

[2] The BFT Parties were generally included in Plaintiff's Count VII for declaratory relief pertaining to Claim 7, but the Court already noted in the order granting the MTD that the BFT Parties have no interest in that claim.

*Co. v. Engida*, 611 F.3d 1209, 1217 (Dist. Colo. 2010) (finding this section "clearly may apply to

claims brought in the District of Colorado").  Section 13-17-102, C.R.S., provides in relevant part:

> (2) Subject to the limitations set forth elsewhere in this article, in any civil action of any nature commenced or appealed in any court of record in this state, the court shall award, by way of judgment or separate order, reasonable attorney fees against any attorney or party who has brought or defended a civil action, either in whole or in part, that the court determines lacked substantial justification.
>
> ….
>
> (4) The court shall assess attorney fees if, upon the motion of any party or the court itself, it finds that an attorney or party brought or defended an action, or any part thereof, that lacked substantial justification or that the action, or any part thereof, was interposed for delay or harassment or if it finds that an attorney or party unnecessarily expanded the proceeding by other improper conduct, including, but not limited to, abuses of discovery procedures available under the Colorado rules of civil procedure or a designation by a defending party under section 13-21-111.5(3) that lacked substantial justification.   As used in this article, "lacked substantial justification" means substantially frivolous, substantially groundless, or substantially vexatious.

As is relevant here, Plaintiff admitted he pursued virtually identical claims in this action as

he did in the related PetroHunter Bankruptcy[3] adversary proceeding[4] he initiated.  Thus, to the

extent the Court determines Plaintiff's clams lacked substantial justification, the Court should

award the BFT Parties fees they incurred defending here *and* in the related bankruptcy proceeding.

Plaintiff's claims against the BFT Parties lacked substantial justification because they were

substantially frivolous, groundless, and vexatious.  They also were interposed for the purpose of

harassment, stubbornly litigious, and unnecessarily expanded the proceedings.

        i.      **Plaintiff's claim is frivolous and vexatious and violative of Rule 11.**

---

[3] *In re* PetroHunter Energy Corporation, Bankr. Colo. Case No. 16-20197-KHT.
[4] Adv. Pro. No. 20-01225-KHT.

Under the Fed. R. Civ. P. attorneys have obligations to not bring baseless, frivolous, or vexatious claims. Here, Plaintiff stands not only as a plaintiff but also as an attorney with a heightened level of responsibility to the rule of law. Plaintiff's claim was vexatious because it was brought in bad faith, abusive, and stubbornly litigious. Plaintiff, concocted his conspiracy claim without a shred of evidence to support it in order to force the BFT Parties to incur significant attorney fees and costs defending a fabricated claim. This is particularly egregious because the real victims are the numerous beneficiaries of the BFT whose distributions have been bled dry defending Plaintiff's unsupported claims. Those beneficiaries had nothing to do with the alleged deal struck between MAB and Plaintiff—an attorney with almost 50 years of practice who failed to obtain a waiver or informed consent before entering a contract with his own client. Plaintiff's only basis to bring claims against the BFT Parties was because he believed the BFT was a deep pocket and/or he thought that by suing the family trust, and alleging ludicrous claims of improper past dealings, that it would force one or more of the defendants to settle. That is an improper basis for initiating a lawsuit and textbook bad faith, abuse, and stubbornly litigious. This is exactly the sort of unnecessary litigation of tort claims that Colorado law was designed to stop.

There is additional evidence of Plaintiff being abusive, operating in bad faith, and stubbornly litigious. First, Plaintiff has repeatedly lied to the Court. After Defendants argued the agreement on which Plaintiff sued was void because Plaintiff entered it in violation of Colorado Rule of Professional Conduct 1.8 (preclusion on entering an agreement with a client), he filed declarations swearing he never represented MAB, MEB, or the BFT. [*See, e.g.* Doc. # 29-3, ¶9] Those attestations were false. Exhibits E-1 and E-2, invoices from Patton Boggs, show Plaintiff represented MAB and the BFT on numerous matters. Patton Boggs' invoices reflect that MAB was the firm's client. Patton Boggs' invoices were sent to MAB "c/o David Brody"(yes, the same David Brody). And numerous time entries are for *Plaintiff* (denoted as "DEB") providing legal services to MAB and the BFT. Several such entries are highlighted in Exhibits E-1 and E-2, and

7

include his partners meeting with Plaintiff to discuss the status of MAB matters, Plaintiff speaking with MEB and MAB about BFT transactions, Plaintiff reviewing loan documents for the BFT, and advising about "personal" lines of credit for MAB secured with shares in Falcon.  The billing reference to Falcon is particularly noteworthy because in this lawsuit, Plaintiff filed a declaration claiming he had "no direct knowledge of the amount or nature of BFT assets, except [MAB] told [him] many years ago that the BFT held some shares of Falcon."  [Doc. 48-1, ¶5]  Given that Plaintiff was MAB's and the BFT's lawyer and billed them for advice about the Falcon shares, it undermines the credibility of everything to which Plaintiff has attested.

