IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 19-cv-01091-RM-NRN

DAVID E. BRODY

Plaintiff,

v.

MARC A. BRUNER,
THE BRUNER FAMILY TRUST, and
MARC E. BRUNER, AS TRUSTEE OF THE BRUNER FAMILY TRUST

Defendants.

**MOTION FOR RECONSIDERATION OF THE COURT'S ORDER DISMISSING THE CIVIL CONSPIRACY CLAIM AGAINST THE BFT PARTIES OR, ALTERNATIVELY, FOR LEAVE TO AMEND**

Plaintiff, David E. Brody, respectfully moves the Court to reconsider its order dismissing the civil conspiracy claim against the BFT Parties, ECF No. 123 (the "Order"), or, alternatively, for leave to amend, and as grounds therefor states as follows:

**Certificate of Conferral**

Counsel for Plaintiff certifies that he has conferred in good faith with counsel for Defendants and that Defendants oppose the relief requested herein.

**Introduction**

In his amended complaint, ECF No. 16, Plaintiff asserted that Defendants conspired with one another to improperly obtain property owned by Plaintiff. *Id.* ¶¶ 60-65. Defendants, the Bruner Family Trust and its trustee, Marc E. Bruner (collectively, the "BFT Parties"), moved to dismiss for failure to state a claim. ECF No. 67. The Court granted the motion as to the civil conspiracy claim. ECF No. 123.

In so doing, however, Plaintiff respectfully submits that the Court applied an incorrect legal standard. Rather than judging Plaintiff's pleadings under the ordinary, liberal pleading standard that applies to state-law civil conspiracy claims, the Court applied the heightened pleading standard applicable to conspiracy claims filed under 42 U.S.C. §§ 1983, 1985. The distinction is material because under *Twombly* and its progeny, including as applied by the Court in other cases, Plaintiff pleaded sufficient facts, taken as true, to state a plausible claim even if the averments did not meet the heightened standard for civil rights claims.

Plaintiff did not have an opportunity to address the legal standard and case law applied by the Court because they appeared for the first time in the Court's Order. Plaintiff therefore moves for reconsideration of the Order both for his own benefit and to ensure there is clarity and consistency in the law.

## Legal Standard

The Court has the power to amend or alter an order for any "reason that justifies relief." Fed. R. Civ. P. 60(b)(6). A basis for reconsideration is a "need to correct clear error or prevent manifest injustice," including "where a court has misapprehended controlling law," as well as discovery of previously unavailable evidence. *See Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000).

Alternatively, leave to amend should be freely granted, Fed. R. Civ. P. 15(b), and in this Circuit, dismissal should not be granted unless and until the plaintiff has an opportunity to cure the deficiencies, *see Carillo v. Hickenlooper*, No. 12–cv–02034–RM–MEH, 2014 WL 1977984, at *21 (D. Colo. May 14, 2015) (citing *Hall v. Bellmon,* 935 F.2d 1106, 1109–10 (10th Cir. 1991)).

## Argument

I. **The Court applied a heightened pleading standard rather than *Twombly's* ordinary, liberal pleading standard for civil conspiracy.**

    A. **State-law civil conspiracy claims are to be pleaded generally, not particularly as in federal civil rights cases.**

2

The Court's Order dismissing the civil conspiracy claim provides that Plaintiff "must allege *specific facts* showing an agreement and concerted action among the defendants." Doc. No. 123, at 4 (quoting *Wagner v. CHER, LLC*, No. 18-CV-01007-STV, 2018 WL 6046432, at *5 (D. Colo. Nov. 19, 2018)) (emphasis in original). The Court also cited *Durre v. Dempsey*, 869 F.2d 543, 545 (10th Cir. 1989), for its affirmance of a district court order dismissing conspiracy claims for lack of sufficient specificity. *Id.* Applying these cases, the Court found that Plaintiff "fail[ed] to allege with any particularity facts which state a plausible claim for relief in light of the elements of his claim." ECF No. 123 at 4.

