## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 19-cv-01091-RM-NRN

DAVID E. BRODY

Plaintiff,

v.

MARC A. BRUNER,
THE BRUNER FAMILY TRUST, and
MARC E. BRUNER, AS TRUSTEE OF THE BRUNER FAMILY TRUST,

Defendants.

---

**PLAINTIFF'S RESPONSE IN OPPOSITION TO THE BFT PARTIES' MOTION FOR AWARD OF MANDATORY FEES AND COSTS**

---

Plaintiff David E. Brody hereby responds in opposition to the BFT Parties' Motion for Award of Mandatory Fees and Costs (the "Fee Motion"), and as grounds therefor states as follows:

## <u>Argument</u>

**I.      The Court should deny the Fee Motion because C.R.S. § 13-17-201 does not apply.**[1]

**A.      Section 201 is does not apply to a conspiracy claim derived from non-torts.**

**1.      Conspiracy is not a tort claim; it depends on the underlying wrong.**

The BFT Parties' motion under Section 201 is predicated in the assumption that conspiracy is necessarily a tort claim. However, their authority for that proposition, ECF No. 130 at 5, is only 2 cases where the underlying claims happened to be tort claims. *See Building on our Best LLC v. Sentinel Ins. Co. Ltd*, No. 15-cv-00669-RBJ, 2016 WL 1756488, at *2 (D. Colo. May 3, 2016) (conspiracy claim

---

[1] The Fee Motion is also unripe for the reasons described in ECF No. 136.

derived from a CCPA claim which Colorado courts have determined is a tort); *Ingold v. AIMCO/Bluffs, LLC Apts.*, 159 P.3d 116, 122 (Colo. 2007) (conspiracy claim derived from alleged torts).

Conspiracy is not necessarily a tort claim. Rather, it is a derivative claim that "assumes the same character as the underlying unlawful actions." *Shell v. Henderson*, No. 09-cv-00309-MSK-KMT, 2013 WL 4838907, at *8 (D. Colo. Sept. 10, 2013) (citing *Double Oak Const., LLC v. Cornerstone Dev't Intern., LLC*, 97 P.3d 140, 146 (Colo. App. 2003)). Nothing in the Colorado Jury Instructions for conspiracy requires that the underlying wrong be a tort, Colo. Jury. Inst., Civ. 27:1-27:3 (2021), and conspiracy is only "typically [derived from] a tort," *Bituminous Cas. Corp. v. Hartford Cas. Ins. Co.*, No. 12-cv-00043-WYD-KLM, 2013 WL 452374, at * 9 (D. Colo. Feb. 6, 2013). Conspiracy can also be derivative of a contract claim, *Johnstown Feed & Seed, Inc. v. Continental Western Ins. Co.*, 641 F.Supp.2d 1167, 1184 (D. Colo. 2009) ("The unlawful act committed by the co-conspirator must be independently actionable, whether in tort or contract."),[2] or a theft claim, C.R.S. § 18-2-201(1) (criminal conspiracy statute); *see Itin v. Ungar*, 17 P.3d 129, 133 (Colo. 2000) (instructing that the civil theft statute be read in context with the rest of the statutory scheme).

These all apply here because Plaintiff pleaded conspiracy not only on the basis of fraud but alternatively on the basis of contract, quasi-contract, and theft. *See* ECF No. 16, ¶ 62. Claims sounding in contract and quasi-contract are not torts and Section 201 does not apply to them. *Robinson v. Colo. State Lottery Div.*, 179 P.3d 998, 1010 (Colo. 2008); *see also Bd. of Cnty. Comm'rs v. DeLozier*, 917 P.2d 714, 716 (Colo. 1996) (finding that promissory estoppel, asserted here, sounds in contract). Furthermore, the Colorado Supreme Court has expressly declined to decide that civil theft is a tort. *Bermel v. BluRadios, Inc.*, 440 P.3d 1150, 1157, 2019 CO 31, ¶ 34 (Colo. 2019), and, consequently, there

---

[2] Colorado courts have held that there can be no conspiracy to breach a contract by parties who were both parties to the contract. *Logixx Automation, Inc. v. Lawrence Michel Fam. Tr.*, 56 P.3d 1224, 1231 (Colo App. 2002). That is not the case here because the BFT Parties were not parties to the contract.

is no basis on which to find that "the action [as to civil theft] lies in tort," which is the required first

step in Section 201 analysis. *See Building on Our Best LLC*, 2016 WL 1756488, at *2 (authorities omitted).

**2.    Plaintiff's claims sound predominately in non-tort causes of action.**

Since § 13-17-201 only applies to tort claims, the threshold question is whether the dismissed

conspiracy claim is predominately or essentially a tort claim.

> In determining whether an action lies in tort, courts "focus on the manner in which
> claims are pleaded." *Dubray v. Intertribal Bison Co-op*, 192 P.3d 604, 607 (Colo. App.
> 2008). Where an action contains a mix of tort and non-tort claims, a court should
> award attorney's fees under § 13-17-201 if the "'essence of the action' is tortious in
> nature (whether quantitatively by simple number of claims or based on a more
> qualitative view of the relative importance of the claims)." *Gagne v. Gagne*, 338 P.3d
> 1152, 1168 (Colo. App. 2014) (internal quotation marks omitted).

*Williams v. Stewart Title Co.*, No. 18-cv-00397-PAB-NRN, 2020 WL 6162994, at *2 (D. Colo.

Jan. 13, 2020).

