**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 19-cv-01091-RM-NRN

DAVID E. BRODY,

Plaintiff,

v.

MARC A. BRUNER,
THE BRUNER FAMILY TRUST, and
MARC E. BRUNER, AS TRUSTEE OF THE BRUNER FAMILY TRUST

Defendants.

---

**REPLY IN SUPPORT OF THE BFT PARTIES' MOTION FOR AN AWARD OF MANDATORY FEES AND COSTS**

---

Defendant the Bruner Family Trust ("BFT") and Marc E. Bruner ("MEB"), as Trustee of the BFT (together, the "BFT Parties"), reply in support of their motion for a mandatory award of fees and costs.

1. **Overview**

For the pendency of this action, Plaintiff has relentlessly pursued tort liability against the BFT Parties. Only after Plaintiff's civil conspiracy claim, based on underlying allegations of fraud, was dismissed, did he transparently change his tune and claim his case was based on a breach of contract to avoid a mandatory award of fees and costs. Plaintiff's last-minute change-of-heart should not sway the Court. Since filing his Amended Complaint, Plaintiff has doggedly pursued and characterized this as a fraud action, which is a tort.

Plaintiff opposes the BFT Parties motion for a mandatory award of fees and costs arguing (1) conspiracy is not a tort, (2) Plaintiff's claims were not baseless; and (3) the BFT Parties incurred fees that were not reasonable or necessary. The Court should reject each of these arguments. And with respect to Plaintiff's claim that any fees incurred by the BFT Parties were

1

not reasonable, the Court should remember the BFT Parties' lawyers already discounted their billings by over 15%, which easily covers any concerns raised by Plaintiff.

Additionally, Plaintiff is playing games with page limits. Apparently not able to respond in 20 pages, and without seeking leave to exceed this page limitation, Plaintiff filed a 20-page response [Doc. #138] (the "Response") along with a 21-page declaration [Doc. #139] (the "Declaration"). The Declaration, however, is predominantly argument that should be in the Response. Nonetheless, the BFT Parties reply complies with page limitations for a reply.

2. **Civil conspiracy is a tort.**

Plaintiff's lead argument is that his claim for conspiracy was not a tort. He argues that conspiracy is a derivative claim based on an underlying unlawful act that can be based on tort or contract and he cites several cases. Although conspiracy is derivative and can be based on a tort or breach of contract, none of Plaintiff's cited cases say a conspiracy claim itself ceases to be a tort based on the underlying unlawful act. For example, the very first case on which Plaintiff relies, *Shell v. Henderson*, 2013 WL 4838907, *8 (D. Colo. 2013), cites *Farmland Indus. V. Frazier-Parrott Commodities, Inc*. 871 F.2d1402, 1409 (8th Ci. 1989) for the proposition that "civil conspiracy extends liability for tort." Plaintiff did not cite any cases in which a court determined a civil conspiracy claim was not a tort, even when based on an underlying contract claim.

Courts consistently hold that civil conspiracy is a tort, even when the conspiracy was to breach a contract. *Carnation Building Services, Inc. v. City and County of Denver*, 2011 WL 6940474, *9 (D. Colo. 2011)("**Civil conspiracy is a tort claim**" (bold added)); *Charnoff v. Loving,* 2020 WL 5803301, *3 (D. Colo. 2020)(finding that **civil conspiracy "sound[s] in tort**"); *Loughridge v. Goodyear Tire and Rubber Co*., 192 F.Supp.2d 1175, 1186 (D. Colo.)(describing civil conspiracy as an "independent tort"); *see also Logixx Automation, Inc. v. Lawrence Michels Family Trust*, 56 P.3d 1224, 1231 (Colo. App. 2002)(analyzing a conspiracy to breach a contract

2

as a tort and holding it was barred by the economic loss rule); *McWhinney Centerra Lifestyle Center LLC v. Poag & McEwen*, 486 P.3d 439, 455 (Colo. App. 2021)(affirming district court's dismissal of tort claim for conspiracy to breach a contract based on the economic loss rule); *Reichert v. Smith*, 2020 WL 11038522, *3 (D. Colo. 2020) (analyzing a civil conspiracy claim as a tort even though it was based on an alleged conspiracy to breach a contract).

