IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 19-cv-01091-RM-NRN

DAVID E. BRODY

Plaintiff,

v.

MARC A. BRUNER,
THE BRUNER FAMILY TRUST, and
MARC E. BRUNER, AS TRUSTEE OF THE BRUNER FAMILY TRUST

Defendants.

**PLAINTIFF'S REPLY IN SUPPORT OF HIS MOTION FOR RECONSIDERATION OF THE COURT'S ORDER DISMISSING THE CIVIL CONSPIRACY CLAIM AGAINST THE BFT PARTIES OR, ALTERNATIVELY, FOR LEAVE TO AMEND**

Plaintiff hereby replies in support of his Motion for Reconsideration of the Court's Order Dismissing the Civil Conspiracy Claim Against the BFT Parties or, Alternatively, for Leave to Amend ECF No. 135 (the "Motion"), and as grounds therefor states as follows:

**INTRODUCTION**

Before addressing the substance of the BFT Parties' response brief, Plaintiff asks that the Court be on guard against their mischaracterizations of Plaintiff's positions, which are laid like land mines throughout the response, and which could lead the Court to reach conclusions about Plaintiff, his counsel, and his legal positions that are not based in fact. The BFT Parties do this in three ways. First, they claim that Plaintiff has taken different positions in different contexts depending on what result Plaintiff seeks to achieve. They even say counsel is untruthful. This is not so. Plaintiff's positions have been consistent throughout. The second thing they do is they try to characterize a proposition that they say Plaintiff is asserting to then rebut it. This is a classic straw argument technique. Third,

1

they state that Plaintiff only moved for reconsideration for clear error or manifest injustice. ECF No. 142 at 2. This is incorrect. Plaintiff also provided previously unavailable evidence (and more discussed below), and cited *Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000) because discovery of previously unavailable evidence is also grounds for reconsideration. ECF No. 135 at 2, 10 n.1.

In this reply brief, Plaintiff will demonstrate the inaccuracy of the BFT Parties' characterizations—not in an attempt to match their ad hominem, but to ensure that the Court has an opportunity to decide the issues before it on the basis of the facts and the law rather than the emotion and personal animus that coat the BFT Parties' various filings.

Now, why should the Court reconsider its prior decision? Plaintiff knows that reconsideration is rarely granted and warranted only in exceptional circumstances, but were the BFT Parties correct, there would be no such thing as reconsideration; no opportunity for a Court to revisit a decision that warrants a second look or to address newly discovered evidence. Clearly, this is not the law. Reconsideration exists for a reason.

Reconsideration is important here because there are three ways in which the Court's decision may be cited for legal propositions that are contrary to law: (1) what the pleading standard is for state law conspiracy claims, (2) whether a court is to infer an agreement at the pleading stage, and (3) the difference between the facts required to plead and the facts required to prove, including how many overt acts Colorado law requires for conspiracy claims. Future generations ought not cite this case either for erroneous legal propositions or as an example of a wrongly decided case, like *F.D.I.C*, for example. "Bad precedents, like hard cases, are the quicksands of the law, and are sure to come up to plague the court." *Utah Const. Co. v. St. Louis Const. & Equip. Co.*, 254 F. 321, 331 (D.N.M. 1916). Win or lose, the decision should accurately state the law.

Of course, Plaintiff's request for reconsideration is not only intended to address a larger jurisprudential issue; he also should be allowed to demonstrate to this Court that there was, indeed, a

2

conspiracy, that the applicable legal standards—from *Twombly*, through *Fisher*, to *Hanks*—give him that right, and that it was reasonable for him to rely on that body of law. There is no material distinction between this case and *Hanks*, for example. All cases have different underlying fact pattens, but the principle of liberal pleading and inferential conspiracies travels.

