## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 19-cv-01091-RM-NRN

DAVID E. BRODY

Plaintiff,

v.

MARC A. BRUNER,
THE BRUNER FAMILY TRUST, and
MARC E. BRUNER, AS TRUSTEE OF THE BRUNER FAMILY TRUST

Defendants.

---

## DECLARATION OF MICHAEL A. ROLLIN
## TO RESPONSE IN OPPOSITION TO THE BFT PARTIES' MOTION FOR AWARD
## OF MANDATORY FEES AND COSTS

I, Michael A. Rollin, am counsel to Plaintiff in the above-entitled. I have personal knowledge of the matters set forth herein. If called to testify, I would testify competently thereto.

1.    The BFT Parties did not serve a copy of their Fee Motion or any motion pursuant to Rule 11 before filing.

2.    Counsel understands the areas in which the Court has found the conspiracy claim was inadequately pleaded and will exercise more diligence in the future. Counsel genuinely believed that the evidence developed demonstrates a reasonable inference of a conspiracy and expectation that discovery will yield more evidence of it.

3.    Plaintiff propounded discovery to Defendants seeking to obtain more specific information about their joint use of the bankruptcy claims, including Claim 7, but neither provided fulsome answers. Specifically, Plaintiff sought discovery bearing on Defendants' use of the combined claims and communications with the bankruptcy trustee, the debtor, and other creditors in the bankruptcy. However, both MAB and the BFT Parties gave only partial responses, which omitted

their *joint* lawyer's communications with third parties. *See* **Exhibits A** (MAB) **& B** (BFT), Interrogatories Nos. 9-12 and Request for Admission No. 6. However, parties must produce information in their lawyer's possession, *E.g.*, *Am. Soc'y. for the Prevention of Cruelty to Animals v. Ringling Bros. and Barnum & Bailey Circus*, 233 F.R.D. 209, 212 (D.C. Cir. 2006); *see also* 8A Charles A. Wright, Arthur R. Miller, & Richard L. Marcus, Fed. Practice & Procedure, §§ 2210, 2217. Thus far, efforts to obtain that information have been unsuccessful. This information is not only necessary to respond to the Fee Motion but also to support the motion for reconsideration Plaintiff already filed.

4.      I have performed a detailed review of the invoices submitted in support of the Fee Motion, and I have identified entries and tasks that for various reasons and under the law cited in Plaintiff's response brief, should be deducted from the lodestar (if the Court reaches this issue in light of the legal arguments made).

5.      I first note that it appears the BFT Parties' lawyers did work for MAB directly, which they now seek to bill to Plaintiff. This would be improper, of course, because all the claims against MAB remain viable in the case. Those entries are as follows:

   a.   ECF No. 131-2, page 56, 8/23/21 entry for MEYEW reading, "Review, edit, and revise discovery conferral letter regarding D. Brody's responses to written discovery." 2.2 hours. This 9/14/21 letter, however, did not come from the BFT Parties but from counsel to MAB.

   b.   ECF No. 131-2, page 60, 9/14/21 entry for MEYEW reading, "Review, edit, and revise draft subpoena (.7); review and analysis of MAB's discovery and conferral letter to D. Brody (.6)." The first entry presumably refers to MAB's 9/15/21 subpoena to Hogan Lovells, as the BFT Parties did not issue subpoenas (if they did, they did not send notice of such to Plaintiff, as required), and the second appears to refer to the letter this same lawyer worked on for MAB, above.

2

6.  Further, due to the many vague and redacted entries (83 in total, listed below), there may be other such instances of work done for MAB that I am unable to determine with the information made available to me. In addition to the Court's *in camera* review of redacted entries, I respectfully submit in light of these facts and those that follow, that the Court would also need to review MAB's invoices to see how much of his work was being shouldered by the BFT Parties' lawyers and paid for by the BFT itself.

Redacted

8.  The foregoing observations are important prefaces to the next category of fee entries to which Plaintiff objects, which are those in which the BFT was making arguments that applied to the claims against MAB, not the BFT Parties. In the following subparagraphs, I identify those entries. As best as I can tell, they relate to arguments concerning defenses *MAB* would assert against the breach of contract and civil theft claims, both in the BFT Parties' motion to dismiss (i.e., they asserted a statute of limitation defense for MAB against the civil theft claim) and in opposition to Plaintiff's motion for judgment on the pleadings or, alternatively, for summary judgment, which was filed only against MAB and only on the breach of contract claim. It is also worth noting that MAB filed the same defenses in his briefs, and whether he piggybacked on the BFT's work for him or whether his lawyers independently did the work is material to whether the BFT Parties' work was reasonable and necessary.

   a.  ECF No. 131-2, page 23, 12/18/20 entry of MEYEW re: motion to dismiss (ECF No 67), which included MAB arguments concerning civil theft, for 1.4 hours.

b.  ECF No. 131-2, page 23, 12/22/20 entry of MEYEW re: motion to dismiss (ECF No 67), which included MAB arguments concerning civil theft,[1] for 3.2 hours.

c.  ECF No. 131-2, page 23, 12/23/20 entry of MEYEW re: motion to dismiss (ECF No 67), which included MAB arguments concerning civil theft, for 4.6 hours.

d.  ECF No. 131-2, page 23, 12/27/20 entry of MEYEW re: motion to dismiss (ECF No 67), which included MAB arguments concerning civil theft, for 1.6 hours.

e.  ECF No. 131-2, page 23, 12/28/20 entry of GBRUN re: motion to dismiss (ECF No 67), which included MAB arguments concerning civil theft, for 1.6 hours.

f.  ECF No. 131-2, page 27, 1/4/21 entry of GBRUN re: motion to dismiss (ECF No 67), which included MAB arguments concerning civil theft, for 0.5 hours.

g.  ECF No. 131-2, page 27, 1/22/21 entry of MEYEW re: reply in support of motion to dismiss (ECF No. 76), with specific reference to the civil theft claim, for 6.5 hours.

h.  ECF No. 131-2, page 27, 1/24/21 entry of MEYEW re: reply in support of motion to dismiss (ECF No. 76), for 2.8 hours.

i.  ECF No. 131-2, page 27, 1/25/21 entry of MEYEW re: reply in support of motion to dismiss (ECF No. 76), for 4.7 hours.

j.  ECF No. 131-2, page 27, 1/29/21 entry of GBRUN re: reply in support of motion to dismiss (ECF No. 76), for 1.0 hours.

k.  ECF No. 131-2, page 27, 1/29/21 entry of MEYEW re: reply in support of motion to dismiss (ECF No. 76), for 3.3 hours.

---

[1] Counsel apologizes for the redundancy among subparagraphs, but I am trying to keep this as clear as possible in light of the voluminous information.

l.  ECF No. 131-2, page 43, 5/27/21 entry of MEYEW re: response to motion for judgment on the pleadings or for summary judgment *against MAB* (ECF No. 98), duplicative of MAB's response (ECF No. 100), for 1.8 hours.

m.  ECF No. 131-2, page 47, 6/3/21 entry of MEYEW re: response to motion for judgment on the pleadings or for summary judgment *against MAB* (ECF No. 98), duplicative of MAB's response (ECF No. 100), for 0.6 hours.

n.  ECF No. 131-2, page 47, 6/7/21 entry of MEYEW re: response to motion for judgment on the pleadings or for summary judgment *against MAB* (ECF No. 98), duplicative of MAB's response (ECF No. 100), for 0.4 hours.

o.  ECF No. 131-2, page 47, 6/9/21 entry of MEYEW re: response to motion for judgment on the pleadings or for summary judgment *against MAB* (ECF No. 98), duplicative of MAB's response (ECF No. 100), for 2.7 hours.

p.  ECF No. 131-2, page 47, 6/14/21 entry of MEYEW re: response to motion for judgment on the pleadings or for summary judgment *against MAB* (ECF No. 98), duplicative of MAB's response (ECF No. 100), for 4.5 hours.

q.  ECF No. 131-2, page 47, 6/16/21 entry of GBRUN re: response to motion for judgment on the pleadings or for summary judgment *against MAB* (ECF No. 98), duplicative of MAB's response (ECF No. 100), for 3.5 hours (including other apparently related entries, but at least 2.5 hours).

r.  ECF No. 131-2, page 47, 6/17/21 entry of MEYEW re: response to motion for judgment on the pleadings or for summary judgment *against MAB* (ECF No. 98), duplicative of MAB's response (ECF No. 100), for 3.9 hours.

s.  ECF No. 131-2, page 47, 6/18/21 entry of GBRUN re: affidavit filed in connection with motion for judgment on the pleadings or for summary judgment against MAB (ECF No. 98), for 1.0 hours.

t.  ECF No. 131-2, page 47, 6/18/21 entry of MEYEW re: response to motion for judgment on the pleadings or for summary judgment against MAB (ECF No. 98) and work in support of Rule 56(d) motion (ECF No. 99), for 1.8 hours.

u.  ECF No. 131-2, page 52, 7/6/21 entry of MEYEW re: Rule 56(d) motion for motion for summary judgment directed only to MAB (ECF No. 99) for 3.8 hours.

v.  ECF No. 131-2, page 52, 7/7/21 entry of MEYEW re: Rule 56(d) motion for motion for summary judgment directed only to MAB (ECF No. 99) for 1.9 hours.

w.  ECF No. 131-2, page 52, 7/13/21 entry of MEYEW re: hearing on Rule 56(d) motion for motion for summary judgment directed only to MAB (ECF No. 99) for 1.5 hours.

9.    Of course, I am mindful that the BFT Parties asserted potential liability under a conspiracy theory and therefore a right to brief matters related to civil theft and breach of contract, as well as to file a Rule 56(d) motion, but if that's the case then the dismissed conspiracy claim does not sound in tort and C.R.S. § 13-17-201 does not apply at all, which moots this analysis anyway, except insofar as it shows that Defendants multiplied the proceedings to increase the costs and burden to Plaintiff.

10.    There are also 11 entries in which the BFT Parties billed for time expended dealing with the PetroHunter bankruptcy trustee's interpleader of Claim 7 into the registry of this Court. That interpleader action was not brought by Plaintiff but was consolidated into this action. There is no basis on which to seek fees. In addition, the BFT Parties were already claimants in the Petrohunter bankruptcy, and the invoices as a whole include both bankruptcy-related and non-bankruptcy entries, though I have tried to list only those that appear related to the interpleader action in *this* Court because

6

Plaintiff separately argues in the opposition brief that all of the work done in the bankruptcy case itself is not properly part of the Fee Motion. That said, if the Court disagrees with that, deductions would still have to be taken for the work the BFT Parties' lawyers would have had to do anyway as bankruptcy claimants. An example of those can be found at ECF No. 131-3, page 15, 8/27/20 entry of GBRUN re: review of bankruptcy court order authorizing distributions to creditors for 0.1 hours. Another example is highlighted below, where MEYEW expended time on the issue of whether the bankruptcy trustee can destroy debtor records. The entries that clearly relate to the interpleader action in this Court are as follows:

    a.   ECF No. 131-2, page 20, five entries of MEYEW dated 11/11/20-11/30/20 for 2.2 hours.

    b.   ECF No. 131-2, page 23, 12/1/21 entry of MEYEW re: consolidation of interpleader claim, for 0.3 hours.

    c.   ECF No. 131-2, page 23, 12/3/21 entry of GBRUN re: consolidation of interpleader claim, for 0.2 hours.

    d.   ECF No. 131-2, page 32, three entries of MEYEW dated 2/1/21-2/17/21 re: consolidation of interpleader claim *and destruction of bankruptcy records*, for 3.4 hours.

    e.   ECF No. 131-2, page 36, 3/19/21 entry of MEYEW re: interpleader for 0.3 hours.

