# UNITED STATES BANKRUPTCY COURT
### District of Colorado

| | |
|---|---|
| In re: PETROHUNTER ENERGY CORPORATION | Case No. 16-20197-KHT |
| Debtor. | Chapter 7 |
| Address:    910 16th Street, Ste. 208<br>Denver, CO 80202-2931 | |
| EIN:    98-0431245 | |

---

### CHAPTER 7 TRUSTEE'S OBJECTION AND RESPONSE IN OPPOSITION TO THE MOTION TO CONVERT THE CASE TO CHAPTER 11

Jeffrey L. Hill, the Chapter 7 Trustee (the "Trustee") for the bankruptcy estate of PetroHunter Energy Corporation ("PetroHunter" or "Debtor"), by and through his Attorneys, Allen Vellone Wolf Helfrich & Factor P.C. and Weinman & Associates, P.C., submits the following Objection and Response in Opposition to the Motion to Convert Case to Chapter 11 filed by Mark A. Bruner as assignee of David E. Brody, Mark A. Bruner, MAB Resources, LLC., Brunner Family Trust, Brunner Family Trust, II, Carmen J. Lotito, Laura M. Lotito and BioFibre Technology International, (collectively, the "Movants" or "Bruner Interests" or "Bruner").

### A.    INTRODUCTION

Bruner's motion to convert PetroHunter's bankruptcy case to Chapter 11 is a thinly veiled attempt to take from the estate, for himself, the estate's sole and most valuable asset, i.e. the estate's ownership of the Debtor's wholly owned subsidiary and non-debtor entity, Sweetpea Petroleum Pty Ltd. ("Sweetpea"). Sweetpea owns

EXHIBIT 7

two primary assets that comprise the value of Debtor. Bruner's intention from the
beginning has been to defeat Debtor's interests in Sweetpea and thereby deprive
this estate of those valuable assets. At great administrative expense, and for the
benefit of all other creditors and interested parties, the estate has secured, defended
and preserved those two key assets of Sweetpea, and thus of the Debtor's estate—
(1) shares of Falcon Oil & Gas and (2) a 50% interest in an Australian gas
exploration joint venture. Now, in his most brazen approach to date, Bruner is like
a fox who thinks he can simply walk into the front door of the chicken coup and
assume control.

Even if the attempt to convert this case to Chapter 11 was made in good
faith—given the objective facts it was not—this case is not appropriate for
conversion. The prospect of confirming a plan of reorganization for an entity that
has been in Chapter 7 liquidation for nearly two years, and had functioned merely
as a non-operating holding company for years before that, is, at best, highly
unlikely. Furthermore, the Trustee is quite far along in his efforts to monetize
assets for the benefit of all of the estate's creditors. The work the Trustee has
performed to date has been significant, including a strategic, measured, and
balanced sale of the shares of Falcon Oil & Gas that is ongoing. The Trustee is also
well down the road in negotiating a transaction for the sale of Sweetpea's interest in
Australian gas exploration joint venture. The Court should not countenance the
Movants' attempt to derail the Trustee's efforts for the limited benefit of the
Movants, who, while putative creditors and equity holders, represent only small

**EXHIBIT 7**

percentage of the creditors and interested parties as a whole. The Bruner Interests are objectively adverse to the estate and granting their Motion would be unjust to the creditor body as a whole, as it would drain value and not inure any benefit to the majority of creditors and other parties-in-interest.

## B.    BACKGROUND

### I. PetroHunter's Ownership of Assets

1.     On October 29, 2007, PetroHunter acquired the entirety of the outstanding shares of an Australian company, Sweetpea Petroleum Pty Ltd., thereby making Sweetpea and its Australian operations a wholly-owned subsidiary of Debtor PetroHunter.

2.     Sweetpea is the primary and nearly sole asset of PetroHunter's bankruptcy estate and was the primary and nearly sole asset of PetroHunter in the last several years before the bankruptcy petition was filed.

3.     Sweetpea owns two primary assets:

a.     Approximately 80 million shares of Falcon Oil & Gas, Ltd., a publicly traded Canadian company. At the time of the bankruptcy petition Sweetpea owned approximately 89 million shares, 9 million of which have been liquidated and sold under the direction of the Trustee. These shares, if sold carefully, are likely to net Sweetpea and, through to its equity-holder Debtor, several millions of dollars to distribute to its creditors. The Trustee believes, in good faith, that the value of these shares is unencumbered by any liens or mortgages.

