**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF COLORADO**

Civil Action No. 19-cv-01091-RM-NRN

DAVID E. BRODY,

Plaintiff,

v.

MARC A. BRUNER,
THE BRUNER FAMILY TRUST, and
MARC E. BRUNER, AS TRUSTEE OF THE BRUNER FAMILY TRUST

Defendants.

---

**THE BFT PARTIES' RESPONSE TO PLAINTIFF'S MOTION TO SUPPLEMENT MOTION FOR RECONSIDERATION**

---

The Bruner Family Trust and Marc E. Bruner as Trustee of the Bruner Family Trust ("BFT Parties"), through counsel, file this opposition to Plaintiff's Motion to Supplement Motion for Reconsideration as follows.

1. **Introduction**

The Court should deny Plaintiff's motion to supplement [Doc. #170] (the "Motion"). Other than sprinkling the word "fraud" throughout the Motion, Plaintiff fails to provide any new evidence, analysis, or argument in support of his Motion for Reconsideration. Doc. #135. Like Plaintiff's Motion for Reconsideration, this Motion is just another regurgitation of everything the Court already rejected when it granted the BFT Parties' Motion to Dismiss.

Plaintiff claims, "the addition of these facts is necessary because the Court dismissed the Amended Complaint as against the BFT Defendants before Plaintiff had the ability to develop— and therefore plead—these additional facts." Motion, p. 2. Plaintiff then claims MAB failed to

1

produce documents in his bankruptcy counsel's possession, and that Plaintiff was precluded from obtaining these documents from third parties because discovery was not yet open. *Id.* All of that misses the point.

A motion to dismiss is to "test the sufficiency of the allegations within the four corners of the complaint." *Gomez v. Sam's West, Inc*. 2017 WL 3503652, *1 (D. Colo. 2017); *Dubbs v. Head Start, Inc*., 336 F.3d 1194, 1201 (10th Cir. 2003)(the court's function on a Rule 12(b)(6) motion is not to weigh the potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief can be granted). The purpose of a motion to dismiss also is, in part, to protect an innocent defendant from having to incur excessive litigation and discovery costs defending an unsupported claim—like Plaintiff's. Plaintiff was not entitled to go on a fishing expedition in discovery to see if he could support a case—he needed to make a reasonable inquiry (*see* Rule 11) on the front end and he needed to satisfy minimal pleading standards, which he did not.

Further, Plaintiff's motion to supplement seeks to supplement his Motion for Reconsideration—<u>not his response to the Motion to Dismiss</u>. Plaintiff filed his Motion for Reconsideration on October 15, 2021; six months after discovery commenced.[1] Plaintiff had a half year to develop these "additional" facts before filing his Motion for Reconsideration.[2] Yet Plaintiff now seeks the Court's mercy because he waited another four months, to February 2022, to take depositions a mere two weeks before the discovery cut off. Plaintiff's delay in investigating his claims does not satisfy good cause or excusable neglect.

---

[1] The Scheduling Conference was on April 23, 2021.
[2] Plaintiff also had plenty of time to conduct discovery and seek to supplement his response to the Motion to Dismiss before it was granted.

2

MEYEW\82541103.1

2. **Legal Standard**

The Court should evaluate the Motion under F.R.C.P. 6(b) because Plaintiff asks the Court for an extension of time to submit evidence in support of his Motion for Reconsideration long after the deadline for his reply. Because his deadline expired, under Rule 6(b)(1)(B) Plaintiff must establish excusable neglect, which he did not claim and cannot satisfy. But more importantly, under Rule 6(b)(2), "[a] court must not extend the time to act under Rule[]…60(b)," which is the rule Plaintiff relied on for his Motion for Reconsideration. Thus, without even getting to good cause or excusable neglect, the Court must deny Plaintiff's Motion.

Aside from Rule 6(b), the Court should deny the Motion because (1) Plaintiff simply regurgitates the same arguments he has been making throughout this entire case, (2) Plaintiff's purportedly new information was readily available to him before he filed his Motion for Reconsideration, and (3) Plaintiff's Motion for Reconsideration (and response to the Motion to Dismiss) argued this Court applied an incorrect legal standard; not that Plaintiff should be entitled to plead additional facts.

