IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 19-cv-01091-RM-NRN

DAVID E. BRODY

Plaintiff,

v.

MARC A. BRUNER,
THE BRUNER FAMILY TRUST, and
MARC E. BRUNER, AS TRUSTEE OF THE BRUNER FAMILY TRUST,

Defendants.

---

**PLAINTIFF'S REPLY IN SUPPORT OF MOTION TO SUPPLEMENT MOTION FOR RECONSIDERATION**
_____

Plaintiff hereby replies in support of his Motion to Supplement his Motion for Reconsideration, ECF No. 170 (the "Motion"), and as grounds therefor states as follows:

### Introduction

The Court should find the BFT Parties' Response to Plaintiff's Motion to Supplement Motion for Reconsideration unpersuasive, characterized more by *ad hominem* and uncited arguments than by either facts or law.

First, Plaintiff's motion is timely. There is no bar against "extending" any deadline to file the motion because (1) there is no deadline to file a motion to supplement, and (2) Rule 6(b)(2) does not apply because a motion to supplement is not within the rules covered by it. Even if, as the BFT Parties posit, Rule 60(b)'s deadlines applied, the motion to supplement is within them.

In any event, the BFT Parties' position in that regard puts the cart before the horse because the motion that is at issue is the motion to supplement, not the motion for reconsideration. Even if the Court were inclined to look back to the standard governing the motion for reconsideration, the

Court should grant it under one or both of Rules 60(b)(2) or 60(b)(6). There is newly discovered evidence that Defendants withheld and even gave misleading discovery responses about. Plaintiff diligently pursued third party discovery, learned material facts bearing on the conspiracy claim, and filed his motion to supplement within six days of receiving the final deposition transcript.

Second, supplementation is appropriate because it demonstrates the existence of a conspiracy far beyond that which is required at the pleading stage. The BFT Parties' statement that the documents and especially the depositions provided no new information is demonstrably untrue. The witnesses testified that they acted on behalf of the BFT in attempting to strip the Sweetpea value from the PetroHunter estate and even had the BFT trustee's express approval, and the PetroHunter trustee was clear that that effort was predicated on fraudulent so-called Called Sum Notices issued to the estate.[1] A critical element of Defendants' plan (the "Joint Plan")—that the fraudulent Called Sums would be used as an incentive to try to get the bankruptcy trustee to sell Sweetpea for a fraction of its value— only came out in documents recently produced by Marc A. Bruner's ("MAB") bankruptcy lawyers even though MAB had a legal obligation to produce them months earlier.

In addition, facts proving that the BFT's agent, Carmen (Tony) Lotito was expressly authorized by Marc E. Bruner (the BFT's co-trustee, Marc A. Bruner's son, and Lotito's stepson) to include the BFT as a participant in the Joint Plan in the bankruptcy proceedings came out for the first time in Mr. Lotito's deposition on February 17, 2022. Marc A. Bruner led the Joint Plan, using Plaintiff's Claim. Mr. Lotito has been Marc A. Bruner's business partner for about 30 years. Now, for the first time, Plaintiff has the ability to combine these facts with other evidence, including that: (a)

---

[1] The BFT Parties assert that the bankruptcy court did not accept the PetroHunter trustee's fraud allegations against the Bruner Interests or "enter findings consistent with" them. Response at 5. This is misleading because it suggests the Court rejected them. In fact, the bankruptcy court held the motion to covert in abeyance at the request of the parties. Case No. 16-20197-KHT, at ECF 306. As parties to that proceeding, the BFT Parties should know what happened. In any event, when called as a witness in this case, the PetroHunter trustee will give the evidence that supports the Bruner Interests' fraudulent conduct.