Second, as noted above, after he initiated this action, Plaintiff initiated a nearly identical adversary proceeding in the PetroHunter Bankruptcy.  *This forced the BFT Parties, and others, to incur totally duplicative expenses defending the same claims in two venues*.  Even Bankruptcy Judge Tyson noted, "my understanding is that [the adversary complaint claims are] virtually identical claims to those that are being brought in the district court" and Plaintiff's bankruptcy counsel conceded "They're very similar. Yes.  They are." [Exhibit B, 36:15-19][5] Judge Tyson repeatedly noted, the adversary proceeding appeared to be an "an end run around" the district court.  [*Id*. at 37:1-6; 40:23-25]  And Judge Tyson found the filing of an "adversary seeking much the same relief, [to be] problematic to me."  [*Id*. at 50:1-4]  Having already pursued relief in this Court, Plaintiff was abusive and stubbornly litigious in bringing "virtually identical claims" in the bankruptcy court as "an end run around" this action.  Such tactics warrant an award of both fees incurred here and fees incurred litigating admittedly identical claims in the bankruptcy court.

Third, Plaintiff has been stubbornly litigious by trying to unnecessarily expand the scope of this lawsuit to include unrelated transactions dating back well over a decade in an effort to smear MAB, MEB, the BFT, and others.  Plaintiff' pleadings, motions, and various declarations describe transactions dating back over a decade involving entities that are not party to this action.  [*See*, e.g.

---

[5] Relevant portions of the transcript are attached as Exhibit B.

Doc. #29-3, ¶¶11-31]  His overall theme has been, without actual evidence, that all of those transactions were in some way tainted so MAB and the BFT Parties must have conspired against him.  It is noteworthy that Plaintiff, himself, was counsel to the same entities for which he now claims foul.  [*See* Plaintiff's Response to Interrogatory No. 4, attached as <u>Exhibit C</u>]  Ignoring that he appears to have used his clients' confidential information to support such allegations, Plaintiff's strategy appears to have been to make the lawsuit so expensive and reputationally harmful that Defendants would settle.  This occurred in this Court and the bankruptcy court.  Such tactics should not be tolerated by any court.

The reason Plaintiff brought claims against the BFT Parties was because he was aware the PetroHunter Bankruptcy Trustee was preparing to make a large distribution to them and he hoped to delay its payment so that MAB or the BFT Parties would be incentivized to settle with him. This is evident by a June 10, 2020 email Plaintiff's bankruptcy counsel sent to counsel for the PetroHunter Bankruptcy trustee stating, "**As I mentioned our goal is to only hold up interim payment to Bruner/BFT….If we need to seek injunctive relief we will, but I was hopeful, we could wire around it with a stipulation**."  [<u>Exhibit D</u>, bold added] Plaintiff was doing anything he could to stop the BFT Parties from receiving their rightful distribution and he hoped to strike a deal with the PetroHunter trustee to avoid having to seek injunctive relief because he knew could not legally or factually support such a claim.

A claim lacks substantial justification if it lacks supporting evidence or the party pursing the claim cannot make a rational argument in its support based on the evidence or governing law. *See Consumer Crusade, Inc.,* <u>197 P.3d at 291</u> (holding that if "a party persists in pursuing a claim, despite knowing that it lacks admissible evidence to support that claim, the claim may properly be characterized as substantially groundless, and the party's conduct, as substantially vexatious" (citation omitted)); *Zivian,* <u>28 P.3d at 974</u> (rejecting a request for appellate attorney's fees under <u>section 13–17–102(4)</u>, noting that "[a] claim is frivolous if the proponent has no rational argument

to support it based on the evidence or the law" and that "[a] claim is groundless if there is no credible evidence to support the allegations in the complaint"). "A vexatious claim …. is one brought or maintained in bad faith. Bad faith may include conduct that is arbitrary, vexatious, abusive, or stubbornly litigious, and may also include conduct aimed at unwarranted delay or disrespectful of truth and accuracy." *Zivian v. Brooke–Hitching*, 28 P.3d 970, 974 (Colo.Ct.App.2001).