However, both *Wagner* and *Durre* are civil rights cases that rely on the civil rights pleading standard for Section 1983 and 1985 claims, which is higher than the ordinary, liberal standard applied to state-law civil conspiracy claims. In other words, Plaintiff was not required to plead with specificity or particularity. *Contra Koenig v. Thurmston*, No. 14–cv–01490–RM–MJW, 2015 WL 2208181, at *8 (D. Colo. May 5, 2015) (detailing the requirements for pleading conspiracy under 42 U.S.C. § 1985).

In *Durre*, a prisoner alleged that prison officials conspired to deprive him of his civil rights under 42 U.S.C. § 1983. 869 F.2d at 545. The Tenth Circuit stated that the district court properly dismissed the conspiracy claim because "[c]onclusory allegations of conspiracy are insufficient to state a valid § 1983 claim. *Id.* (citing *Sooner Prods. Co. v. McBride*, 708 F.2d 510, 512 (10th Cir. 1983)). This is the statement the Court's Order cites.

However, the Tenth Circuit did not analyze any conspiracy allegations in *Durre*. Instead, it dismissed the prisoner's Section 1983 claim on the merits because a state-law remedy was available. *Id.* at 547. And while Judge Ebel's concurrence centered on the prisoner's conclusory allegations, they were not with respect to the conspiracy claim but rather the prisoner's assertion that he could not pursue his state-law remedies. *Id.* at 548. Because *Durre* did not address the sufficiency of the conspiracy claims, it is not authority for the proposition that Plaintiff's conspiracy claims were

3

insufficient. *Brecht v. Abrahamson*, 507 U.S. 619, 631, 113 S.Ct. 1710, 1718, 123 L.Ed.2d 353 (1993) (noting that cases that do not squarely address propositions are not precedential).

Likewise, *Sooner Products*, on which *Durre* relies, is also a federal Section 1983 case, not a state-law civil conspiracy case. In fact, the "only issue" in *Sooner Products* was whether the Oklahoma district court erred when it denied a Section 1983 plaintiff's motion for leave to amend his complaint under Rule 15(a). 708 F.2d at 512. The *Sooner Products* court's only mention of conspiracy was to highlight that in a Section 1983 case, the standard is high—and especially high when the state officers implicated are immune from suit. *Id.* Thus, it is not authority for the standard that should apply here. And notably, the *Sooner Products* court relied, in turn, on two other Section 1983 cases, *Clulow v Okla.*, 700 F.2d 1291, 1303 (10th Cir. 1983) and *Shaffer v. Cook*, 634 F.2d 1259, 1260 (10th Cir. 1980). *Id.*

The other case the Court relied on was *Wagner v. CHER, LLC*. There, the defendant-employer fired the plaintiff, who in turn alleged age discrimination and a state-law conspiracy claim against the employer and a co-worker. 2018 WL 6046432, at *2. The defendants moved to dismiss under Rule 12(b)(6), arguing that the ADEA preempted the conspiracy claim and that the plaintiff's pleadings were insufficient. *Id.* at *3. The court first found that the state-law conspiracy claim was not preempted, *id.*, at *4, but then that the conspiracy claim lacked adequate factual support, *id.* at *5. For the standard that applied to the plaintiff's conspiracy claim, the court cited *Durre*, *Sieverding v. Colo. Bar Ass'n*, No. Civ. A.02-M-1950 (OES), 2003 WL 22400218, at *18 (D. Colo. Oct. 14, 2003), and *McDaniel v. Denver Lending Grp., Inc.*, No. 08-cv-02617-PAB-KLM, 2009 WL 1873581, at *12 (D. Colo. June 30, 2009). This was error because they are all grounded in federal civil rights law.

*Durre* is not authority for the standard that applies to a state-law civil conspiracy claim for the reasons cited above, and Plaintiff respectfully submits that the *Wagner* court erred in relying on it for this proposition. Likewise, *Sieverding* was analyzed under civil rights conspiracy law, *Sieverding*, 2003 WL

4

22400218, at *17-18, and *McDaniel* relied, like *Wagner*, on civil rights conspiracy cases; namely, *Durre* and *Sieverding*. *McDaniel*, 2009 WL 1873581, at *12.