Here, viewing Plaintiff's claims quantitatively, they sound principally in contract and quasi-

contract. The only tort claim is for fraud, and it is pleaded as an alternative to breach of contract/quasi-

contract theories and civil theft, none of which sound in tort. *See, supra.* This case is different from

cases, including those cited by the BFT Parties, in which courts have awarded fees under Section 201

after finding that though there were mixed claims, the cases were predominantly tort-based. *Williams*,

2020 WL 6162994, at *2 (finding that 2 or the 3 claims sounded in tort); *Shell*, 2013 WL 4838907, at

*9 (8 of 10 claims were torts); *US Fax Law Ctr., Inc. v. Henry Schein, Inc.*, 205 P.3d 512, 518 (Colo. App.

2009) (3 of 4 claims were torts); *Dubray*, 192 P.3d at 607 (6 of 8 claims were torts).

Instead, this case is more like those that reached the opposite quantitative conclusion, even

where the tort and non-tort claims were equal in number. *See Gagne*, 338 P.3d at 168, 2014 COA 127,

¶ 87 (holding claims did not sound predominately in tort where there were equal numbers of contract

and tort claims); *Castro v. Lintz*, 338 P.3d 1063, 1069-70, 2014 COA 91, ¶¶ 17-31 (Colo. App. 2014)

(holding essence of claims was not in tort where 2 of 3 claims were not torts); *Engl v. Natural Grocers*

3

*by Vitamin Cottage, Inc.*, No. 15-cv-02129-MSK-NYW, 2016 WL 8578096, at *13 (D. Colo. June 20, 2016) (holding essence of claims was not in tort where there was 1 contract claim and 1 tort claim).

Qualitatively, while the BFT Parties characterize the conspiracy claim as pleaded primarily in tort terms, ECF No. 130 at 4, their argument eschews the fact that 2 of the 3 alternatives in the conspiracy claim itself are non-tort claims: breach of contract and civil theft:

> 62.    Defendants agreed and worked cooperatively to defraud Plaintiff of and steal the Brody Claim, use the Brody Claim, and/or retain the benefit of the Brody Claim, or, in the alternative, to breach Bruner's contractual obligation to pay consideration and act in good faith under the Agreement, and/or retain the benefit of Bruner's breach, in order to enrich themselves at the expense of Plaintiff.

The BFT Parties also say that the "thrust" of the amended complaint is in tort, but that's not a fair reading of the document as a whole. Fraud is pleaded in the alternative and is only 1 of 7 counts. Of the factual allegations in the amended complaint—paragraphs 12-30—only paragraph 23 describes the possibility that MAB never intended to comply with the contract; everything leading up to that and most of what follows describes the contract, MAB's breach, and the contractual remedy. The conspiracy and declaratory judgment claims are not specific to any theory. *Id.*, ¶¶ 62, 66.

That the action sounds primarily in contract is confirmed by MAB himself, who asserts that he did not defraud Plaintiff because he always intended to pay the consideration, but he admits in his discovery responses that he breached the contract because he still hasn't paid anything to Plaintiff or delivered any of the 150,000 shares of stock in more than four years. *See* ECF No. 137. It is also confirmed by the fact that Plaintiff's tort claim of fraud and non-tort claim of civil theft carry the same penalties—fee shifting and punitive damages.[3] *See Gagne*, 338 P.3d at 1168, 2014 COA 127, ¶ 88 (bolstering finding of no tort predominance because the tort and contract remedies were the same).

_____

[3] Just in case the BFT Parties argue on reply that treble damages under C.R.S. § 18-4-405 and punitive damages for fraud are different (and thereby claim that the enhanced remedies for fraud trigger Section

4

Furthermore, the BFT Parties themselves have previously argued that this is fundamentally a breach of contract case. In an August, 2020 motion to strike, for example, the BFT argued Plaintiff's fraud claim is barred by the economic loss rule," meaning, necessarily, that the claims predominately lie in contract. ECF No. 30 at 7; *see also* ECF No. 89 at 3 ("Plaintiff's Amended Complaint makes no specific substantive allegations against the BFT Parties. All of his substantive allegations are against MAB and MAB's alleged breach of the Agreement to purchase the Disputed Claim.").

Moreover, the BFT Parties directly recognized that the conspiracy claim is derivative of the breach of contract claim when they opposed a summary judgment motion brought only against MAB for breach of contract:

> Plaintiff tries to stop the BFT Parties from responding to his dispositive motion by arguing he only seeks judgment against MAB on the breach of contract claim. Plaintiff's position, however, ignores his conspiracy claim against the BFT Parties. An element of conspiracy is "one or more unlawful overt acts." Here, *the unlawful overt act* on which Plaintiff relies is MAB's alleged *breach of contract.*

ECF No. 111 at 2 (emphasis added).

Ignoring both the foregoing law and the facts, the BFT Parties now reframe the conspiracy claim as lying in tort in an effort to avail themselves of Section 201. However, since conspiracy is derivative of what the case is predominately about and all of the prior pleadings show that the case lies predominately in non-tort theories, Section 201 is not triggered. The Court should not now hear the BFT Parties to take a different, entirely situational, position.

### 3.    The BFT Parties bear but have not met their burden.

It is the BFT Parties' burden to establish that the claims lie predominately in tort, *Engl*, 2016 WL 8578096, at *12, but they have instead incorrectly posited that conspiracy is necessarily a tort

---

201), Plaintiff notes that he can only have one or the other and they both serve to penalize, not compensate. *Ehrlich Feedlot, Inc. v. Oldenburg*, 140 P.3d 265, 269 (Colo. App. 2006). The BFT Parties also argued earlier in the case that "Brody's damages for his fraud and for his breach of contract claims are identical." ECF No. 30 at 7.

claim and its dismissal automatically triggers fee shifting, ECF No. 130 at 5. They have performed neither qualitative nor quantitative analysis of the claims from which the conspiracy count is derived and from which it draws its character. *Shell*, 2013 WL 4838907, at *8. This is not enough. *Engl*, 2016 WL 8578096, at *13 ("Other than citing the applicable law and concluding that Mr. Engl's claims sound primarily in tort, Defendants do not present a compelling argument that the claims asserted in the Amended Complaint sound primarily in tort, rather than in contract."). The Court should deny.