Notwithstanding conspiracy being a tort, Plaintiff argues the Court should find his conspiracy claim still sounds predominantly in contract and is excluded from C.R.S. §13-17-201. The Court should not be swayed. A court determining whether an action sounds in tort should "rely on the pleading party's characterization of its claims and should not consider what the party should or might have pleaded." *Galvin Investment Co., LLC v. Smith,* 2020 WL 6743779, *2 (Dist. Colo. 2020).

Here, Plaintiff's primary claim seeks to invalidate the purported contract, not enforce it. Plaintiff's Amended Complaint seeks a declaration that the transfer of the claim is void *instead* of an award of damages for breach of contract. Plaintiff's claim for promissory estoppel is consistent with his effort to invalidate the contract rather than to enforce it because if the contract remains intact, he cannot maintain a claim for promissory estoppel.[1] And this is consistent with Plaintiff's *Reply in Support of his Motion for Constructive Trust* [Doc. #48] where he argued the economic loss rule was not applicable because he was fraudulently induced into the Agreement. Fraudulent inducement would invalidate the contract. Plaintiff has always characterized this as a fraud (tort) case, and asserted contract claims only in the alternative.[2] For example (bold an underline emphasis added below):

- The first paragraph in Plaintiff's Amended Complaint described the conspiracy as one to "**defraud Plaintiff**." *Amended Complaint*, ¶1 [Doc. #16]

---

[1] *Wheat Ridge Urban Renewal Authority v. Cornerstone Group XXII, L.L.C.*, 176 P.3d 737, 741 (Colo. 2007)("Recovery on a theory of promissory estoppel is incompatible with the existence of an enforceable contract").
[2] Plaintiff's Response argues that fraud was pled in the alternative (Response, p. 4) but a plain reading of the Amended Complaint demonstrates the opposite.

3

- Plaintiff's lead claim in the Amended Complaint is fraud and his second claim in the Amended Complaint is civil theft, a tort-like claim. *See generally, Id*.

- Plaintiff's third claim for relief was breach of contract. Plaintiff pled this "in the alternative" (i.e. as a backup argument) in the event he was unable to prevail on his tort claims. The thrust of Plaintiff's Amended Complaint was based in tort and his contract claim was secondary. *Id*.

- Plaintiff's civil conspiracy claim alleges, "**Defendants agreed and worked cooperatively to defraud Plaintiff of and steal the Brody Claim**, use the Brody Claim, and/or retain the benefit of the Brody Claim, or, <u>**in the alternative, to breach Bruner's contractual obligation**</u> to pay consideration and act in good faith under the Agreement, and/or retain the benefit of Bruner's breach, in order to enrich themselves at the expense of Plaintiff." *Id*. ¶62. Breach of contract claim was alternative to his tort claim.

- Plaintiff's statement of the case in the Scheduling Order [Doc. #89] describes his claim as, "[MAB], with the active support or acquiescence of [MEB], as trustee for the [BFT], **defrauded Plaintiff** out of his $335,374.18 claim…. **The purpose of MAB's fraud** was so that he could combine the Brody Claim with a claim held by the BFT…."

- Plaintiff claims in the Scheduling Order [Doc. #89] that he seeks exemplary damages pursuant to C.R.S. §13-21-102, which applies when a claim is attended by circumstances of fraud.[3]

- Plaintiff's introduction in his Motion for Constructive Trust described the case as "aris[ing] from Defendant Mark A. Bruner's [] **fraudulent acquisition** of a $335,000 bankruptcy claim…." And "**MAB's fraud and use of the Brody Claim was facilitated by his son, Marc E. Bruner** [], who serves as trustee for the Bruner Family Trust…." [Doc. #29]

- Plaintiff's Declaration [Doc. #29-3, ¶3] states, "**MAB's fraud and conspiracy with the BFT has resulted in significant damages to me**."