## ARGUMENT

I. **The Court incorrectly applied a heightened pleading standard from civil rights law, and Plaintiff pleaded its state law claim consistently with binding, and this Court's, precedent.**

In their Motion to Dismiss, the BFT Parties argued for a heightened pleading standard under Rule 9(b) because one of the claims against MAB alleged fraud. ECF No. 67 at 5. In response, Plaintiff opposed heightened pleading under Rule 9(b) because the conspiracy is not limited to fraud. ECF No. 74 at 3-4. The Court's decision did not rely on heightened pleading under Rule 9(b), but instead on the heightened pleading that applies to Section 1983 and 1985. This happened because the Court relied on cases decided under federal civil rights law either directly (because they were civil rights cases) or indirectly (because they took their pleading standards from civil rights cases). Plaintiff argues that state law conspiracy claims are not to be decided under a civil rights standard because heightened pleading in civil rights cases animates public policy preferences not at issue in run-of-the-mill conspiracy cases. That is the basis for this aspect of Plaintiff's motion for reconsideration.

In response, the BFT Parties make accusations of situational arguments and untruthfulness. ECF. No 142 at 3. This is because, according to the BFT Parties, Plaintiff wrote in the motion for reconsideration that the Court's Order raised the issue of heightened pleading "for the first time." ECF No. 142 at 2, 3. But the BFT Parties' attempt to tarnish Plaintiff in this way required them to misstate what Plaintiff actually said in the motion for reconsideration. There, Plaintiff wrote "Plaintiff did not have an opportunity to address *the legal standard and case law applied by the Court* because they appeared for the first time in the Court's Order." ECF No. 135 at 2 (emphasis added). This is true. In

3

the motion to dismiss, the BFT Parties tried to get heightened pleading for fraud; the Court instead applied law predicated on civil rights cases. Though the civil rights cases also imposed a heightened pleading standard, Plaintiff could not have addressed *those cases or their rationale* in the motion briefing. Thus, the BFT Parties' position on this is both legally incorrect and unfair to Plaintiff and his lawyer.

The BFT Parties also accuse Plaintiff of "cherry-picking" *Durre* and *Wagner* for attack, ECF No. 142 at 5, but those were the cases the Court relied on for the legal standard even if the Court only mentioned them a few times in its Order. What Plaintiff was able to show through in-depth research is that the kernel of those cases is the standard for civil rights conspiracies, not the state law standard the applies here. ECF No. 135 at 2-6. The BFT Parties have nowhere to go with this except to say that it was wrong for Plaintiff to drill through the cases to get at this kernel and its underlying rationale. ECF No. 142 at 7. It seems the argument is that Plaintiff's position is over-researched, which argument is not legal reasoning but its antitheses.

Further, contrary to the BFT Parties' mischaracterization, Plaintiff never "claim[ed]" that *Wagner* was a civil rights case. ECF No. 142 at 6. Rather, Plaintiff accurately showed that *Wagner* was decided under an improperly imported civil rights standard. ECF No. 135 at 4-5. Indeed, the BFT Parties' decision not to analyze two other cases undergirding *Wagner* (through *Durre*), ECF No. 142 at 6 n.6, proves the point: drilling down through the case law shows that the cases the Court relied on used a civil rights standard. The Court should correct this error to avoid building on it.

Nevertheless, BFT Parties assert that regardless of the case law the Court cited in its Order, it still applied Twombly, which is basically a "no harm, no foul" argument. This, however, both misreads the Court's Order and misapplies *Twombly*. The Court's Order found that Plaintiff "fail[ed] to allege with any particularity facts which state a plausible claim for relief in light of the elements of his claim." ECF No. 123 at 4. This sentence immediately followed the Court's statement of the pleading standard, which relied entirely on *Durre* and *Wagner*.

4

Critically, where particularity is required, the standard is considered to be "heightened." *E.g.*, *Touchstone Gr., LLC v. Rink*, 913 F.Supp.2d 1063, 1076 (D. Colo. 2012) ("Claims sounding in fraud are subject to Rule 9(b)'s heightened pleading standard, which requires the claimant to state with particularity the circumstances constituting fraud or mistake) (internal quotation and citation omitted); *In re Zagg, Inc. Secs. Litig.*, 797 F.3d 1194, 1021 (10th Cir. 2015) (stating a "heightened pleading standard" of private securities lawsuits requires that claims be pleaded with particularity).