11.    Another source of needless expense in this case related to the BFT Parties' efforts to remove this case from this Court's review, first when the Court issued an order to show cause regarding federal jurisdiction and then when it issued an order to show cause regarding referral to the bankruptcy court. In both cases, the BFT Parties were unsuccessful, but the basis for this objection to those expenses is not that they were unsuccessful, but that they were unnecessary. This case was going to be litigated anyway, whether here, in bankruptcy court, or in state court. Whatever the BFT Parties' motivation to avoid having it heard here, the effort to move it would have had no practical

effect. All they did is increase their costs and Plaintiff's costs. Indeed, the effort to have the case heard by the bankruptcy court would have led to the inefficiency of having pre-trial proceedings there and trial proceedings in this Court. A similar effect may yet be felt because the BFT Parties declined consent to the Magistrate Judge's jurisdiction, which is their right, but still could result in a less efficient case than had the Magistrate Judge been able to manage the entire case. *See, e.g.*, Lawrence J. O'Neill, Chief United States District Judge for the Eastern District of California, *A Case for Consent*, available at http://www.caed.uscourts.gov/caednew/assets/File/A%20Case%20for%20Consent.pdf:

> Litigants deserve justice delivered in a fair, prompt, and efficient manner. In the federal district court system in general and in this District in particular, magistrate judges play a critical role in providing this justice. Consenting to magistrate judge jurisdiction in civil cases represents one of the best ways to secure "just, speedy, and inexpensive determination" for your case.

In any event, the activities that the BFT Parties undertook with no possibility of a practical effect on whether the case would be litigated to precisely the same extent are as follows:

   a. ECF No. 131-2, page 2, 7/29/20 entry of MEYEW re: federal jurisdiction for 0.9 hours.

   b. ECF No. 131-2, page 5, 8/12/20 entry of MEYEW re: federal jurisdiction for 0.2 hours.

   c. ECF No. 131-2, page 9, 9/2/20 entry of MEYEW re: federal jurisdiction for 2.3 hours.

   d. ECF No. 131-2, page 9, 9/8/20 entry of MEYEW re: federal jurisdiction for 5.5 hours.

   e. ECF No. 131-2, page 9, 9/9/20 entry of CEWAN re: federal jurisdiction for 6.0 hours.

   f. ECF No. 131-2, page 9, 9/9/20 entry of MEYEW re: federal jurisdiction for 0.3 hours.

   g. ECF No. 131-2, page 9, 9/11/20 entry of CEWAN re: federal jurisdiction for 1.3 hours.

   h. ECF No. 131-2, page 9, 9/11/20 entry of MEYEW re: federal jurisdiction for 2.0 hours.

    i.  ECF No. 131-2, page 14, 9/14/20 entry of MEYEW re: federal jurisdiction for 1.7 hours.

    j.  ECF No. 131-2, page 23, 12/16/20 entry of MEYEW re: opposition to referral to the bankruptcy court for 0.7 hours.

    k.  ECF No. 131-2, page 27, 1/5/21 entry of MEYEW re: opposition to referral to the bankruptcy court for 0.7 hours.

    l.  ECF No. 131-2, page 27, 1/5/21 entry of GBRUN re: opposition to referral to the bankruptcy court for 0.2 hours.

    m.  ECF No. 131-2, page 27, 1/6/21 entry of MEYEW re: opposition to referral to the bankruptcy court for 1.2 hours.

    n.  ECF No. 131-2, page 27, 1/6/21 entry of GBRUN re: opposition to referral to the bankruptcy court for 0.2 hours.

12.    The BFT Parties also unnecessarily increased their own costs and Plaintiff's costs by making numerous arguments that were directly contrary to law. Again, Plaintiff has no objection to a party defending itself, but it entirely inappropriate, as recognized by Rule 11, to make legal arguments that are contrary to controlling law and, sometimes, as shown in Plaintiff's response briefs, directly contrary to positions they had already taken in the case, as the BFT Parties have done it at least the following respects:

    a.  ECF No. 131-2, page 9, 9/3/20 entry of MEYEW re: motion to strike reply brief that did not raise new issues or were responsive to issues raised in the BFT Parties' response, as permitted by law. *See* ECF Nos. 51 and 52. 2.7 hours.

    b.  ECF No. 131-2, page 9, 9/4/20 entry of MEYEW re: motion to strike reply brief that did not raise new issues or were responsive to issues raised in the BFT Parties' response, as permitted by law. *See* ECF Nos. 51 and 52. 4.3 hours.

c.  ECF No. 131-2, page 9, 9/4/20 entry of GBRUN re: motion to strike reply brief that did not raise new issues or were responsive to issues raised in the BFT Parties' response, as permitted by law. *See* ECF Nos. 51 and 52. 0.2 hours.

d.  ECF No. 131-2, page 9, 9/8/20 entry of MEYEW re: motion to strike reply brief that did not raise new issues or were responsive to issues raised in the BFT Parties' response, as permitted by law. *See* ECF Nos. 51 and 52. 1.8 hours.

e.  ECF No. 131-2, page 9, 9/11/20 entry of MEYEW re: motion to strike reply brief that did not raise new issues or were responsive to issues raised in the BFT Parties' response, as permitted by law. *See* ECF Nos. 51 and 52. 2.0 hours (block-billed with entry objected to in prior section, above).

f.  ECF No. 131-2, page 14, 9/14/20 entry of MEYEW re: reply in support of motion to strike reply brief that did not raise new issues or were responsive to issues raised in the BFT Parties' response, as permitted by law. *See* ECF Nos. 51 and 52. 4.3 hours.

g.  ECF No. 131-2, page 14, 9/15/20 entry of MEYEW re: motion to strike reply brief that did not raise new issues or were responsive to issues raised in the BFT Parties' response, as permitted by law. *See* ECF Nos. 51 and 52. 0.6 hours.

h.  ECF No. 131-2, page 14, 9/21/20 entry of MEYEW re: motion to strike reply brief that did not raise new issues or were responsive to issues raised in the BFT Parties' response, as permitted by law. *See* ECF Nos. 51 and 52. 0.8 hours.

i.  ECF No. 131-2, page 14, 9/15/20 entry of MEYEW re: motion to strike reply brief that did not raise new issues or were responsive to issues raised in the BFT Parties' response, as permitted by law. *See* ECF Nos. 51 and 52. 0.6 hours.

j.  ECF No. 131-2, page 60, 9/20/21 entry of GBRUN re: motion for fees which, as shown throughout the response brief, was based on incorrect law and legal reasoning,

10

was contrary to the BFT Parties' prior positions in the case, and was preempted in part, 2.5 hours.

k.  ECF No. 131-2, page 60, 9/20/21 entry of MEYEW re: motion for fees which, as shown throughout the response brief, was based on incorrect legal reasoning, was contrary to the BFT Parties' prior positions in the case, and was preempted in part, 1.4 hours.

l.  ECF No. 131-2, page 23, 12/18/20 entry of MEYEW regarding work on motion to dismiss asserting not only defenses to the civil theft claim brought only against MAB, as discussed above, but asserted a heightened pleading standard that was contrary to law, and argument that the trust should be treated as a corporation, for which there is no law, and that the Court may not infer an agreement for conspiracy purposes, which is contrary to law, including the law as applied in this Court, as briefed in Plaintiff's motion for reconsideration, ECF No. 135 and response to the Fee Motion, 1.4 hours.

m.  ECF No. 131-2, page 23, 12/22/20 entry of MEYEW regarding work on motion to dismiss asserting not only defenses to the civil theft claim brought only against MAB, as discussed above, but asserted a heightened pleading standard that was contrary to law, and argument that the trust should be treated as a corporation, for which there is no law, and that the Court may not infer an agreement for conspiracy purposes, which is contrary to law, including the law as applied in this Court, as briefed in Plaintiff's motion for reconsideration, ECF No. 135 and response to the Fee Motion, 3.2 hours.

n.  ECF No. 131-2, page 23, 12/23/20 entry of MEYEW regarding work on motion to dismiss asserting not only defenses to the civil theft claim brought only against MAB, as discussed above, but asserted a heightened pleading standard that was contrary to law, and argument that the trust should be treated as a corporation, for which there is

no law, and that the Court may not infer an agreement for conspiracy purposes, which is contrary to law, including the law as applied in this Court, as briefed in Plaintiff's motion for reconsideration, ECF No. 135 and response to the Fee Motion, 4.6 hours.

o.  ECF No. 131-2, page 23, 12/27/20 entry of MEYEW regarding work on motion to dismiss asserting not only defenses to the civil theft claim brought only against MAB, as discussed above, but asserted a heightened pleading standard that was contrary to law, and argument that the trust should be treated as a corporation, for which there is no law, and that the Court may not infer an agreement for conspiracy purposes, which is contrary to law, including the law as applied in this Court, as briefed in Plaintiff's motion for reconsideration, ECF No. 135 and response to the Fee Motion, 1.6 hours.

p.  ECF No. 131-2, page 27, 1/4/21 entry of GBRUN regarding work on motion to dismiss asserting not only defenses to the civil theft claim brought only against MAB, as discussed above, but asserted a heightened pleading standard that was contrary to law, and argument that the trust should be treated as a corporation, for which there is no law, and that the Court may not infer an agreement for conspiracy purposes, which is contrary to law, including the law as applied in this Court, as briefed in Plaintiff's motion for reconsideration, ECF No. 135 and response to the Fee Motion, 0.5 hours.

q.  ECF No. 131-2, page 27, 1/4/21 entry of MEYEW regarding work on motion to dismiss asserting not only defenses to the civil theft claim brought only against MAB, as discussed above, but asserted a heightened pleading standard that was contrary to law, and argument that the trust should be treated as a corporation, for which there is no law, and that the Court may not infer an agreement for conspiracy purposes, which is contrary to law, including the law as applied in this Court, as briefed in Plaintiff's motion for reconsideration, ECF No. 135 and response to the Fee Motion, 3.0 hours.

r.  ECF No. 131-2, page 27, 1/22/21 entry of MEYEW regarding work on reply in support of motion to dismiss asserting not only defenses to the civil theft claim brought only against MAB, as discussed above, but asserted a heightened pleading standard that was contrary to law, and argument that the trust should be treated as a corporation, for which there is no law, and that the Court may not infer an agreement for conspiracy purposes, which is contrary to law, including the law as applied in this Court, as briefed in Plaintiff's motion for reconsideration, ECF No. 135 and response to the Fee Motion, 6.5 hours.

s.  ECF No. 131-2, page 27, 1/24/21 entry of MEYEW regarding work on reply in support of motion to dismiss asserting not only defenses to the civil theft claim brought only against MAB, as discussed above, but asserted a heightened pleading standard that was contrary to law, and argument that the trust should be treated as a corporation, for which there is no law, and that the Court may not infer an agreement for conspiracy purposes, which is contrary to law, including the law as applied in this Court, as briefed in Plaintiff's motion for reconsideration, ECF No. 135 and response to the Fee Motion, 2.8 hours.

t.  ECF No. 131-2, page 27, 1/25/21 entry of MEYEW regarding work on reply in support of motion to dismiss asserting not only defenses to the civil theft claim brought only against MAB, as discussed above, but asserted a heightened pleading standard that was contrary to law, and argument that the trust should be treated as a corporation, for which there is no law, and that the Court may not infer an agreement for conspiracy purposes, which is contrary to law, including the law as applied in this Court, as briefed in Plaintiff's motion for reconsideration, ECF No. 135 and response to the Fee Motion, 4.7 hours.

u.  ECF No. 131-2, page 27, 1/29/21 entry of GBRUN regarding work on reply in support of motion to dismiss asserting not only defenses to the civil theft claim brought only against MAB, as discussed above, but asserted a heightened pleading standard that was contrary to law, and argument that the trust should be treated as a corporation, for which there is no law, and that the Court may not infer an agreement for conspiracy purposes, which is contrary to law, including the law as applied in this Court, as briefed in Plaintiff's motion for reconsideration, ECF No. 135 and response to the Fee Motion, 1.0 hours.

v.  ECF No. 131-2, page 27, 1/29/21 entry of MEYEW regarding work on reply in support of motion to dismiss asserting not only defenses to the civil theft claim brought only against MAB, as discussed above, but asserted a heightened pleading standard that was contrary to law, and argument that the trust should be treated as a corporation, for which there is no law, and that the Court may not infer an agreement for conspiracy purposes, which is contrary to law, including the law as applied in this Court, as briefed in Plaintiff's motion for reconsideration, ECF No. 135 and response to the Fee Motion, 3.3 hours.