**EXHIBIT 7**

     b.     A 50% participating interest in a Joint Venture and Operating Agreement with Australian company Paltar Petroleum Limited (Paltar), dated September 16, 2011, which includes certain oil and gas assets and leasehold interests in Northern Australia. The joint venture is for the purpose of gas exploration activities in the Northern Territories in a field that has not yet been developed and is many years from flowing production to the markets. (The Trustee has been engaged in efforts to sell the JVOA agreement to third parties and is presently negotiating the terms of an asset purchase agreement, by which the Australian Assets will be sold by Sweetpea to an arm's length third party.

## II. PetroHunter's Bankruptcy

4.     Almost two years ago, on October 17, 2016, PetroHunter filed its Voluntary Petition under Chapter 7 of the Bankruptcy Code and Jeffrey L. Hill was appointed interim Chapter 7 Trustee by the United States Trustee's Office. The appointment of Jeffrey L. Hill at Trustee was confirmed as permanent on December 1, 2016.

## III. The Untenable and Irreconcilable Conflicts of Interest of the Bruner Interests

### a.     Bruner Interest's Ownership of the Debtor

5.     Together the Movants own or control approximately 35% of the outstanding shares of PetroHunter, a percentage of ownership greater than any

EXHIBIT 7

other individual shareholder of the Debtor. Thus, when the Bruner Interests argue

that a "chapter 11 liquidation will likely produce more net value for distribution to

parties in interest if it is accomplished by an experienced and capable management

team" and that "[PetroHunter's] equity interest holders [should] be afforded an

opportunity to select a board of directors and management team," their true

intentions to seize control themselves is made manifest. Motion to Convert ¶ 18, 23.

In their capacity as the most significant holder of equity of the Debtor, the Movants

are eager to consume the value otherwise belonging to creditors higher in the

capital structure from the sale of the Falcon Oil & Gas shares to pay the heavy

expenses the Debtor faces and to delay any sale of the Australian oil and gas assets,

presumably seeking to substitute their business judgment for that of the Trustee's,

until many years down the road when those assets might somehow have greater

value.[1]

### b.    Bruner's Conflicts Relating to Paltar

6.    Movant Marc Bruner is the founder and chairman of Paltar and

movant Carmen Lotito is the Executive Vice President of Paltar.

7.    On January 30, 2017, Paltar served on the Trustee a demand notice for

payment or contribution of approximately $60 million as Sweetpea's 50% share of

the purported total of approximately $120 million in 2017 and 2018 expenses under

---

[1] Putting aside whether such decision to delay liquidation in order to speculate as
an investor with estate assets is tantamount to a new business plan which should
only be approved and implemented through a plan of reorganization, lest it be
labeled a *sub rosa* plan. There is, however, no resources and none are offered by the
Movants to justify pursuing this prognostication and speculation with a bankrupt
entity's indirect assets.

EXHIBIT 7

the Joint Venture and Operating Agreement between Sweetpea and Paltar. However, such work expenses were never approved by a management committee as required by the JVOA and are not in fact expenses for the purpose of the JVOA.

8.    Paltar's $60 million demand was a sham. The demand was based entirely on fraudulent documents, falsified materials that Paltar attempted to portray as invoices for work *already performed*. In fact, the documents were mere quotes for future work to be performed—which was also work that had not been authorized under the JVOA. Indeed, there were no expenses incurred by the field operator, Paltar, that were being reimbursed pursuant to the JVOA's terms; rather, it was to disadvantage Sweetpea and provide a vehicle for seizing Sweetpea's 50% interest in the JVOA. It is likely no coincidence that the $60 million amount that Paltar fraudulently demanded of Sweetpea was just slightly greater than the exact amount that Sweetpea's approximately 89 million shares of Falcon Oil & Gas were worth at the time of the demand.

9.    The Trustee responded to Paltar's $60 million demand under the JVOA with a notice of wrongful demand. If the Trustee had not employed counsel who responded promptly to this demand, then Sweetpea would have defaulted on this alleged indebtedness to Paltar in the amount of $60 million, and Sweetpea would have suffered one of two significant losses of value as a result of this specious demand from Paltar. Sweetpea would have had to, either: (1) turn over control of its approximately 89 million shares of Falcon Oil & Gas to Paltar and Bruner worth many millions of dollars, or (2) allowed default and seizure mechanics under the

EXHIBIT 7

JVOA to occur which would have cost Sweetpea its 50% interest in the JVOA and the properties related thereto.