3. **General Background**

The genesis of this whole case is Plaintiff, a lawyer, entering a business transaction with his client Marc A. Bruner ("MAB"). The transaction involved Plaintiff selling MAB a PetroHunter bankruptcy claim (the "Disputed Claim"). Plaintiff claims MAB did not pay for the Disputed Claim after Plaintiff transferred it. Plaintiff then sued his client, MAB, for breach of contract and breach of the duty of good faith and fair dealing. *See* Doc. #1. That should have been the posture of the case until it was resolved.

In a transparent effort to pressure MAB to resolve the dispute, however, Plaintiff ginned up a conspiracy claim against the BFT Parties (comprised of a trust MAB created and MAB's son). *See* Doc. #16.  The conspiracy, Plaintiff claimed, was to "improperly obtain property owned [the Disputed Claim] by Plaintiff."  Doc. #135, Introduction.  A major flaw in Plaintiff's claim was that the BFT Parties had no idea Plaintiff sold the Disputed Claim to MAB and thus could not have conspired with MAB to improperly obtain it.  Consequently, the Court granted the BFT Parties' Motion to Dismiss after finding there was no meeting of the minds nor overt unlawful act involving the BFT Parties.

Now Plaintiff claims a new conspiracy.  He claims the BFT Parties were involved in a conspiracy to "fraudulently strip the PetroHunter bankruptcy estate of its only valuable asset." Motion, p. 2.  The problem is that Plaintiff still has no evidence to support this claim and even if all of his allegations were true there still would not be a cognizable claim against the BFT Parties. It is accurate that the BFT Parties and others were jointly represented by counsel in the PetroHunter bankruptcy in an unsuccessful effort to convert the bankruptcy from Chapter 7 to Chapter 11.  That is a matter of public record of which Plaintiff has been aware for years.  None of those efforts, however, were fraudulent or improper.  Plaintiff's only support for his claim of impropriety is that the PetroHunter bankruptcy trustee (the "Trustee") filed an opposition brief arguing against the effort to convert the bankruptcy claiming it was improper.  Plaintiff has repeatedly quoted and attached the Trustee's brief in his filings.  Although the Trustee asserted that argument, the

4

bankruptcy court did not accept that position or enter findings consistent with it. The Trustee's brief was just argument and is not evidence.[3]

Because the BFT Parties obtained dismissal of a tort claim in this case, Plaintiff became liable to them for their attorney's fees and costs. And that is the only reason Plaintiff continues to file motion-after-motion: because he does not want to be responsible for the consequences of his actions in bringing an unsupported claim against the BFT Parties. The fact is, however, the Court properly granted the BFT Parties' Motion to Dismiss and it should deny all of Plaintiff's subsequent motions and award the BFT Parties' their attorney's fees and costs.

4. **Argument**

   a. **Fed.R.Civ.P. 6(b) does not permit Plaintiff to supplement his Motion for Reconsideration.**

The Court should construe Plaintiff's Motion under Rule 6(b) because it seeks to submit additional briefing after his deadline to brief this issue has expired. *See Simmons v. Bellco Credit Union*, 2019 WL 1745209, *11 (D. Colo. 2019)(applying Rule 6 to a motion to supplement briefing on summary judgment). Rule 6(b) states:

> (1) In General. When an act may or must be done within a specified time, the court may, for good cause, extend the time:
>
> > (A) with or without motion or notice if the court acts, or if a request is made, before the original time or its extension expires; or
> >
> > (B) on motion made after the time has expired if the party failed to act because of excusable neglect.
>
> (2) Exceptions. <u>A court must not extend the time to act under</u> Rules 50(b) and (d), 52 (b), 59(b), (d), and (e), <u>and 60(b)</u>. (underline added)

---

[3] Presumably Plaintiff does not want this Court to accept everything the BFT Parties have briefed in the same manner he suggests the Court should blindly accept what the Trustee put in its brief.