2

Lotito initiated the Joint Plan; (b) Lotito helped facilitate the Joint Plan; (c) in furtherance of the Joint Plan, MAB acquired and used Plaintiff's $335,000 bankruptcy claim ("Plaintiff's Claim"); and (d) the BFT continued to participate in the Joint Plan, using Plaintiff's Claim, while the BFT (through Lotito) was fully aware that MAB had defaulted and failed to pay any consideration whatsoever to Plaintiff. These facts show the two elements the Court found missing at the motion to dismiss stage: a meeting of the minds and an unlawful act. Colorado law requires nothing more.

The BFT Parties' only case on supplementation, *Simmons v. Bellco Credit Union*, directly contradicts their position here because it permitted supplementation where material evidence (there, an expert report) was produced by the opponent only after the close of briefing on the motion for which supplementation was sought. No. 18-cv-00348-MEH, 2019 WL 1745209, at 11 (D. Colo. Apr. 18, 2019).

Therefore, in the interest of justice, the Court should allow Plaintiff to supplement his motion for reconsideration, *see* Fed. R. Civ. P. 60(b)(6) (permitting relief from an order for "any other reason that justifies relief"); 60(b)(2) (permitting relief from an order based on "newly discovered evidence that, with reasonable diligence, could not [previously] have been discovered"), and ultimately replead these facts, Fed. R. Civ. P. 15(a)(2) (directing that leave to amend should be freely give "when justice so requires"). Indeed, a party has good cause to amend his complaint even after deadlines in the scheduling order have passed when new information is developed in discovery. *Pumpco, Inc. v. Schenker Intern., Inc.*, 204 F.R.D. 667, 668-69 (D. Colo. 2001). The Tenth Circuit approved this standard in *Gorsuch, Ltd., B.C. v. Wells Fargo Nat. Bank Ass'n*, 771 F.3d 1230, 1241 (10th Cir. 2014).

This is not a situation in which there are no facts showing the BFT Parties' plausible liability or, as the BFT Parties put it, a "ginned up" conspiracy, Response at 4; it is a situation in which Plaintiff could not have known all the facts at the time of the Amended Complaint because they were in the exclusive possession of others. This is precisely why common law conspiracies need not be pleaded

3

with particularity and why they may be inferred. *E.g.*, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556, 127 S.Ct. 1955, 1965, 167 L.Ed.2d 929 (2007); *Fisher v. Shamburg*, 624 F.2d 156, 162 (10th Cir. 1980); *Hanks v. Aminokit Labs., Inc.*, 17-cv-01108-RM-MJW, 2018 WL 11025410, at *7-8 (D. Colo. Feb. 7, 2018). To bar Plaintiff from pleading true—even if newly discovered—facts would work an injustice on a party aggrieved by the now demonstrable misconduct of others. The Tenth Circuit directs that "justice be done in light of *all* the facts." *Cessna Fin. Corp. v. Bielenberg Masonry Contracting, Inc.*, 715 F.2d 1442, 1444 (10th Cir. 1983).

## Reply Argument

**I. Plaintiff's motion to supplement is timely.**

**A. Rule 6(b)(2) does not apply.**

As stated in the motion to supplement, the "district court clearly has discretion to permit supplemental [evidence] that is…relevant and admissible as evidence." *Lighton v. Univ. of Utah*, 209 F.3d 1213, 1227 (10th Cir. 2000) (applied in the more exacting summary judgment context) (internal quotations omitted). *Id. See also Hamer v. City of Trinidad*, 441 F.Supp.3d 1155, 1159 n.1 (D. Colo. 2020) ("Because I find the supplemental materials at least relevant to the issues before the court, I grant the Parties' Motions to Supplement without further discussion."). This Court's Practice Standards expressly provide for supplementation. Civ. Practice Standard IV.D.3.

The BFT Parties argue that supplementation is governed by the deadline that would apply to a motion for reconsideration under Rule 60(b). It is not. There is no specific rule of civil procedure governing supplementation of evidence so there can be no deadline that Rule 6(b) would affect. *See* Fed. R. Civ. P. 6(b)(2) (listing the rules to which it applies); *see also* Fed. R. Civ. P. 6(1) ("When an act may or must be done within *a specified time*, the court may, for good cause, extend the time….").