Plaintiff's claim (in this action and in the bankruptcy) was frivolous and groundless because he was unable to make a rational argument to support it based on the evidence or governing law. Plaintiff's case is that he entered into a contract with <u>MAB</u>, and Plaintiff claims <u>MAB</u> did not perform. Factually, that has nothing to do with the BFT Parties. Plaintiff admitted he never had any direct communications with the BFT Parties about the purportedly breached agreement. [<u>Exhibit C</u>, Response to Request for Admission 2] Plaintiff offered no factual support for his conspiracy claim when responding to written discovery. Plaintiff presented no evidence what-so-ever of a conspiracy to defraud him.

The Court, in granting the BFT Parties' MTD, determined Plaintiff "fails to allege with any particularity facts which state a plausible claim for relief in light of the elements of his claim." [Doc. #123, p. 4] The Court also found that "the complaint lacks factual support to indicate the BFT Defendants approved, or even were aware of, MAB's alleged plan." [Doc. #123, p. 5] Without the ability to (1) allege a factual basis for his claim in his amended complaint, (2) articulate a factual or legal basis for his claim in response to the MTD, or (3) provide factual support for his claim in response to written discovery, Plaintiff's claim was groundless and frivolous.

Pursuing claims for which there is no factual or legal support in an effort to force parties into a settlement rather than incur significant legal bills and/or risk disclosure of reputationally harmful allegations is bad faith, abusive, stubbornly litigious, and just plain wrong. The BFT Parties request an award of their attorney's fees and costs because Plaintiff's claims lacked

substantial justification.  Because the claims in the bankruptcy action were "virtually identical" to the claims brought here, the BFT Parties request that in addition to an award of their fees and costs incurred in this action that the Court award them their fees and costs incurred in the bankruptcy adversary proceeding as well.  To that end, the BFT Parties are submitting those invoices as evidence with this motion.

### 3.    THE BFT PARTIES' ATTORNEY FEES ARE REASONABLE.

The starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).   A court should begin by calculating the "lodestar" amount of a fee, and a claimant is entitled to the presumption that the lodestar amount reflects a reasonable fee.  *See Pennsylvania v. Del. Valley Citizens' Council,* 478 U.S. 546, 564 (1986); *see also Robinson v. City of Edmond*, 160 F.3d 1275, 1281 (10th Cir. 1998).  The lodestar can be adjusted by the court based on factors such as, (a) the novelty and the difficulty of the questions involved, (b) the skill displayed in presenting them, (c) the extent to which the nature of the litigation precluded other employment by the attorneys, and (d) the contingent nature of the fee award.  *See Lucas v. Kmart Corp*., 2006 WL 2729260, *5 (Dist. Colo. 2006) (applying the *Johnson* Factors).

In determining whether the hourly rated charged is a reasonable hourly billing rate, the court is to look to the prevailing market rate in the relevant community for an attorney of similar experience. *Eastern Colorado Seeds, LLC v. Agrigenetics, Inc*., 2020 WL 8872513, *2 (Dist. Colo. 2020) A court may also use its own knowledge of the prevailing market rate to determine whether the claimed rate is reasonable. *Id.* at 1079; *see also Praseuth v. Rubbermaid, Inc.*, 406 F.3d 1245, 1259 (10th Cir. 2005) (approving the district court's determination of the applicable hourly rate by "relying on its knowledge of rates for lawyers with comparable skill and experience practicing" in the relevant market).

Pursuant to D.C.Colo.L.CivR 54.3, an affidavit from the BFT Parties' counsel establishing that the fees and costs requested were reasonable and necessary in the defense of this case is attached as Exhibit A. Exhibit A also contains a summary of each biller's relevant qualifications and experience. Copies of invoices from Polsinelli PC, which contain a detailed description of the services rendered, the amount of time spent, the hourly rate charged, and the total amount claimed are included with this Motion as Exhibits A-1 (district court) and A-2 (bankruptcy court). These invoices have been redacted to protect privileged information. The BFT Parties reserve the right to supplement this motion to seek additional fees incurred in this action including any associate with preparation of this motion and any reply.