The problem with relying on all these authorities for a state-law conspiracy claim is that numerous courts have recognized that there is a heightened standard for pleading conspiracy under Sections 1983 and 1985. *E.g.*, *Bledsoe v. Jefferson Cnty., Kan.*, 275 F.Supp.3d 1240, 1252 (D. Kan. 2017) ("[T]he Tenth Circuit applies a 'heightened pleading requirement' to § 1983 claims alleging a conspiracy between private individuals and state officials.'"); *Castillo-Perez v. City of Elizabeth*, No. 2:11-6958 (KM)(CLW), 2014 WL 1614845, at *16 (D.N.J. Apr. 21, 2014) ("[T]he Third Circuit applies a heightened pleading standard to Section 1983 and Section 1985 conspiracy claims.") (citations omitted); *Penn v. Chicago State Univ.*, 162 F.Supp.2d 968, 978 (N.D. Ill. 2001) ("Unlike other types of claims, conspiracy is subject to a heightened pleading standard…."); *Pollack v. Nash*, 58 F.Supp.2d 294, 299-300 (S.D.N.Y. 1999) (citing *Dwares v. City of N.Y.*, 985 F.2d 94, 99-100 (2d Cir. 1993)).

There is a policy-based rationale for the distinction: in the civil rights context, "detailed fact pleading [of conspiracy] is required to withstand a motion to dismiss…[b]ecause certain claims are so easily made and can precipitate such protracted proceedings with such disruption of governmental functions." *Id.* (quoting *Angola v. Civiletti*, 666 F.2d 1, 4 (2d Cir. 1981)) (alterations omitted); *see also Harris v. Roderick*, 126 F.3d 1189, 1195 (9th Cir. 1997) (noting that the purpose of the heightened pleading standard is to allow state officers with qualified immunity defenses to advance them before discovery or on summary judgment).

For these reasons, none of the cases cited in the Court's Order—or the cases on which those cases are dependent—should be taken to establish or describe the pleading requirements for Plaintiff's state-law civil conspiracy claim. *Brecht*, 507 U.S. at 631, 113 S.Ct. at 1718. Instead, *Twombly* applies. And the ordinary pleading standard under *Twombly* is not a heightened one but a middle ground

5

between heightened pleading and a formulaic recitation of elements. *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012).

      **B.**      **In *Twombly*, the Supreme Court held that the Court may infer an agreement for conspiracy purposes, and this Court has done so elsewhere.**

The Court's Order stated that it will not infer an agreement among Defendants. ECF No. 123 at 5. For this, the Court relied on *F.D.I.C. v. First Interstate Bank of Denver, N.A.*, 937 F. Supp. 1461, 1473 (D. Colo. 1996). The *F.D.I.C.* court, however, misapplied this aspect of the law.

*F.D.I.C.* was a case decided at the pleading stage and on its face would lead the Court to believe that it ought not infer an agreement. However, *F.D.I.C.*'s authority for that proposition was *Nelson v. Elway*, 908 P.2d 102, 106 (Colo. 1995), and *Nelson* was a summary judgment case. *Id.* at 104. *Nelson*, in turn, took its "no-inference" language from *More v. Johnson*, 568 P.2d 437 (Colo. 1977), which held that it was error to submit an inferred agreement *to the jury*. *Id.* at 494. Thus, it was not a pleading case, either. This key distinction between inference at the pleading stage versus at the proof stage was lost in translation when the no-inference language arrived at *F.D.I.C.* and, from there, to the Court's Order.