### B.    Section 201 does not apply where the underlying tort claim remains live.

Alternatively, even if the conspiracy claim derived exclusively from an underlying tort claim, the statute would not apply. The purpose of the statute is to dissuade filing *unfounded* tort claims, but the tort claim here remains live against MAB, and since conspiracy is only derivative, *supra*, it is not an "unfounded" tort claim. Therefore, the policy underlying the statute is not implicated. *See Dubray*, 192 P.3d at 607 (citing *Sotelo v. Hutchens Trucking Co.*, 166 P.3d 287, 287 (Colo. App. 2007)). The BFT Parties construction of the statute would "exalt form over substance without advancing any public policy interest[] and would lead to an absurd and illogical result." *Cf. Employers Ins. of Wausau v. RREEF USA Fund-II (Colorado), Inc.*, 805 P.2d 1186, 1188 (Colo. App. 1991) (citing *Frey v. Adams Cnty. Sch. Dist.*, 804 P.2d 851, 854 (Colo. 1991) for the proposition that "[A]n unbendingly literal reading...of [Section 201] does not supply the key to legislative intent.").

Not only is the policy rationale for Section 201 not implicated, but the BFT Parties' authorities do not support their entitlement to fees because they do not speak to the situation before the Court. In *Craters & Freighters Franchise Co. v. Benz*, the Court dismissed *all* of the underlying claims, so there was no underlying tort claim left in the case. No. 16-cv-02951-JLK, 2018 WL 10911746, at *1 (D. Colo. Nov. 30, 2018). So too in *Torres v. Am. Fam. Mut. Ins. Co.*, where the court held that "Colo. Rev. Stat. § 13-17-201 is applicable *where both tort claims and non-tort claims are* pled and *dismissed* under Rule 12." 606 F.Supp.2d 1286, 1292 (D. Colo. 2009) (emphasis added). Another case cited by the BFT

Parties, *Jones v. Denver Post Corp.*, involved only one tort claim against a defendant that was not derivative of any underlying claim. 203 F.3d 748, 756-757, *abrogated on other grounds* by *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002).

The BFT Parties' closest case is *Building on Our Best LLC*, where the court dismissed claims against 1 of 2 defendants, including a civil conspiracy claim. But the other claim dismissed against the same defendant was a violation of the Colorado Consumer Protection Act, which is a tort claim. *Building on our Best LLC*, 2016 WL 1756488, at *3. So, unlike this case, the court dismissed both the derivative conspiracy claim and the underlying tort. *Id.*, at *1. *Building on our Best* did not involve the situation presented here, where the only claim—even assuming it's a tort—against one defendant was only derivative of a claim that remained viable against the other defendant. Again, this would be contrary to the policy that fees are awarded to dissuade filing of *unfounded* tort claims.

> **C.** **Applying Section 201 here would undermine Plaintiff's right to plead in the alternative, which would be contrary to the intent of the Colorado General Assembly when enacting it.**

Applying Section 201 as the BFT Parties suggest here runs directly contrary to Plaintiff's right to plead in the alternative under Rule 8(d)(2). A plaintiff may not know whether an action necessarily lies in tort, in contract, or in statute. *See* Wright & Miller, 5 Fed. Prac. & Proc. § 1282 (4th ed. 2021) (noting that under prior practice, "a party was required to elect a particular set of facts and a legal theory at the pleading stage. Unfortunately, this forced a litigant to set forth his allegations with a degree of certainty that often was not warranted in terms of the state of the pleader's knowledge at that point in the case"). For this reason, Rule 8(d)(2) allows for alternative pleading. *Id.*

As the BFT Parties would have it, however, Plaintiff was only allowed to plead non-tort claims and, presumably, had the facts borne out tortious behavior (which they still may), Plaintiff would be out of luck. *Id.* ("If the facts he asserted in the pleadings were not confirmed by later proof, the action

or defense would fail even if the proof demonstrated a right to relief or defense on some other theory."). Alternative pleading is intended to prevent exactly that. *Id.*

The Colorado Supreme Court recognized this in *Robinson v. Colorado State Lottery Division*. There, the Court affirmed the dismissal of contract claims under the Colorado Governmental Immunity Act ("CGIA") because they could have been pleaded as tort claims. 179 P.3d at 1010. On that basis, the defendant sought fees under Section 201. The Supreme Court said no, holding that the Colorado General Assembly's enactment of Section 201 "was not intended to hinder the filing of contract claims where the plaintiff could have alternatively pleaded claims in tort." *Id.*

The same rationale applies here: Section 201 does not trump the right to plead in the alternative. Thus, a ruling in this case that would subject Plaintiff to fees for pleading a claim under alternative theories of recovery, some of which are non-torts, would read into Section 201 an intent the Colorado General Assembly did not have when enacting it. *Id.*[4]

**D.    The Court should deny the request for fees and costs from the bankruptcy case because those matters were resolved by stipulation, not under Rule 12, and, independently, because any claim associated with those matters is untimely.**

Finally, the BFT Parties seek recovery of $52,068.67 associated with their litigation in the PetroHunter bankruptcy case (where they were already claimants). ECF No. 130 at 19. That case was resolved by stipulation on August 26, 2020. **Exhibit 1**. Claims resolved by stipulation are not subject to Section 201. *Employers Ins. of Wausau*, 805 P.2d at 1188. Therefore, there is no basis on which to seek fees and costs associated with those matters.