- Plaintiff's Declaration [Doc. #48-1, ¶9] states, "I believe that **upon fraudulently obtaining my Claim** through the Agreement, Marc A caused the BFT to conspire with him…."

It makes sense that Plaintiff relied on tort claims against the BFT Parties because they were not a party to the contract and therefore did not sign the relevant Agreement. The BFT

---

[3] The BFT Parties note Plaintiff has not properly pled a claim for exemplary damages through this reference in the Scheduling Order or elsewhere.

Parties were not even aware of it. And Plaintiff admits he never spoke with them about it. Thus, he could not assert a contract-based claim against the BFT Parties. Plaintiff also had to plead conspiracy to breach the contract, if at all, in the alternative because it was a longshot at most. MAB could not conspire to breach a contract to which he was a participant and the BFT Parties could not conspire by themselves. *See Reichert v. Smith*, 2020 WL 11038522, *3 (D. Colo. 2020) (granting a motion to dismiss a claim for civil conspiracy to breach a contract because one of two alleged participants in the conspiracy also was a party to the contract and a party to a contract "has no independent tort duty not to conspire to breach it…And without [that party] there can be no claim for civil conspiracy against [the other party] because one party can't engage in a conspiracy").

Plaintiff's only option, therefore, was to rely on tort-law to pursue the BFT Parties and it was not until opposing the BFT Parties' Motion for Fees that Plaintiff suddenly had to change his tune. It is totally transparent that Plaintiff now claims this is just a run-of-the-mill contract action solely to avoid the consequences of his strategic decision to sue the BFT Parties in tort and the implication of a mandatory fee award under C.R.S. §13-17-201.

Plaintiff also claims civil theft, another basis for the alleged conspiracy, does not sound in tort and cites *Bermel v. BlueRadios*, Inc., 440 P.3d 1150 (Colo. 2019) claiming the Colorado Supreme Court declined to decide that civil theft is a tort. *Response*, p. 2. Although the Colorado Supreme Court did so decline, Plaintiff's citation mischaracterizes the decision because prior to declining, the court recognized that civil theft, "appear[s] to amount to a tort in Colorado." *Bermel v. BlueRadios*, Inc., 440 P.3d 1150, 1157 (Colo. 2019). Here, there is no reason for the Court to ignore the Colorado Supreme Court's recognition that civil theft sounds in tort.[4]

---

[4] Moreover, civil theft contains elements similar to fraud such as obtaining property through deception. Civil theft also is similar to conversion, a recognized tort. *See Gagne v. Gagne*, 338 P.3d 1152, 1168 (Colo. Ct. App. 2014).

Plaintiff argues the essence of this action was not tortious. *Shell v. Henderson*, 2014 WL 3716165, *3 (D. Colo. 2014) analyzed how to determine whether C.R.S. §13-17-201 applies when both tort and contract claims were pled as follows:

> [T]he most logical sequence to undertake this hybrid analysis is to first apply the "predominance" test, assessing whether the "essence of the action" is tortious in nature (whether quantitatively by simple number of claims or based on a more qualitative view of the relative importance of the claims) or not. The Court would then turn to the question of whether tort claims were asserted to unlock additional remedies only where the predominance test failed to yield a clear answer, such as when the tort- and non-tort claims are equal in number or significance....