However, under *Twombly*, the standard to be applied is a "middle ground between heightened fact pleading," on the one hand, and mere "labels and conclusions or a formulaic recitation of the elements," on the other. *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (quoting *Robbins v. Okla.*, 519 F.3d 1242, 1247 (10th Cir. 2008)). Because the Court applied a heightened particularity standard instead of this middle ground, it erred.

Furthermore, the BFT Parties' assertion that the Court applied *Twombly* is incorrect for the additional reason that they self-servingly classify Plaintiff's averments as mere conclusions when, in fact, they are facts. To the BFT Parties, everything Plaintiff asserts is a conclusion, but that is not how *Twombly* and its progeny understand the concept of a "mere conclusion." The kind of mere conclusion rejected by *Twombly* is a label or a formulaic recitation of elements. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1965, 167 L.Ed.2d 929 (2007). All *Twombly* requires is "some further factual enhancement." *Id.* at 557, 127 S.Ct. at 1966. This is the middle ground.

What, then, did Plaintiff plead? As shown in the motion for reconsideration, Plaintiff pleaded that Defendants used their various business enterprises as "intertwined and interrelated entities," ECF No. 16, ¶ 61, with the intent to "use the Brody Claim," without paying for it, *id.* ¶ 62, through deception by Defendants' representative, Mr. Lotito, *id.* ¶ 64; *see also id.* ¶ 61 (averring that Mr. Lotito "served in various capacities with respect to…BFT"). Plaintiff further pointed out that Mr. Lotito is a beneficiary of the BFT. *See* ECF No. 67, n.1. And while the BFT Parties argue Mr. Lotito could not have conspired

5

to breach a contract that had already been breached, ECF No. 142 at 15 n. 11, they fail to mention or acknowledge that a civil theft can occur by unlawful retention, not just acquisition, C.R.S. § 18-4-401(1). Because retention definitionally occurs after the initial taking, the BFT Parties' temporal argument is at least incomplete.

That the Amended Complaint meets the requirements of *Twombly* is bolstered by understanding the difference between a mere conclusion and an ultimate fact. *See Beard v. Gen Real Estate Corp.*, 229 F.2d 260, 262 (10th Cir. 1956) (distinguishing between them).

> Ultimate facts are the final facts required to establish the plaintiff's cause of action or the defendant's defense, and evidentiary facts are those subsidiary facts required to prove the ultimate facts; an ultimate fact is the final resulting effect that is reached by processes of logical reasoning from the evidentiary facts, or the core facts, such as the essential elements of a claim.

*In re Taylor, Bean & Whitaker Mortg. Corp.*, No. 3:09-bk-07047-JAF, Case No. 3:09-bk-10022-JAF, Case No. 3:09-bk-10023-JAF, 2018 WL 6721987, at *3 n. 4 (Bank'r M.D. Fla. Sept. 28, 2018) (citation omitted).

Thus, an ultimate fact is not a mere conclusion; it is a reasoned conclusion from evidentiary facts *that need not be pleaded*. *E.g.*, *Hayne v. Green Ford Sales, Inc.*, 263 F.R.D. 647, 651 (D. Kan. 2009) (applying *Twombly*). Indeed, far from rejecting ultimate facts as some sort of improper conclusion, the federal courts *encourage* pleading of ultimate facts rather than overly-detailed evidentiary facts. *Out West Rest. Gr. Inc. v. Affiliated FM Ins. Co.*, No. 20-cv-06786-TSH, 2020 WL 7122512, at *3 (N.D. Cal. Dec. 4, 2020). The "general allegations," in turn, are presumed to "embrace those specific facts that are necessary to support the claim." *Nat'l Org. of Women, Inc., v. Scheilder*, 510 U.S. 249, 255, 114 S.Ct. 798, 803, 127 L.Ed.2d 99 (1984). This is the difference between current notice pleading and former fact or code pleading, *see Twombly*, 550 U.S. at 575, 127 S. Ct. at 1976 (citing 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, p. 207 (3d ed.2004)), and Plaintiff is entitled to the benefit of this presumption and the liberality of the federal rules.