13.  There were at least three instances in which the BFT Parties took very misleading positions about factual matters and which caused them and Plaintiff to needlessly address these untenable positions. The first concerned the argument that Plaintiff waived the right to pursue a breach of contract action, which was not just a strained reading of the contract, but which ignored parts of the contract that showed it was an unreasonable reading. Those entries are as follows:

a.  ECF No. 131-2, page 2, 7/28/20 entry of MEYEW working on a brief (ECF No. 30 at 7-8) that not only misreads the contract but omits material provisions, as explained in ECF No. 48 at 8-9, 2.7 hours.

b. ECF No. 131-2, page 5, 8/3/20 entry of MEYEW working on a brief (ECF No. 30 at 7-8) that not only misreads the contract but omits material provisions, as explained in ECF No. 48 at 8-9, 7.0 hours. 8/4/20, 8/10/20, 8/11/20.

c. ECF No. 131-2, page 5, 8/4/20 entry of MEYEW working on a brief (ECF No. 30 at 7-8) that not only misreads the contract but omits material provisions, as explained in ECF No. 48 at 8-9, 0.6 hours. 8/10/20, 8/11/20.

d. ECF No. 131-2, page 5, 8/10/20 entry of GBRUN working on a brief (ECF No. 30 at 7-8) that not only misreads the contract but omits material provisions, as explained in ECF No. 48 at 8-9, 0.5 hours.

e. ECF No. 131-2, page 5, 8/11/20 entry of MEYEW working on a brief (ECF No. 30 at 7-8) that not only misreads the contract but omits material provisions, as explained in ECF No. 48 at 8-9, 4.4 hours.

14.    The second was when the BFT Parties took factual positions in response to Plaintiff's motion for summary judgment against MAB. Not only was the motion not directed to the BFT Parties, but in discovery, the BFT Parties had to concede that they had no factual basis for interposing the objections at all. That issue appears limited to the following entry:

a. ECF No. 131-2, page 47, 6/17/21 entry of MEYEW working on papers in which the BFT Parties made statements of fact (ECF No. 97), for which the BFT Parties had no evidentiary basis, as described in ECF No. 109 at rows 18-20, and verified in discovery responses, **Exhibit B**, Interrogatory No. 3, 3.9 hours.

15.    The third relates to the BFT Parties' arguments under Rule 1.8(a) of the Colorado Rules of Professional Conduct that Plaintiff's alleged legal representation of MAB invalidated the contract. While creative, the argument is entirely immaterial to this case because MAB—represented by able counsel at Moye White and fully apprised on the contract—has reaffirmed its validity and

15

committed to paying the consideration at some point in the future, as discussed in the response brief. *See also* Exhibit A, Requests for Admissions Nos. 1-4, 8. Thus, there is no basis for the BFT Parties' lawyer to spend time coming up with an argument for MAB that MAB is not trying to use as a defense in the case. The entries about these matters are as follows:

a.  ECF No. 131-2, page 43, 5/26/21 entry of MEYEW working on papers in which the BFT Parties made inapplicable arguments under CRCP 1.8(a), 0.6 hours.

b.  ECF No. 131-2, page 43, 5/27/21 entry of MEYEW working on papers in which the BFT Parties made inapplicable arguments under CRCP 1.8(a), 1.8 hours.

c.  ECF No. 131-2, page 47, 6/3/21 entry of MEYEW working on papers in which the BFT Parties made inapplicable arguments under CRCP 1.8(a), 0.6 hours.

d.  ECF No. 131-2, page 47, 6/7/21 entry of MEYEW working on papers in which the BFT Parties made inapplicable arguments under CRCP 1.8(a), 0.4 hours.

e.  ECF No. 131-2, page 47, 6/14/21 entry of MEYEW working on papers in which the BFT Parties made inapplicable arguments under CRCP 1.8(a), 4.5 hours.

f.  ECF No. 131-2, page 47, 6/16/21 entry of GBRUN working on papers in which the BFT Parties made inapplicable arguments under CRCP 1.8(a), 2.5 hours.

g.  ECF No. 131-2, page 47, 6/18/21 entry of MEYEW working on papers in which the BFT Parties made inapplicable arguments under CRCP 1.8(a), 0.7 hours.

h.  ECF No. 131-2, page 47, 6/18/21 entry of GBRUN working on papers in which the BFT Parties made inapplicable arguments under CRCP 1.8(a), 1.0 hours.

i.  ECF No. 131-2, page 60, 9/16/21 entry of MEYEW working on "D. Brody representational issues," 0.5 hours.

16.     There are numerous time entries in which Plaintiff is unable to determine whether the BFT Parties' lawyer did. The Polsinelli invoices show 83 entries or partial entries that cannot be examined due to lack of detail and/or redactions. These are located at:

    a.    ECF 131-2, page 2, 7/10/20 entry of GBRUN, 1.4 hours.

    b.    ECF 131-2, page 2, 7/21/20 entry of GBRUN, 0.5 hours.

    c.    ECF 131-2, page 2, 7/22/20 entry of GBRUN, 0.8 hours.

    d.    ECF 131-2, page 2, 7/23/20 entry of MEYEW, 1.1 hours.

    e.    ECF 131-2, page 2, 7/26/20 entry of GBRUN, 4.0 hours.

    f.    ECF 131-2, page 2, 7/27/20 entry of MEYEW, 2.5 hours.

    g.    ECF 131-2, page 5, 8/3/20 entry of MEYEW, 0.5 hours.

    h.    ECF 131-2, page 5, 8/7/20 entry of NAZAA, 1.9 hours.

    i.    ECF 131-2, page 5, 8/14/20 entry of NAZAA, 0.5 hours.

    j.    ECF 131-2, page 6, 8/31/20 entry of MEYEW, 0.9 hours.

    k.    ECF 131-2, page 9, 9/10/20 entry of MEYEW, 2.1 hours.

    l.    ECF 131-2, page 9, 9/11/20 entry of CEWAN, 1.3 hours.

    m.    ECF 131-2, page 14, 9/18/20 entry of MEYEW, 0.2 hours.

    n.    ECF 131-2, page 14, 9/21/20 entry of MEYEW, 1.0 hours.

    o.    ECF 131-2, page 23, 12/16/20 entry of NAZAA, 0.5 hours.

    p.    ECF 131-2, page 23, 12/16/20 entry of GBRUN, 0.1 hours.

    q.    ECF 131-2, page 23, 12/21/20 entry of NAZAA, 0.3 hours.

    r.    ECF 131-2, page 23, 12/21/20 entry of GBRUN, 0.7 hours.

    s.    ECF 131-2, page 23, 12/21/20 entry of MEYEW, 0.7 hours.

    t.    ECF 131-2, page 27, 1/19/21 entry of MEYEW, 4.3 hours.

    u.    ECF 131-2, page 27, 1/20/21 entry of MEYEW, 2.9 hours.

| | |
|---|---|
| v. | ECF 131-2, page 27, 1/22/21 entry of MEYEW, 6.5 hours. |
| w. | ECF 131-2, page 27, 1/27/21 entry of MEYEW, 0.3 hours. |
| x. | ECF 131-2, page 39, 4/27/21 entry of GBRUN, 0.3 hours. |
| y. | ECF 131-2, page 43, 5/4/21 entry of MEYEW, 0.4 hours. |
| z. | ECF 131-2, page 43, 5/26/21 entry of MEYEW, 0.6 hours. |
| aa. | ECF 131-2, page 43, 5/27/21 entry of MEYEW, 1.8 hours. |
| bb. | ECF 131-2, page 47, 6/3/21 entry of GBRUN, 0.4 hours. |
| cc. | ECF 131-2, page 47, 6/8/21 entry of MEYEW, 0.3 hours. |
| dd. | ECF 131-2, page 47, 6/16/21 entry of GBRUN, 0.5 hours. |
| ee. | ECF 131-2, page 47, 6/17/21 entry of GBRUN, 1.5 hours. |
| ff. | ECF 131-2, page 47, 6/3/21 entry of MEYEW, 3.9 hours. |
| gg. | ECF 131-2, page 56, 8/11/21 entry of MEYEW, 0.8 hours. |
| hh. | ECF 131-2, page 56, 8/19/21 entry of MEYEW, 1.1 hours. |
| ii. | ECF 131-2, page 56, 8/23/21 entry of MEYEW, 0.5 hours. |
| jj. | ECF 131-2, page 60, 9/7/21 entry of MEYEW, 0.2 hours. |
| kk. | ECF 131-3, page 2, 5/27/20 entry of JEBIR, 0.5 hours. |
| ll. | ECF 131-3, page 2, 5/28/20 entry of JEBIR, 0.3 hours. |
| mm. | ECF 131-3, page 2, 6/4/20 entry of JEBIR, 1.1 hours. |
| nn. | ECF 131-3, page 2, 6/10/20 entry of JEBIR, 0.5 hours. |
| oo. | ECF 131-3, page 3, 6/19/20 entry of GBRUN, 0.5 hours. |
| pp. | ECF 131-3, page 3, 6/19/20 entry of MEYEW, 2.0 hours. |
| qq. | ECF 131-3, page 3, 6/22/20 entry of MEYEW, 1.7 hours. |
| rr. | ECF 131-3, page 3, 6/23/20 entry of GBRUN, 0.3 hours. |
| ss. | ECF 131-3, page 3, 6/23/20 entry of GBRUN, 0.8 hours. |

| | |
|---|---|
| tt. | ECF 131-3, page 3, 6/26/20 entry of MEYEW, 2.3 hours. |
| uu. | ECF 131-3, page 3, 6/28/20 entry of GBRUN, 0.7 hours. |
| vv. | ECF 131-3, page 3, 6/29/20 entry of GBRUN, 0.5 hours. |
| ww. | ECF 131-3, page 3, 6/29/20 entry of MEYEW, 3.6 hours. |
| xx. | ECF 131-3, page 3, 6/29/20 entry of GBRUN, 0.5 hours. |
| yy. | ECF 131-3, page 6, 7/13/20 entry of MEYEW, 1.1 hours. |
| zz. | ECF 131-3, page 6, 7/21/20 entry of GBRUN, 0.2 hours. |
| aaa. | ECF 131-3, page 6, 7/22/20 entry of GBRUN, 1.0 hours. |
| bbb. | ECF 131-3, page 6, 7/22/20 entry of GBRUN, 0.3 hours. |
| ccc. | ECF 131-3, page 6, 7/22/20 entry of MEYEW, 1.0 hours. |
| ddd. | ECF 131-3, page 6, 7/27/20 entry of CEWAN, 0.4 hours. |
| eee. | ECF 131-3, page 6, 7/30/20 entry of MEYEW, 0.5 hours. |
| fff. | ECF 131-3, page 6, 7/31/20 entry of CEWAN, 1.1 hours. |
| ggg. | ECF 131-3, page 6, 7/31/20 entry of MEYEW, 0.6 hours. |
| hhh. | ECF 131-3, page 11, 8/4/20 entry of MEYEW, 1.3 hours. |
| iii. | ECF 131-3, page 11, 8/4/20 entry of MEYEW, 0.9 hours. |
| jjj. | ECF 131-3, page 11, 8/5/20 entry of GBRUN, 0.2 hours. |
| kkk. | ECF 131-3, page 11, 8/5/20 entry of MEYEW, 0.4 hours. |
| lll. | ECF 131-3, page 11, 8/5/20 entry of MEYEW, 1.3 hours. |
| mmm. | ECF 131-3, page 11, 8/5/20 entry of MEYEW, 5.2 hours. |
| nnn. | ECF 131-3, page 11, 8/5/20 entry of GBRUN, 0.5 hours. |
| ooo. | ECF 131-3, page 12, 8/5/20 entry of GBRUN, 0.2 hours. |
| ppp. | ECF 131-3, page 12, 8/5/20 entry of NAZAA, 1.1 hours. |
| qqq. | ECF 131-3, page 12, 8/6/20 entry of NAZAA, 0.1 hours. |

rrr.     ECF 131-3, page 12, 8/7/20 entry of GBRUN, 1.0 hours.

sss.     ECF 131-3, page 12, 8/7/20 entry of MEYEW, 0.4 hours.

ttt.     ECF 131-3, page 12, 8/7/20 entry of MEYEW, 0.3 hours.

uuu.     ECF 131-3, page 13, 8/11/20 entry of GBRUN, 1.0 hours.

vvv.     ECF 131-3, page 13, 8/11/20 entry of MEYEW, 0.3 hours.

www.     ECF 131-3, page 13, 8/12/20 entry of RSMIL, 0.1 hours.

xxx.     ECF 131-3, page 13, 8/14/20 entry of MEYEW, 0.7 hours.

yyy.     ECF 131-3, page 13, 8/14/20 entry of MEYEW, 0.8 hours.

zzz.     ECF 131-3, page 13, 8/17/20 entry of GBRUN, 0.5 hours.

aaaa.    ECF 131-3, page 13, 8/17/20 entry of MEYEW, 1.4 hours.

bbbb.    ECF 131-3, page 13, 8/17/20 entry of MEYEW, 2.8 hours.

cccc.    ECF 131-3, page 13, 8/18/20 entry of GBRUN, 0.5 hours.

dddd.    ECF 131-3, page 14, 8/19/20 entry of GBRUN, 0.5 hours.

eeee.    ECF 131-3, page 14, 8/20/20 entry of GBRUN, 1.0 hours.