10.    On October 2, 2017, Paltar sent the Trustee a putative letter of intent whereby Paltar would agree to purchase the equity in Sweetpea (owned by Debtor PetroHunter) for $500,000 plus a 2% overriding royalty interest in the hydrocarbon fields produced under three permits held by the JVOA. On October 4, 2017, counsel for the Trustee respectfully declined Paltar's letter of intent, noting that the then-recently-filed lawsuit against Paltar, Bruner, Lotito, and others in the United State District Court of the District of Colorado[2] created significant risk and conflict for pursuing a transaction when other third parties, perhaps willing to pay greater amounts, were interested in direct asset purchases and would not seek to take the Falcon stock. Specifically, counsel for the Trustee then stated, in relevant part:

> Thank you for your proposal to enter into an LOI between Paltar and Sweetpea…. [T]he proposal has merit and would be worth negotiating further.

_____

[2] The United States District Court action filed against Paltar, Bruner, Lotito, et al. (*Hislop et al. v. Paltar Petroleum Limited et al.*, Case No.17-cv-2371-RBJ-SKC) by Nation Energy, Inc. and other plaintiffs contained allegations relating directly to Paltar's conduct regarding its "interest in a number of oil and gas exploration permits issues by the Northern Territory of Australia." Generally, the allegations related to "massive fraud and racketeering, breaches of fiduciary duties and other violations of" the Plaintiffs' legal rights. Specifically the Plaintiffs alleged that "Paltar…did not have sufficient funds or the ability to raise funds for the exploration and development of these permits" and that "Bruner and his co-conspirators planned to declare a fraudulent default by Nation Australia under the earnings agreements and cause Nation Australia to surrender its interests to Paltar," meaning that "Bruner and his co-conspirators would personally gain financially, at the expense of Nation Energy and Nation Australia, from shifting the future petroleum licenses and royalty away from Nation Australia and its investors to Paltar and Fortem."

**EXHIBIT 7**

The foregoing notwithstanding, we have been presented with a copy of the Complaint filed…against Paltar, Bruner, and others filed in the U.S. District Court in Denver. Irrespective of the truth of the allegations or the merits of the case, the litigation places in jeopardy any agreement Trustee Hill might enter into….[U]ncertain agreements and litigation are extremely unattractive to Bankruptcy Trustees and, Jeffrey Hill is no different.

In the event that the litigation is resolved and Mr. Bruner is the prevailing party, we would be happy to recommence discussions.

11.    On April 25, 2018, Paltar re-advanced a proposal to counsel for the Trustee, whereby Paltar would acquire from the bankruptcy estate of PetroHunter "free and clear of any competing liens and claims…all right, title, and interest…in the equity of Sweetpea." On April 27, counsel for the Trustee responded that the Trustee was in the process of re-valuing the estate's assets in light of the decision by the government in the Northern Territory of Australia to lift the previously-imposed moratorium on fracking, and that until that was completed the Trustee would be unable to accept Paltar's proposal "at this time."

12.    On August 27, 2018, Sweetpea, under the supervision of the Trustee, could not let the false demand for payment of the $60 million under the JVOA continue to linger. Sweetpea commenced litigation in Australia against Paltar asserting, among other things, that Paltar's $60 million demand notice was invalid and void under the JVOA, and that Paltar "failed to act in good faith" and "failed to act in a manner that was just and faithful."

**EXHIBIT 7**

### c.    Bruner's Conflicts Relating to MAB Resources

13.    Movant MAB Resources, LLC, an entity controlled by Bruner, brought a civil action against PetroHunter and Sweetpea in Colorado state court on December 29, 2014 in Jefferson County, Case, No. 2014CV32487. On March 2, 2015 venue was changed to the City and County of Denver, Case No. 2015CV109. MAB claimed that, based on a January 2007 agreement (and amendments thereto) it had entered into with PetroHunter, it should receive a percentage of the shares of Falcon Oil & Gas PTY Ltd that Sweetpea acquired in May 2013 and that it was owed royalties on two specific permits held by Sweetpea.

14.    On April 12, 2016, the Denver District Court Judge granted the motion for summary judgment filed by PetroHunter and Sweetpea, finding all claims were barred by the statute of limitations which had long-since run. The court also made findings that even if the statute of limitations had not run, the unambiguous terms of the agreement between MAB and PetroHunter did not include the shares of Falcon Oil & Gas because they were acquired by Sweetpea and not by PetroHunter.