Here, Rule 6(b)(1)(A) does not apply because the original time to submit this "supplemental" evidence has expired. Briefing on Plaintiff's Motion for Reconsideration is closed and has been since November 11, 2022. Plaintiff was required to file his Motion for Reconsideration within a reasonable time (Rule 60(b)(c)(1)), which for this brief the BFT Parties do not dispute Plaintiff did by filing on October 15, 2021—less than a month after the Court granted the BFT Parties' Motion to Dismiss. Plaintiff's deadline to reply in support of his Motion for Reconsideration was November 19, 2021 (although he filed earlier), fourteen days after the BFT Parties filed their response [Doc. #142] to the Motion for Reconsideration. Plaintiff has now waited until March 7, 2022, approximately five months from when he filed the Motion for Reconsideration and four months from when his reply was due, to seek to supplement his Motion for Reconsideration. This is not within a reasonable time after the Court granted the Motion to Dismiss nor prior to the expiration of Plaintiff's deadline to reply to the Motion for Reconsideration.

As set forth below, Plaintiff cannot establish good cause or excusable neglect for a host of reasons, but the Court need not get to that evaluation because Plaintiff's Motion should be denied under Rule 6(b)(2), which <u>does not permit</u> deadlines in certain rules to be extended at all. That prohibition expressly includes Rule 60(b), which is the rule Plaintiff cited in his Motion for Reconsideration. *See* Doc. #135, p. 2 "Legal Standard". Rule 6(b)(2) is not discretionary. It expressly precludes extending deadlines under Rule 60(b). Therefore, the Court must deny Plaintiff's Motion to supplement his Rule 60 Motion for Reconsideration.

        b.    **Plaintiff failed to establish good cause let alone excusable neglect.**

If the Court declines to deny the Motion based on Rule 6(b)(2), then because the time for Plaintiff to file his Motion and to reply has expired, his Motion should be construed under Rule

6

6(b)(1)(B)'s excusable neglect standard.  That requires Plaintiff to satisfy four relevant factors, that he did not even address: "(1) the danger of prejudice to the nonmoving party; (2) the length of the delay and its potential impact on judicial proceedings; (3) the reason for the delay, including whether it was within reasonable control of the movant; and (4) whether the movant acted in good faith."  *Shifers v. Arapahoe Motors, Inc*., 2018 WL 6620866, *3 (D. Colo. 2018)(internal quotations omitted).  "The Tenth Circuit has also held that the third factor—"fault in the delay"— is perhaps the most important single factor …. in determining whether neglect is excusable."  *Id*. (internal quotation omitted).  Here, Plaintiff cannot satisfy any of these factors.

i. **"Supplemental" Documents**

Most importantly, Plaintiff alone is the cause of the delay and the length of the delay, which is materially impacting these proceedings.  Plaintiff had access to almost all the documents he now proffers since before the Motion to Dismiss was briefed.  ***Of the sixteen attachments to Plaintiff's Motion, he was copied or had access to twelve of them before the Motion to Dismiss was briefed or ruled upon***.  Specifically, Plaintiff's Motion relies on letters and emails from 2016 to 2018 <u>on which he was a recipient</u>.  *See* Doc. Nos. 170-3, 170-4, 170-8, 170-9, 170-10, and 170-11.  Six other documents on which Plaintiff relies are publicly available court filings from 2016 to July 2020 (and they involve the PetroHunter bankruptcy in which he was a creditor).  *See* Doc. Nos. 170-1, 170-2, 170-12, 170-13, 170-14, and 170-15.[4]  Thus, Plaintiff had access to and could have

---

[4] The Court can take notice of the fact that Plaintiff obtained and cited other court filings from the PetroHunter bankruptcy and other cases in prior briefings in this case demonstrating his knowledge of and access to these filings. *See e.g.* Doc. #48-1, pp. 50-57.

7

offered all of this "supplemental" information in response to the Motion to Dismiss or with his Motion for Reconsideration.[5]

ii. **"Supplemental" Deposition Transcripts**

Plaintiff cannot establish Cause for failing to submit the "supplemental" transcripts sooner because he chose not to depose anyone until two weeks before the discovery deadline. Plaintiff submitted portions of deposition transcripts from Glenn Merrick, Esq. (Doc. #170-5), Barry Meinster, Esq. (Doc. #170-6), and Carmen Lotito (Doc. #170-7). Plaintiff has known that these three individuals were witnesses and might have information about his claim since before he initiated this action. Plaintiff even identified Messrs. Merrick and Lotito as people he anticipated deposing in the Scheduling Order. *See* Doc. #89, §9(e). The only reason Plaintiff did not submit their transcripts sooner was because he chose not to take any depositions until two weeks before the close of discovery—long after the relevant motions had been briefed.