The fact that Rule 60(b) does not apply to a motion to supplement is also evident because motion to supplement does not seek relief from an order, i.e., the subject matter of Rule 60(b); instead,

4

it seeks to supply additional evidence the Court should consider in its review of a motion. Indeed, the BFT Parties acknowledge that the underlying motion to reconsider was timely filed. Response at 6. Therefore, the prohibition against extensions of Rule 60(b) briefing found in Rule 6(b)(2) does not apply.

>   B.   **If Rules 6(b) and 60(b) applied to the motion to supplement, it would still be timely.**

Assuming Rule 60(b) applied to the motion to supplement, it is still timely. Rule 60(b) contains six subparts. As applicable here, a motion under subpart 2 must be brought within a "reasonable time," not more than one year after the order, and a motion under subpart 6 must be brought within a reasonable time, without an outside one-year deadline. Fed. R. Civ. P. 60(c)(1). In determining what constitutes a reasonable time, the Court considers "the interest in finality, the reason for delay, the practical ability of the litigant to learn earlier of the grounds relief upon, and prejudice to the other parties." *Christensen v. United Resource Sys., Inc.*, No. 07-cv-1632-LTB-MEH, 2008 WL 2811749, at *1 (July 18, 2008). This analysis is designed to balance "two countervailing impulses: The desire to preserve the finality of judgments and the incessant command of the court's conscience that justice be done in light of *all* the facts." *Cessna Fin. Corp.*, 715 F.2d at 1444 (internal quotations and citation omitted). Application of these factors shows that the motion to supplement would be timely even if Rule 60(b) applied.

>   1.   **The motion to supplement does not adversely affect the interest in finality.**

The parties and the Court have an interest in the finality of judgments, but that interest is not affected here. Unless and until entered pursuant to Rule 58, the Court's dismissal Order is not a judgment and may be amended or altered at any time. Fed. R. Civ. P. 54(b). Moreover, if the Order is reduced to judgment under Rule 58, Plaintiff will have 28 days within which to file a motion to amend or alter the judgment. Fed. R. Civ. P. 59(e). A motion under that rule may be brought where there is

5

any one or more of the following: "(1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice." *Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000). Therefore, all of the same legal arguments presented in the motion for reconsideration along with all the evidence developed and which is the subject of the motion to supplement may be submitted to the Court again. This demonstrates that denying the motion to supplement will not further the interest in finality. By contrast, granting it will be a more efficient way of addressing "*all* of the facts," *Cessna Fin. Corp.,* 715 F.2d at 1444, than denying only to have the same arguments made under Rule 59(e). If there's any doubt, it should be resolved in favor of efficiency, not duplication of efforts. Fed. R. Civ. P. 1.

## 2. The motion to supplement will not prejudice the BFT Parties.

For the very same reasons, the BFT Parties will not be prejudiced by grant of the motion to supplement. If denied, Plaintiff will resubmit the evidence under Rule 59(e), and since Plaintiff will have 28 days within which to do so, the BFT Parties' Rule 6(b) argument—flawed as it is in this posture—will be completely unavailable in that one.

## 3. Plaintiff had no practical ability to obtain the evidence earlier, and Plaintiff did not cause the delay.

Plaintiff could not have moved to supplement earlier. The applicable timeline is as follows:

| Date | Event | ECF or Ex. |
|---|---|---|
| 8/9/21 | Plaintiff's written discovery to Defendants | Exhibit 13 |
| 9/8/21 | Order granting entry of stipulated protective order | ECF 120 |
| 9/9/21 | The BFT Parties' responses to written discovery | Exhibit 14 |
| 9/15/21 | MAB's responses to written discovery | Exhibit 15 |
| 9/20/21 | Order dismissing the BFT Parties | ECF 123 |
| 9/21/21 | Plaintiff's first conferral about documents in the possession of Messrs. Merrick and Meinster | Exhibit 16 |
| 9/28/21 | MAB's first response to discovery conferral | Exhibit 17 |
| 10/15/21 | Motion for reconsideration | ECF 135 |
| 10/20/21-11/5/22 | Correspondence regarding MAB's discovery responses | Exhibit 18 |
| 11/6/21-12/2/21 | Correspondence regarding MAB's discovery responses | Exhibit 19 |