Here, the BFT Parties expended approximately 241 hours over about fifteen months defending Plaintiff's claims in this Court. While Plaintiff may argue 241 hours is not reasonable, such an argument should be rejected. *See Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008) ("the court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case; after all, he won, and might not have, had he been more of a slacker"). BFT Parties' counsel also wrote-off $24,720.41 in fees. [Exhibits A-1 and A-2; *see also* Exhibit A at ¶¶4 and 5] The amount of time and fees incurred are reasonable for active litigation necessitating extensive motions practice on issues such as Rule 12(b) dismissal, prejudgment attachment, and jurisdiction; extensive written discovery; and complicated legal arguments. [Exhibit A at ¶7] The hourly rates charged by counsel are likewise reasonable and not excessive. [Id.] Moreover, the lodestar amount reflected by the invoices carries with it a strong presumption of reasonableness in the Court's consideration of the instant request for a mandatory award of fees.

The attached attorney invoices provide a lodestar calculation for the Court, representing the number of hours expended multiplied by the reasonable attorneys' hourly rates. Also,

attached as Table 1 is a monthly itemization of the incurred fees and hours by biller per invoice.[6] The attorney invoices describe the nature of the work performed, which, as attested to by counsel in the accompanying affidavit, were reasonable and necessary tasks. [*See generally* Exhibit A] The task descriptions have been partially redacted to protect attorney-client privileged and attorney work product information. The BFT Parties have met their burden of establishing the reasonableness of their requested fees. *See, e.g., Crow*, __ P.3d __, 2011 WL 3612237 (holding the hospital defendant met its *prima facie* burden of establishing the reasonableness of its fees by providing detailed billing records, an affidavit of counsel, and other supporting documentation).

Based on the number of hours worked in this action, an award of fees of **$158,033.74** is reasonable and appropriate. Plaintiff initiated this action against the BFT Parties on June 5, 2020. By the time the order on the MTD entered, the parties had been litigating for over fifteen months. During that time, the BFT Parties engaged in extensive motions practice including moving to dismiss [Doc. #67], responding to Plaintiff's motion for a constructive trust [Doc. #29], moving to strike portions of a reply brief Plaintiff filed [Doc. #51], responding to Plaintiff's summary judgment motion [Doc. #98], responding to the Court's show cause order regarding jurisdiction [Doc. #66], and moving under Rule 56(d) for time to take discovery [Doc. #99]. The parties also dealt with the PetroHunter Bankruptcy Trustee's motion to interplead funds and to consolidate this action with the interpleader action he initiated [Doc. #70]. And the parties engaged in discovery including exchanging initial disclosures and written discovery requiring, among other things, document review and analysis.

In short, the BFT Parties' counsel was required to investigate, research, draft, and file motions, responses, and replies, in addition to ongoing case preparation and discovery efforts

---

[6] Any additional fees for services provided after September 20, 2021, including those not already incurred in relation to the instant motion (i.e., any reply brief), will be provided as soon as available.

until the MTD was granted.  The legal issues presented in the dispositive and other motions were well-founded, articulate, and of a complex nature. The ultimate success of the MTD, in particular, is illustrative of its necessity to dispose of the baseless claims brought by Plaintiff against the BFT Parties.

Application of the lodestar factors supports the BFT Parties' request.  First, the number of hours expended is reasonable based on the novelty and complexity of the issues.  The BFT Parties had to defend a conspiracy claim for which Plaintiff provided scant evidence, other than his guesswork and inferences.  That forced the BFT Parties to prove a negative in a transaction they had nothing to do with.  Novel theories implicated by Plaintiff's claim included (a) application of the inter-corporate doctrine to trusts, (b) application of pre-judgment attachment and constructive trusts against assets of the BFT Parties, and (c) Plaintiff's unsubstantiated claims about business deals dating back over a decade [*see e.g.* Doc. ##29-3 & 48-1].  For many of those deals, the relevant companies no longer exist, making investigating his claims even more problematic.  The BFT Parties also pursued a novel defense based on Colorado Rule of Professional Conduct Rule 1.8 claiming the contract Plaintiff sought to enforce was a contract with his former client was void.  To avoid its application Plaintiff repeatedly—and falsely— denied he ever represented MAB or the BFT.  As noted above, evidence came to light that his denials and corresponding affidavits were false.  Thus, the way Plaintiff has litigated this action has unnecessarily complicated and prolonged this dispute and forced the BFT Parties to reasonably incur all of the fees and costs requested herein.

Two other lodestar factors also favor awarding the BFT Parties its fees and costs.  First, Plaintiff was represented by able counsel who displayed skill in presenting Plaintiff's claims. Michael Rollin, Plaintiff's counsel, graduated number one in his class at the University of Denver Sturm College of Law.  He has been practicing for at least 18 years.  And his firm web biography lists 27 courts in which he is admitted to practice. Additionally, Plaintiff himself is an attorney

with approximately 47-years of experience[7] who practiced, until recently, at Hogan Lovells.  He presumably assisted his counsel in developing theories and presenting claims.  Second, the BFT Parties' counsel was precluded from other employment while actively litigating this matter.  [*See* Exhibit A, ¶7(b)]

The hourly rates charged to the BFT Parties also were reasonable.