Moreover, this Court has previously recognized the inapplicability of the *More* and *Nelson* line of cases at the pleading stage:

> [T]he cases to which HCA cites for the proposition that plaintiffs must produce proof of an agreement are inapplicable here. Notably, one involved whether it was error to submit a conspiracy claim to a jury, *More v. Johnson*, 568 P.2d 437, 440 (Colo. 1977), and the other disposed of a conspiracy claim on the ground that the plaintiffs failed to allege facts giving rise to an unlawful overt act, *Nelson v. Elway*, 908 P.2d 102, 106-107 (Colo. 1995), which is not the basis of HCA's arguments as they are directed to a different element of civil conspiracy (*see* ECF No. 52 at 16; ECF No. 67 at 9.) Put simply, HCA has presented no case holding that a plaintiff must present evidence of an agreement at the motion-to-dismiss stage. Because HCA has failed to present case law showing what must be alleged at the motion-to-dismiss stage, the Court will not jump down a potential rabbit hole for it.

*Hanks v. Aminokit Labs., Inc.*, 17-cv-01108-RM-MJW, 2018 WL 11025410, at 8 (D. Colo. Feb. 7, 2018). So, too, here.

6

Nor should *Twombly's* admonition around conspiracy cases be read to suggest a heightened standard. That the *Twombly* Court may have been critical of how some anti-trust conspiracy claims had been pleaded, ECF No. 123 at 3, it also held that "[a]sking for plausible grounds to *infer* an agreement does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a *reasonable expectation* that discovery *will reveal* evidence of illegal agreement." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556, 127 S.Ct. 1955, 1965, 167 L.Ed.2d 929 (2007) (emphasis added).

Therefore, the Court may in fact infer an agreement. *Hanks*, 2018 WL 11025410 at *7-8 (applying the liberal standard set forth in *Twombly* and allowing what the Court considered a "tenuous" conspiracy claim to proceed past the motion-to-dismiss phase); *F.D.I.C.*, 937 F.Supp. at 1473 (noting that "the requisite agreement may be found by viewing the circumstances").

Plaintiff respectfully requests that the Court apply the same standard here.

II.   **Under the ordinary, liberal pleading standard for state-law civil conspiracy, Plaintiff stated a claim.**

As the Court's Order correctly noted, "[t]o state a claim for civil conspiracy in Colorado, a plaintiff must allege: "(1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) an unlawful overt act; and (5) damages as to the proximate result." ECF No. 123 at 4 (citing *Nelson*, 908 P.2d at 106). The Court found that Plaintiff "lack[ed] facts to support at least two elements of his claim: (1) meeting of the minds and (2) an unlawful overt act." *Id.*

The Supreme Court in *Twombly* and courts following it, including this Court, have held that plaintiffs are not expected to know the details of conspiracies at the pleading stage and that a civil conspiracy claim need not be pleaded with particularity. *E.g.*, *Hanks*, *supra*. Conspiracies, after all, occur behind closed doors, and plaintiffs often may only see indicia of them before discovery. *See Fisher v. Shamburg*, 624 F.2d 156, 162 (10th Cir. 1980) ("Direct evidence of a conspiracy is rarely available, and the existence of a conspiracy must usually be inferred from the circumstances."). Indeed, quoting

7

Supreme Court Justice Black's concurrence in *Adickes v. Kress & Co.*, 398 U.S. 144, 176, 90 S.Ct. 1598, 1618, 26 L.Ed.2d 142 (1970), the *Fisher* court noted that

> [t]he existence or nonexistence of a conspiracy is essentially a factual issue that the jury, not the trial judge, should decide. In this case petitioner may have had to prove her case by impeaching the store's witnesses and appealing to the jury to disbelieve all that they said was true in the affidavits. The right to confront, cross-examine and impeach adverse witnesses is one of the most fundamental rights sought to be preserved by the Seventh Amendment provision for jury trials in civil cases. The advantages of trial before a live jury with live witnesses, and all the possibilities of considering the human factors, should not be eliminated by substituting trial by affidavit and the sterile bareness of summary judgment.

*Fisher*, 624 F.2d at 162 (reversing summary judgment).

Accordingly, the pleading standard is liberal, requiring only a reasonable expectation that discovery will reveal evidence of illegal agreement." *Twombly*, 550 U.S. at 556, 127 S.Ct. at 1965; *see also* ECF No. 74 at 3-4 (citing Supreme Court precedent that under Rule 8(a), claims need only be pleaded generally and that detailed fact pleading is disfavored because "general allegations [are read to] embrace those specific facts that are necessary to support the claim").