Even if fees from the bankruptcy case could be recovered, the Fee Motion is untimely. The adversary case closed on September 17, 2020. **Exhibit 2**. A motion under Rule 54(d)(2) must be filed within 14 days of judgment. Fed. R. Civ. P. 54(d)(2)(B)(i). That deadline has long since passed.

---

[4] This understanding does not read Section 201 out of the law; it could apply where tort and contract claims are not pleaded as alternatives.

8

**II.    The Court should deny the BFT Parties' request for fees under Section 13-17-102 because it is preempted and because Plaintiff's claim is substantially justified.**

    **A.    The BFT Parties failed to comply with Rule 11, as required.**

The BFT Parties also seek fees under C.R.S. § 13-17-102, which applies to frivolous, groundless, or vexatious litigation. ECF No. 130 at 5-11. However, Section 102 is preempted by Rule 11 of the Federal Rules of Civil Procedure and does not apply in federal court. *Dowling v. General Motors LLC*, 333 F.R.D. 534, 538 (D. Colo. 2019). Rule 11, in turn, requires that the BFT Parties comply with its safe harbor mandating service of their motion at least 21 days before filing. Fed. R. Civ. P. 11(c)(2).

The BFT Parties did not comply with Rule 11, Declaration of Michael Rollin, ¶ 1, which is to be strictly enforced, *Wolf v. Petrock*, No. 08-cv-02749-PAB-KMT, 2010 WL 2232353, at *2 (D. Colo. June 2, 2010) (citing *Roth v. Green*, 466 F.3d 1179, 1192-93 (10th Cir. 2006)). Therefore, sanctions under Rule 11 and, through preemption, under Section 102, are unavailable. *Dowling*, 333 F.R.D. at 542.[5] The Court should deny this portion of the Fee Motion on this basis alone.

Even if Rule 11 applied, the sanction is only that which would deter future non-compliance. Fed. R. Civ. P. 11(c)(4); *see also White v. General Motors Corp., Inc.*, 908 F.2d 675, 684-85 (10th Cir. 1990) ("[T]he amount of sanctions is appropriate only when it is the '*minimum* that will serve

---

[5] Plaintiff notes that the BFT Parties forcing him to respond, and the Court to review, this issue in light of *Dowling* is unfair and a needless waste of resources. The Fee Motion cites *Lorillard Tobacco Co. v. Engida*, 611 F.3d 1209, 1217 (10th Cir. 2010), ECF No. 103 at 5-6, which is "yellow flagged" by *Dowling*. *Dowling*, in turn, definitively explains that Section 102 is preempted by federal law and that the BFT Parties' non-compliance with the Rule 11 safe harbor is dispositive of their request for fees under Section 102. Further, the proposition for which the BFT Parties cited *Lorillard Tobacco* (that Section 102 applies in federal court) relied, in turn, on *Harrison v. Luse*, 760 F.Supp. 1394, 1401 (D. Colo. 1991), which is "red flagged" by *Dowling*. It strains credulity that skilled counsel did not discover that Rule 11 preempts Section 102, which is firmly established in this district. *Swan Global Inv., LLC v. Young*, No. 18-cv-03124-CMA-NRN, 2021 WL 3164242, at *2 (July 27, 2021) ("Courts in this District have consistently found that § 13-17-102 conflicts with F.C.R.P. 11…. [T]herefore, failure to comply with the safe-harbor provision [in Rule 11] bars a motion for attorney's fees pursuant to C.R.S. § 13-17-102."); *Brown v. Colo. Judicial Branch*, No. 19-cv-03362-MEH, 2020 WL 2848142, at *15 (D. Colo. June 2, 2020) (same); *MacIntyre v. JP Morgan Chase Bank, N.A.*, No. 1:19-cv-00172-DDD-NYW, 2019 WL 5084091, at *4 (D. Colo. Oct. 10, 2019) ("Section 102 is therefore inapplicable in federal court….").

to *adequately* deter the undesirable behavior.'") (citations omitted). However, the BFT Parties do not make any argument about that. Instead, they argue for their full fees and costs under the preempted statute, which is not a proper measure for Rule 11 sanctions. *See Jaye v. Barr*, No. C19-0121-LTS, 2021 WL 1148953, at *7 (N.D. Iowa Mar. 25, 2021) ("[T]he primary purpose of Rule 11 sanctions is to deter attorney and litigant misconduct, not to compensate the opposing party for all of its costs in defending.") (quoting *Kirk Cap. Corp. v. Bailey*, 16 F.3d 1485, 1490 (8th Cir. 1994)).

As with any motion, the BFT Parties bear the burden of adducing evidence of the sanction that would deter future misconduct. *Cf. Signature Retail Servs., Inc. v. Darnell*, No. 12 C 7657, 2013 WL 1767716, at * 2 (N.D. Ill. Apr. 24, 2013) ("The movant bears the burden of showing that Rule 11 sanctions are appropriate."). Without that, the Court has no factual basis on which to make an award under Rule 11 even if the BFT Parties had complied with the safe harbor. And while counsel for Plaintiff respectfully asserts that the section that follows demonstrates both a reasonable inquiry and a sufficient factual basis to allege a conspiracy consistent with the pleading standard set forth in *Twombly* and its progeny, he duly notes that the Court has thus far disagreed and will be more diligent in the future. Rollin Decl., ¶ 2. Whatever the BFT Parties have said about Plaintiff's counsel, ECF No. 130 at 14-15, a history of frivolous, groundless, and vexatious litigation is not one of them.