Applying this standard makes clear that torts predominate Plaintiff's claims and C.R.S. §13-17-201 is applicable. By simple number, Plaintiff pled more tort claims against the BFT Parties. As noted in *Gagne v. Gagne, 338 P.3d 1152, 1168 (Colo. App. 2014)*, for this analysis only claims asserted against the BFT Parties should be considered. Of Plaintiff's seven claims, he asserted only two against the BFT Parties (civil conspiracy and declaratory relief). Conspiracy is a recognized tort in Colorado. And Plaintiff's conspiracy claim was based on two underlying torts (fraud and civil theft) and only one underlying contract claim (breach of contract). Likewise, his claim for declaratory relief argues the transfer of the claim was invalid mainly based on tort-theories. *See Amended Complaint*, ¶68 (citing "fraud, civil theft, and lack of consideration"). Quantitatively, tort claims predominate.[5] But it is not just a matter of counting claims. As set forth above, qualitatively, Plaintiff's claims sound in tort based on Plaintiff's characterization of his claims in every pleading and motion he has filed. Even if the Court turns to the question of whether tort claims were asserted to unlock additional remedies, the result does not change because Plaintiff

---

[5] Even if considering all of Plaintiff's claims, tort claims predominate quantitatively because four of Plaintiff's seven claims sound in tort. Three of his claims (fraud, civil theft, and conspiracy) sound in tort, and his claim for declaratory relief argues the transfer of the claim was invalid mainly based on tort-theories. *See Amended Complaint*, ¶68 (citing "fraud, civil theft, and lack of consideration"). Only three of Plaintiff's claims (breach of contract, breach of duty of good faith and fair dealing, and promissory estoppel) sound in contract. And Plaintiff did not allege the BFT Parties conspired to commit promissory estoppel or breach a duty of good faith, so those should not be counted against them.

6

seeks to unlock additional remedies by pleading torts such as exemplary damages, invalidation of the underlying contract, and damages against defendants who were not party to any contract.

Arguing in the alternative, Plaintiff claims that even if this action is predominately tortious, C.R.S. §13-17-201 still should not apply based on policy considerations. He claims C.R.S. §13-17-201 does not apply because his fraud claim against MAB remains. The BFT Parties addressed this in their Motion for Fees and stand by that analysis. The cases Plaintiff cites are distinguishable in that they involve situations in which some, but not all, claims were dismissed against the party asserting C.R.S. §13-17-201. Here, all claims against the BFT parties were dismissed. Next, Plaintiff cites *Cf. Employers Ins. of Wausau v. RREEF USA Fund-II (Colorado), Inc.*, 805 P.2d 1186, 1188 (Colo. App. 1991), claiming the BFT Parties are "exalt[ing] form over substance without advancing any public" interest, which leads to, "an absurd and illogical result." This case bears no resemblance to *Wausau*. There, the defendant filed a 12(b) motion to dismiss. Although the parties could have stipulated to dismiss under Rule 41, instead plaintiff stipulated to the 12(b) motion. Then defendant sought its fees under C.R.S. §13-17-201. The court denied the request because the court determined the stipulation was inconsistent with the purpose of the statute. Here, Plaintiff has never conceded a thing and C.R.S. §13-17-201, in policy and as written, is consistent with the BFT Parties recovering their fees and costs.

Plaintiff next argues that applying Section 201 would undermine Plaintiff's right to plead in the alternative. Section 201 does not affect Plaintiff's ability to plead in the alternative. It just imposes liability for pleading unsupported tort claims. Judge Krieger said it well, "the plaintiff [is] the master of his pleading: if the plaintiff chooses to plead claims in tort, he runs the risk of C.R.S. § 13–17–201 applying; if he wishes to avoid the application of the statute, he must refrain from pleading tort claims." *Torres v. American Family Mut. Ins. Co.*, 606 F.Supp.2d 1286, 1291 (D. Colo. 2009). Plaintiff's alternative pleading needed to satisfy Rule 8's pleading standards,

7

consistent with *Twombly* and Rule 11.  Plaintiff was unable to satisfy those standards, which is why Section 201 was implicated.