6

Thus, the averment that Defendants "agreed and worked cooperatively to defraud" is a fact-based conclusion, not a label or a mere recitation of elements, and contrary to the BFT Parties' position and this Court's Order, that is not all Plaintiff alleged in the Amended Complaint, as shown above. *See* ECF No. 16 ¶¶ 61-65. The pleaded facts thus provide "some further factual enhancement," *Twombly*, 550 U.S. at 557, 127 S.Ct. at 1966, and belie the BFT Parties' refrain that Plaintiff's conspiracy claim is "not supported by any facts at all." *E.g.*, ECF 142 at 5. Nor does this account for the myriad additional facts found in other court filings that the Court should either consider when asking whether discovery is reasonably likely to yield evidence of a conspiracy, *Hanks v. Aminokit Labs., Inc.*, No. 17-cv-01108-RM-MJW, 2018 WL 11025410, at 6 (D. Colo. Feb. 7, 2018), or allow Plaintiff to add, *Carrillo v. Hickenlooper*, No. 12–cv–02034–RM–MEH, 2014 WL 1977984, at *4 (D. Colo. May 14, 2014).

**II.    The Court should have inferred an agreement at the pleading stage but instead relied on the wrongly-decided *F.D.I.C.* case, and the Court should clean up this line of cases, not build upon the error.**

As shown in the motion, this Court has applied *Twombly* more liberally before. *See Hanks*, 2018 WL 11025410, at *8. The BFT Parties try to distinguish *Hanks*, but all they did was parse out the specific facts of *Hanks* and argue it's distinguishable without analysis as to how. *See* ECF No. 142 at 9-10. Of course, all cases arise in different factual settings, so the facts are going to be different, but the principle of liberally construing a complaint to infer a conspiracy at the pleading stage applies across the board. This Court made that very inference in *Hanks* where it wrote:

> HCA has presented no case holding that a plaintiff must present evidence of an agreement at the motion-to-dismiss stage. Because HCA has failed to present case law showing what must be alleged at the motion-to-dismiss stage, the Court will not jump down a rabbit hole for it.

*Hanks*, 2018 WL 11025410, at *8.

The same holds true here. The only case the BFT Parties cited regarding the requirement to show an agreement at the motion-to-dismiss stage was *F.D.I.C. v. First Interstate Bank of Denver, N.A.*, 937 F.Supp 1461, 1473 (D. Colo. 1996), ECF No. 67 at 7-8, and that case, as shown both in the motion

7

for reconsideration and below, was wrongly decided on this point. In fact, *F.D.I.C.* relied on the very cases this Court distinguished in *Hanks*, as described in the motion, ECF 135 at 6. Thus, to find a requirement to show an agreement at the motion-to-dismiss stage would require the Court to jump down the same rabbit hole it declined to explore in *Hanks*.

It's not only *Hanks*. *Fisher* says to infer. *Twombly* says to infer. Only the BFT Parties say that the Court cannot infer an agreement and they do so exclusively in reliance on *F.D.I.C.* However, as the motion shows, *F.D.I.C.* relied on merits cases, not pleading cases, and therefore is not good law on the pleading standard. *See Brecht v. Abrahamson*, 507 U.S. 619, 631, 113 S.Ct. 1710, 1718, 123 L.Ed.2d 353 (1993) (cases that do not squarely consider propositions are not precedential).

Faced with this, the BFT Parties' argument is "[t]hat simply is how all cases are decided." ECF No. 142 at 8. However, the BFT Parties cite no authority supporting the idea that a case is necessarily good law merely because a court reached a conclusion. There is such a thing as a wrongly-decided case. *F.D.I.C.* is one of them and the BFT Parties wish this to be one too.