17.    There are also at least 13 block-billed entries (not including redacted entries that may show block-billing). These are located at:

a.   ECF 131-2, page 2, 7/27/20 entry of GBRUN, 0.3 hours.

b.   ECF 131-2, page 5, 8/11/20 entry of MEYEW, 4.4 hours.

c.   ECF 131-2, page 9, 9/2/20 entry of MEYEW, 2.3 hours.

d.   ECF 131-2, page 9, 9/8/20 entry of MEYEW, 1.8 hours.

e.   ECF 131-2, page 9, 9/11/20 entry of CEWAN, 1.3 hours.

f.   ECF 131-2, page 9, 9/11/20 entry of MEYEW, 2.0 hours.

g.   ECF 131-2, page 43, 5/7/21 entry of MEYEW, 2.4 hours.

h.   ECF 131-3, page 3, 6/29/20 entry of MEYEW, 3.6 hours.

i.  ECF 131-3, page 6, 7/14/20 entry of MEYEW, 1.1 hours.

j.  ECF 131-3, page 11, 8/5/20 entry of CEWAN, 3.5 hours.

k.  ECF 131-3, page 11, 8/5/20 entry of MEYEW, 5.2 hours.

l.  ECF 131-3, page 13, 8/14/20 entry of MEYEW, 1.9 hours.

m.  ECF 131-3, page 14, 8/19/20 entry of MEYEW, 3.6 hours.


I certify under penalty of perjury that the foregoing is true and accurate to the best of my knowledge.

Dated this 25th Day of October, 2021

_____

Michael A. Rollin

21

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 19-cv-01091-RM-NRN

DAVID E. BRODY,

Plaintiff,

v.

MARC A. BRUNER,
THE BRUNER FAMILY TRUST, and
MARC E. BRUNER, AS TRUSTEE OF THE BRUNER FAMILY TRUST

Defendants.

---

## DEFENDANT MARC A. BRUNER'S RESPONSES TO PLAINTIFF'S WRITTEN DISCOVERY REQUESTS TO DEFENDANTS MARC A. BRUNER AND THE BRUNER FAMILY TRUST

---

Pursuant to Federal Rule of Civil Procedure 33, 34, and 36, Defendant Marc A Bruner ("MAB") hereby submits his Responses to Plaintiff's Written Discovery Requests to Defendants Marc A. Bruner and the Bruner Family Trust, as follows:

## GENERAL OBJECTIONS

MAB objects to these Discovery Requests to the extent they seek information protected by the attorney-client privilege, the work product doctrine, or any other privilege or protection. MAB does not waive any such privileges and protections and intends to fully preserve them. MAB will supplement his responses with a privilege log as required.

In responding, MAB does not waive or intend to waive, but rather intends to fully preserve and hereby does preserve: (1) all objections as to competency, relevancy, admissibility, materiality, etc., as to each and every Discovery Request and response provided thereto; (2) all rights to object on any grounds to the use of any of the responses provided herein in any proceeding, motion, hearing, or trial; (3) all rights to object to additional discovery pertaining to the requests and the subject matter of the requests herein.

MAB responds to these Discovery Requests based on information currently known and available to it. Investigation for additional information is ongoing. Consequently, MAB reserves



EXHIBIT

A

the right to amend, supplement, or even withdraw the answers and responses provided herein as additional information becomes known and available.

## RESPONSES TO INTERROGATORIES

1.      Is Your response to each Request for Admission served upon you by any party an unqualified admission?  If not, for each response that is not an unqualified admission: a) state the number of the request; b) state all facts upon which you base your response; c) identify all persons who have knowledge of those facts.

**RESPONSE:** Please see response to each Request for Admission.

2.      State all bases on which You assert that MAB is not liable to Plaintiff as set forth in the operative Complaint as well as the source of all information which support or provide such bases and/or such position, including the specific time, manner, and participants of and to any and all communications related to the bases and position.

**RESPONSE:** MAB objects to this response as vague and overbroad.  It is an impermissible "blockbuster" interrogatory.  Further, MAB objects to the extent this Interrogatory seeks a legal conclusion.  MAB also objects to this Interrogatory as premature, as discovery is ongoing. Subject to and without waiver of any objection, MAB responds as follows:

MAB considered Plaintiff to be his personal attorney at the time of the August 16, 2017 Agreement.  Despite Plaintiff's representation of MAB, Plaintiff failed to comply with the requirements of Colorado Rule of Professional Conduct 1.8 in various ways, including but not limited to: (1) Plaintiff did not advise MAB to seek independent legal counsel regarding the proposed transaction, in writing or otherwise; (2) Plaintiff did not obtain informed consent from MAB regarding the essential terms in the transaction, Plaintiff's role in the transaction, and whether Plaintiff was representing MAB's interests in the transaction.  Because of Plaintiff's failures to comply with Rule 1.8, the Agreement is void.

Plaintiff also waived certain provisions of the Agreement by representing to MAB that any delay in payment was acceptable, and that MAB could pay him the $25,000 consideration and transfer the Fortem share as he was able.  Plaintiff fully understood at the time of the Agreement that the Fortem shares were not tradeable.  Plaintiff also waived his rights in the Agreement when he failed to object to the transfer in the PetroHunter Bankruptcy proceeding, as required by the Bankruptcy Court's orders.  Finally, Plaintiff waived the right to bring this action under the express terms of the Agreement, which provide, "If one or both cash payments are not made, Brody waives the right to make a claim against Bruner for breach of this Agreement."  MAB reserves the right to supplement this response as additional information becomes available.

3.      Identify all legal advice given by Plaintiff to MAB in MAB's personal capacity.

**RESPONSE:** MAB objects to this Interrogatory as overbroad and unduly burdensome.  MAB and Plaintiff have known each other for over twenty years and have had a professional attorney-client relationship for the vast majority of that time.  This Interrogatory requires MAB to recall all legal advice over a substantial length of time.  MAB also objects to this Interrogatory to the extent it seeks information subject to the attorney-client or work product privileges.  Subject to and without waiving these objections, MAB responds as follows:

MAB retained Plaintiff and Cynthia Gausvik to prepare the trust documents for the Bruner Family Trust.

Plaintiff formed two entities, Mako and Falcon Oil & Gas, on behalf of MAB.  In this capacity, MAB recalls that Plaintiff prepared various documents, including but not limited to articles of incorporation and operating agreements, to establish these companies.  At the time of formation, Plaintiff worked for MAB's interest rather than as legal counsel for either company.  MAB believes that Plaintiff may have done the work regarding assignments of property between these two entities on his behalf.

Plaintiff formed an entity called MAB Resources, LLC on behalf of MAB.  MAB also hired Plaintiff represented MAB and MAB Resources in negotiating, drafting, and executing several agreements between MAB and PetroHunter (collectively, the "Consulting and Overriding Royalty Agreements").  Plaintiff also represented MAB and MAB Resources in regard to several amendments to the Consulting and Overriding Royalty Agreements, which included cash and stock consideration that was personal consideration to MAB.

Plaintiff also prepared a document (the "MAB Resources Agreement") regarding a "farmout" of oil and gas interests between PetroHunter and Paltar, two companies in which MAB held interests.  MAB believes the MAB Resources Agreement was prepared for him individually.

MAB further states that he considered Plaintiff to be his personal lawyer for over 20 years.  The above response indicates the matters where MAB specifically called Plaintiff representing him in a personal capacity, but there may be additional matters.  MAB further incorporates the statements set forth in his Declaration filed in response to Plaintiff's Motion for Partial Judgment on the Pleadings.  MAB will supplement this response accordingly.

       4.      Identify all Documents evidencing an attorney-client relationship between Plaintiff and MAB in his personal capacity.

**RESPONSE:** MAB objects to this Interrogatory as overbroad and unduly burdensome.  MAB and Plaintiff have known each other for over twenty years and have had a professional attorney-client relationship for the vast majority of that time.  This Interrogatory requires MAB to recall all legal advice and related documents over a substantial length of time.  MAB further objects because this Interrogatory seeks information outside MAB's possession, custody, or control.  Finally, MAB objects to this Interrogatory to the extent it seeks information subject to the

attorney-client or work product privileges. Subject to and without waiving these objections, MAB responds as follows:

At a minimum, the MAB Resources Agreement, the Trust Agreement, the Consulting and Overriding Royalty Agreements, and the various operating agreements and other documents prepared for Mako, Falcon, MAB Resources, PetroHutner, and Palter evidence an attorney-client relationship. Upon information and belief, other responsive documents may be in the possession, custody, or control of third parties, not affiliated with this lawsuit. MAB will supplement this response if it becomes aware of additional documents.

5.      Identify each and every Person who ever had the right to control any and all assets held by the BFT and the time period(s) of each such Person's right of control.

**RESPONSE:** MAB objects to this request because (1) it seeks information not relevant to any claim or defense in this action and is not proportional to the needs of the case and (2) it is not limited to any time period relevant to any claim or defense in this action. Consequently, the request is overly broad, unduly burdensome and likely propounded solely to harass MAB. The BFT was formed in March 2005. The Agreement on which this action is based was not signed until August 2017—over twelve years later. There is no basis for Plaintiff to seek information requested by this interrogatory over a decade before the operative agreement was signed, let alone one year before. And this information has no possibility of proving or disproving any elements of any pending causes of action (fraud, civil theft, breach of contract, breach of the duty of good faith and fair dealing, promissory estoppel, civil conspiracy, or declaratory judgment). Moreover, MAB is not a trustee, and therefore, this Interrogatory seeks information outside his possession, custody, and control.

Subject to the foregoing objections, Marc E. Bruner and Cynthia Gausvik were original trustees of the BFT and Marc E. Bruner has been the sole trustee for the BFT since approximately 2011.

6.      Identify each and every transaction involving assets owned and/or held by the BFT, including, without limitation, all investments made by the BFT in third party entities, all loans made by the BFT to third parties, and deposits and withdrawals of any and all such assets, together with the Identity of the Person or Persons who authorized and/or facilitated each of the transactions.

**RESPONSE:** MAB objects to this request because (1) it seeks information not relevant to any claim or defense in this action and is not proportional to the needs of the case and (2) it is not limited to any time period relevant to any claim or defense in this action. Consequently, the request is overly broad, unduly burdensome and likely propounded solely to harass MAB and conduct improper discovery regarding assets before any judgment enters. The BFT was formed in March 2005. The Agreement on which this action is based was not signed until August 2017—over twelve years later. There is no basis for Plaintiff to seek information requested by this interrogatory over a decade before the operative agreement was signed or since. This information has no possibility of proving or disproving any elements of any pending causes of

action (fraud, civil theft, breach of contract, breach of the duty of good faith and fair dealing, promissory estoppel, civil conspiracy, or declaratory judgment). Moreover, MAB is not a trustee of the BFT or otherwise involved with the BFT's management or accounting, and this Interrogatory therefore seeks information outside his possession, custody, and control.

Subject to the foregoing objections, MAB is aware of the following transactions regarding the BFT: (1) it received two distributions from the PetroHunter Bankruptcy trustee, which are a matter of public record; (2) it disbursed approximately $350,000 of the distributions it received to beneficiaries of the BFT; and (3) it paid approximately $15,000 to MAB in 2021 pursuant to trust requirements. Any other transactions and the amount of the BFT's assets are in the possession of MEB as the BFT's trustee.

7.    Identify the assets of all tangible and intangible forms and types held by the BFT at all times since the formation of the BFT.