15.    On May 30, 2016, MAB filed its Notice of Appeal with the Colorado Court of Appeals. The Appeal was stayed by the filing of PetroHunter's chapter 7 bankruptcy petition.

16.    On February 7, 2018 MAB filed a motion with this Court for relief from the automatic stay to continue the appeal. The Court, after hearing proffers and argument from the parties, denied the motion, reasoning in part that MAB had never filed a proof of claim and that the deadline to do so had long since passed.

**EXHIBIT 7**

### d.    Bruner's Conflicts Relating to Adversary Proceeding

17.    The Trustee has possession, custody, and control of the certificated shares of equity representing the outstanding shares of Sweetpea stock.

18.    Meanwhile, seven persons or entities[3] filed Proofs of Claim in PetroHunter's chapter 7 case which alleged that these seven persons held a perfected or partially perfected security interest in some or all of the outstanding shares of Sweetpea. This is a curious assertion since perfection of these intangible rights allegedly in the certificated shares of Sweetpea is already questionable due to the fact that the Trustee has possession, custody, and control of the shares. These allegedly secured interest in the Sweetpea equity are held by, among others, Movant Marc Bruner.

19.    Unsurprisingly, on August 2017, the Trustee filed an Adversary Complaint, Case No. 17-1337-KHT, against these persons and entities asserting secured rights to obtain declaratory relief that they do not possess perfected security interests which are superior to those of the Trustee who possesses the shares. One entity[4] never filed an answer and default judgment was entered on May 31, 2018. The Trustee objected to the entirety of the claim for one entity[5], and the claim was denied by the Court on July 27, 2018. Two other entities[6] entered into

---

[3] RENN Capital Group, Inc., RENN Fund Inc. and RENN Universal Growth Investment Trust PLC, each filed a separate proof of claim, but filed since filed their Answers and other filings with the Court as the "RENN Entities", which is how they shall be referred to herein.
[4] Wes-Tex Drilling Wealth Preservation Defined Benefit Plan
[5] Global Project Finance AG
[6] El Oro LTD and JTE Finanz AG

EXHIBIT 7

stipulations with the Trustee on March 19, 2018 and May 25, 2018 for their claims
to be reclassified as unsecured claims. The remaining three persons or entities
include Movant Marc A. Bruner as assignee of Proof of Claim No. 7 filed by David E.
Brody, the pre-trial deadlines for adversary matter were set by the Court on July
31, 2018[7] and that matter proceeds

20.    Proof of Claim No. 7 which David Brody assigned to Bruner is for
$335,374.18 and purports to be secured, in part, by PetroHunter's "share of
Sweetpea Petroleum Pty. Ltd." As noted by the Trustee, perfection of that secured
interest seems highly doubtful.

## IV. The Trustee's Efforts to Preserve, Value and Liquidate Assets

21.    The Trustee has undertaken a multifarity of efforts to preserve, value
and begin the process of liquidating the estate's assets, including:

    a.    On November 18, 2016, the Trustee engaged and sought Court
          approval to employ Weinman & Associates ("Weinman") as
          counsel pursuant to 11 U.S.C. § 327(a).

    b.    On December 12, 2016, the Trustee engaged and sought Court
          approval to employ Allen Vellone Wolf Helfrich & Factor, P.C.
          ("AVWHF") as counsel pursuant to 11 U.S.C. § 327(a).

    c.    On January 10, 2017, the Trustee, through AVWHF, engaged
          and sought Court approval to employ Forensic Pursuit to
          forensically image the Debtor's servers in order to assist

---

[7] The other two entities are Wealth Preservation Defined Benefit Plan and the
RENN Entities.

**EXHIBIT 7**

Weinman and AVWHF in investigating the assets of the Debtor and its wholly owned subsidiary, Sweetpea. Through the efforts of Forensic Pursuit and counsel, the Trustee was able to confirm and possess documentary evidence of Sweetpea's assets, including Sweetpea's fifty-percent ownership in the JVOA and ownership of approximately 80 million shares of Falcon Oil & Gas, Ltd.

d.     Sweetpea, under the direction of the Trustee, has employed counsel in Australia to both respond to the fraudulent demands made by Paltar and to pursue litigation against Paltar for its fiduciary and contractual breaches to Sweetpea.

e.     Sweetpea's Australian counsel is supervising the permits held by Sweetpea to ensure that they are renewed and extended in advance of their expiration.

f.     The Trustee, through AVWHF continued his investigation of assets through Court ordered production of documents possessed by Debtor's pre-petition accountants and attorneys, which culminated in a demand to the various stock agents to place a hold on Sweetpea's Falcon Oil stock.