Messrs. Merrick and Meinster are attorneys who in various capacities represented MAB, the BFT, and others known to Plaintiff. Mr. Meinster represented MAB Resources, LLC in a state court lawsuit in 2016 that involved Sweatpea Petroleum. *See* Doc. #170-6, p. 3, lines 19-25. He also entered his appearance and requested notices in the PetroHunter bankruptcy on behalf of MAB, the BFT, and others.[6] *See* Doc. #170-12. All of that is public record and has been known to Plaintiff since at least July 2020 (prior to the filing of the Motion to Dismiss). *See* Doc. #29-3, ¶37(e).

---

[5] To the extent he makes the argument, it is not credible for Plaintiff, a long time Greenberg Traurig attorney, to claim he does not have access to letters and emails he received. Plaintiff was still employed by Greenberg Traurig when he commenced this case and he produced other emails from his Greenberg Traurig email account with his initial disclosures.

[6] His testimony, that Plaintiff did not provide to the Court, was that he entered his appearance for the BFT only for the limited purpose of obtaining receiving notices and nothing more.

8

Mr. Merrick represented MAB and Carmen Lotito in an effort to purchase assets from the PetroHunter bankruptcy. He also represented MAB, Mr. Lotito, the BFT, and others in a later effort to convert the bankruptcy from Chapter 7 to Chapter 11. All of this was public record and known to Plaintiff. *See e.g.,* Plaintiff's Declaration, Doc. #29-3, ¶31.

Both attorney's involvement with and representation of MAB, Mr. Lotito, and the BFT is a matter of public record. Both attorneys filed entries of appearances, pleadings, and briefs from which Plaintiff could easily learn of any joint representation. Moreover, each lawyer communicated directly with Plaintiff as part of their work with MAB and Mr. Lotito. Plaintiff was copied on almost every communication each lawyer had with MAB and Mr. Lotito. And Plaintiff never contemporaneously complained that the lawyers or parties acted in any way improperly. To the contrary, Plaintiff supported all of their efforts.

Likewise, Plaintiff clearly knew of Mr. Lotito's involvement in the PetroHunter bankruptcy and alleged involvement in MAB's purchase of the Disputed Claim. Aside from their 20+ year relationship, Plaintiff suggested Mr. Lotito was involved in the conspiracy in both the Amended Complaint (*see* Doc. #16, ¶¶61 and 64) and in Plaintiff's declaration (*see* Doc. #29-3, ¶31).

Thus, before the BFT Parties filed their Motion to Dismiss, Plaintiff knew about Messrs. Merrick's, Meinster's, and Lotitos' involvement. Plaintiff knew based on his long-standing relationship with each and with MAB. The Court knows Plaintiff knew of their involvement because Plaintiff filed a declaration claiming MAB, the BFT, and Lotito were jointly represented by Mr. Merrick as evidence of their collusion. *See* Doc. #29-3, ¶31. Because Plaintiff has been aware of Messrs. Meinster's, Merrick's, and Lotito's purported involvement, Plaintiff cannot

9

demonstrate good cause or excusable neglect in failing to timely take their depositions and provide their "supplemental" transcripts with earlier briefing.

### iii. **Allowing Plaintiff to supplement at this time would be prejudicial and materially impact these proceedings.**

Rule 1 dictates that the Rule of Civil Procedure are to be construed to "secure the just, speedy, and inexpensive determination of every action and proceeding." Plaintiff has cited this rule in several briefs. Granting the Motion will have the opposite effect on these proceedings.