6

| | | |
|---|---|---|
| 12/3/21 | Joint motion to amend scheduling order due to MAB's difficulty in collecting documents from his attorneys for production. | ECF 161 |
| 12/3/21 | Order granting ECF 161 | ECF 163 |
| 1/19/22 | Joint motion to extend discovery deadline | ECF 164 |
| 1/19/22 | Order granting ECF 164 | ECF 166 |
| 12/30/21; 1/6/22 | Third party subpoenas issued to Messrs. Meinster, Merrick, and Lotito | N/A |
| 2/6/22 | Production of Mr. Merrick pursuant to subpoena | N/A |
| 2/7/22 | Deposition of Mr. Merrick | N/A |
| 2/7/22- 2/10/22 | Correspondence regarding MAB's discovery responses | Exhibit 20 |
| 1/10/22; 2/11/22 | Productions of Mr. Meinster pursuant to subpoena | N/A |
| 2/14/22 | Correspondence from MAB's counsel confirming that Mr. Merrick refuses to produce MAB's documents to her for production and privilege log purposes | Exhibit 21 |
| 2/15/22 | Deposition of Mr. Meinster | N/A |
| 2/16/22 | Production of Mr. Lotito pursuant to subpoena | N/A |
| 2/17/22 | Deposition of Mr. Lotito | N/A |
| 2/22/22 | Receipt of Merrick deposition transcript | N/A |
| 2/28/22 | Receipt of Meinster deposition transcript | N/A |
| 3/1/22 | Receipt of rough Lotito deposition transcript | N/A |
| 3/7/22 | Motion to supplement motion for reconsideration | ECF 170 |

As the chronology shows, Plaintiff propounded written discovery to Defendants last August. Critically, they did not provide candid answers about their role in or knowledge of the facts. For example, in response to an interrogatory reading:

> Identify all communications with any Person regarding the Disputed Claim, including, without limitation…(c) its proposed and/or actual use in connection with the PetroHunter Bankruptcy,

the BFT Parties responded that "[p]rior to [October 2018], the BFT had *no communications with anyone about the Disputed Claim.*" Ex. 14 at Interrogatory No. 9 and Response thereto (emphasis added). The BFT Parties also refused to produce documents responsive to a Request for Production on the same topic. *Id.* at RFP No. 11.

Furthermore, in response to a Request for Admission reading:

> Admit that one or more of Defendants used the Disputed Claim in negotiations with the PetroHuner Bankruptcy trustee,

7

the BFT Parties responded, among other things, with, "[s]uch negotiations, if they occurred, may also have occurred *without the BFT's knowledge.*" *Id.* at RFA No 6 (emphasis added).

These responses by the BFT Parties were false and misleading. The BFT Parties did not disclose the Joint Plan or their knowledge of the negotiations using Plaintiff's Claim, and they asserted they were otherwise unaware of any negotiations with the bankruptcy trustee (other than an insignificant stipulation). However, as the supplemental evidence proves, the BFT was giving both oral and written direction to Mr. Merrick (as joint counsel to MAB and the BFT) through Mr. Lotito. Nor can the BFT trustee, Marc E. Bruner, disclaim knowledge because, as Mr. Lotito testified, Marc E. Bruner gave him express authority to direct Mr. Merrick's activities on behalf of the BFT. The notion that the BFT Parties had neither knowledge of the communications nor awareness of responsive documents is now definitely disproved, and the Court should reject their attempt to shift responsibility to Plaintiff by asserting he did not develop the evidence of their role soon enough.