- Polsinelli is an AmLaw100 firm.  [Exhibit A, ¶7(d)]

- The BFT Parties' lead trial counsel is William Meyer.  His starting hourly rate on this matter was $485.  This was adjusted to $505 in January 2021, and it was adjusted to $550 in September August 2021.[8].  Mr. Meyer is a member of Polsinelli's Commercial Litigation section and has been practicing for 19 years.  During that time he has tried and arbitrated numerous cases to verdict.  Mr. Meyer is active with the Colorado Bar Association's Construction Law Section.  And he has been recognized in Chambers USA and Best Lawyers in America. *See* Exhibit A, ¶7(f).

- Ghislaine Torres Bruner is the BFT Parties' relationship partner.  Her starting hourly rate was $490, it was adjusted to $515 in January 2021, and to $555 in September 2021. Ms. Bruner is a member of Polsinelli's Commercial Litigation section and has been practicing law for 20 years.  She was recognized in 2020 by Law Week as a Top Litigator and the Barrister's Choice for 2020 Oil and Gas Lawyer, and she was recognized by the Denver Business Journal both as a Top Woman in Energy in 2018 and 2019, and in its Who's Who in Energy in 2016, 2018, and 2019.  Ms. Bruner also is active in the ABA presently serving as Chair

---

[7] According to the Colorado Supreme Court Attorney Search website, Plaintiff was admitted in 1974.
[8] Like most law firms, Polsinelli examines and adjusts its rates annually.  In this case, based on the relationship with the client, Polsinelli delayed adjusting its rate in August 2020, in favor of providing a discounted rate until January 2021.

of the Oil and Gas Section and on serves on various committees for the Colorado
Oil and Gas Association. [*See* Exhibit A, ¶7(g)]

- Attorneys Andrew Nazar (shareholder) and Caryn Wang (associate) are members
  of Polsinelli's Bankruptcy and Restructuring section.  Their efforts in the District
  Court were limited to issues responding to the Court's order to show cause why
  this matter should not be referred to the bankruptcy court [Doc. #65].[9]  They also
  actively assisted in the bankruptcy adversary proceeding.  Mr. Nazar's hourly rate
  was $460, and Ms. Wang's hourly rate was $380.  Mr. Nazar has been practicing
  law for 19 years.  He has been recognized as a Best Lawyer in America for
  bankruptcy from 2018 to 2022.  Ms. Wang has been practicing law for four years.
  She is unquestionably destined to be recognized for her skills as well.  [*See* Exhibit
  A, ¶7(h)]

- Robyn Mills is as a Senior Paralegal.  She has over 25 years of paralegal
  experience and her starting hourly rate was $190 and it was adjusted to $215 in
  September 2021.  [*See* Exhibit A, ¶7(i)]

- Allie Schneider is a Paralegal.  She has 10 years of paralegal experience and her
  hourly rate on this matter was $200. Her time was limited to assisting with
  document review and production in response to written discovery from Plaintiff.
  [*See* Exhibit A, ¶7(i)]

These rates are reasonable and typical for comparable counsel in the Denver-area and for
the complexity and type of issues in dispute.  *See* Exhibit A, ¶¶4, 5 and 7; *see also Stroup v.
United Airlines, Inc.*, 2018 WL 10613861, *6-8 (Dist. Colo. 2018) (approving an hourly rate of
$540 for an attorney with 20 years of experience and collecting cases approving rates between
$450 and $500 for lead counsel); *In re Morreale*, 626 B.R. 571, 617-620 (Bankr. Colo.

---

[9] The BFT Parties note that Plaintiff also retained Chad Caby as separate bankruptcy counsel.

MEYEW\80071053.3

2020)(approving rates between $595 and $735 per hour); *Merrill v. Contract Freighters, Inc*. 2021WL3742242, *4-5 (Colo. Dist. 2021) (collecting cases approving rates between $400 and $500 per hour for lead counsel and relying on the 47th Annual Survey of Law Firm Economics in determining lawyers with at least ten years of experience at national law firms in the Mountain region charge between $500 and $775 per hour).