### A.   Plaintiff pleaded a meeting of the minds.

With the foregoing authorities in mind, Plaintiff respectfully submits that he has pleaded enough facts and surrounding circumstances such that the Court may reasonably expect discovery will reveal an agreement, even if just a tacit one. *See F.D.I.C.*, 937 F.Supp. at 1473 (citing *Resolution Trust Corp.*, 898 P.2d 1049, 1056-57 (Colo. 1995) for the proposition that "[a] tacit agreement may suffice").

The Order states that the only allegation regarding a meeting of the minds is Plaintiff's assertion that Defendants "agreed and worked cooperatively to defraud Brody for their own benefit," but that this assertion lacks "factual support about the substance of this illicit plan, when it was discussed, or why the parties conspired…." ECF No. 123 at 5 (citing ECF No. 16 ¶ 62). The Court noted that Plaintiff asked Court to infer an agreement, which the Court thought would be improper,

8

*id.* (citing *F.D.I.C.*, *supra*), and consider evidence outside the pleadings, which the Court declined, *id.*, n.3.

With respect to the Court's reliance on paragraph 62 of the amended complaint, Plaintiff respectfully requests that the question is not whether that paragraph stated a meeting of the minds but whether the amended complaint "fail[ed] *in toto* to render [plaintiff's] entitlement to relief plausible." *Hanks*, 2018 WL 11025410, at 1 (quoting *Twombly*, 550 U.S. at 569, 127 S.Ct. at 1973, n.14).

However, viewed as a whole, the amended complaint states that Defendants used their various business enterprises as "intertwined and interrelated entities," ECF No. 16, ¶ 61, with the intent to "use the Brody Claim," without paying for it, *id.* ¶ 62, through deception by Defendants' representative, Mr. Lotito, *id.* ¶ 64; *see also id.* ¶ 61 (averring that Mr. Lotito "served in various capacities with respect to…BFT"). Indeed, it is to be noted that Defendants conceded in briefing that Mr. Lotito is a beneficiary of the BFT. ECF No. 67, n.1.

Nor should the Court view the conspiracy to wrongfully obtain and use Claim 7 in isolation. As Plaintiff described in a declaration filed at ECF No. 29-3 (which the Court declined to consider, ECF No. 123 at 5, n.3) and as gleaned through the limited discovery conducted thus far, the conspiracy among Defendants must be viewed in the wider context of their joint effort to acquire valuable energy rights through the PetroHunter bankruptcy, using the combined force of Claim 7 and the BFT's bankruptcy claims. ECF No. 29-3, ¶¶ 25-33.

In the very first communication between Plaintiff and MAB pertaining to MAB's purpose for entering into the August 16, 2017 agreement, MAB made it clear to Plaintiff "that he planned to combine or consolidate [the Brody Claim] with the BFT Claims in the bankruptcy case." *Id.* ¶ 13. Plaintiff's amended complaint (and the Brody Declaration) further provide details confirmed by independent sources that MAB's acquisition of the Claim was one more event in a series of events

9

that began in 2008 in which MAB and the BFT worked closely and jointly applying millions of dollars of funds of the BFT for MAB's financial benefit. *Id.* ¶¶ 25-33.

In other words, there was not just an agreement between Defendants to acquire Claim 7 from Plaintiff; rather, there was a complex underlying scheme to acquire Claim 7 from Plaintiff and leverage it with the BFT claims for Defendants to try place additional pressure on the bankruptcy trustee and secure a share of the PetroHunter bankruptcy estate, similar to the working relationship that had already been occurring for ten years. *Id.* The BFT had to be part of the plan as a matter of law because its trustee—MEB (MAB's son)—controls the BFT's assets, which includes the BFT's bankruptcy claims. **Exhibit 1**, BFT Interrogatory response no. 5 (confirming that since approximately 2011, MEB has been the sole trustee of the BFT and, therefore, the only person having the right to control the BFT's assets).[1] Ultimately, the bankruptcy trustee blocked Defendants' plan, identifying it as involving fraud among a host of "Bruner Interests" including MAB and the BFT. ECF No. 29-3, at 34-35. Under Colorado law, these kinds of associative background facts are sufficient indicia of an agreement to find conspiracy liability <u>on the merits</u>, *Saint John's Church in Wilderness v. Scott*, 194 P.3d 475, 480 (Colo. App. 1994); *a fortiori* they are enough at the pleading stage.