## B. Plaintiff's conspiracy claim was substantially justified even if dismissed.

### 1. The BFT Parties have not established a right to sanctions under the substantive provisions of Rule 11.

Though the Court ought not reach the substance of Rule 11 in light of *Dowling*, Rule 11 sanctions are not warranted.

> A defendant is not entitled to attorney fees as an automatic consequence of success on a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), Fed.R.Civ.P. To recover fees based upon the provisions of Rule 11, as amended in 1983, a party need show that his opponent's actions were unfounded in light of the law as it might develop and in light of supporting facts which might be established.

*Robinson v. C.R. Laurence Co.*, 105 F.R.D. 567, 568 (D. Colo. 1985); *see also Carlson v. Town of Mountain Village, Colo.*, No. 17-cv-02887-PAB-STV, 2019 WL 5819971, at *5 (D. Colo. Nov. 7, 2019) (similar). However, the Fee Motion does not establish the substantive requirements for Rule 11 sanctions because, again, the BFT Parties were not applying Rule 11 but C.R.S. § 13-17-102.

Even viewing the arguments the BFT Parties did make, they do not rise to the level of Rule 11 sanctions. The applicable portion of the BFT Parties' motion is string of conclusions, repeating words like "baseless," "frivolous," "abusive," and "stubbornly litigious," but there is no analysis or evidence:

> Plaintiff, [sic] concocted his conspiracy claim without a shred of evidence to support it in order to force the BFT Parties to incur significant attorney fees and costs defending a fabricated claim…. Plaintiff's only basis to bring claims against the BFT Parties was because he believed the BFT was a deep pocket and/or he thought that by suing the family trust, and alleging ludicrous claims of improper past dealings, that it would force one or more of the defendants to settle.

ECF No. 130 at 7.

This argument is also contrary to law. Litigants are not expected to know the details of conspiracies at the pleadings stage. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544. 556, 127 S.Ct. 1955, 1965, 167 L.Ed.2d 929 (2007); *Fisher v. Shamburg*, 624 F.2d 156, 162 (10th Cir. 1980); *Hanks v. Aminokit Labs., Inc.*, 17-cv-01108-RM-MJW, 2018 WL 11025410, at 8 (D. Colo. Feb. 7, 2018). Moreover, the BFT Parties' hyperbole—concocted, fabricated, ludicrous—is easy to throw out where, as here, they did not respond to discovery that sought to get at the very information they claim is absent. Rollin Decl., ¶ 3.

The only *specific* arguments about Plaintiff's improper conduct the BFT Parties make in their motion are really designed to inflame rather than inform, but in any event are easily refuted, as follows:

1.    *Plaintiff allegedly lied to the Court about not being MAB's personal lawyer*. This argument is based on unauthenticated invoices purportedly from Patton Boggs that pre-date the at-issue

agreement by 11 years or more, as well as the BFT Parties' self-serving interpretation of what they mean. Plaintiff truthfully testified that he does not have any recollection of providing personal legal services to MAB, though it does not matter both because Rule 1.8(a) applies only to current clients (Rule 1.9 applies to former clients) and because MAB—represented by able counsel and fully informed about the agreement—continues to reaffirm its validity and says in discovery responses that he will pay the consideration in the future. *See* ECF. No. 137; Rollin Decl. ¶ 15.

2.      *Plaintiff filed identical claims in bankruptcy court.* This is true. When he filed the claims in bankruptcy court, Plaintiff had been unable to serve MAB in this action. Plaintiff had been trying for months without any success. *See* ECF Nos. 18, 21. However, because MAB was a claimant in the bankruptcy case, he could be and was served in that case. MAB's lawyers entered their appearances in this case about 2 weeks later. Thus, the purpose of the bankruptcy filings was to ensure Plaintiff would have at least one valid forum. Plaintiff then withdrew the claims in bankruptcy court when Defendants stipulated to resolve them here. The bankruptcy proceedings lasted only 30 days. *See* Exhibit 2. There was no improper motive and certainly no desire to multiply the proceedings. Plaintiff would not have stipulated to have the claims resolved here had his intention been to make the parties litigate the same issues in 2 courts. If anything, Plaintiff's motion for judgment on the pleadings or for summary judgment on only one claim—the breach of contract claim— and only against one party—MAB— shows an intention to resolve the matter expeditiously. *See* ECF No. 90.

3.      *Plaintiff is bringing unrelated transactions between MAB, MEB, and the BFT into this case to show a conspiracy with respect to Claim 7.* This is not true. The transactions are related and contemporaneous, and the relationships among Defendants are probative of the current conspiracy. Those relationships began decades ago and continued through the point in time when MAB approached Plaintiff in July 2017 (directly and through Mr. Lotito) and asked Plaintiff to sell and assign his $335,000 Claim in the PetroHunter bankruptcy to MAB so that he could "combine and consolidate" the Claim with BFT's

claims in the same proceeding. ECF No. 29-3 ¶ 13. Given MAB's specific request to Plaintiff, the history of MAB receiving tens of millions of dollars-worth of funds and various other benefits from the BFT since 2005 and jointly causing the BFT to loan or invest millions in MAB's business ventures, ECF No. 29-3 ¶¶ 25-33, it was reasonable for Plaintiff to conclude that MAB and BFT were working closely and jointly on their strategies in the bankruptcy proceedings that began in 2016, and that they conspired in July 2017 in the process that led to MAB and Plaintiff signing the August 2017 agreement. Further regarding the significance and facts of the MAB/BFT relationship, none is more probative than those explained by the bankruptcy trustee that involved the merger of the disputed Claim 7 with the BFT parties' claims for purposes of exacting an outsized piece of the PetroHunter bankruptcy. ECF No. 29-3, Exhibit A. And since a conspiracy can be shown by the surrounding circumstances, *e.g.*, *Saint John's Church in Wilderness v. Scott*, 194 P.3d 475, 480 (Colo. App. 1994), *Fisher*, 624 F.2d at 162, it is proper to plead the surrounding circumstances.