Finally, Plaintiff argues the BFT Parties should not recover fees incurred in the bankruptcy adversary proceeding.  The reason the BFT Parties <u>should</u> recover those fees is the adversary proceeding was part and parcel with this case.  First, this Court's jurisdiction is based on the dispute being "related to" the PetroHunter bankruptcy [*see* Doc. #66].  Although this Court decided against referring this back to the bankruptcy court, it easily could have.  In that case, the adversary proceeding would have continued and there would be no question that the BFT Parties could recover all their incurred fees.  It would be inequitable to disallow those bankruptcy-related fees simply because this Court decided to keep the case.  The BFT Parties' claim is timely because it could not be asserted until this Court, which is superior to the bankruptcy court, dismissed Plaintiff's claims with prejudice.  Second, the BFT Parties were an innocent party that shared a last name with MAB but had nothing to do with the underlining contract that Plaintiff entered with his client MAB.  The only reason Plaintiff sued the BFT Parties in his Amended Complaint is that he learned they might receive a distribution in the bankruptcy.

3. **Plaintiff's claims were not substantially justified.**

Plaintiff has not refuted the BFT Parties argument that Plaintiff's claim against them was substantially unjustified, vexatious, baseless, and wholly without merit.  The BFT Parties believe Plaintiff's improper conduct should be considered when weighing the BFT Parties' request for fees.  Nonetheless, the BFT Parties withdraw their specific request under C.R.S. §13-17-102, but still seek an award under C.R.S. § 13-17-201 and any other basis this Court deems proper.

4. **The fees sought by the BFT Parties were reasonable and necessary.**

Plaintiff's Response does not challenge attorney hourly rates charged to the BFT Parties.  Thus, Plaintiff concedes the hourly rates were reasonable.  Instead, Plaintiff challenges the reasonableness of some of the hours expended.  But most of his arguments are so meritless that

8

he undermines the credibility of his entire Response.[6]  The specific objections Plaintiff makes are to: (a) fees incurred on behalf of MAB; (b) fees incurred pursuing claims Plaintiff believes were "untenable;" (c) lack of detail in billing descriptions; and (d) block billing.  To the extent the Court agrees with any, which it should not, it is important to note that the BFT Parties' counsel already provided in excess of a 15% discount on fees incurred, which more that addresses any objections raised by Plaintiff.

a. **Fees allegedly incurred on behalf of MAB.**

Plaintiff claims the BFT Parties incurred fees on behalf of MAB.[7]  Plaintiff is wrong.  The BFT Parties, and their counsel, did no work on behalf of MAB.  Plaintiff's claim against the BFT Parties was for conspiracy and Plaintiff attempted to plead the conspiracy to encompass most of his claims against MAB.  A natural result of claiming the BFT Parties conspired with MAB to commit fraud, civil theft, and breach of contract, is the BFT Parties (i) investigating the underlying claims, since conspiracy is derivative and they were not a party to the underlying transaction, and (ii) asserting applicable defenses that overlapped with MAB's defenses.  For example, a successful effort to prove MAB did not commit an overt unlawful act (i.e. fraud, civil theft, or breach of contract) would clearly benefit the BFT Parties in their defense of Plaintiff's conspiracy claim.  Thus, Plaintiff's blanket argument that the BFT Parties asserted defenses on behalf of MAB is based on a false premise.

This applies to, *inter alia*: (1) the category of fee entries Plaintiff describes as "the BFT making arguments that applied to the claims against MAB, not the BFT Parties" [*Declaration*, p. 3]; (2) eleven fee entries he characterizes as addressing "MAB arguments concerning civil theft"

---

[6] While Plaintiff's Response cites various standards for evaluating a fee request, Plaintiff fails to apply most of the cited standards to the case at hand.  As noted above, Plaintiff filed a 20-page Response, and a 21-page Declaration (as he has in response to various other motions) which provides additional briefing in response to the BFT Parties' Motion.  This appears to be an end around applicable page limits.  The BFT Parties will respond to these arguments but take issue with these tactics.

[7] Other than identifying the issue, Plaintiff did not make this argument in his Response.  This argument is only presented in ¶¶ 5-9 of the Declaration, in excess of applicable page limitations.