The common law is built case-upon-case-upon-case, "prizing stability and order in the law" and "proceeding slowly and incrementally, building on what came before." *McDonald v. City of Chicago, Ill.*, 561 U.S. 742, 881, 130 S.Ct. 3020, 3102, 177 L.Ed.2d 894 (2010) (Stevens, J., dissenting). "The obvious point is that the precedential value of a decision is defined by the context of the case from which it arose. If, in light of that context, the decided case is materially or meaningfully different from a superficially similar later case, the holding of the earlier case cannot control the latter." *UC Health v. N.L.R.B.*, 803 F3d 669, 683 (D.C. Cir. 2015) (Edwards, J., concurring).[1] The Supreme Court has "said that it is the '*duty*' of judges 'to restrict general expressions in opinions in earlier cases to their specific

---

[1] Circuit Judge Edwards's concurrence provides an excellent summary of the importance of adhering to precedent, emphasizing that "the force of a general expression enunciated in a prior decision must be limited by reference to its specific context—is so firmly embedded in stare decisis jurisprudence that the Supreme Court has called it a 'canon of unquestionable vitality.'" *U.C. Health*, 803 F.3d at 682 (quoting *Landgraf v. USI Film Prods.*, 511 U.S. 244, 265, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994)).

8

context.'" *Id.* (quoting *Int'l Bhd. of Teamsters Local 309 v. Hanke,* 339 U.S. 470, 480 n. 6, 70 S.Ct. 773, 778, 94 L.Ed. 995 (1950) (plurality opinion) (emphasis in *U.C. Health*)).

Thus, the BFT Parties' assertion that Plaintiff's "major" analytical "flaw" is that he ignores how cases develop is incorrect. The inverse is true. Case law evolves through precedent and stare decisis in a careful way that "promotes the evenhanded, predictable, and consistent development of legal principles, fosters reliance on judicial decisions, and contributes to the actual and perceived integrity of the judicial process," *U.C. Health*, 803 F.3d at 681 (quoting *Hohn v. United States*, 524 U.S. 236, 251, 118 S.Ct. 1969, 1977, 141 L.Ed.2d 242 (1998)), because "inconsistency is the antithesis of the rule of law," *id.* (quoting *LaShawn A. v. Barry*, 87 F.3d 1389, 1393 (D.C.Cir.1996)).

The error in *F.D.I.C.* as applied in the Court's Order is all the more manifest because that court was not charting a new course on virgin ground; the Tenth Circuit had already recognized that a court "must usually" infer an agreement—even on the merits. *E.g.*, *Fisher v. Shamburg*, 624 F.2d 156, 162 (10th Cir. 1980). *F.D.I.C.* went another direction away from this controlling precedent. In other words, it ought not be assumed, as the BFT Parties do, that the *F.D.I.C.* court set out to alter existing law regarding inference at the pleading stage since that would be contrary to judicial tradition in this country. It was just a mistake. This is especially apparent since the *F.D.I.C.* court didn't write anything about changing the law; it just cited to the summary judgment-based decision in *Nelson* as though it applied to a pleading case. The Court should correct this error of law.

**III.   The Court should not take the BFT Parties' suggestion to conflate that which must be pleaded with that which must be proved and should make clear that Colorado conspiracy law only requires one overt act.**

The BFT Parties confuse the standard for pleading and the standard for proving cases when they argue that *Nelson* demonstrates there was no overt act, and their detailed recounting of the facts of that case hides its inapplicability at the pleading stage. ECF No. 142 at 12. *Nelson* was decided on summary judgment, not under 12(b)(6). *Nelson v. Elway*, 908 P.2d 102, 105-06 (Colo. 1995). It speaks

9

to the elements of a conspiracy, not the quantum of facts one must plead to state one because that issue was not before the *Nelson* court. For that, the Court should look to *Twombly*, *Fisher*, and *Hanks*.

Furthermore, the BFT Parties themselves admitted that Plaintiff pleaded MAB's wrongful acts (undertaken in connection with this transaction) with specificity. ECF No. 67 at 5 ("The allegations in the Amended Complaint, instead, describe MAB's alleged wrongs. Those allegations are specific."). Colorado law requires nothing more than "*an* unlawful overt act." *E.g.*, *Church v. Dana Kepner Co., Inc.*, No. 11–cv–02632–CMA–MEH, 2012 WL 4086517, at *4 (D. Colo. Sept. 16, 2012) (citing *Nelson*, 908 P.2d at 106) (emphasis added).