**RESPONSE:** MAB objects to this request because (1) it seeks information not relevant to any claim or defense in this action and is not proportional to the needs of the case and (2) it is not limited to any time period relevant to any claim or defense in this action. Consequently, the request is overly broad, unduly burdensome and likely propounded solely to harass MAB. The BFT was formed in March 2005. The Agreement on which this action is based was not signed until August 2017—over twelve years later. There is no basis for Plaintiff to seek information requested by this interrogatory over a decade before the operative agreement was signed or since. The BFT's assets has no possibility of proving or disproving any elements of any pending causes of action (fraud, civil theft, breach of contract, breach of the duty of good faith and fair dealing, promissory estoppel, civil conspiracy, or declaratory judgment), and it essentially amounts to improper discovery into Defendants' assets before any judgment enters. Moreover, MAB is not associated with the management or accounting of the BFT, and this Interrogatory therefore seeks information outside his possession, custody, and control.

Subject to the foregoing objections, the only assets of the BFT of which MAB is aware at the time of the Agreement's execution were its claims in the PetroHunter Bankruptcy, which is a matter of public record. MAB is further aware of the transactions and distributions set forth in his Response to Interrogatory No. 6, set forth above, and incorporates that response herein.

8.    Identify the settlor(s), trustee(s), and beneficiary(ies) of the BFT at all times since the formation of the BFT.

**RESPONSE:**

Settlor: Marc. A. Bruner.

Trustees: Marc E. Bruner and Cynthia Gausvik. Ms. Gausvik ceased serving as trustee in or around 2011.

Beneficiaries: Marc E. Bruner, Alan Shane Bruner, Emilie Bruner, Laura Koza, Zachary Bruner, Karissa Kindy, Pat Johnson, Steve Bruner, David Bruner, Gayle Dietz, Darrel Hawkins, Carmen Lotito, Deane Bruner, Stephanie Fitzgerald, Kelley Johnson, Jennifer Johnson White, Ashley Farnsworth, Nickolas Bruner, Megan Anderson, Abigail Bruner, Brittany Bruner, Denise Bruner (now deceased).

9.      Identify all communications with any Person regarding the Disputed Claim, including, without limitation, (a) its proposed and/actual acquisition; (b) ownership and/or possession by MAB; and/or (c) its proposed and/or actual use in connection with the PetroHunter Bankruptcy.

**RESPONSE:** MAB objects to this Interrogatory as overbroad and unduly burdensome.  The term "all communications" requires all verbal, telephone, e-mail, text, or other form of communication from at least 2017 to the present, and MAB cannot possibly recall "all" such communications.  MAB further objects to the extent this Interrogatory seeks information subject to the attorney-client or work product privileges.  Subject to and without waiving these objections, MAB responds as follows:

MAB recalls discussing the Disputed Claim with Brody, and in particular that Brody induced him to entering into the Agreement for the transfer of the Disputed Claim.  MAB and Brody had further conversations regarding the transfer of the $25,000 and the Fortem shares.

MAB further had conversations with Carmen "Tony" Lotito regarding the transfer of the Disputed Claim and the existence of the August 1, 2017 Agreement.

MAB believes he had conversations with a transfer agent/company in Florida and the Canadian Trading Commission regarding the status and tradability of the Fortem shares.

10.      Identify all communications between MAB, MEB, and/or the BFT, on the one hand, and the PetroHunter Bankruptcy trustee, including any attorney or other representative thereof, on the other hand.

**RESPONSE:** MAB objects to this request to the extent it asks him to identity communications between the BFT and/or MEB and the PetroHunter Bankruptcy trustee.  Those communications are outside MAB's possession, custody, or control.  Subject to and without waiving any objection, MAB does not recall having any direct communications with the PetroHunter Bankruptcy trustee.  Any such communications would have been handled by his attorney in the PetroHunter bankruptcy.

11.      Identify all communications between MAB, MEB, and/or the BFT, on the one hand, and the PetroHunter Bankruptcy debtor, including any attorney or other representative thereof, on the other hand.

**RESPONSE:** MAB objects to this request to the extent it asks him to identity communications between the BFT and/or MEB and the PetroHunter Bankruptcy trustee. Those communications are outside MAB's possession, custody, or control. Subject to and without waiving any objection, MAB does not recall having any direct communications with the PetroHunter Bankruptcy debtor. Any such communications would have been handled by his attorney in the PetroHunter bankruptcy.

12.     Identify all communications between MAB, MEB, and/or the BFT, on the one hand, and each and every PetroHunter Bankruptcy creditor, including any attorney or other representative thereof, on the other hand.

**RESPONSE:** MAB objects to this request to the extent it asks him to identity communications between the BFT and/or MEB and the PetroHunter Bankruptcy trustee. Those communications are outside MAB's possession, custody, or control. Subject to and without waiving any objection, MAB responds as follows:
does not recall having any direct communications with the PetroHunter Bankruptcy trustee. Any such communications would have been handled by his attorney in the PetroHunter bankruptcy.

MAB recalls having conversations with Plaintiff and Tony Lotito, as set forth in his Response to Interrogatory No. 9. MAB further recalls discussions with Marc E. Bruner regarding the conversion of the PetroHunter bankruptcy from a Chapter 7 to a Chapter 11.

13.     Identify each and every Document, including, without limitation, financial statements, loan applications, balance sheets, and/or other record in which each and every of MAB, MEB, and/or the BFT identified the Disputed Claim as an asset of any Person.

**RESPONSE:** MAB objects to this request to the extent it asks him to identity financial and other documents of other parties since it may not have such documents. Subject to the foregoing objection, MAB is not aware of any documents other than those filed in the PetroHunter Bankruptcy or this proceeding. Any such document is publicly filed and equally available to Plaintiff, and the burden of obtaining, ascertaining, or reviewing any such document will be substantially the same for either party.

14.     Identify the assets of all tangible and intangible forms and types owned or held by MAB at all times since the date of the Agreement.

**RESPONSE:** MAB objects to this request because it seeks information not relevant to any claim or defense in this action and is not proportional to the needs of the case. This information has no possibility of proving or disproving any elements of any pending causes of action (fraud, civil theft, breach of contract, breach of the duty of good faith and fair dealing, promissory estoppel, civil conspiracy, or declaratory judgment). Consequently, the request is overly broad, unduly burdensome and likely propounded solely to harass. The request also is extremely overly broad in that it would literally include anything and everything owned by MAB for the last four years. MAB also objects to this Interrogatory because it seeks discovery into MAB's assets before

obtaining a judgment against MAB.  It is further ambiguous because MAB does not know what Plaintiff means by assets "held by" MAB.

15.    Identify the legal and beneficial owner(s) of each and every asset of all tangible and intangible forms and types owned or held by the BFT at all times since the formation of the BFT.

**RESPONSE:** MAB objects to this request because it seeks information not relevant to any claim or defense in this action and is not proportional to the needs of the case.  This information has no possibility of proving or disproving any elements of any pending causes of action (fraud, civil theft, breach of contract, breach of the duty of good faith and fair dealing, promissory estoppel, civil conspiracy, or declaratory judgment).  Consequently, the request is overly broad, unduly burdensome and likely propounded solely to harass.  The request also is extremely overly broad in that it would literally include anything and everything owned by the BFT for over 15 years.  MAB also objects to this Interrogatory because it seeks discovery into the BFT's assets before obtaining a judgment against MAB, and it asks him to speculate about any such assets.  It is further ambiguous because MAB does not know what Plaintiff means by assets "held by" the BFT.  It also seeks information outside MAB's possession, custody, and control.  Subject to and without waiver of any objection, MAB responds that he is not aware of the assets held by the BFT.

## RESPONSES TO REQUESTS FOR PRODUCTION

1.    Produce each and every Document consulted to obtain and/or containing information responsive to the Interrogatories.

**RESPONSE:** All responsive documents have been or will be produced.

2.    Produce records of all transactions of BFT since the date of the Agreement through the date of Your responses.

**RESPONSE:** MAB does not have any documents responsive to this request.

3.    Produce all iterations of the BFT trust agreement since its inception, including all modifications and addenda.

**RESPONSE:** All responsive documents have been or will be produced.

4.    Produce all communications between MAB and any other Person regarding assets of all tangible and intangible forms and types owned or held by the BFT, including, without, limitation, all directions, instructions, authorizations, approvals, declinations, loans, pledges, and/or negotiations concerning any and all assets of the BFT.

**RESPONSE:** MAB objects to this request because it seeks information not relevant to any claim or defense in this action and is not proportional to the needs of the case.  This information has no possibility of proving or disproving any elements of any pending causes of action (fraud, civil theft, breach of contract, breach of the duty of good faith and fair dealing, promissory estoppel, civil conspiracy, or declaratory judgment).  Consequently, the request is overly broad, unduly burdensome and likely propounded solely to harass.  The request also is extremely overly broad in that it would literally include any transactions related to the BFT since its formation in 2005.  MAB also objects to this Request because it seeks discovery into assets before obtaining a judgment against MAB or the BFT.  It is further ambiguous because MAB does not know what Plaintiff means by assets "held by" the BFT.  Subject to and without waiver of any objection, MAB does not possess any documents responsive to this request.

5.    Produce all Documents evidencing all legal advice given by Plaintiff to MAB in MAB's personal capacity.

**RESPONSE:** All responsive documents have been or will be produced.

6.    Produce all Documents evidencing an attorney-client relationship between Plaintiff and MAB in his personal capacity.

**RESPONSE:** All responsive documents have been or will be produced.

7.    Produce all Documents showing the Identity and scope of authority of each and every Person who ever had the right to control any and all assets of all tangible and intangible forms and types owned or held by the BFT and the time period(s) of each such Person's right of control.

**RESPONSE:** MAB objects to this request as overbroad and irrelevant because it seeks information not relevant to any claim or defense in this action and is not proportional to the needs of the case.  It is further ambiguous because the term "all tangible and intangible forms and types owned or held by the BFT" is vague, ambiguous, and subject to multiple definitions.  Additionally, MAB objects to the extent this Request seeks information outside his possession, custody, and control.  Subject to and without waiver of any objection, MAB responds as follows: All responsive documents have been or will be produced, to the extent they are in MAB's possession.

8.    Produce all Documents showing each and every transaction involving assets of all tangible and intangible forms and types owned or held by the BFT, including, without limitation, all deposits, withdrawals, and/or loans of any and all such assets, together with the Identify of the Person or Persons who authorized and facilitated all such transactions.

**RESPONSE:** MAB objects to this request because it seeks information not relevant to any claim or defense in this action and is not proportional to the needs of the case.  This information has no possibility of proving or disproving any elements of any pending causes of action (fraud, civil

theft, breach of contract, breach of the duty of good faith and fair dealing, promissory estoppel, civil conspiracy, or declaratory judgment).  Consequently, the request is overly broad, unduly burdensome and likely propounded solely to harass.  The request also is extremely overly broad in that it would literally include any and every transaction related to the BFT since its creation in 2005.  MAB also objects to this Request because it seeks discovery into the BFT's assets before obtaining a judgment.  It is further ambiguous because MAB does not know what Plaintiff means by "assets of all tangible and intangible forms and types held by" the BFT.  Finally, MAB objects to this Request to the extent it seeks information outside his possession, custody, and control.  Subject to and without waiver of any objection, MAB responds as follows: MAB does not have any documents responsive to this request.

9.     Produce all Documents identifying the assets of all tangible and intangible forms and types owned or held by the BFT at all times.

**RESPONSE:** MAB objects to this request because it seeks information not relevant to any claim or defense in this action and is not proportional to the needs of the case.  This information has no possibility of proving or disproving any elements of any pending causes of action (fraud, civil theft, breach of contract, breach of the duty of good faith and fair dealing, promissory estoppel, civil conspiracy, or declaratory judgment).  Consequently, the request is overly broad, unduly burdensome and likely propounded solely to harass.  The request also is extremely overly broad in that it would literally include any and every transaction related to the BFT since its creation in 2005.  MAB also objects to this Request because it seeks discovery into the BFT's assets before obtaining a judgment.  It is further ambiguous because MAB does not know what Plaintiff means by "assets of all tangible and intangible forms and types held by" the BFT.  Finally, MAB objects to this Request to the extent it seeks information outside his possession, custody, and control.  Subject to and without waiver of any objection, MAB responds as follows: MAB does not have any documents responsive to this request.

10.     Produce all Documents identifying the settlor(s), trustee(s), and beneficiary(ies) of the BFT at all times.

**RESPONSE:** All responsive documents have been or will be produced.

11.     Produce all Documents showing and/or referring to all communications with any Person regarding the Disputed Claim, including, without limitation, its proposed and/or acquisition; ownership and/or possession by MAB; and/or its proposed and/or use in connection with the PetroHutner bankruptcy.