g.     The Trustee, through AVWHF on August 11, 2017, commenced an adversary action against all parties claiming to be secured creditors of the Debtor where the Debtor's Sweetpea stock was

**EXHIBIT 7**

allegedly collateral for their otherwise unsecured loans to the Debtor. At the outset of the adversary proceeding, the various persons and entities claiming a perfected security interest in the shares of Sweetpea stock totaled approximately $22.4 million. Following the defaults, disallowances, and reclassifications of the defendants in the Trustee's adversary proceeding, the remaining entities (other than the Trustee and the estate itself) claiming a perfected security interest in the shares of Sweetpea now total approximately $6.6 million.

h.    In November 2017, the Trustee entered into an agreement with an independent consultant to appraise the oil and gas rights owned by Sweetpea, in order that the Trustee could market those rights domestically and internationally appropriately and maximize value.

i.    The Trustee has employed professionals and directed that the proceeds from the sale of the shares of Falcon Oil and Gas be invested with interest-earning Australian and U.S. institutions.

j.    The Trustee, through AVWHF, successfully resisted the Motion for Relief from Stay filed by MAB Resources, LLC which sought to continue its appeal of the summary judgment in favor of PetroHunter and Sweetpea in the litigation filed by MAB.

**EXHIBIT 7**

k.  Sweetpea reconstituted its board of directors which has been managing the affairs of the company under the direction of the Trustee.

l.  On June 12, 2018, the Trustee entered into agreement with an independent consultant to re-appraise the oil and gas rights owned by Sweetpea, given the expected increase in the value of Sweetpea's oil and gas rights following the decision by the Australian government in April 2018 to lift the moratorium on hydraulic fracking. Although the moratorium has been or is being lifted, the infrastructure of new laws to help these hydrocarbons to get to the market are not in place. Thus, it will be years before any of these assets are cash flowing.

m.  Under the direction of the Trustee, Sweetpea has employed Haywood Securities to value and craft a careful plan to sell, over time, the securities held in Falcon Oil & Gas, a closely held company. The approximately 80 million shares still held by Sweetpea will be liquidated in due course and under guidance intended to maximize value.

n.  Sweetpea, under the direction of the Trustee has employed an agent to market for sale Sweetpea's interest in the JVOA. The ability, as the shareholder, to consent to the sale of substantially all of Sweetpea's oil and gas assets would be subject to

**EXHIBIT 7**

bankruptcy court approval to approve or authorize the exercise
of those rights as shareholder of Sweetpea.

o.   The Trustee engaged and sought Court approval for employment
of an accountant to prepare fiduciary income tax returns and
worked with Weinman to secure corporate authority from
Sweetpea to marshal and begin liquidating Falcon Oil & Gas
stock beginning in the Spring of 2017 and continuing through
the present. At the same time, the Trustee, with the assistance
of Weinman, began entertaining offers for the sale of Sweetpea's
fifty (50%) percent in the Northern Territories Joint Venture
Operating Agreement and directed Australian counsel in
conjunction with the ongoing litigation between MAB Resources
and Sweetpea in Australia. *See*, e.g., timesheet report [Doc.
#149].

p.   The Trustee, through Weinman has been negotiating with
interested parties over the course of the bankruptcy for the
acquisition of Sweetpea's interests in the JVOA. The estate is on
the verge of entering a Purchase and Sale Agreement for the
interests.

## C.   LEGAL STANDARDS

The Bankruptcy Code provides that "On request of a party in interest and
after notice and a hearing, the court may convert a case under this chapter to a case
under chapter 11 of this title at any time." 11 U.S.C. § 706(b). However, a case

EXHIBIT 7

under Chapter 7 "may not be converted to a case under Chapter 11 unless the debtor may be a debtor under Chapter 11" *In re Quinn*, 490 B.R. 607, 621 (Bankr. D.N.M. 2012) (citing § 706(d)). "The decision whether to convert is left to the sound discretion of the court, based on what will most inure to the benefit of all parties in interest." *In re Gordon,* 465 B.R. 683, 692 (Bankr. N. D. Ga. 2012) (quoting S.Rep. No. 95–989, at 940 (1978)).

> Courts have relied on various factors in determining whether a section 706(b) conversion would be appropriate: (1) the debtor's ability to repay debt; (2) the absence of immediate grounds for reconversion; (3) the likelihood of confirmation of a Chapter 11 plan; and (4) whether the parties in interest would benefit from conversion.