The Court granted the BFT Parties' Motion to Dismiss with prejudice on September 20, 2021. Since then, Plaintiff's efforts have forced the BFT Parties to respond to motion-after-motion, and remain an active participant in a lawsuit from which they were properly dismissed with prejudice. Plaintiff's latest filing is forcing the BFT Parties to respond to "supplemental" evidence that could and should have been addressed in January 2021, when the Motion to Dismiss was being briefed, or after it was briefed but before it was ruled upon, or —at least—when Plaintiff filed his Motion for Reconsideration. Making matters worse, Plaintiff is forcing the BFT Parties to continue litigating not only after they were dismissed, but after all other parties to this action were dismissed. This is unreasonably forcing the BFT Parties to continue incurring fees and expenses.

Plaintiff argues that he could not provide this "supplemental" information in response to the BFT Parties' Motion to Dismiss because discovery had not commenced while that motion was being briefed. The Court should reject that argument because discovery was open for five months before the Court granted the Motion to Dismiss. Plaintiff should have used those five months to serve discovery and take depositions. Instead, Plaintiff waited until August 9, 2021 to serve written discovery, and he waited until February 2022 to take any depositions. Had Plaintiff timely engaged

10

in the discovery process, he could have filed a single motion to supplement his response to the Motion to Dismiss, rather than a Motion for Reconsideration and now this Motion. Likewise, had Plaintiff timely engaged in the discovery process, he likely would not have filed his Motion to Strike the BFT Parties' Motion for Fees [Doc. #136], which argued the motion for fees was not ripe because of the pending Motion for Reconsideration. All of this was in Plaintiff's reasonable control. In short, Plaintiff's dilatory tactics have unduly delayed resolution of this dispute, unfairly increased the BFT Parties' fees and costs, and been unduly prejudicial to the BFT Parties.

       c.    **Plaintiff's Motion does not provide any new information. It just re-re-argues positions Plaintiff already asserted and lost.**

Contrary to Plaintiff's argument, his "supplemental" evidence is not responsive to the bases on which the Court dismissed Plaintiff's claims against the BFT Parties and the Court should not countenance Plaintiff's attempt to re-re-argue the BFT Parties' Motion to Dismiss.

Plaintiff's Motion provides no new evidence that the BFT Parties conspired to steal the disputed bankruptcy claim. All of the "supplemental" evidence relates to the conspiracy *du jour*: the alleged plan to defraud the PetroHunter bankruptcy estate of its asset, which was not the conspiracy alleged in the Amended Complaint. Although perpetrating a fraud would be wrong, there was nothing improper or fraudulent about creditors in a bankruptcy seeking to maximize the value of their claims through judicial process[7]—which is all that happened here.

---

[7] *See* Merrick Depo. 48:3-11 (Doc. #170-5) ("..the idea was that you could reorganize this case and that the highest and best value would not be achieved in the Chapter 7 liquidation…")

11

And while Plaintiff cites portions of some transcripts to claim there is new evidence, there is not. Most of Plaintiff's allegations about this just parrot claims the PetroHunter Trustee proffered in its opposition brief.[8] *See* Doc. #170-2. For example:

- Plaintiff's Motion claims MAB Resources' state court lawsuit against PetroHunter and Sweatpea Petroleum is "supplemental" information (Motion, p. 5), yet an almost identical recitation of that lawsuit is in the Trustee's Brief at ¶¶13-16.

- Plaintiff's Motion claims MAB through a separate entity, Paltar, issuing demands for payments from PetroHunter is "supplemental" information (Motion, p. 5), yet an almost identical recitation of that effort is in the Trustee's Brief at ¶¶ 6-9.

Plaintiff knew about Trustee's allegations for years so there is no reason Plaintiff should now need to supplement.

          d.    **Plaintiff failed to show a meeting of the minds or an unlawful overt act.**

Included with his lengthy discussion about what happened in the PetroHunter bankruptcy, Plaintiff refers to an email Mr. Lotito authored describing the "Joint Plan." A plain reading of the email (Doc. #170-11) shows that neither MAB nor the BFT was a recipient, but Plaintiff was.[9] Thus either, (1) Plaintiff was a participant in the illegal conspiracy for which he now seeks damages from the BFT Parties, or (2) more plausibly, Plaintiff—a lawyer—did not believe there was anything fraudulent or improper about creditors utilizing judicial process to maximize the

---

[8] To be clear, the Trustee's brief is not evidence.
[9] Plaintiff argues that MAB and the BFT were implicitly included because Barry Meinster was a recipient and the next day he entered his appearance on their behalf in the PetroHunter bankruptcy. Plaintiff ignores that Mr. Meinster was Mr. Lotito's lawyer too, which explains why Mr. Meinster was a recipient.