MAB's discovery responses on these central topics were also false and misleading.

- In response to the same Interrogatory No. 9, he listed three communications but omitted the many communications later disclosed especially by Mr. Merrick, including email communications Mr. Merrick testified were in MAB's possession. *See* Ex. 15; *see also* Exhibit 22, Merrick Deposition at 11:15-12:4; 15:18-16:5.
- In response to Request for Production No. 11, MAB stated that "[a]ll responsive documents have been or will be produced." *Id.* This did not happen. Plaintiff only received them from third parties even though, again, Marc A. Bruner was supposed to have had them.
- In response to Request for Admission No. 6, MAB denied. *Id.* This is now demonstrably false.

Shortly after the BFT Parties' responses, the Court dismissed the claim against them so Plaintiff was unable to follow up on the deficient discovery responses (nor could Plaintiff have known until now just how misleading those responses were). However, because the claims against MAB remained live, Plaintiff met and conferred and repeatedly pressed MAB for fulsome responses. Plaintiff focused on MAB's failure to produce documents in the possession of his bankruptcy lawyers, Messrs. Meinster and Merrick, because the information they had is treated as the property of MAB,

8

himself, and MAB was required to produce it. *E.g.*, *Am. Soc'y. for the Prevention of Cruelty to Animals v. Ringling Bros. and Barnum & Bailey Circus*, 233 F.R.D. 209, 212 (D.C. Cir. 2006); *see also* 8A Charles A. Wright, Arthur R. Miller, & Richard L. Marcus, Fed. Practice & Procedure, §§ 2210, 2217.

MAB's lawyers in this case were never able to obtain and produce this information, so Plaintiff issued subpoenas directly to Messrs. Meinster, Merrick, and Lotito. Rule 45 provides that third parties may produce documents at the time and place of the depositions, which were scheduled by agreement of all parties. Mr. Merrick produced on February 6, 2022; Mr. Meinster produced in two batches, on January 10 and February 11, 2022; and Mr. Lotito (represented by counsel for the BFT Parties) produced on February 16, 2022. Plaintiff took all three witnesses' depositions within days of receiving the documents. Each witness gave material information about the facts of the conspiracy, including that the lawyers represented the collective efforts of the "Bruner Interests," and that Mr. Lotito represented the interests of the BFT, including with the express authority of the BFT's trustee. Plaintiff then filed his motion to supplement only six days after receiving the last of the three deposition transcripts.

The fact that so much of this information came from Defendants' lawyers and their other representative in the transactions, Mr. Lotitio, is material to the question of who caused the delay. Plaintiff is not required to subpoena third parties for documents in the actual or constructive possession of a party, but he had to do so after repeated conferral efforts produced none of the material documents. Were it not for Plaintiff's diligent efforts to obtain this information from the third parties, Plaintiff would have been left with Defendants' misleading discovery responses, and the key admissions concerning the conspiracy would never have come to light.

Adding to the inaccuracy and inequity of their arguments, the BFT Parties also misstate the facts in material respects. Specifically, the BFT Parties argue that Plaintiff had access to the evidence

9

because (1) he was copied on some of the supplemental materials and (2) he was part of the Joint Plan. This is not accurate.

*First*, the documents the BFT Parties point to at page 7 of their Response come from Mr. Merrick and Hogan Lovells, Plaintiff's prior employer.[2] Plaintiff did not have the documents that were sent to his Hogan Lovell's email address when he was briefing the motion for reconsideration because he retired from the practice of law as of June 30, 2021, Declaration of David E. Brody, ¶¶ 1-2, which predates the dismissal Order by several months. The documents identified by the BFT Parties were produced by Mr. Merrick and Hogan Lovells in response to subpoenas, the first issued by Plaintiff and the second by MAB. Merrick responded on February 6, 2022. Hogan sent documents in two batches, on January 31 and February 2, 2022. This all occurred after briefing on the motion for reconsideration was closed on November 11, 2021. *See* ECF 151.[3]