Aside from the discounts noted above, the rates Polsinelli charged the BFT Parties already reflect a discount. Mr. Meyer's and Ms. Bruner's standard hourly rates are higher than what the BFT Parties were charged as follows:

| | 2020 Rate Charged | 2020 Standard Rate | 2021 Rate Charged | 2021 Standard Rate | 2021 Rate Charged | 2022 Standard Rate |
|---|---|---|---|---|---|---|
| Mr. Meyer | $485 | $545 | $505 | $565 | $550 | $615 |
| Ms. Bruner | $490 | $550 | $515 | $575 | $555 | $620 |

[*See* Exhibit A, ¶7(f) and (g)  The rates charged to the BFT Parties have a built-in discount over 10% off of Polsinelli's standard rates.  Additionally, the attached invoices reflect regular and significant discounts both in the form of (1) time not being charged and (2) regular 10% discounts on time that was charged.  These discounts represent a in excess of a 16% discount.  ][*See* Exhibit A, ¶¶4 and 5]  When taking these discounts into effect, the effective blended hourly rate Polsinelli charged the BFT Parties was $429 (calculated by dividing the total fee charged by the number of hours - $157,273.04/366).

The BFT Parties respectfully request that the Court award them their reasonable attorneys' fees in the amount of **$105,937.52** in the above-captioned matter and **$51,335.52** in the bankruptcy matter, plus any additional fees incurred in the future in relation to the instant motion and enforcing any judgment.

## V.     DEFENDANTS' REASONABLE COSTS (BILL OF COSTS)

As prevailing parties in this action upon a Rule 12(b) dismissal, the BFT Parties are entitled to recovery of their costs. *See* § 13-16-113(2), C.R.S. (costs shall be awarded upon a Rule 12(b) dismissal); § 13-16-105, C.R.S. (providing that upon prevailing a "defendant shall have judgment to recover his costs against the plaintiff"); § 13-16-109, C.R.S. (a defendant can be awarded costs on several counts); *see also* F.R.C.P. 54(d) (". . . costs—other than attorney's fees—should be allowed to the prevailing party. . . ").Section 13-16-122, C.R.S., identifies the costs that the prevailing party can recover. This list, however, is not exhaustive, and other items may be recovered as costs where they were reasonably necessary to the development of the case. *Cherry Creek Sch. Dist. No. 5 v. Voelker,* 859 P.2d 805, 813 (Colo. 1993). Thus, as the prevailing parties, the BFT Parties may recover from Plaintiff any costs that were reasonably necessary in defending this action, including, but not limited to, those enumerated in section 13-16-122. *See Harvey v. Farmers Ins. Exch.,* 983 P.2d 34, 41 (Colo. App. 1998), *aff'd on other grounds*, 5 P.3d 280 (Colo. 2000) (list of allowable costs in section 13-16-122 is not exhaustive and statute does not deprive trial court of discretion to award all reasonable costs).

The costs reflected in this motion and in the submitted invoices set forth in <u>Exhibits A-1</u> and <u>A-2</u> accurately reflect the necessary costs incurred, including for filings, online searches, and couriers.  The total amount of $760.70 in costs billed during 16 months of litigation is reasonable and was necessary in the defense of this action.  The BFT Parties respectfully request that the Court award them their reasonable costs in the amount of **$760.70**, plus any additional costs incurred in this action that have not been submitted or received to-date, including costs related to the instant motion.

## VI. CONCLUSION

The statutory and case law unequivocally support the BFT Parties' request for a *mandatory* award of their fees and costs in this case. The BFT Parties prevailed under Rule

12(b)(6) and are entitled to judgment for their fees and costs in defending against Plaintiff's claims. The BFT Parties also are entitled to an award of their fees and costs because Plaintiff's claims lacked substantial justification.  The supporting documentation, including an affidavit of undersigned counsel and attorney billing invoices, demonstrate the reasonableness and necessity of the fees and costs incurred by the BFT Parties that are now being sought against Plaintiff.

WHEREFORE, the Bruner Family Trust and Marc E. Bruner, as trustee of the Bruner Family Trust, respectfully request that this Court grant their Motion for a Mandatory Award of Fees and Costs, entering an Order awarding them as follows:

- Fees in the above-captioned matter in the amount of $105,937.52, and costs in the amount of $27.55 (total of $105,965.07);

- Fees in the bankruptcy matter fees of $51,335.52, and costs of $733.15 (total of $52,068.67) (the combined total is ***$158,033.74***);

- Plus recovery of their fees and costs incurred preparing this motion, any reply, or otherwise reasonably incurred; and

- for any further relief the Court deems appropriate.

Respectfully submitted this 4th day of October, 2021.