The meeting of the minds allegations here are also no less than those the Court found adequate in *Hanks*. There, the plaintiffs' "allegations with respect to an agreement come down to HCA knowing that Aminokit and Sisco were not licensed, HCA negotiating with MOB so that Aminokit could obtain a lease at the Conifer Building, and HCA distributing marketing materials for Aminokit and providing it with access to referral sources." *Hanks*, 2018 WL 11025410, at 6. This was just enough "to raise a reasonable expectation that discovery will reveal evidence of prohibited conduct." *Id.*

---

[1] Plaintiff learned that MEB was the only person who could control the BFT assets after briefing on the motion to dismiss was closed, which is a further basis for reconsideration. *Servants of Paraclete*, 204 F.3d at 1012.

10

Finally, while the Court declined to accept additional facts by reference or through judicial notice, ECF No. 123 at 5, n.3, it has found in other circumstances that the existence of such additional facts at the pleading stage warranted granting leave to amend. *See Carillo v. Hickenlooper*, No. 12–cv–02034–RM–MEH, 2014 WL 1977984, at *4 (D. Colo. May 14, 2014) (adopting report and recommendation). There, Magistrate Judge Hegarty's report and recommendation found that

> [d]ismissal of a case under Fed.R.Civ.P. 12(b)(6) is "a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice." *Cayman Exploration Corp. v. United Gas Pipe Line,* 873 F.2d 1357, 1359 (10th Cir. 1989) (quoting *Morgan v. City of Rawlins,* 792 F.2d 975, 978 (10th Cir. 1986)). As such, in this jurisdiction, a court typically does not dismiss a claim under Fed.R.Civ.P. 12(b)(6) until the plaintiff has been provided notice and an opportunity to amend the complaint to cure the defective allegations. *See* [*Hall v.*] *Bellmon,* 935 F.2d [1106,] 1109–10 [(10th Cir. 1991)]. The Court may only dismiss *"sua sponte* when it is patently obvious that the plaintiff could not prevail on the facts alleged, and allowing [them] to amend [their] complaint would be futile." *Id.* (quoting *McKinney v. Oklahoma,* 925 F.2d 363, 365 (10th Cir. 1991)). Here, the Plaintiffs have not properly amended their pleading despite opportunities to do so. However, they also have not yet received guidance from the Court. As set forth above, the Plaintiffs have attempted to "incorporate by reference" allegations from two previously closed cases. The Court finds such incorporation vague and insufficient; however, Plaintiffs' attempt and their statements in the response brief providing additional information and allegations lead the Court to believe that some of the deficiencies found herein may be cured. Thus, because it is possible Plaintiffs may cure the pleading deficiencies for constitutional and statutory claims, the Court recommends that Plaintiffs be allowed to file an amended complaint within thirty (30) days of the District Court's Order.

*Carillo*, 2014 WL 1977984, at *21. This Court agreed. *Id.*, at *4.

On these bases, Plaintiff asks that if the Court reconsider its order dismissing the civil conspiracy claim or, if it does not find the amended complaint sufficient at the pleading stage notwithstanding the *Twombly* standard, that it permit Plaintiff to replead to add these facts.

### B. Plaintiff pleaded an overt act.

Precisely the same holds true of the overt act element of Plaintiff's conspiracy claim. The Court found that Plaintiff failed to "allege facts that show that each defendant agreed to do something

11

in furtherance of the conspiracy, knowing of its improper purpose." Doc. No. 123 at 6 (citing *Sieverding*, 2003 WL 22400218, at *18). More specifically, the Court stated that

> [t]he only allegation of an unlawful act in the complaint is MAB's failure to tender consideration, and there is no indication that the BFT Defendants were aware of his wrongdoings. While the goal of the alleged conspiracy may have been to strengthen the BFT's position in the PetroHunter bankruptcy, there are no facts supporting that this was to be accomplished by unlawful means.