None of these complaints speak to the substantive requirements for Rule 11 sanctions; the BFT Parties are just trying to cast Plaintiff in a bad light. If anything, that highlights an absence of merit in their argument.

### 2.    Plaintiff was justified in asserting the conspiracy claim based on the surrounding facts and circumstances.

"To state a claim for civil conspiracy in Colorado, a plaintiff must allege: "(1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) an unlawful overt act; and (5) damages as to the proximate result." *Nelson v. Elway*, 908 P.2d 102, 106 (Colo. 1995). The Court found that Plaintiff "lack[ed] facts to support at least two elements of his claim: (1) meeting of the minds and (2) an unlawful overt act." ECF. No. 123 at 4.

However, the Supreme Court in *Twombly* and courts following it, including this Court, have held that plaintiffs are not expected to know the details of conspiracies at the pleading stage and that a civil conspiracy claim need not be pleaded with particularity. *E.g.*, *Hanks*, 2018 WL 11025410, at 8.

Conspiracies, after all, occur behind closed doors, and plaintiffs often may only see indicia of them before discovery. *See Fisher,* 624 F.2d at 162 ("Direct evidence of a conspiracy is rarely available, and the existence of a conspiracy must usually be inferred from the circumstances."). And as Judge Kane noted in *Robinson v. C.R. Laurence Co.,* Rule 11 applies where a party's "actions were unfounded in light of the law as it might develop and in light of supporting facts *which might be established.*" 105 F.R.D. at 568 (D. Colo. 1985) (emphasis added).

With the foregoing authorities in mind, Plaintiff respectfully submits that he had a reasonable belief that there was a meeting of the minds and an overt act. As asserted in the amended complaint, Defendants used their various business enterprises as "intertwined and interrelated entities," ECF No. 16, ¶ 61, with the intent to "use the Brody Claim," without paying for it, *id.* ¶ 62, through deception by Defendants' representative, Mr. Lotito, *id.* ¶ 64; *see also id.* ¶ 61 (averring that Mr. Lotito "served in various capacities with respect to…BFT"). Indeed, it is to be noted that Defendants conceded in briefing that Mr. Lotito is a beneficiary of the BFT. ECF No. 67, n.1.

Plaintiff's factual basis for asserting a conspiracy is bolstered by additional facts that the Court declined to consider in the motion to dismiss briefing. ECF No. 123 at 5, n.3. As Plaintiff described in a declaration filed at ECF No. 29-3, and as gleaned through the limited[6] discovery conducted thus far, the conspiracy among Defendants must be viewed in the wider context of their joint effort to acquire valuable energy rights through the PetroHunter bankruptcy, using the combined force of Claim 7 and the BFT's bankruptcy claims. ECF No. 29-3, ¶¶ 25-33.

In other words, there was not just an agreement between Defendants to acquire Claim 7 from Plaintiff; rather, there was a complex underlying scheme to acquire Claim 7 from Plaintiff and leverage

---

[6] Neither the BFT Parties nor MAB adequately responded to discovery about material communications, including those between their *joint* bankruptcy lawyer, on the one hand, and the PetroHunter debtor and other creditors, on the other. Rollin Decl. ¶ 3. These communications go to the heart of the purpose of MAB's acquisition, and Defendants' use, of Claim 7.

it with the BFT claims to try place additional pressure on the bankruptcy trustee and secure a share of

the PetroHunter bankruptcy estate, similar to the working relationship that had already been occurring

for ten years. *Id.* The BFT Parties had to be part of the plan as a matter of law because its trustee—

MEB (MAB's son)—controls the BFT's assets, which includes the BFT's bankruptcy claims. Rollin

Decl., Exhibit B, Interrogatory No. 5 (confirming that since approximately 2011, MEB has been the

sole trustee of the BFT and, therefore, the only person having the right to control the BFT's assets).

Ultimately, the bankruptcy trustee blocked Defendants' plan, identifying it as involving fraud among

a host of "Bruner Interests" including MAB and the BFT. ECF No. 29-3, at 34-35. Under Colorado

law, these associative background facts are sufficient indicia of an agreement to find conspiracy liability

on the merits. *Saint John's Church in Wilderness v. Scott*, 194 P.3d 475, 480 (Colo. App. 1994).

The meeting of the minds allegations here are also no less than those the Court found adequate

in *Hanks*. There, the plaintiffs' "allegations with respect to an agreement come down to HCA knowing

that Aminokit and Sisco were not licensed, HCA negotiating with MOB so that Aminokit could obtain

a lease at the Conifer Building, and HCA distributing marketing materials for Aminokit and providing

it with access to referral sources." *Hanks*, 2018 WL 11025410, at *6. If this was just enough "to raise

a reasonable expectation that discovery will reveal evidence of prohibited conduct;" *id.*, Plaintiff had

a reasonable basis on which to assert a conspiracy here. *See also id.*, at *8 (acknowledging that the Court

could infer an agreement at the pleading stage); *accord Twombly*, 550 U.S. at 556, 127 S.Ct. at 1965.