[*Declaration*, ¶8(a)-(k)]; and (3) twelve fee entries he characterizes as "response to motion for judgment on the pleadings or for summary judgment *against* MAB" [*Declaration*, ¶8(l)-(w)].

As noted above, and as Plaintiff argued at length in his Response, Plaintiff's conspiracy claim is derivative of each underlying claim for which he alleges a conspiracy. If MAB or the BFT Parties have a viable defense to the underlying claim, it also is a defense to the conspiracy claim. Thus, it is in the BFT Parties' self-interest to preserve and assert every applicable defense. This applies to Plaintiff's breach of Rule 1.8 of Colorado's Rules of Professional Conduct in entering a business transaction with his own client,[8] because this would void the contract and any purported conspiracy to breach it, and it applies to application of the economic loss rule and statutes of limitations. To the extent the BFT Parties assert valid defenses that are applicable to MAB, the BFT Parties would benefit on the derivative conspiracy claim.

Each billing entry regarding civil theft was for research, drafting, and other work on the BFT Parties' <u>successful</u> motion to dismiss. The Motion to Dismiss sought dismissal of Plaintiff's conspiracy and civil theft claims, and the punitive damage component of that claim. This was to benefit the BFT Parties because if the underlying theft and/or punitive damage claim was dismissed then the BFT Parties could not have been liable for conspiracy.[9]

Other than generally complaining the BFT Parties' Motion to Dismiss included some arguments applicable to MAB, Plaintiff does not argue the actual time spent preparing the Motion to Dismiss and reply was unreasonable. Consequently, there is no basis before the Court to deny these amounts. And Plaintiff's implication that the BFT Parties should not recover any of their fees incurred preparing the very motion that resulted in them being dismissed with prejudice is not supportable.

---

[8] Plaintiff claims MAB seeks to affirm the contract rather than invalidate it. In fact, MAB asserted R.P.C. 1.8 as an affirmative defense [Doc. #95]. Given Plaintiff's reliance on alternative pleading it is disingenuous for him to ignore MAB's pleadings. Additionally, Plaintiff himself pled fraudulent inducement, which would invalidate the contract.
[9] The Court determined the statute of limitations posed fact questions and declined to rule on it at the motion to dismiss stage.

10

For the same reason, the BFT Parties had to defend Plaintiff' effort to obtain judgment on the pleadings against MAB because, if granted, Plaintiff could try to use it to satisfy an element of Plaintiff's conspiracy claim. While Plaintiff now chooses to ignore this correlation, it is inconceivable that Plaintiff would not have attempted to use a favorable ruling on his dispositive motion offensively against the BFT Parties. The BFT Parties had no choice but to defend.

Plaintiff cites billing entries from 8/23/2021 and 9/14/2021 claiming they show work on (1) a discovery conferral letter addressing Plaintiff's deficient responses to written discovery and (2) a subpoena to Plaintiff's law firm. Plaintiff argues both the conferral letter and subpoena eventually came from MAB, not the BFT Parties. However, the BFT Parties and MAB share a common interest and joint defense privilege. Thus, they were able to work collaboratively in some instances—in their respective best interests, such as addressing discovery and discovery violations by Plaintiff. This is not unusual. Magistrate Judge Neureiter acknowledged such coordination at the Scheduling Conference and reduced the number of written discovery requests available to Defendants as a result. *See Scheduling Order*, ¶8 [Doc. #89]. These entries do not reflect the BFT Parties' lawyers doing work for MAB and there is nothing unreasonable about the fees incurred.

Plaintiff complains that on 7/19/21 the BFT wired $10,000 to MAB and implies it is evidence of something improper (Plaintiff does not explain exactly what the issue is). Plaintiff is being intentionally vague or misleading because he has the BFT's responses to written discovery that disclosed payments of $15,000 to MAB pursuant to trust requirements. This is one of those payments and was tendered through MAB's counsel. Regardless, the BFT Parties did not include these amounts in their Motion for Fees.