In the motion to dismiss, the BFT Parties argued that there must also be evidence that they "participated in [an] unlawful act[]," ECF 67 at 9; *see also* ECF 76 at 7 (arguing that none of the allegations say they did anything wrong), but they cited no law for the proposition that Plaintiff has to plead anything more than one unlawful overt act. Nothing in Colorado law creates that requirement and, respectfully, the Court must follow state law. Having admitted MAB's unlawful acts, all pleaded in connection with the conspiracy, the BFT Parties cannot plausibly claim—and the Court should not have found—the overt act element lacking.

In this regard, it must be remembered that a complaint is to be read "so as to do justice," Fed. R. Civ. P. 8(e), "which requires that [the Court] not rely solely on labels in a complaint, but that [it] probe deeper and examine the substance," *Alpine Bank v. Hubbell*, 555 F.3d 1097, 1107-08 (10th Cir. 2009). Indeed, "[u]nder the relaxed standards of the Federal Rules, the idea was not to keep litigants out of court but rather to keep them in." *Twombly*, 550 U.S. at 575, 127 S.Ct. at 1976.

Contrary to this directive, the BFT Parties advocate a narrow reading, ignoring all the factual material in and underlying the allegations in paragraphs 61-65, which is demonstrated through Plaintiff's uncontroverted declarations. The Court may have declined to consider the additional evidence Plaintiff pointed to, but its existence shows that the averments in the Amended Complaint

10

are not "mere conclusions." The facts exist, and since the legal question is whether there is a reasonable expectation that discovery will reveal the existence of a conspiracy, *see Twombly*, 550 U.S. at 556, 127 S.Ct. at 1965, those facts show that there is such an expectation, and the Court should reconsider its ruling. Nor would any important policy be vindicated by not allowing Plaintiff to further develop the facts in discovery or at least replead. If he cannot develop evidence of a conspiracy, then the BFT Parties still have the means to defend themselves. On the other hand, if he can but is never allowed to, then an injustice will have occurred. But, again, this is not a case where Plaintiff merely hopes he will find something in discovery. The evidence is all there in other court filings.

There are also new facts trickling in that bear directly on the issue and which the liberal pleading standard—especially for conspiracies—is meant to allow for before a plaintiff is thrown out of court. For example, Plaintiff propounded identical discovery requests to both MAB and the BFT Parties. Among them were Requests for Admission ("RFA") Nos. 14 and 15, which read:

> 14. Admit that MAB never intended to pay all of the consideration under the Agreement.
>
> 15. Admit that MAB never intended to pay any of the consideration under the Agreement.

**Exhibit 3**.

On November 8, 2021 (long after the briefing on the motion to dismiss was closed and after multiple requests from Plaintiff to provide fulsome discovery responses that were due months ago), MAB responded:

> MAB denies Requests for Admission 14 and 15 because he intended to pay Plaintiff the consideration stated in the Agreement. MAB, *Marc E. Bruner, Carmen "Tony" Lotito*, and Plaintiff *have knowledge and information related to these facts*.

**Exhibit 4** (emphasis added).

*First*, how would the BFT Parties have facts about MAB's intention to pay the consideration if they were not involved, as they have argued, *e.g.*, ECF No. 76 at 2 ("…the BFT Parties were not a

11

party to or involved with the Agreement."); *id*. at 15 (arguing they "had no involvement with it whatsoever").

*Second*, MAB's RFA response shows that the BFT Parties' responses to the same RFAs were at least incomplete in that their only basis for denying the RFA was that "paragraph 23 of MAB's answer specifically denied Plaintiff's allegation that MAB never intended to perform under the Agreement." Exhibit 1 to Motion. Those responses are not consistent with MAB's statement that the BFT Parties in fact have information about the RFA.[2]

Furthermore, MAB is still dragging his feet getting information from his and the BFT Parties' joint lawyer in the Petrohunter bankruptcy, which is precisely where the conspiracy began when MAB and Lotito requested that Plaintiff transfer his $330,000 claim to combine it with BFT's claim and where the conspiracy continued to occur, writing after multiple conferrals about Plaintiff's unanswered discovery request: "I have reached out to other attorneys who represented MAB, but to date, I have not heard anything back or received any additional documents." **Exhibit 5**. In considering whether there is a reasonable expectation that discovery will reveal the existence of a conspiracy, the Court "draw[s] on its experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 664, 129 S.Ct. 1937, 1940, 173 L.Ed.2d 868 (2009).