**RESPONSE:** All responsive documents have been or will be produced.

12.     Produce all Documents showing and/or referring to all communications between MAB, MEB, and/or the BFT, on the one hand, and the PetroHunter Bankruptcy Trustee, including and attorney or other representative thereof, on the other hand.

**RESPONSE:** All responsive documents have been or will be produced.

13.     Produce all Documents showing and/or referring to all communications between MAB, MEB, and/or the BFT, on the one hand, and the PetroHunter Bankruptcy debtor, including any attorney or other representative thereof, on the other hand.

**RESPONSE:** All responsive documents have been or will be produced.

14.     Produce all Documents showing and/or referring to all communications between MAB, MEB, and/or the BFT, on the one hand, and each and every PetroHunter Bankruptcy creditor, including any attorney or other representative thereof, on the other hand.

**RESPONSE:** All responsive documents have been or will be produced.

15.     Produce each and every Document, including, without limitation, financial statements, loan applications, balance sheets, and/or other record in which each and every of MAB, MEB, and/or the BFT identified the Disputed Claim as an asset of any person.

**RESPONSE:** MAB objects to this request because it seeks information not relevant to any claim or defense in this action and is not proportional to the needs of the case. This information has no possibility of proving or disproving any elements of any pending causes of action (fraud, civil theft, breach of contract, breach of the duty of good faith and fair dealing, promissory estoppel, civil conspiracy, or declaratory judgment). Consequently, the request is overly broad, unduly burdensome and likely propounded solely to harass. The request also is extremely overly broad in that it would literally include virtually any reference to the Disputed Claim. Further, such information is equally available to Plaintiff in the filings from the PetroHunter Bankruptcy.

## RESPONSES TO REQUESTS FOR ADMISSION

1.     Admit that MAB signed the Agreement.

**RESPONSE:** Admit.

2.     Admit that MAB took possession of the Disputed Claim.

**RESPONSE:** Admit.

3.     Admit that MAB identified himself in the PetroHunter Bankruptcy as the owner and/or transferee of the Disputed Claim.

**RESPONSE:** Admit.

4.     Admit that as of the date of Your responses to these Requests for Admissions, MAB still asserts that he is the owner and/or transferee of the Disputed Claim.

**RESPONSE:** Admit.

5.    Admit that MAB sought payment of distributions on the Disputed Claim to himself in the PetroHunter Bankruptcy.

**RESPONSE:** Denied.

6.    Admit that one or more of Defendants used the Disputed Claim in negotiations with the PetroHunter Bankruptcy trustee.

**RESPONSE:** MAB objects to this Request because it asks him to admit to actions of other parties, which are outside his knowledge.  Subject to and without waiver of any objection, MAB responds as follows: Denied.

7.    Admit that without the Disputed Claim, MAB would not be a creditor in the PetroHunter Bankruptcy.

**RESPONSE:** Denied.

8.    Admit that MAB paid no consideration to Plaintiff under the Agreement.

**RESPONSE:** MAB admits he has not paid the consideration at this time, but further states intends to pay once the Fortem shares become tradable.

9.    Admit that at any time since ten (10) days after the date of the Agreement, MAB has had the ability to cause the consideration under the Agreement to be delivered to Plaintiff.

**RESPONSE:** Denied.

10.    Admit that at any time since sixty (60) days after the date of the Agreement, MAB has had sufficient assets to pay Plaintiff $25,000 in cash.

**RESPONSE:** Denied.

11.    Admit that at any time since ten (10) days after the date of the Agreement, MAB has owned various assets valued over $300,000.

**RESPONSE:** Denied.

12.    Admit that at any time since ten (10) days after the date of the Agreement, MAB has had sufficient assets to pay Plaintiff an equivalent value of the Fortem Shares identified as consideration under the Agreement, either in cash or in different stock.

**RESPONSE:** Denied.

      13.     Admit that the BFT holds assets sufficient to pay the consideration under the Agreement.

**RESPONSE:** MAB cannot either admit or deny this Request because he has no personal knowledge about the assets held by the BFT.

      14.     Admit that MAB never intended to pay all of the consideration under the Agreement.

**RESPONSE:** Denied.

      15.     Admit that MAB never intended to pay any of the consideration under the Agreement.

**RESPONSE:** Denied.


      DATED this 15th day of September, 2021.

                                            **MOYE WHITE LLP**

                              By: */s/ Tanya A. Sevy*
                                    William F. Jones
                                    Timothy M. Swanson
                                    Tanya A. Sevy
                                    1400 16th Street, 6th Floor
                                    Denver, Colorado 80202
                                    Phone: (303) 292-2900
                                    Email: billy.jones@moyewhite.com
                                    tim.swanson@moyewhite.com
                                    tanya.sevy@moyewhite.com

                                    *Attorneys for Defendant Marc A. Bruner*

## <u>CERTIFICATE OF SERVICE</u>

       I hereby certify that on the 15th day of September, 2021, I electronically served the foregoing **Defendant Marc A Bruner's Responses to Plaintiff's Written Discovery Requests to Defendants Marc A. Bruner and the Bruner Family Trust** on the following:

Michael A. Rollin
Mallory Revel
Lindsey Idelberg
Foster Graham Milstein & Calisher LLP
mrollin@fostergraham.com, amcclurg@fostergraham.com, mkragness@fostergraham.com

*Attorneys for Plaintiff David E. Brody*

William R. Meyer
Ghislaine Bruner
POLSINELLI PC
Wmeyer@polsinelli.com, denverdocketing@polsinelli.com, dgladney@polsinelli.com,
egaskins@polsinelli.com, jditullio@polsinelli.com, mwashington@polsinelli.com

*Attorneys for Defendants Bruner*
*Family Trust and Marc E. Bruner*

                              */s/ Elisabeth Mason*

# UNITED STATES DISTRICT COURT
# DISTRICT OF COLORADO

Civil Action No. 19-cv-01091-RM-NRN

DAVID E. BRODY,
Plaintiff,

v.

MARC A. BRUNER,
THE BRUNER FAMILY TRUST, and
MARC E. BRUNER, AS TRUSTEE OF THE BRUNER FAMILY TRUST
Defendants.

## THE BFT PARTIES' RESPONSE TO PLAINTIFF'S WRITTEN DISCOVERY REQUESTS

The BFT responds to Plaintiff's written discovery requests in accordance with the Federal Rules of Civil Procedure and objects to any instruction or definition that seeks to expand or modify applicable Federal Rules of Civil Procedure.

### INTERROGATORIES

1.      **Is Your response to each Request for Admission served upon you by any party an unqualified admission? If not, for each response that is not an unqualified admission: a) state the number of the request; b) state all facts upon which you base your response; c) Identify all Persons who have knowledge of those facts.**

**RESPONSE**: See response to each request for admission.

2.      **State all bases on which You assert that MAB is not liable to Plaintiff as set forth in the operative Complaint as well as the source of all information which support or provide such bases and/or such position, including the specific time, manner, and participants of and to any and all communications related to the bases and position.**

**RESPONSE**: The BFT objects to this request because it is premature in that discovery is ongoing and this request seeks information not in the BFT's possession. Subject to this objection, the BFT believes the Agreement is void because Plaintiff and MAB were in an attorney-client relationship and Plaintiff failed to comply with Colorado Rules of Professional Conduct for entering into an agreement with his own client. Documents supporting this include MAB's affidavit produced in response to Plaintiff's motion for summary judgment and Brody00061-2, 0199-200, 0221-2. Other

EXHIBIT
B

documents may support this as well.  The BFT believes Plaintiff's claims for fraud and civil theft are

barred by the economic loss rule and applicable statues of limitations.  Plaintiff's claim for breach of

the duty of good faith and fair dealing is barred because MAB lacked discretion, which is a requirement

of this claim.  The BFT believes Plaintiff's claim for promissory estoppel is barred because equitable

claims are not available when there is an applicable contract addressing the same claims.  Plaintiff's

claim for civil conspiracy is barred as set forth in previous briefing.  The BFT incorporates its

arguments as set forth in its motion to dismiss and its response to Plaintiff's motion for summary

judgment.  The BFT may also rely on any response from MAB as to why he is not liable to Plaintiff,

including any affirmative defenses on which MAB relies.

> **3.**     **Identify all legal advice given by Plaintiff to MAB in MAB's personal capacity.**

**RESPONSE**: The BFT objects to this request because it is premature in that discovery is

ongoing and this request seeks information not in the BFT's possession.  Subject to this objection, the

BFT relies on statements contained in MAB's affidavit, filed in response to Plaintiff's motion for

summary judgment, about receiving legal advice from Plaintiff in a personal capacity. The BFT may

also rely on any response from MAB.

> **4.**     **Identify all Documents evidencing an attorney-client relationship between
> Plaintiff and MAB in his personal capacity.**

**RESPONSE**: The BFT objects to this request because it is premature in that discovery is

ongoing and this request seeks information not in the BFT's possession.  Subject to this objection, the

BFT identifies MAB's affidavit produced in response to Plaintiff's motion for summary judgment and

Brody00061-2, 0199-200, 0221-2. The BFT may also rely on any response from MAB.

> **5.**     **Identify each and every Person who ever had the right to control any and all
> assets held by the BFT and the time period(s) of each such Person's right of control.**

**RESPONSE**: The BFT objects to this request because (1) it seeks information not relevant

to any claim or defense in this action and is not proportional to the needs of the case and (2) it is not

limited to any time period relevant to any claim or defense in this action.  Consequently, the request is

overly broad, unduly burdensome and likely propounded solely to harass the BFT.  The BFT was formed in March 2005.  The Agreement on which this action is based was not signed until August 2017—over twelve years later.  There is no basis for Plaintiff to seek information requested by this interrogatory over a decade before the operative agreement was signed or since.  And this information has no possibility of proving or disproving any elements of any pending causes of action (fraud, civil theft, breach of contract, breach of the duty of good faith and fair dealing, promissory estoppel, civil conspiracy, or declaratory judgment).  Subject to the foregoing objections, Marc E. Bruner and Cynthia Gausvik were original trustees of the BFT and Marc E. Bruner has been the sole trustee for the BFT since approximately 2011.

**6.      Identify each and every transaction involving assets owned and/or held by the BFT, including, without limitation, all investments made by the BFT in third party entities, all loans made by the BFT to third parties, and deposits and withdrawals of any and all such assets, together with the Identity of the Person or Persons who authorized and/or facilitated each of the transactions.**

**RESPONSE**: The BFT objects to this request because (1) it seeks information not relevant to any claim or defense in this action and is not proportional to the needs of the case and (2) it is not limited to any time period relevant to any claim or defense in this action.  Consequently, the request is overly broad, unduly burdensome and likely propounded solely to harass the BFT.  The BFT was formed in March 2005.  The Agreement on which this action is based was not signed until August 2017—over twelve years later.  There is no basis for Plaintiff to seek information requested by this interrogatory over a decade before the operative agreement was signed or since.  This information has no possibility of proving or disproving any elements of any pending causes of action (fraud, civil theft, breach of contract, breach of the duty of good faith and fair dealing, promissory estoppel, civil conspiracy, or declaratory judgment). Without waiving and subject to the foregoing objections, since 2017, the BFT's transactions are as follows: (1) it received two distributions from the PetroHunter Bankruptcy trustee, which are a matter of public record; (2) it disbursed approximately $350,000 of the distributions it received to beneficiaries of the BFT; (3) it paid a $5,000 management fee to MEB in

2020 and in 2021; (4) it paid approximately $15,000 to MAB in 2021 pursuant to trust requirements; and (5) it paid attorney's fees. Currently, the BFT has approximately $127,000 remaining with no other assets other than its claims in the PetroHunter Bankruptcy. MEB, in his capacity as trustee for the BFT, authorized the foregoing payments from the BFT.