*In re Hardigan*, 517 B.R. 379, 383–84 (S.D. Ga. 2014) (citing Gordon, 465 B.R. at 692–94; *In re Schlehuber*, 489 B.R. 570 (8th Cir. BAP 2013)). "The burden is on the moving parties to show that the case should be converted." *In re Hardigan*, 490 B.R. at 445.

Conversion of a case from Chapter 7 to Chapter 11 is not appropriate unless the movant has shown the requisite grounds for the Chapter 7 case to be dismissed. *See Quinn*, 490 B.R. at 621–22 ("Under these circumstances, it is not appropriate to compel the same end result through conversion to Chapter 11 when it is not appropriate to dismiss the Chapter 7 case to compel a re-filing under Chapter 11 by necessity.").

A movant's conduct and motivations are grounds for the denying a motion to convert a case under 11 U.S.C. § 706. *See Marrama v. Citizens Bank of Massachusetts*, 549 U.S. 365, 371 (2007) (holding the debtor forfeited his right to

EXHIBIT 7

convert the case pursuant to 11 U.S.C. § 706(a) based on his bad faith conduct); *In re Willis*, 345 B.R. 647, 655 (B.A.P. 8th Cir. 2006) (Bankruptcy Appellate Panel of the Eighth Circuit affirmed the bankruptcy court's denial of the debtor's request to convert the case from chapter 7 to chapter 11 under 11 U.S.C. § 706(b) based on the debtor's "fraudulent, evasive, and uncooperative behavior"); *In re First Connecticut Consulting Grp., Inc.*, 579 B.R. 673, 683 (Bankr. D. Conn. 2018) ("Conversion [under 11 U.S.C. § 706(b)] may…be denied to prevent an abuse of the bankruptcy system."). The United States Supreme Court, in *Marrama*, reasoned that

> the broad authority granted to bankruptcy judges to take any action that is necessary or appropriate "to prevent an abuse of process" described in § 105(a) of the Code, is surely adequate to authorize an immediate denial of a motion to convert filed under § 706 in lieu of a conversion order that merely postpones the allowance of equivalent relief and may provide a debtor with an opportunity to take action prejudicial to creditors.

*Marrama*, 549 U.S. at 375.

### D.    ARGUMENT

### I. Conversion Would Hinder PetroHunter's Ability to Repay Its Debts

PetroHunter is not operational and has not been for years. It has effectively been a holding company since well before the chapter 7 petition was filed. PetroHunter's solely-owned subsidiary, Sweetpea, has also effectively been a holding company for some time. PetroHunter through Sweetpea has substantial assets that can be liquidated and paid to the estates creditors, and the Trustee has made substantial progress towards this end, but making either company fully-operational and revenue-generating would be prohibitively time intensive, costly,

EXHIBIT 7

and laden with risk. It would cost the estate substantial time and money to become operational, and substantially more still before the Debtor was generating meaningful revenue.

The Motion to Convert provides scant detail on how the Movants anticipate returns would be realized, except the Movants represent that they "conferred with [an undisclosed,] nationally recognized and publicly traded investment bank and restructuring firm," which suggested the option of combining the interests in the JVOA "held by **the Debtor** and Paltar" into one undivided exploration block, operated by Paltar, which would present a "vastly more attractive acquisition target for an acquiring party." Mot. To Convert ¶¶ 16–17 (emphasis added). However, the interest in the JVOA is held jointly with Sweetpea, **not** with PetroHunter. Thus, even in chapter 11, Petrohunter would not have the ability to operate the Sweetpea assets or interests in the joint venture.

Furthermore, even if this one option suggested by the Movants and their unnamed, nationally-recognized investment bank was possible or could be authorized under the bankruptcy code, the uncertain prospect of this plan somehow generating or providing additional value in any meaningful time frame is simply not worth the added risk and expense to the estate, especially when there is every indication that the Trustee's liquidation efforts will provide significant, non-speculative and material payments to the estate's creditors.

## II. Immediate Grounds for Reconversion Exists Given That a Confirmed Chapter 11 Plan Is Not Feasible

Pursuant to the bankruptcy code, "on request of a party in interest, and after

EXHIBIT 7

notice and a hearing, the court shall convert a [chapter 11 case] to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause." 11 U.S.C. § 1112(b)(1). The bankruptcy code enumerates a list for "the term 'cause'" in section 1112(b)(4), beginning with the "***substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation***." § 1112(b)(4)(A) (emphasis added).