MEYEW\82541103.1

value of their claims as Mr. Lotito was suggesting. In that case, Plaintiff's current claim of impropriety is significantly undermined by his own contemporaneous involvement.

All of Plaintiff's discussion about efforts to "wrest" an asset from the PetroHunter bankruptcy is irrelevant. First, creditors in a bankruptcy sharing joint representation to achieve a goal that would benefit all creditors is not unusual or improper. Thus, it cannot form the basis for finding conspiratorial liability because it's not an unlawful act. For a claim of conspiracy to be viable, there must be an "object to be accomplished," a "meeting of the minds," "unlawful overt act" in accomplishing the goal, and "damages."

Plaintiff now claims the bankruptcy creditors' meeting of the minds was to obtain valuable assets from the PetroHunter bankruptcy estate. *See* Motion, p. 11- 12. Even if true, the PetroHunter creditor's zealous efforts to purchase the debtor's asset, convert the bankruptcy, and/or remove the trustee[10] are not improper goals. Each is provided for in the Bankruptcy Code and the creditors' efforts were through brief filing in the bankruptcy court. Pursuing available judicial remedies is not an improper act. And here, there is no evidence that any of the creditors, who were represented by counsel, had any belief that their efforts were in any way improper.[11] Second, even if this "plan" was in some way improper, which it was not, Plaintiff was not damaged by it. According to Plaintiff, the allegedly improper plan, i.e. meeting of the minds, was to obtain valuable assets from the PetroHunter bankruptcy ***not*** Plaintiff. So by trying to fix one flaw in his claim, Plaintiff created another.

---

[10] Plaintiff concedes this was discussed but not pursued. Motion, p. 10. Additionally, this was suggested by Glenn Merrick, Esq., MAB's lawyer, because the trustee was "failing to discharge a fiduciary duty to consider the highest and best offer…" Doc. #170-5, Merrick Depo: 61:13-16.

[11] Certainly their efforts to achieve a goal in the bankruptcy were more legitimate that Plaintiff's continued pursuit of the BFT Parties just to avoid an attorney's fee award when he knows they had nothing to do with MAB's purchase of the Disputed Claim.

MEYEW\82541103.1

And with respect to MAB allegedly not paying Plaintiff for the Disputed Claim, there remains no evidence that anyone other than MAB and Plaintiff knew anything about the sale or that MAB had allegedly failed to pay Plaintiff. Thus, the Court properly dismissed in finding there was no meeting of the minds or unlawful act by the BFT Parties.

**WHEREFORE**, the Bruner Family Trust and Marc E. Bruner, as trustee of the Bruner Family Trust, respectfully request that the Court deny Plaintiff's Motion to Supplement and deny the Motion for Reconsideration.

Respectfully submitted this 28th day of March, 2022.

**POLSINELLI PC**

By: *s/ William R. Meyer*
William Meyer
*Attorneys for the Bruner Family Trust and Marc e. Bruner, as trustee for the Bruner Family Trust*

**CERTIFICATE OF SERVICE**

   I hereby certify that on the 28th day of March, 2022, I electronically filed the foregoing **RESPONSE TO PLAINTIFF'S MOTION TO SUPPLEMENT MOTION FOR RECONSIDERATION** with the Clerk of Court using the CM/ECF system, which was electronically served to the following:

Michael A. Rollin
FOSTER GRAHAM MILSTEIN & CALISHER LLP
*Attorneys for Plaintiff David E. Brody*

Patrick D. Vellone
Lance Henry
ALLEN VELLONE WOLF HELFRICH & FACTOR PC
*Attorneys for Interpleader Plaintiff*
*Jeffrey L. Hill, Chapter 7 Trustee of*
*PetroHunter Energy Corporation*

William F. Jones
Tanya A. Sevy
MOYE WHITE LLP
*Attorneys for Defendant Marc A. Bruner*

                   *s/Dionne Gladney*