Furthermore, the import of the documents was fleshed out in the depositions. For example, Plaintiff could not have known before the depositions—and certainly did not have the admissions confirming—that Mr. Lotito acted as the representative of the BFT Parties and had the express authority of the BFT's trustee when he engaged in the underlying transactions. (Plaintiff would have had that information in September 2021 had the BFT Parties and MAB provided truthful responses to written discovery.) The motion to supplement followed only six days after receiving the Lotito deposition transcript, within seven days of receiving the Meinster transcript, and within thirteen days or receiving the Merrick transcript.

In this regard, the BFT Parties assert that Plaintiff waited too long to take the depositions. That is not a reasonable position. The depositions occurred within Court-approved deadlines and

---

[2] The BFT Parties' brief mistakenly refers to his prior employer as Greenberg Traurig.
[3] The publicly filed documents are included in the motion for context and explanation, especially where their relevance was underscored only by the newly discovered evidence and admissions of the witnesses—all of whom, incidentally, are aligned with Defendants.

10

should be viewed as timely by definition. *Cf. Gorsuch, Ltd., B.C*, 771 F.3d at 1241 (holding that good cause is required to *amend* a scheduling order). The BFT Parties cite no authority for the proposition that depositions taken *within* discovery deadlines are untimely—nor could they. Furthermore, it is reasonable for a party to take depositions only after receiving documents. *See, e.g.*, *Resource Assoc. Grant Writing and Evaluation Svcs., LLC v. Maberry*, No. CIV 08-0552 JB/LAM, 2008 WL 5978896, at *1 (D.N.M. Dec. 8, 2008) (noting that "it often makes good sense to have a witness' documents before he or she is deposed" and authorizing a second deposition after documents are produced). Granted, had the BFT Parties and MAB accurately and completely responded to Plaintiff's written discovery last fall—as they were required to—the depositions could have happened earlier, but it is unfair and incorrect to argue that the depositions happened too late when Defendants, themselves, were solely responsible for Plaintiff not having the documents. Once Plaintiff had the documents, he took the depositions within mere days; indeed, two of the depositions occurred the day after receiving the witnesses' documents. For this reason, even if the good cause and excusable neglect standards of Rules 6(b)(1) or 60(b)(1) applied, whatever neglect the Court might find would be excused by Defendants' discovery omissions.

*Second*, Plaintiff was not part of the Joint Plan. MAB convinced Plaintiff to sell him his claim, which gave MAB standing to direct the joint use of the Bruner-Lotito claims in the bankruptcy case. Those activities occurred after August 2017, by which time Plaintiff was out of the picture (other than waiting for his consideration, none of which was ever received). The BFT Parties' effort to characterize Plaintiff as part of their conspiracy is just another attempt to sully a respected member of the bar in the eyes of the Court to distract from their own role. This, indeed, is the very purpose of *ad hominem*.

4896-0922-7802, v. 2

## II. The supplemental evidence is proper, material, and dispositive.

### A. The supplemental evidence provides new information.

The BFT Parties assert there is nothing new in the motion to supplement; it's mere "regurgitation." Response at 1. This is not true. The document productions and depositions revealed important information not previously available, including:

- details related to the Called Sum Notice fraud and how it served as the foundation for the efforts to strip Sweetpea from the bankruptcy estate for a fraction of its value;
- admissions from Mr. Merrick that he was responsible for implementing the Joint Plan on behalf of MAB and the BFT, and that he took his direction from MAB and Mr. Lotito, including on behalf of the BFT;
- documents and admissions showing that Mr. Lotito was the architect of the Joint Plan, and that it involved combining the BFT claims with Plaintiff's Claim; and
- Mr. Lotito's admission that he was acting with the express authority of the BFT's trustee.