**POLSINELLI PC**

By:  */s/ William R. Meyer*

William Meyer
*Attorneys for the Bruner Family Trust and*
*Marc e. Bruner, as trustee for the Bruner*
*Family Trust*

## CERTIFICATE OF SERVICE

I hereby certify that on the 4th day of October, 2021, I electronically filed the foregoing **THE BFT PARTIES' MOTION FOR AN AWARD OF MANDATORY FEES AND COSTS** with the Clerk of Court using the CM/ECF system, which was electronically served to the following:

Michael A. Rollin
FOSTER GRAHAM MILSTEIN & CALISHER LLP
*Attorneys for Plaintiff David E. Brody*

Patrick D. Vellone
Lance Henry
ALLEN VELLONE WOLF HELFRICH & FACTOR PC
*Attorneys for Interpleader Plaintiff*
*Jeffrey L. Hill, Chapter 7 Trustee of*
*PetroHunter Energy Corporation*

William F. Jones
Tanya A. Sevy
MOYE WHITE LLP
*Attorneys for Defendant Marc A. Bruner*

*/s/ William Meyer*

MEYEW\80071053.3

**TABLE 1**
**Lodestar Breakdown Per Invoice**
**(* denotes fees incurred in the PetroHunter Bankruptcy matter)**

**July 24, 2020\* (invoice date):**      **$15,870.15**
*James Bird (Shareholder – Bankr)*      *6.20 hours ($485/hour)*
*James Bird (Shareholder – Bankr)*      *2.40 hours (NO CHARGE)*
*Ghislaine Bruner (Shareholder)*      *9.90 hours ($490/hour)*
*Ghislaine Bruner (Shareholder)*      *.50 hours (NO CHARGE)*
*William Meyer (Shareholder)*      *17.30 hours ($485/hour)*
*Caryn Wang (Associate – Bankr))*      *2.3 hours ($380/hour)*
*Robyn Mills (Paralegal)*      *0.50 hours ($190/hour)*
***Discount:***      ***$1,763.35***

**August 21, 2020\* (invoice date):**      **$6,318.45**
*Ghislaine Bruner (Shareholder)*      *1.5 hours ($490/hour)*
*William Meyer (Shareholder)*      *6.30 hours ($485/hour)*
*Caryn Wang (Associate – Bankr))*      *6.80 hours (380/hour)*
*Robyn Mills (Paralegal)*      *3.40 hours ($190/hour)*
***Discount:***      ***$702.05***

**September 18, 2020\* (invoice date):$29,840.07**
*Andrew Nazar (Shareholder – Bankr)2.40 hours ($460/hour)*
*Ghislaine Bruner (Shareholder)*      *15.30 hours ($490/hour)*
*Ghislaine Bruner (Shareholder)*      *.70 hours (NO CHARGE)*
*William Meyer (Shareholder)*      *41.90 hours ($485/hour)*
*William Meyer (Shareholder)*      *.20 hours (NO CHARGE)*
*Caryn Wang (Associate – Bankr))*      *10.50 hours ($380/hour)*
*Robyn Mills (Paralegal)*      *1.10 hours ($190/hour)*
*Robyn Mills (Paralegal)*      *.80 hours (NO CHARGE)*
***Discount:***      ***$3,974.58***

**October 20, 2020\* (invoice date):**      **$0.00**
*Ghislaine Bruner (Shareholder)*      *.20 hours (NO CHARGE)*
*Robyn Mills (Paralegal)*      *.20 hours (NO CHARGE)*

**November 23, 2020\* (invoice date):$0.00**
*Ghislaine Bruner (Shareholder)*      *1.60 hours (NO CHARGE)*

**December 14, 2020\* (invoice date):$0.00**
*Ghislaine Bruner (Shareholder)*      *.40 hours (NO CHARGE)*

**January 6, 2021\* (invoice date):**      **$0.00**
*Ghislaine Bruner (Shareholder)*      *.60 hours (NO CHARGE)*

MEYEW\80071053.3

**August 21, 2020 (invoice date):**   **$12,599.55**
*William Meyer (Shareholder)*       *20.30 hours ($485/hour)*
*Ghislaine Bruner (Shareholder)*    *8.4 hours ($490/hour)*
*Robyn Mills (Paralegal)*           *0.2 hours ($190/hour)*
***Discount:***                     ***$1,399.95***