*Id.* at 6.

Plaintiff respectfully submits that this application is premature. Plaintiff was not required to plead the BFT Parties awareness. Under *Twombly, Fisher,* and *Hanks*, that awareness should be inferred or, at a minimum, Plaintiff should be permitted to conduct discovery. There are enough facts in the BFT-MAB relationship and dealings with respect to the PetroHunter bankruptcy to reasonably expect there is more behind the curtain, and *Carillo* shows that if the Court is unsatisfied with the current state of the pleading, leave to amend should be granted.

Further, amended pleadings will at least show indica that the BFT Parties were involved and aware. First, both MAB and the BFT Parties were represented in the PetroHunter by the same lawyer, who used the combined Claim 7 and BFT claims to advance the "Bruner Interests'" objectives. *See, e.g.*, **Exhibit 2** (bankruptcy court ECF No. 203). As the bankruptcy trustee ably demonstrated, those objectives were unlawful. ECF No. 2903, Exhibit A. As a matter of law, a lawyer's knowledge is imputed to his client. *E.g.*, *Murry v. GuideOne Specialty Mut. Ins. Co.*, 194 P.3d 489, 494 (Colo. App. 2008). Here, the imputation runs to both of the attorney's clients—MAB and the BFT Parties.

Second, Plaintiff pleaded in the amended complaint that Mr. Lotito, again, a BFT representative and beneficiary, participated in misleading Plaintiff about MAB's intent to pay Plaintiff the consideration. ECF No. 16, ¶ 64. The fact that this misconduct occurred after contracting is immaterial. A party definitionally breaches a contract only after its execution and/or can formulate the intention to commit civil theft after acquiring the property. *See* C.R.S. § 18-4-401(1) (establishing

12

that theft can occur by retaining, not just by obtaining, a thing of value). Thus, Mr. Lotito's participation after contracting is an overt act or at least gives rise to a reasonable expectation that discovery will reveal more.

Finally, Plaintiff also notes that he pleaded the unlawful act of MAB using the BFT as a vehicle to shield assets from MAB's creditors, including Plaintiff. ECF No. 16 ¶ 9(c). Since the BFT can only act through its trustee, MAB's use of the BFT in this matter is conspiratorial.

On these bases, Plaintiff asks that the Court reconsider its order dismissing the civil conspiracy claim or, if it does not find the amended complaint sufficient at the pleading stage notwithstanding the *Twombly* standard, that it permit Plaintiff to replead to add these facts. *Carillo*, 2014 WL 1977984, at *21.

WHEREFORE, Plaintiff respectfully requests that the Court issue an order vacating its order dismissing the civil conspiracy claim against the BFT Parties and reinstating the claim or enter an order granting leave to amend.

Respectfully submitted this 15th day of October, 2021.

/s/ *Michael A. Rollin*
Michael. A. Rollin, Esq.
Mallory A. Revel, Esq.
Lindsey Idelberg, Esq.
FOSTER GRAHAM MILSTEIN & CALISHER LLP
360 South Garfield Street, Sixth Floor
Denver, Colorado 80209
mrollin@fostergraham.com
mrevel@fostergraham.com
lidelberg@fostergraham.com
Tel: (303) 333-9810
Fax: (303) 333-9786
*Attorneys for Plaintiff*

13

## CERTIFICATE OF SERVICE

I hereby certify that on October 15, 2021, I served the foregoing **MOTION FOR RECONSIDERATION OF THE COURT'S ORDER DISMISSING THE CIVIL CONSPIRACY CLAIM AGAINST THE BFT PARTIES** via CM/ECF to all counsel of record.

By:  */s/ Michael A. Rollin*
Michael. A. Rollin, Esq.

4818-8518-6815, v. 1