Precisely the same holds true of the overt act element of Plaintiff's conspiracy claim. The overt

act is, at a minimum, using the claim as described by the bankruptcy trustee. This is bolstered by the

fact that both MAB and the BFT Parties were represented in PetroHunter by the same lawyer, who

used the combined Claim 7 and BFT claims to advance the "Bruner Interests'" objectives. *See, e.g.*,

**Exhibit 3**. As the bankruptcy trustee ably demonstrated, those objectives were unlawful. ECF No.

29-3, Exhibit A. And as a matter of law, a lawyer's knowledge is imputed to his client. *E.g.*, *Murry v.*

15

*GuideOne Specialty Mut. Ins. Co.*, 194 P.3d 489, 494 (Colo. App. 2008). Here, the imputation runs to both of the attorney's clients—MAB and the BFT Parties.

Second, Plaintiff pleaded in the amended complaint that Mr. Lotito, again, a BFT representative and beneficiary, participated in misleading Plaintiff about MAB's intent to pay Plaintiff the consideration—an overt act. ECF No. 16, ¶ 64. The fact that this misconduct occurred after contracting is immaterial. A party definitionally breaches a contract only after its execution and/or can formulate the intention to commit civil theft after acquiring the property. *See* C.R.S. § 18-4-401(1) (establishing that theft can occur by retaining, not just by obtaining, a thing of value). Thus, Mr. Lotito's participation after contracting is an overt act or at least gives rise to a reasonable expectation that discovery will reveal more.

Finally, Plaintiff also notes that he pleaded the unlawful act of MAB using the BFT as a vehicle to shield assets from MAB's creditors, including Plaintiff. ECF No. 16, ¶ 9(c). Since the BFT can only act through its trustee, MAB's use of the BFT in this matter is conspiratorial.

There are enough facts in the BFT-MAB relationship and dealings with respect to the PetroHunter bankruptcy to reasonably expect there is more behind the curtain, and that is an adequate basis on which to have asserted a conspiracy. *Hanks*, 2018 WL 11025410, at *8. Thus, as applied to Rule 11, none of the bases for sanctions is met. And, again, none of this analysis is necessary anyway because the BFT Parties failed to comply with the procedural requirements of Rule 11. *Dowling, supra.*

**III.    The Court should deny the Fee Motion in its entirety because the BFT Parties expended fees and costs on unreasonable and unnecessary matters, because they funded MAB's defense, for which no recovery is permissible, and/or because their records are inadequate.**

A few important threshold points need to be fleshed out before getting into the discussion of how the fee demand is unreasonable. The first issue is what theory of recovery is Part 3 of the Fee Motion germane to? It cannot be the request for fees under § 13-17-102 because that statute is preempted by Rule 11. It also cannot be germane to Rule 11 because they did not comply with Rule

16

11 and, in any event, under Rule 11 the measure of sanctions is what is necessary to deter future misconduct, not what it cost to defend the case. *Supra*. And, as discussed, the BFT Parties offer no evidence of that because they were proceeding under the preempted state statute. So, the BFT Parties' fee request is inapplicable to the request under either Section 102 or Rule 11.

This leaves fee shifting under § 13-17-201, which is inapplicable for the reasons and under the law detailed above. Nevertheless, assuming the Court seeks to set the measure of payment to the BFT parties, the BFT Parties would have to prove not only that their hourly rates were reasonable, but also that the number of hours expended was reasonable. *E.g.*, *Payan v. Nash Finch Co.*, 310 P.3d 212, 217, 2012 COA 135M, ¶ 18 (Colo. App. 2012). And, "[t]he district court...should exclude from [the] initial [lodestar] calculation hours that were not 'reasonably expended.'" *Id.* at 218. (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434, 103 S.Ct. 1933, 1940, 76 L.Ed.2d 40 (1983)). This includes "deductions for overstaffing and for hours that are excessive, redundant, or otherwise unnecessary." *Id.* (internal quotations omitted).

This understanding defeats a threshold point the BFT Parties make. The BFT Parties assert that the Court should not inquire into the reasonableness of the hours they expended but instead should defer to their judgment. ECF No. 130 at 12. For this they rely on *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008). *Id.* However, their argument is inapt because *Moreno* was about lawyers on contingency fee cases and the reasonable expectation that in that context, they would not waste time. *Moreno*, 534 F.3d at 1112. This, however, is not a contingency case, so *Moreno* does not apply, and the considerations may be different. Indeed, in this case, one might reasonably consider that not all of the litigation tactics were as disinterested and commercial as one would otherwise expect because one of the Polsinelli partners on the case is MEB's wife and MAB's daughter-in-law and the emotions, as shown in the BFT Parties' use of language in the Fee Motion, have run hot throughout. As will be shown in the Rollin declaration for example, the BFT Parties have inserted themselves in

17

matters that were just between Plaintiff and MAB and doing MAB's work, suggesting atypical litigation decision-making.

Furthermore, the law says that no deference is to be given to the lawyer's decision-making. A party's "burden in an application for attorneys fees is to prove and establish the reasonableness of each dollar, each hour, above zero." *Jane L. v. Bangerter*, 61 F.3d 1505, 1510 (10th Cir. 1995) (citation and quotation marks omitted); *see also Christos v. Halker Consulting, LLC*, No. 16-cv-01838-PAB-NYW, 2019 WL 3778278, at *5 (D. Colo. Aug. 12, 2019) ("Because plaintiff has made no showing as to the reasonableness of those hours…the Court will exclude them from the lodestar calculation."). Here, the BFT Parties did not establish the necessity of their work because they relied on a presumption from an out-of-circuit, contingency case decision instead of the controlling law of this circuit. Thus, the Court has nothing to go on and may deny the motion on that basis, as well.