Plaintiff's objection to all time entries that refence the PetroHunter Bankruptcy should be summarily rejected. This whole case is based on Plaintiff's purported sale of his bankruptcy claim against PetroHunter. Plaintiff successfully argued the basis for this Court having jurisdiction is that it "arises in" or is "related to" the PetroHunter bankruptcy. *See Plaintiff's Response to the*

11

*Court's Order to Show Cause* [Doc. #46]. Thus, there is obvious overlap between this case and the bankruptcy; and fees incurred in this action, even if bankruptcy related, are recoverable.

For example, Plaintiff objects to eleven entries relating to the PetroHunter bankruptcy trustee interpleading funds into the registry of this Court.[10] Those are fees incurred in this action, not the bankruptcy. And they were incurred because of Plaintiff's effort, through this lawsuit and the adversary proceeding, to stop the trustee from paying distributions. The interpleader was tied directly to the partial resolution of Plaintiff's Motion for Constructive Trust [Doc. #29] in this action.

Similarly, Plaintiff objects to time related to the bankruptcy trustee seeking to destroy PetroHunter documents. Based on how Plaintiff pled this case and sought to drag up transactions dating back over a decade, the BFT Parties had no choice but to evaluate and determine whether such destruction would be detrimental or even ethically permitted. The BFT Parties expect Plaintiff would have objected to spoliation of evidence if the BFT Parties allowed the trustee to destroy documents, yet now he complains about efforts to avoid such destruction.

Plaintiff bizarrely objects that the BFT Parties' responded to the Court's two orders to show cause. The BFT Parties obviously had to respond. Again, as with Plaintiff's other arguments, he does not actually suggest the amount of time spent responding to these orders was unreasonable. Rather, he takes issue with the BFT Parties responding at all.[11] The BFT Parties should not be penalized for responding to this Court's show cause orders. And while Plaintiff is correct that this action would be litigated somewhere, certainly the lawyers and Court alike have an interest in ensuring it is litigated in the correct forum with proper jurisdiction.

Plaintiff claims the BFT Parties made "numerous arguments that were contrary to law." *Declaration*, ¶12(a)-(v). This is false and the BFT Parties stand on the clear record in this case,

---

[10] Plaintiff did not identify all of the eleven entries, so he has not met his burden of establishing they are improper.
[11] Plaintiff's argument also works against him too—he could have conceded to moving this to state or bankruptcy court if he was interested in avoiding fees associated with the Court's show cause orders.

12

including that: (1) Plaintiff's Motion for a Constructive Trust was denied; (2) all of Plaintiff's claims against the BFT Parties were dismissed with prejudice; (3) the Motion to Strike [Doc. #51] was denied as moot, not on the merits; and (4) as discussed above and in prior briefing, the BFT Parties properly responded to Plaintiff's Motion for Judgment on the Pleadings. Rather than directly quote, Plaintiff mischaracterizes the BFT Parties' lawyers' billing entries to try to make them look bad. For example, Plaintiff characterizes one of the entries as follows:

> k. ECF No. 131-2, page 60, 9/20/21 entry of MEYEW re: motion for fees which, as shown throughout the response brief, was based on incorrect legal reasoning, was contrary to the BFT Parties' prior positions in the case, and was preempted in part, 1.4 hours.

The actual entry was very different:

| 09/20/21 | Review and analysis of order granting motion to dismiss (.3); multiple telephone conferences with M. and G. Bruner regarding same and to discuss seeking attorney's fees (.8); telephone conference with B. Jones to discuss same (.3). | MEYEW | 1.40 |

Plaintiff claims another example of the BFT Parties making arguments contrary to law includes them, "assert[ing] a heightened pleading standard that was contrary to law" in their Motion to Dismiss. *Declaration*, ¶12(1)-v. First, Plaintiff's Motion to Reconsider [Doc. #135, p.2] blames the Court—not the BFT Parties— for raising the heightened pleading standard.[12] Plaintiff cannot have it both ways depending on what relief he seeks from the Court. Second, Plaintiff's response to the Motion to Dismiss agreed with the BFT Parties' recitation of the applicable pleading standard. *See Plaintiff's Response in Opposition to Motion to Dismiss*, p. 2 [Doc. #74].