Indeed, the BFT Parties' evasiveness and MAB's delay in responding to discovery seem calculated precisely to ensure that the information requested by Plaintiff is produced only after the Court rules on this motion and the BFT Parties' motion for fees. It is therefore not surprising that the BFT Parties would like out of this case before MAB's discovery comes in and without having to respond to more discovery themselves. But if *Twombly* and the others teach anything, it's that a plaintiff

---

[2] The BFT Parties' response should be read in conjunction with Interrogatory No. 1, seeking "all facts" on which the denial of an RFA is based, and the BFT Parties' response thereto, "See response to each request for admission." Exhibit 1 to Motion.

12

in a conspiracy case must get the facts in discovery precisely because conspiracy happens behind closed doors. *E.g.*, *Fisher*, 624 F.2d at 162.

In sum, the law is that Plaintiff had to allege "some further factual enhancement" beyond mere labels and conclusions. The averments may be—indeed, should be—of ultimate facts, that is, fact-based conclusions rather than detailed evidentiary facts. The Court should infer an agreement because conspiracies usually aren't visible to outsiders. And the facts needed to adequately plead a claim should not be confused with what would be necessary to prove a claim.

This happened. The averments that Defendants used their various business enterprises as "intertwined and interrelated entities," ECF No. 16, ¶ 61, with the intent to "use the Brody Claim," without paying for it, *id.* ¶ 62, through deception by Defendants' representative, Mr. Lotito, *id.* ¶ 64; are averments of fact. They incorporate the evidentiary facts that underly them as a matter of law and they support the ultimate fact that "Defendants agreed and worked cooperatively to defraud Plaintiff of and steal the [Disputed Claim], or, in the alternative, to breach [MAB's] contractual obligation to pay consideration and act in good faith under the Agreement, and/or retain the benefit of [MAB's] breach in order to enrich themselves at the expense of Plaintiff." ECF No. 16 ¶ 62. The BFT Parties have admitted that MAB' bad acts are pleaded with specificity and have cited no law that required Plaintiff to plead bad acts by more than one member of the conspiracy.

Since the Federal Rules direct the Court to "probe deeper and examine the substance," *Alpine Bank*, with a preference for keeping litigants in court rather than pouring them out, *Twombly*, Plaintiff respectfully submits that the Court's Order represents clear error and, further, that newly discovered evidence strengthens the case for a conspiracy such that, at a minimum, Plaintiff should be allowed to replead to include the existing facts he sought to incorporate and the new facts that continue to come to light.

13

**IV.    Plaintiff's request for leave to amend was expressed in the context of a case dismissed with prejudice, but Plaintiff cannot formally move for leave to amend unless the Court reconsiders its prejudicial dismissal.**

Finally, the BFT Parties argue that Plaintiff's request to amend in the motion for reconsideration was improper. Plaintiff agrees that the request for leave to amend was inartful because a formal motion for leave to amend cannot be made unless and until the Court reconsiders its prejudicial dismissal. *Curley v. Perry*, 246 F.3d 1278, 1284 (10th Cir. 2001) ("A litigant whose complaint has been dismissed with prejudice could file a motion to alter or amend the judgment under Rule 59(e) or for relief from the judgment under Rule 60(b)."); *see also Brooks v. Mentor Worldwide LLC*, 985 F.3d 1272, 1283 (10th Cir. 2021) ("Our precedent also requires that to amend a pleading after the dismissal of a case, a party must first move to reopen the case under Federal Rule of Civil Procedure 59(e) or 60(b) and then move for leave to amend under Rule 15 in accordance with the Rule 7 standard."). Plaintiff will therefore seek leave to amend if and when the Court alters its Order to so allow. That said, Plaintiff's discussion regarding amendment remains pertinent to the reasons *why* the Court should amend its Order to allow for a motion under Rule 15(a).