7.    **Identify the assets of all tangible and intangible forms and types held by the BFT at all times since the formation of the BFT.**

**RESPONSE**: The BFT objects to this request because (1) it seeks information not relevant to any claim or defense in this action and is not proportional to the needs of the case and (2) it is not limited to any time period relevant to any claim or defense in this action. Consequently, the request is overly broad, unduly burdensome and likely propounded solely to harass the BFT. The BFT was formed in March 2005. The Agreement on which this action is based was not signed until August 2017—over twelve years later. There is no basis for Plaintiff to seek information requested by this interrogatory over a decade before the operative agreement was signed or since. The BFT's assets have no possibility of proving or disproving any elements of any pending causes of action (fraud, civil theft, breach of contract, breach of the duty of good faith and fair dealing, promissory estoppel, civil conspiracy, or declaratory judgment). Subject to and without waiving the foregoing objections, the BFT's only assets at or around the time the Agreement was executed were its claims in the PetroHunter Bankruptcy, which is a matter of public record. The BFT also had under $200 in an account from approximately 2011 until the PetroHunter Bankruptcy trustee made two recent distributions to the BFT.

8.    **Identify the settlor(s), trustee(s), and beneficiary(ies) of the BFT at all times since the formation of the BFT.**

**RESPONSE**: Settlor: Marc. A. Bruner. Trustees: Marc E. Bruner and Cynthia Gausvik. Ms. Gausvik ceased serving as trustee in or around 2011. Beneficiaries: Marc E. Bruner, Alan Shane Bruner, Emilie Bruner, Laura Koza, Zachary Bruner, Karissa Kindy, Pat Johnson, Steve Bruner, David Bruner, Gayle Dietz, Darrel Hawkins, Carmen Lotito, Deane Bruner, Stephanie Fitzgerald, Kelley Johnson, Jennifer

Johnson White, Ashley Farnsworth, Nickolas Bruner, Megan Anderson, Abigail Bruner, Brittany

Bruner, Denise Bruner (now deceased).

      9.     **Identify all communications with any Person regarding the Disputed Claim, including, without limitation, (a) its proposed and/or actual acquisition; (b) ownership and/or possession by MAB; and/or (c) its proposed and/or actual use in connection with the PetroHunter Bankruptcy.**

      **RESPONSE**: The BFT objects to this request because it is over broad in its use of

"regarding." *See Am. Friends Servs. Cmte. V. City and Cty. Of Denver*, 2004 WL 7334020, at *4 (D. Colo.

Feb. 19, 2004)(relied on by Plaintiff in his response to written discovery). As written, this request could

seek documents that expressly discuss the acquisition, ownership, or possession of Disputed Claim or

it could be intended to include any communication pertaining to MAB's involvement in the

PetroHunter Bankruptcy since his standing apparently was based on the Disputed Claim, which would

be overly broad and unduly burdensome. Subject to this objection, the BFT states that prior to

approximately October 2018, the BFT had no communications with anyone about MAB's acquisition

(proposed or actual), ownership, or possession of the Disputed Claim. In or around October 2018,

Plaintiff contacted Ghislaine Bruner to discuss the Disputed Claim. See emails disclosed in Brody0070-

4. It is the BFT's understanding that she was not aware of the Disputed Claim prior to Plaintiff's

contact. Ms. Bruner conveyed information about her discussion with Plaintiff to MEB, the BFT's

trustee, which may be subject to an applicable claim of privilege. Prior to that, the BFT had no

communications with anyone about the Disputed Claim. At some time after August 17, 2017, MAB,

directly or indirectly, asked the BFT if the BFT was interested in participating in an effort to convert

the PetroHunter Bankruptcy from a Chapter 7 to a Chapter 11. Those communications were not

specific about the Disputed Claim. Thereafter, attorney Glenn Merrick filed various pleadings on

behalf of several parties seeking to convert the bankruptcy, which could have mentioned the Disputed

Claim. As noted already, the BFT is not aware of any of these communications being specifically about

the Disputed Claim.

**10.    Identify all communications between MAB, MEB, and/or the BFT, on the one hand, and the PetroHunter Bankruptcy trustee, including any attorney or other representative thereof, on the other hand.**

**RESPONSE**: The BFT objects to this request to the extent it asks the BFT to identity communications between MAB and/or MEB and the PetroHunter Bankruptcy trustee since it may not have been a party to all such communications.  Subject to that objection, the BFT is producing all responsive documents in its possession.

**11.    Identify all communications between MAB, MEB, and/or the BFT, on the one hand, and the PetroHunter Bankruptcy debtor, including any attorney or other representative thereof, on the other hand.**

**RESPONSE**: The BFT is not aware of it having any communications with the PetroHunter Bankruptcy debtor that did not occur through the PetroHunter Bankruptcy trustee.  Consequently, see response to Interrogatory No. 10.

**12.    Identify all communications between MAB, MEB, and/or the BFT, on the one hand, and each and every PetroHunter Bankruptcy creditor, including any attorney or other representative thereof, on the other hand.**

**RESPONSE**: The BFT objects to this request to the extent it asks the BFT to identity communications of other parties since it may not be in possession of such information.  The BFT objects to this request because it is overly broad and not relevant to any claim or defense in this action and is not proportional to the needs of the case.  There were dozens and dozens of listed creditors in the PetroHunter Bankruptcy.  The BFT is not aware of whether there were any additional creditor who filed proofs of claims.  Whether the BFT had communications with any creditor has no possibility of proving or disproving any claims or defenses at issue in this action.  The BFT objects to this request because it is not limited in time, which makes it overly broad and unduly burdensome as well.  The BFT objects to this request to the extent it seeks communications with MAB or Carmen Lotito because they shared a common interest and/or joint defense protection of communications in the PetroHunter Bankruptcy.  Subject to and without waiving the foregoing objections, the BFT will produce or identify on a privilege log responsive documents in its possession.

13.    Identify each and every Document, including, without limitation, financial statements, loan applications, balance sheets, and/or other record in which each and every of MAB, MEB, and/or the BFT identified the Disputed Claim as an asset of any Person.

RESPONSE: The BFT objects to this request to the extent it asks the BFT to identity financial and other documents of other parties since it may not have such documents. Subject to the foregoing objection, other than possible discussion of the Disputed Claim in a publicly filed document in the PetroHunter Bankruptcy or this proceeding, the burden of obtaining/deriving/ascertaining/ reviewing of which will be substantially the same for either party, the BFT is not aware of any responsive documents.

14.    Identify the assets of all tangible and intangible forms and types owned or held by MAB at all times since the date of the Agreement.

RESPONSE: The BFT objects to this request because it seeks information not relevant to any claim or defense in this action and is not proportional to the needs of the case.  This information has no possibility of proving or disproving any elements of any pending causes of action (fraud, civil theft, breach of contract, breach of the duty of good faith and fair dealing, promissory estoppel, civil conspiracy, or declaratory judgment).  Consequently, the request is overly broad, unduly burdensome and likely propounded solely to harass.  The request also is extremely overly broad in that it would literally include anything and everything owned by MAB for the last four years including the shoes on his feet, to lottery scratch off tickets or printer paper he might have purchased, to any real property he might own.  Answering this request as written would be impossible.  The BFT also objects: (i) to the extent this request seeks asset discovery before obtaining a judgment against the MAB; (ii) because it asks the BFT to speculate as to what assets another party owns or "holds" and (iii) because this request is ambiguous because the BFT does not know what Plaintiff means by assets "held by" MAB.  Subject to each of these objections, the BFT lacks sufficient information about MAB's assets to respond to this request.

15.    Identify the legal and beneficial owner(s) of each and every asset of all tangible and intangible forms and types owned or held by the BFT at all times since the formation of the BFT.

79298954.1

**RESPONSE**: The BFT objects to this request because it is ambiguous because Plaintiff does not define and the BFT does not know what Plaintiff means by "beneficial owner" or assets "held by" the BFT. The BFT further objects to this request because it is circular and indecipherable because it seems to ask the BFT to identify the owner of assets it owns. To the extent that is the information sought, the BFT is the answer. If Plaintiff is seeking the identity of the BFT's beneficiaries, see response to Interrogatory No. 8. The BFT further objects to this request because (1) it seeks information not relevant to any claim or defense in this action and is not proportional to the needs of the case and (2) it is not limited to any time period relevant to any claim or defense in this action. The information sought is not relevant to prove or disprove any elements of any pending causes of action (fraud, civil theft, breach of contract, breach of the duty of good faith and fair dealing, promissory estoppel, civil conspiracy, or declaratory judgment). Further, there is no basis for Plaintiff to seek information requested by this interrogatory over a decade before the operative agreement was signed or since.

Fed.R.Civ.P. 33(b)(5) signatures:

_____

Responding Party: Marc E. Bruner, as Trustee for the Bruner Family Trust

*/s/ William R. Meyer*_____

Objecting Counsel: William R. Meyer

## REQUESTS FOR PRODUCTION

1.    **Produce each and every Document consulted to obtain and/or containing information responsive to the Interrogatories**.

**RESPONSE**: Responsive documents are being produced.

2.    **Produce records of all transactions of BFT since the date of the Agreement through the date of Your responses.**

**RESPONSE**: The BFT is producing bank records that show all transactions of the BFT since the date of the Agreement.

79298954.1

**RESPONSE**: The BFT objects to this request because it is ambiguous because Plaintiff does not define and the BFT does not know what Plaintiff means by "beneficial owner" or assets "held by" the BFT. The BFT further objects to this request because it is circular and indecipherable because it seems to ask the BFT to identify the owner of assets it owns.  To the extent that is the information sought, the BFT is the answer.  If Plaintiff is seeking the identity of the BFT's beneficiaries, see response to Interrogatory No. 8.  The BFT further objects to this request because (1) it seeks information not relevant to any claim or defense in this action and is not proportional to the needs of the case and (2) it is not limited to any time period relevant to any claim or defense in this action.  The information sought is not relevant to prove or disprove any elements of any pending causes of action (fraud, civil theft, breach of contract, breach of the duty of good faith and fair dealing, promissory estoppel, civil conspiracy, or declaratory judgment).  Further, there is no basis for Plaintiff to seek information requested by this interrogatory over a decade before the operative agreement was signed or since.

Fed.R.Civ.P. 33(b)(5) signatures:

Responding Party: Marc E. Bruner, as Trustee for the
Bruner Family Trust

_____

Objecting Counsel: William R. Meyer

## REQUESTS FOR PRODUCTION

1.      **Produce each and every Document consulted to obtain and/or containing information responsive to the Interrogatories**.

**RESPONSE**: Responsive documents are being produced.

2.      **Produce records of all transactions of BFT since the date of the Agreement through the date of Your responses.**

**RESPONSE**: The BFT is producing bank records that show all transactions of the BFT since the date of the Agreement.

**3.      Produce all iterations of the BFT trust agreement since its inception, including all modifications and addenda.**

**RESPONSE**: Responsive documents are being produced.

**4.      Produce all communications between MAB and any other Person regarding assets of all tangible and intangible forms and types owned or held by the BFT, including, without limitation, all directions, instructions, authorizations, approvals, declinations, loans, pledges, and/or negotiations concerning any and all assets of the BFT.**

**RESPONSE**: The BFT objects to this request because (1) it seeks information not relevant to any claim or defense in this action and is not proportional to the needs of the case and (2) it is not limited to any time period relevant to any claim or defense in this action.  Consequently, the request is overly broad, unduly burdensome and likely propounded solely to harass the BFT.  The BFT was formed in March 2005.  The Agreement on which this action is based was not signed until August 2017—over twelve years later.  There is no basis for Plaintiff to seek information requested over a decade before the operative agreement was signed or since.  The BFT also objects because this request is ambiguous because the BFT does not know what Plaintiff means by assets "held by" the BFT. Subject to the foregoing objections, the BFT is not aware of any responsive documents since the date of the Agreement.

**5.      Produce all Documents evidencing all legal advice given by Plaintiff to MAB in MAB's personal capacity.**

**RESPONSE**: Documents evidencing legal advice given by plaintiff to MAB include MAB's affidavit produced in response to Plaintiff's motion for summary judgment and Brody00061-2, 0199-200, 0221-2.  The BFT is not in possession of any other responsive documents but reserves the right to rely on any documents produced or filed by Plaintiff or MAB.

6.      **Produce all Documents evidencing an attorney-client relationship between Plaintiff and MAB in his personal capacity**.

**RESPONSE**: See response to Request for Production No. 5.

**7.      Produce all Documents showing the Identity and scope of authority of each and every Person who ever had the right to control any and all assets of all tangible and intangible forms and types owned or held by the BFT and the time period(s) of each such Person's right of control.**

**RESPONSE**: The BFT objects because this request is ambiguous because the BFT does not know what Plaintiff means by assets "held by" the BFT. Subject to this objection, see response to Request for Production No. 3.