Here, it is difficult to fathom how the bankrupt estate of a holding company, that has long been bereft of cash, employees, and other assets, might reasonably have a feasible, non-speculative plan of reorganization confirmed.

The confirmation of a plan, under the bankruptcy code, requires that "[t]he plan has been proposed in good faith." 11 U.S.C. § 1129(a)(3). Given the Movant's irreconcilable conflicts of interest that would place in jeopardy and create the appearance of conflict as to any resolution of the pending litigation in which Bruner and Lotito could be found on both sides of the lawsuit, it is inconceivable that the Movants could propose a feasible plan that complied with the good faith requirement which would be likely to be confirmed.

### III. Conversion Would Not Benefit the Creditors, the Estate, or Other Parties in Interest

The creditors are benefiting and will continue to benefit from the Trustee's diligence, hard work, and efficient and effective actions in marshalling, preserving, valuing and liquidating the estate's assets. Nearly two years into the chapter 7 case, due to the active efforts of the Trustee during that time, the estate's ability to pay

EXHIBIT 7

substantial amounts of money to the estate's creditors seems highly likely. By contrast, the risk and expense the estate would have to undertake in chapter 11 to restart the Debtor to becoming operational would likely deplete the estate's assets significantly. As well, the return on those expenditures is speculative at best and benefits, if anyone at all, only the current equity holders, while at worst the efforts to operationalize the Debtor could cause numerous debts to go unpaid at all and prefer insider treatment to that of arm's-length creditors.

The estate itself would not benefit from conversion given the Movant's self-interest for the conversion. Were it not for the diligent efforts of the Trustee and the professional under the Trustee's direction, the Bruner Interests would have already taken an outsized percentage of the estate's assets for themselves, through either the fraudulent demands made by Bruner-controlled Paltar, the litigation brought by MAB Resources in Colorado state court, Paltar's questionable offers and available funding necessary to purchase PetroHunter's interests in Sweetpea, or by the efforts of Bruner in the adversary proceeding—all of which were efforts to deprive the estate of any value and to benefit of Bruner and Paltar individually.

### IV. The Bruner Interests Are Irreconcilably Conflicted from Operating or Controlling PetroHunter and Their Use of the Motion to Convert Is an Abuse of the Bankruptcy System

The intentions of the Bruner Interests are conspicuous after years of machinations and litigation: Bruner wants control of Sweetpea's assets and is willing, if necessary, to circumvent the Debtor's ownership by any means necessary, no matter how invalid. First, an entity whose name is Bruner's initials, MAB Resources, attempted to obtain portions of Sweetpea's assets thought litigation

EXHIBIT 7

against PetroHunter and Sweetpea in Colorado courts. However, PetroHunter and Sweetpea prevailed on a motion for summary judgment against MAB Resources given that the statute of limitations had long-since run. The court went on to make findings as to the agreement between PetroHunter and MAB Resources, concluding that by its unambiguous terms, MAB Resources had no legal rights to the interests in which it claimed.

As another means of acquiring an interest in Sweetpea, Bruner purchased a claim against the PetroHunter estate that he vigorously asserts is secured, despite the Trustee's possession and control of the certificated shares of the Sweetpea equity. This dispute is the subject of an ongoing adversary proceeding before the Court.

When the attempt to litigate Sweetpea's assets away from PetroHunter failed, Bruner did not quit and, through his control over Paltar, attempted an end run to force Sweetpea to release its interest in the JVOA by fraudulently charging Sweetpea for over $60 million of expenses that had not yet been incurred. Paltar was not successful in getting Sweetpea to release its interests in the JVOA, and this dispute is currently being litigated in Australia. At worse, this Court should be concerned that Bruner could cause Debtor to dismiss such a lawsuit in order to assist Paltar inwrongfully obtaining the oil and gas interests.

Paltar next attempted to purchase PetroHunter's interest in Sweetpea. The offer included an amount upfront with an ongoing Overriding Royalty Interest. Overtime, the Overriding Royalty Interest will represent the majority of the value

EXHIBIT 7

of the sale. Therefore, a purchaser on whom the Trustee can rely in good faith who may actually succeed in developing the oil production in these Australian assets is a key consideration for the Trustee. Thus, he is looking for reliability in the certain future performance as a necessary criterion for the Trustee's selection of any purchaser. Given the allegations against Paltar and Bruner of fraud, racketeering, and undercapitalization in *Hislop et al. v. Paltar Petroleum Limited et al.*, Case No.17-cv-2371-RBJ-SKC, which the Trustee learned about around the time of Paltar's first Letter of Intent, the lawsuit (and the potential truthfulness of the allegations) caused the Trustee to doubt that Paltar could be relied on for the future performance relating to the Overriding Royalty Interest. The Trustee also had concerns about Paltar and Bruner given the efforts made by Paltar and Bruner in January 2017 to defraud Sweetpea with the purported invoices that in fact were quotes for future work to be performed. All of these issues reflect the valued business judgment of the Trustee, a judgment which apparently thwarts Paltar and Bruner and, unsurprisingly, motivated the filing of the Motion to Convert.