### B. The supplemental evidence cures any deficiencies in the Amended Complaint.

As shown in the motion to supplement, there was both a meeting of the minds and an unlawful act, which are the two elements the Court found missing in its dismissal Order. Motion to Supplement at 11-16.

The BFT Parties do not really contest the meeting-of-the-minds element; instead, they argue Plaintiff has known about this all along. As discussed above, that is not true, but more importantly, it's not a defense. The question is whether there was a meeting of the minds between MAB and the BFT. There was, which Messrs. Merrick and Lotito made clear in their deposition testimony.

There was also a series of overt unlawful acts, all aimed at implementing the Joint Plan, including acquiring Plaintiff's Claim without paying for it (and/or, as pleaded, without the intent to pay for it); using Plaintiff's Claim in conjunction with the BFT Parties' claims in an effort to strip the bankruptcy estate of its only valuable asset; and all Defendants' continued use of Plaintiff Claim in

12

furtherance of the Joint Plan even after the BFT's agent, Lotito, knew MAB had not paid any consideration whatsoever.

On the important point of what constitutes an overt unlawful act for conspiracy purposes, the BFT Parties misstate the law when they argue (without any legal authority in support) that an unlawful act directed toward the PetroHunter estate is legally unrelated to the acquisition of Plaintiff's bankruptcy claim. Response at 13. As the law cited in the motion to supplement makes clear, an act taken in furtherance of an unlawful act is an unlawful act for conspiracy purposes:

> Proof of the alleged conspiracy does not require that there shall have been a common plan or design on the part of the defendants to cheat or defraud [the plaintiff] in particular, or that the defendants shall have agreed upon the details of the plan, if any, to so cheat and defraud, or that the other defendants shall have consented to or authorized the particular means employed by one of them to accomplish the general purpose, if any, of the defendants.

*Morrison v. Goodspeed*, 68 P.2d 458, 483-84 (Colo. 1937). Meaning, liability may be imposed on the BFT Parties solely because of MAB's unlawful act of acquiring Plaintiff's Claim in furtherance of the conspiracy. *See also New Crawford Valley, Ltd. v. Benedict*, 877 P.2d 1363, 1374 (Colo. App. 1993) ("[T]he allegation of a conspiracy or an endeavor to violate [the law] will properly allow evidence to explain a series of what might otherwise be considered to be unrelated acts and to impose liability upon one alleged conspirator for the actions of another."); *see also Morrison*, 68 P.2d at 484 (the conspiracy "need not be shown to have been entered into for the specific purpose of defrauding the particular person damaged").

Since the Court should consider all the facts on a Rule 60(b) motion, *Cessna Fin. Corp.,* 715 F.2d at 1444, the Court should accept Plaintiff's supplementation.

WHEREFORE, Plaintiff respectfully requests that the Court accept the Motion to Supplement Motion for Reconsideration.

Respectfully submitted, this 11th day of April, 2022.

13

4896-0922-7802, v. 2

/s/ *Michael A. Rollin*
Michael. A. Rollin, Esq.
Mallory A. Revel, Esq.
Lindsey Idelberg, Esq.
FOSTER GRAHAM MILSTEIN & CALISHER LLP
360 South Garfield Street,
Sixth Floor
Denver, Colorado 80209
mrollin@fostergraham.com
mrevel@fostergraham.com
lidelberg@fostergraham.com
Tel: (303) 333-9810
Fax: (303) 333-9786
*Attorneys for Plaintiff*

4896-0922-7802, v. 2

## CERTIFICATE OF SERVICE

I hereby certify that on April 11, 2022, I served the foregoing **PLAINTIFF'S REPLY IN SUPPORT OF MOTION TO SUPPLEMENT MOTION FOR RECONSIDERATION** via CM/ECF to all counsel of record.

By: */s/ Michael A. Rollin*
Michael. A. Rollin, Esq.

4896-0922-7802, v. 2