**September 18, 2020 (invoice date): $9,165.60**
*William Meyer (Shareholder)*       *16.60 hours ($485/hour)*
*Ghislaine Bruner (Shareholder)*    *2.10 hours ($490/hour)*
*Ghislaine Bruner (Shareholder*     *3.50 hours (NO CHARGE)*
*Andrew Nazar (Shareholder)*        *2.40 hours ($460/hour)*
***Discount:***                     ***$1,018.40***

**September 22, 2020 (invoice date): $12,370.50**
*William Meyer (Shareholder)*       *17.20 hours ($485/hour)*
*Ghislaine Bruner (Shareholder)*    *1.10 hours ($490/hour)*
*Caryn Wang (Associate)*            *12.80 hours ($380/hour)*
*William Meyer (Shareholder)*       *1.10 hours (NO CHARGE)*
*Ghislaine Bruner (Shareholder)*    *0.10 hours (NO CHARGE)*
***Discount:***                     ***$1,374.50***

**October 20, 2020 (invoice date):**   **$5,936.40**
*William Meyer (Shareholder)*       *13.60 hours ($485/hour)*
*William Meyer (Shareholder)*       *0.60 hours (NO CHARGE)*
*Ghislaine Bruner (Shareholder)*    *0.40 hours (NO CHARGE)*
***Discount:***                     ***$659.60***

**November 23, 2020 (invoice date):**   **$0.00**
*William Meyer (Shareholder)*       *1.10 hours (NO CHARGE)*
*Ghislaine Bruner (Shareholder)*    *0.40 hours (NO CHARGE)*

**December 14, 2020 (invoice date):**   **$960.30**
*William Meyer (Shareholder)*       *2.20 hours ($485/hour)*
***Discount:***                     ***$106.70***

**January 6, 2021 (invoice date):**   **$6,623.55**
*William Meyer (Shareholder)*       *12.90 hours ($485/hour)*
*Ghislaine Bruner (Shareholder)*    *1.50 hours ($490/hour)*
*Andrew Nazar (Shareholder)*        *0.80 hours ($460/hour)*
***Discount:***                     ***$735.95***

**February 26, 2021 (invoice date):**   **$14,140.17**

*William Meyer (Shareholder)*      *0.40 hours (NO CHARGE)*
*Ghislaine Bruner (Shareholder)*      *0.40 hours (NO CHARGE)*
*William Meyer (Shareholder)*      *30.80 hours ($505/hour)*
*Ghislaine Bruner (Shareholder)*      *2.10 hours ($515/hour)*
***Discount:***      ***$2,495.33***

**March 18, 2021 (invoice date):**    **$1,631.15**
*William Meyer (Shareholder)*      *3.40 hours ($505/hour)*
***Discount:***      ***$85.85***

**April 19, 2021 (invoice date):**    **$454.50**
*William Meyer (Shareholder)*      *0.20 hours (NO CHARGE)*
*William Meyer (Shareholder)*      *1.0 hours ($505/hour)*
***Discount:***      ***$50.50***

**May 19, 2021 (invoice date):**    **$1,729.80**
*William Meyer (Shareholder)*      *3.5 hours ($505/hour)*
*Ghislaine Bruner (Shareholder)*      *0.30 hours ($515/hour)*
***Discount:***      ***$192.20***

**June 25, 2021 (invoice date):**    **$3,272.40**
*William Meyer (Shareholder)*      *7.20 hours ($505/hour)*
***Discount:***      ***$363.60***

**July 26, 2021 (invoice date):**    **$10,987.35**
*William Meyer (Shareholder)*      *17.40 hours ($505/hour)*
*Ghislaine Bruner (Shareholder)*      *6.60 hours ($515/hour)*
***Discount:***      ***$1,218.60***

**August 24, 2021 (invoice date):**    **$4,035.75**[10]
*William Meyer (Shareholder)*      *8.90 hours ($505/hour)*
***Discount:***      ***$459.75***

**September 13, 2021 (invoice date):**    **$6,930.00**
*William Meyer (Shareholder)*      *0.60 hours (NO CHARGE)*
*William Meyer (Shareholder)*      *14.00 hours ($550/hour)*
***Discount:***      ***$770.00***

**September 13, 2021 (invoice date):**    **$6,930.00**
*William Meyer (Shareholder)*      *26.10 hours ($550/hour)*
*Ghislaine Bruner (Shareholder)*      *2.50 hours ($555/hour)*
*Robyn Mills (Paralegal)*      *1.20 hours ($215/hour)*

---

[10] Intentionally lower than the face amount of the invoice.

*Allie Schneider (Paralegal)*    *4.00 hours ($200/hour)*
***Discount:***    ***$1,680.05***

MEYEW\80071053.3