Nevertheless, with this legal framework in mind, the BFT Parties' fee demand is unreasonable and unnecessary in multiple respects. The BFT Parties' lawyers billed many tens of thousands of dollars to their clients for unnecessary tasks and they reached for unfounded defenses to a simple fact-set, including:

- Arguing that Plaintiff waived a breach of contract, which was untenable on its face and omitted material provisions of the underlying contract. ECF No. 48 at 8-9.

- Arguing that the Colorado Rules of Professional Conduct invalidated the contract even though MAB continues to assert that the contract is valid and acknowledges his debt to Plaintiff. ECF No. 137.

- Arguing without any legal basis that a trust is a corporation. ECF No. 123 at 4, n.2.

- Fighting this Court's jurisdiction twice even though the case still would have been litigated in another forum. ECF Nos. 54 & 72.

- Filing an unripe fee motion based on positions directly contrary to law and their prior positions in this case. ECF No. 136; *see also supra*.

- Filing a claim for fees and under a preempted state statute. *supra*.

Rollin Decl., ¶¶ 4-15.

In one notable instance, Defendants filed a Rule 56(d) motion without conferring (indeed after misrepresenting the conferral to the Magistrate Judge), prompting this admonition:

> Based on the e-mails being exchanged, had Defendants bothered to complete in good faith the conferral process required not only by local rule but the judicial officers' practice standards, some accommodation might have been reached between counsel without the need for a motion at all.

ECF No. 114 at 8. This, according to the Magistrate Judge, "impos[ed] double expenses on the Plaintiff"…and was "inconsistent with Rule 1." *Id.* at 7-8.

In addition, the lawyers' invoices show 83 entries or partial entries that cannot be examined due to lack of detail and/or redactions. Rollin Decl., ¶¶ 16. The Court should disallow the vague entries, *e.g.*, *Wilhelm v. TLC Lawn Care, Inc.*, No. 07-2465-KHV, 2009 WL 57133, at *3 (D. Kan. Jan. 8, 2009), and disallow or at least review the redacted entries *in camera* as they may also be vague or fall into categories of unreasonable or unnecessary hours, *e.g.*, *Team Sys. Intern., LLC v. Haozous*, No. CIV-14-1018-D, 2016 WL 11593846, at *1 (W.D. Okla. Aug. 19, 2016). There are also at least 13 block-billed entries, Rollin Decl., ¶ 17, which should be disallowed or discounted. *Robinson v. City of Edmond*, 160 F.3d 1275-1284-85 (10th Cir. 1998). In short, these are not the "meticulous time records that reveal … all hours for which compensation is requested and how those hours were allotted to specific tasks" required by the Tenth Circuit. *Jane L.*, 61 F.3d at 1510. (Quotation and citation omitted).[7]

Finally, the alleged complexity and novelty of the issues is irrelevant because those factors are subsumed by the lodestar calculation. *Atlas Biologicals, Inc. v. Kutrubes*, No. 1:15-cv-00355-CMA-KMT, 2020 WL 3893566, at *6 (D. Colo. July 10, 2020). Regardless, there is nothing particularly complex about this case. There is one essential set of facts: MAB did not pay for a valuable asset that was

---

[7] There is also evidence that the BFT Parties paid at least some of MAB's legal fees, Rollin Decl., ¶ 7, which raises questions about whether and to what extent fees for which recovery is sought were actually fees of MAB.

4858-2759-8336, v. 2

delivered to him, and he and the BFT then used it to try to get something from the PetroHunter bankruptcy estate that the bankruptcy trustee says they were not entitled to.

Plaintiff respectfully submits that these concrete examples better demonstrate that Defendants ran up the costs of this case and serve as more reliable evidence than the BFT Parties' conclusory and hyperbolic assertions to the contrary.

## IV.  The cost-shifting statutes the BFT Parties rely on are also inapplicable and preempted.

The Court should also deny the BFT Parties request for costs. C.R.S. § 13-16-113(2) applies to dismissal of tort claims and is unavailable for the same reasons discussed in Part I of this brief. C.R.S. § 13-16-105 is preempted by federal law. *Stender v. Archstone-Smith Operating Tr.*, 958 F.3d 938, 947 (10th Cir. 2020). C.R.S. § 13-16-109 applies where each party prevails on some claims and gives the Court discretion to apportion costs (which hasn't happened yet), though the rationale of *Stender* suggests that it would be preempted anyway. Should the Court reach that question, Plaintiff respectfully requests that it find Section 109 is preempted under the teaching of *Stender*.

Respectfully submitted this 25th day of October, 2021.

*/s/ Michael A. Rollin*
Michael. A. Rollin, Esq.
Mallory A. Revel, Esq.
Lindsey Idelberg, Esq.
FOSTER GRAHAM MILSTEIN & CALISHER LLP
360 South Garfield Street, Sixth Floor
Denver, Colorado 80209
mrollin@fostergraham.com
mrevel@fostergraham.com
lidelberg@fostergraham.com
Tel: (303) 333-9810
Fax: (303) 333-9786
*Attorneys for Plaintiff*

4858-2759-8336, v. 2

## CERTIFICATE OF SERVICE

I hereby certify that on October 25, 2021, I served the foregoing **RESPONSE IN OPPOSITION TO THE BFT PARTIES' MOTION FOR AWARD OF MANDATORY FEES AND COSTS** via CM/ECF to all counsel of record.

By:    */s/ Michael A. Rollin*
Michael. A. Rollin, Esq.