Furthermore, the fact that the BFT Parties did not prevail on every position they took does not make their positions "untenable" or "contrary to law." By Plaintiff's logic, Plaintiff raised

---

[12] Plaintiff's counsel's Declaration stating that the BFT Parties asserted the heightened pleading standard in the Motion to Dismiss absolutely refutes the basis for his Motion for Reconsideration.

numerous "untenable claims" that were "contrary to law" given that his Motion for Constructive Trust was denied and all of his claims against the BFT Parties were dismissed with prejudice.

        b.    **Lack of detail in billing descriptions.**

Plaintiff complains of lack of detail or redactions in various billing entries by listing 83 entries but he fails to explain a specific concern with any of them. In checking the billing entries [Doc. #131-2], it appears most of his concerns relate to redactions to protect privilege (attorney-client communications and work product). There is nothing improper about protecting privileged information when seeking to recover fees and the unredacted portion of the entries provide sufficient information to determine what work was performed as demonstrated by the following examples (Plaintiff on the left)[13]:



The BFT Parties, however, do not object to Plaintiff's request for *in camera* review of their invoices if it would assist the Court.

        c.    **Block-billing.**

Plaintiff's last complaint is about block billing. In all, he claims thirteen entries were block-billed. The BFT Parties deny any improper block-billing. In most instances, all work related to the same task, but subtasks were included in the billing entry. Again, comparing side-by-side, the complained of entries are not improperly block-billed.

---

[13] These are from Doc. ##139, and 131-2, respectively.

These entries, like the others, reflect work on a single task and identify subtasks to provide additional detail. These are not improperly block-billed entries.

## VI. CONCLUSION

There can be no honest dispute that Plaintiff asserted tort-based claims against the BFT Parties or that those claims were dismissed pursuant to Rule 12(b)(6). In that context, the BFT Parties are entitled to a mandatory award of their fees and costs.

The BFT Parties' Motion provided all necessary substantiation of their fees and the reasonableness of the fees incurred. Plaintiff failed to refute any of it. And, even if the Court agrees with some of Plaintiff's objections, those objections have already been addressed because the BFT Parties' lawyers reduced their fees by more than 15% before submitting the fee application.

WHEREFORE, the Bruner Family Trust and Marc E. Bruner, as trustee of the Bruner Family Trust, respectfully request that this Court grant their Motion for a Mandatory Award of Fees and Costs and award the attorney fees and costs, and any other relief the court deems proper, consistent with their motion, and allow them to supplement their request to include fees and costs incurred on their motion and reply, and incurred defending Plaintiff's more recent motions.

Respectfully submitted this 8th day of November, 2021.

        **POLSINELLI PC**

        By: */s/ William R. Meyer*

        William Meyer
        *Attorneys for the Bruner Family Trust and Marc e. Bruner, as trustee for the Bruner Family Trust*

**CERTIFICATE OF SERVICE**

   I hereby certify that on the 8th day of November, 2021, I electronically filed the foregoing **THE BFT PARTIES' REPLY IN SUPPORT OF MOTION FOR AN AWARD OF MANDATORY FEES AND COSTS** with the Clerk of Court using the CM/ECF system, which was electronically served to the following:

Michael A. Rollin
FOSTER GRAHAM MILSTEIN & CALISHER LLP
*Attorneys for Plaintiff David E. Brody*

Patrick D. Vellone
Lance Henry
ALLEN VELLONE WOLF HELFRICH & FACTOR PC
*Attorneys for Interpleader Plaintiff*
*Jeffrey L. Hill, Chapter 7 Trustee of*
*PetroHunter Energy Corporation*

William F. Jones
Tanya A. Sevy
MOYE WHITE LLP
*Attorneys for Defendant Marc A. Bruner*

                   */s/ William Meyer*

16