The BFT Parties also assert that Plaintiff was required to seek leave to amend within 21 days after the motion to dismiss was filed. That is not correct. *Heath v. Root9b*, No. 18–cv–01516–RBJ–KMT, 2019 WL 1042668, at *7 (D. Colo. Mar. 4, 2019), states only that a party *may* amend as of right within 21 days. It is not a bar to amendment after the Court rules on the motion to dismiss. Rule 15(a)(2) provides that "in all other cases," a party may seek leave to amend. Fed. R. Civ. P. 15(a)(2).

However, under *Curley* and *Brooks*, Plaintiff has to wait until the motion for reconsideration is resolved because the Court dismissed with prejudice, which should only happen when amendment would be futile. *E.g.*, *Ybarra v. Comprehensive Software Sys., LLC*, No. 18-cv-01679-NYW, 2019 WL 266310, at * 8 (D. Colo. Jan. 18, 2019) (noting that "dismissal without leave to amend and with prejudice is appropriate where no amendment could cure the defect."); *Martensen v. Koch*, 13–cv–

14

02411–REB–CBS, 2014 WL 3057172, at *1 (D. Colo. July 7, 2014) ("Although typically a motion to dismiss for failure to state a claim is without prejudice, I concur with the magistrate judge that amendment as to the claims implicated by the motion to dismiss would be futile, making dismissal with prejudice appropriate.").

Plaintiff respectfully submits that the Court ought not find futility where, as here, the facts the Court has not yet considered show that Plaintiff would be able to state a claim for conspiracy if the Court allows him to replead. *See Carrillo*, 2014 WL 1977984, at *21. This is especially true in light of Colorado law, which permits the consideration of the whole array of underlying facts even at the merits stage of a conspiracy case. *E.g.*, *Saint John's Church in Wilderness v. Scott*, 194 P.3d 475, 480 (Colo. App. 1994).

Respectfully submitted this 11th day of November, 2021.

> By:  */s/ Michael A. Rollin*
> Michael. A. Rollin, Esq.
> Mallory A. Revel, Esq.
> Lindsey Idelberg, Esq.
> FOSTER GRAHAM MILSTEIN & CALISHER LLP
> 360 South Garfield Street,
> Sixth Floor
> Denver, Colorado 80209
> mrollin@fostergraham.com
> mrevel@fostergraham.com
> lidelberg@fostergraham.com
> Tel: (303) 333-9810
> Fax: (303) 333-9786
> *Attorneys for Plaintiff*

4867-3254-9123, v. 1

# CERTIFICATE OF SERVICE

   I hereby certify that on November 11, 2021, I served the foregoing **PLAINTIFF'S REPLY IN SUPPORT OF HIS MOTION FOR RECONSIDERATION OF THE COURT'S ORDER DISMISSING THE CIVIL CONSPIRACY CLAIM AGAINST THE BFT PARTIES OR, ALTERNATIVELY, FOR LEAVE TO AMEND** via CM/ECF to all counsel of record.

William R. Meyer, Esq.
POLSINELLI PC
1401 Lawrence Street,
Suite 2300
Denver, CO 80202
wmeyer@polsinelli.com
*Counsel for the Bruner Family Trust*
*and Marc e. Bruner, as trustee for the Bruner Family Trust*

and

Timothy M. Swanson
William F. Jones
Tanya A. Sevy
MOYE WHITE LLP
1400 16th Street,
Suite 600
Denver, CO 80202
tim.swanson@moyewhite.com
billy.jones@moyewhite.com
tanya.sevy@moyewhite.com
*Counsel for Defendant Marc A. Bruner*

and

Lance Henry
Allen Vellone Wolf Helfrich & Factor PC
1600 Stout Street,
Suite 1900
Denver, CO 80202
lhenry@allen-vellone.com
*Counsel for Attorneys for Interpleader Plaintiff Jeffrey L. Hill,*
*Chapter 7 Trustee of PetroHunter Energy Corporation*

            By:  */s/ Michael A. Rollin*
                Michael. A. Rollin, Esq.

16