8.     **Produce all Documents showing each and every transaction involving assets of all tangible and intangible forms and types owned or held by the BFT, including, without limitation, all deposits, withdrawals, and/or loans of any and all such assets, together with the Identity of the Person or Persons who authorized and facilitated all such transactions.**

**RESPONSE**: The BFT objects to this request because (1) it seeks information not relevant to any claim or defense in this action and is not proportional to the needs of the case and (2) it is not limited to any time period relevant to any claim or defense in this action. This information is not relevant to prove or disprove any elements of any pending causes of action (fraud, civil theft, breach of contract, breach of the duty of good faith and fair dealing, promissory estoppel, civil conspiracy, or declaratory judgment). Consequently, the request is overly broad, unduly burdensome and likely propounded solely to harass the BFT. The BFT was formed in March 2005. The Agreement on which this action is based was not signed until August 2017—over twelve years later. There is no basis for Plaintiff to seek information requested by this interrogatory over a decade before the operative agreement was signed or since. The BFT also objects because this request is ambiguous because the BFT does not know what Plaintiff means by assets "held by" the BFT. Subject to and without waiving the foregoing objections, see response to Request for Production No. 2.

9.     **Produce all Documents identifying the assets of all tangible and intangible forms and types owned or held by the BFT at all times.**

**RESPONSE**: The BFT objects to this request because it seeks information not relevant to any claim or defense in this action and is not proportional to the needs of the case. The information sought is not relevant to prove or disprove any elements of any pending causes of action (fraud, civil theft, breach of contract, breach of the duty of good faith and fair dealing, promissory estoppel, civil conspiracy, or declaratory judgment). Assets owned or held by the BFT do not establish or disprove any claim in this action. Further, the BFT was formed in March 2005. The Agreement on which this

action is based was not signed until August 2017—over twelve years later. There is no basis for Plaintiff to seek the information requested for over a decade before the operative agreement was signed or since. Consequently, the request is overly broad, unduly burdensome and likely propounded solely to harass. The request also is extremely overly broad in that it would literally include anything and everything owned by the BFT for the last sixteen years. The BFT objects: (i) to the extent this request seeks asset discovery before obtaining a judgment against the BFT; and (ii) because this request is ambiguous because the BFT does not know what Plaintiff means by assets "held by" the BFT. Subject to and without waiving the foregoing objections, see response to Request for Production No. 2.

**10.    Produce all Documents identifying the settlor(s), trustee(s), and beneficiary(ies) of the BFT at all times.**

**RESPONSE**: See response to Request for Production No. 3.

**11.    Produce all Documents showing and/or referring to all communications with any Person regarding the Disputed Claim, including, without limitation, its proposed and/or actual acquisition; ownership and/or possession by MAB; and/or its proposed and/or use in connection with the PetroHunter bankruptcy.**

**RESPONSE**: The BFT objects to this request because it is over broad in its use of "regarding." *See Am. Friends Servs. Cmte. V. City and Cty. Of Denver*, 2004 WL 7334020, at *4 (D. Colo. Feb. 19, 2004)(relied on by Plaintiff in its responses to written discovery). As written, this request could seek documents that expressly discuss the Disputed Claim or it could be intended to include any communications having to do with, for example, MAB's involvement in the PetroHunter Bankruptcy since his standing apparently was based on the Disputed Claim. Subject to this objection, the BFT incorporates its response to Interrogatory No. 9. The BFT refers Plaintiff to all publicly filed documents in the PetroHunter Bankruptcy which may have mentioned the Disputed Claim, the burden of obtaining/deriving/ascertaining/reviewing of which will be substantially the same for Plaintiff as the BFT.

**12.    Produce all Documents showing and/or referring to all communications between MAB, MEB, and/or the BFT, on the one hand, and the PetroHunter Bankruptcy trustee, including any attorney or other representative thereof, on the other hand.**

RESPONSE: See response to Interrogatory No. 10.

13.    Produce all Documents showing and/or referring to all communications between MAB, MEB, and/or the BFT, on the one hand, and the PetroHunter Bankruptcy debtor, including any attorney or other representative thereof, on the other hand.

RESPONSE: See response to Interrogatory No. 11.

14.    Produce all Documents showing and/or referring to all communications between MAB, MEB, and/or the BFT, on the one hand, and each and every PetroHunter Bankruptcy creditor, including any attorney or other representative thereof, on the other hand.

RESPONSE: See response to Interrogatory No. 12.

15.    Produce each and every Document, including, without limitation, financial statements, loan applications, balance sheets, and/or other record in which each and every of MAB, MEB, and/or the BFT identified the Disputed Claim as an asset of any Person.

RESPONSE: See response to Interrogatory No. 13.

## REQUESTS FOR ADMISSIONS

1.    Admit that MAB signed the Agreement.

RESPONSE: The BFT Parties are not able to admit or deny this request because they were not parties to the Agreement and were not present when it was purportedly being signed. Notwithstanding this, the BFT Parties have no current reason to dispute that MAB signed the Agreement and note MAB's answer admits he "entered" the Agreement (*see* Doc. #68, ¶12).

2.    Admit that MAB took possession of the Disputed Claim.

RESPONSE: The BFT objects that this request is ambiguous. The BFT admits Plaintiff transferred the claim to MAB but currently is without sufficient information to admit or deny whether MAB "took possession" of the Disputed Claim in part because Plaintiff does not define this term. The BFT relies on MAB's answer admitting Plaintiff "transferred" the claim to MAB (*see* Doc. #68, ¶16). The BFT Parties further note Plaintiff acknowledged he filed a transfer of claim to MAB in the PetroHunter Bankruptcy and that document is a matter of public record.

3.    Admit that MAB identified himself in the PetroHunter Bankruptcy as the owner and/or transferee of the Disputed Claim.

**RESPONSE**: The BFT admits MAB identified himself as the transferee of the Disputed Claim in the PetroHunter Bankruptcy.

4.    **Admit that as of the date of Your responses to these Requests for Admissions, MAB still asserts that he is the owner and/or transferee of the Disputed Claim.**

**RESPONSE**: The BFT Parties cannot admit or deny this request because it requires the BFT to speculate as to what another party asserts and his state of mind.

5.    **Admit that MAB sought payment of distributions on the Disputed Claim to himself in the PetroHunter Bankruptcy.**

**RESPONSE**: Admitted.

6.    **Admit that one or more of Defendants used the Disputed Claim in negotiations with the PetroHunter Bankruptcy trustee.**

**RESPONSE**: The BFT objects that this request is ambiguous. It is not clear what Plaintiff means when inquiring about the "use" of the Disputed Claim in negotiations or what negotiations are being referenced. The BFT denies it or MEB "used" the Disputed Claim in negotiations with the PetroHunter Bankruptcy trustee. Without knowing what Plaintiff is specifically asking, the BFT lacks sufficient information to take a position about whether MAB used the Disputed Claim in negotiations with the PetroHunter Bankruptcy trustee. Such negotiations, if they occurred, may also have occurred without the BFT's knowledge. Subject to the foregoing, the BFT Parties admit MAB, the BFT, the PetroHunter Bankruptcy trustee, and Plaintiff all negotiated a stipulation regarding various matters [Bankr. Doc. No. 585] that resulted in, among other things, the payment of distributions by the trustee and the dismissal of certain bankruptcy pleadings.

7.    **Admit that without the Disputed Claim, MAB would not be a creditor in the PetroHunter Bankruptcy.**

**RESPONSE**: Denied. If MAB had not obtained the Disputed Claim but wanted to have standing in the PetroHunter Bankruptcy he could have purchased all or a portion of any other claim to gain creditor standing.

8.    **Admit that MAB paid no consideration to Plaintiff under the Agreement.**

**RESPONSE**: The BFT cannot admit or deny this request because it was not party to the Agreement or involved with performance under the Agreement and therefore has no personal knowledge about whether MAB paid any consideration under the Agreement.

   9.     **Admit that at any time since ten (10) days after the date of the Agreement, MAB has had the ability to cause the consideration under the Agreement to be delivered to Plaintiff.**

**RESPONSE**: The BFT cannot admit or deny this request because it seeks information regarding another party's assets for which the BFT has no personal knowledge and it seeks such information over an extended period of time.

   10.     **Admit that at any time since sixty (60) days after the date of the Agreement, MAB has had sufficient assets to pay Plaintiff $25,000 in cash.**

**RESPONSE**: The BFT cannot admit or deny this request because it seeks information regarding another party's assets for which the BFT has no personal knowledge and it seeks such information over an extended period of time.

   11.     **Admit that at any time since ten (10) days after the date of the Agreement, MAB has owned various assets valued over $300,000.**

**RESPONSE**: The BFT cannot admit or deny this request because it seeks information regarding another party's assets for which the BFT has no personal knowledge and it seeks such information over an extended period of time.

   12.     **Admit that at any time since (10) days after the date of the Agreement, MAB has had sufficient assets to pay Plaintiff an equivalent of the value of the Fortem Shares identified as consideration under the Agreement, either in cash or in different stock.**

**RESPONSE**: The BFT cannot admit or deny this request because it seeks information regarding another party's assets for which the BFT has no personal knowledge and it seeks such information over an extended period of time.

   13.     **Admit that the BFT holds assets sufficient to pay the consideration under the Agreement.**

**RESPONSE**: The BFT objects to this request because it appears to mischaracterize the BFT as being obligated to pay consideration under the Agreement. The BFT is not a party to the Agreement

and therefore has no obligation to perform any obligations under the Agreement. The BFT further objects because this request does not seek information that is relevant to any party's claims or defenses and is not proportional to the needs of the case. The ability to pay a claim is not an element of any claim or defense in this action. The BFT's financial wherewithal is not an element of, and has no bearing on whether it engaged in, civil conspiracy. Therefore this request is beyond the scope of F.R.C.P. 26(b)(1).

14.    **Admit that MAB never intended to pay all of the consideration under the Agreement.**

**RESPONSE**: Denied. Paragraph 23 of MAB's answer specifically denied Plaintiff's allegation that MAB never intended to perform under the Agreement.

15.    **Admit that MAB never intended to pay any of the consideration under the Agreement.**

**RESPONSE**: Denied. Paragraph 23 of MAB's answer specifically denied Plaintiff's allegation that MAB never intended to perform under the Agreement.

DATED this 9th day of September 2021.

**POLSINELLI PC**

*/s/ William R. Meyer*
William R. Meyer
POLSINELLI PC
1401 Lawrence Street,
Suite 2300
Denver, CO 80202
wmeyer@polsinelli.com
*Attorneys for Defendants Bruner Family Trust and Marc E. Bruner*

## CERTIFICATE OF SERVICE

I hereby certify that on September 9, 2021, a true and correct copy of the foregoing **THE BFT'S RESPONSES TO PLAINTIFF'S WRITTEN DISCOVERY REQUESTS** was served via email to each party as follows:

William F. Jones
Tanya A. Sevy
MOYE WHITE LLP
1400 16th Street,
Suite 600
Denver, CO 80202
tim.swanson@moyewhite.com
billy.jones@moyewhite.com
tanya.sevy@moyewhite.com
*Attorneys for Defendant Marc A. Bruner*

Michael A. Rollin
FOSTER GRAHAM MILSTEIN & CALISHER LLP
360 S. Garfield St., Sixth Floor
Denver, CO 80209
mrollin@fostergraham.com
*Attorneys for Plaintiff*

Lance Henry
ALLEN VELLONE WOLF HELFRICH & FACTOR PC
1600 Stout Street,
Suite 1900
Denver, CO 80202
lhenry@allen-vellone.com
*Attorneys for Interpleader Plaintiff Jeffrey L. Hill, Chapter 7 Trustee of PetroHunter Energy Corporation*

/s/ _____



Sheet Seq = 0032918
Sheet 00011 of 00011

**Confidential - Subject to Protective Order**

**Bruner_000870**

Redacted

| 7/19 | WT Fed#07221 US Bank, NA /Ftr/Bnf=Moye White LLP Operating Account Srf# 0070906200225725 Trn#210719176569 Rfb# | 10,000.00 | 255,134.80 |

Redacted

**Confidential - Subject to Protective Order**

**Bruner_000871**

Redacted

Sheet Seg = 0032919

**Confidential - Subject to Protective Order**                                                    **Bruner_000872**

Redacted

Confidential - Subject to Protective Order

Bruner_000873