Following the decision by the government in Australia's Northern Territory to lift the moratorium on hydraulic fracking, Paltar made another offer to PetroHunter for its interest in Sweetpea, but in addition the the Trustee initial reasons for declining Paltar's first offer, the Trustee now also needed to complete an appraisal of the assets given the change in regulatory policy before he would be able to determine an appropriate price.

When the Bruner Interests were unable to get control of the Debtor's primary

**EXHIBIT 7**

asset, Sweetpea, by other means, they filed their motion to convert the case to chapter 11, whereby their intentions are manifestly for the Bruner-controlled Paltar to take control of Sweetpea from the estate. This self-interested approach, in the form of a rarely-asserted motion, to do in the bankruptcy court what could not be done outside of the bankruptcy court, is the archetypical definition of bad faith and abuse of the bankruptcy system. At a minimum, the Court should be highly suspect of the motivation of the Movants.

To grant the Motion to Convert and give the Bruner Interests control of the Debtor's principal asset, Sweetpea, would unfairly benefit one small set of creditors and interested parties whose interests are largely junior to the remainder of the creditor body, and whose claims represent only a fraction of those filed in the case, over all of the other creditors.

Given the claims and the personally vested interests held by the Movants, the Movants would be unable to uphold the attendant fiduciary duties they would have if the Motion were granted and they controlled the Debtor. Given no income is being presently generated (other than liquidating the actual assets held on the Petition Date), this motion, in effect, suggests to this Court that Movants would cannibalize the liquidated assets of the estate for the remote possibility of somehow gaining a higher return many years down the road. This is an unsustainable argument.

### E.    CONCLUSION

The benefits to this estate of chapter 11, if they ever existed have long since eroded. The Debtor's selection of chapter 7 should be given a degree of deference,

**EXHIBIT 7**

the factors to determine whether conversion would be appropriate all weigh against conversion, the Trustee's active efforts to liquidate the estate will result in the estate paying a significant portion of its debts, and the conversion would create untenable and unworkable conflicts of interest. For these reasons and the others stated herein, the Trustee respectfully requests that the Motion to Convert be denied.

Dated this 4th day of September 2018.

Respectfully submitted,

Allen Vellone Wolf Helfrich & Factor P.C.

/s/Lance Henry
Patrick D. Vellone, #15284
Lance Henry, #50864
1600 Stout Street, Suite 1100
Denver, Colorado 80202
(303) 534-4499
pvellone@allen-vellone.com
lhenry@allen-vellone.com


Weinman & Associates, P.C.


/s/Jeffrey A. Weinman
Jeffrey A. Weinman, #7605
730 17th Street, Suite 240
Denver, Colorado 80202
(303) 572-1010
jweinman@weinmanpc.com

**EXHIBIT 7**

## CERTIFICATE OF SERVICE

I certify that on the 4th of September 2018, I served a true and correct copy of the foregoing via CM/ECF or by email to the following:

Matthew R. Silverman, 621 17th Street, Ste. 2300, Denver, CO 80293 (by email)

Jeffrey L. Hill, P.O. Box 1720, Parker, CO 80134

Theodore J. Hartl, 600 17th Street, Suite 1800 South, Denver, CO 80202

Barry Meinster, 28365 Little Bighorn Drive, Evergreen, CO 80439

Jeffrey Weinman, 730 17th Street, Suite 240, Denver, CO 80202

Alice A. White, 1801 Broadway, Suite 900, Denver, CO 80202

United States Trustee,1961 Stout Street, Suite 12-200, Denver, CO 80294

Matthew D. Skeen, Jr., 217 E. 7th Ave.,Denver, CO 80203

John J. Kane, 1601 Elm St., Ste. 3700, Dallas, TX 75201

Charles Kelley, 700 Louisianan Street, Suite 3400, Houston, TX 77002

_/s/ Lance Henry_

**EXHIBIT 7**