Page 1

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLORADO

Civil Action No. 19-cv-01091-RM-NRN

_____

DEPOSITION OF GLENN W. MERRICK
Monday, February 7, 2022
(Via Zoom)

_____

DAVID E. BRODY,

Plaintiff,

v.

MARC A. BRUNER, THE BRUNER FAMILY TRUST, and MARC E. BRUNER, AS TRUSTEE OF THE BRUNER FAMILY TRUST,

Defendants.

**EXHIBIT 22**

Page 11

1  e-mails?
2      A    Yes.
3      Q    And there there were no e-mails from
4  either Mr. Bruner or Mr. Lotito?
5      A    No.  It means that there were no e-mails
6  from Bruner or Lotito that were responsive to the
7  subpoena duces tecum.
8      Q    Understood.  Does that mean that you
9  possess no e-mails responsive to the subpoena that
10 came from either Mr. Bruner or Mr. Lotito?
11     A    That I saved, yes.
12     Q    Do you have any hard copy documents
13 responsive to the subpoena?
14     A    No.
15     Q    Was it not your practice to save hard copy
16 documents?
17     A    For a period of time, but our engagement
18 letter indicates to the client that the client should
19 save all such files because we destroy them.  Copies
20 of all documents were delivered to Mr. Bruner.
21     Q    Including hard copy documents?
22     A    Sure.
23     Q    And approximately when would that have
24 occurred?
25     A    Throughout the case.

**EXHIBIT 22**

Page 12

 1    Q    Do you believe that every hard copy
 2  document related to the case was sent by you or
 3  someone from your office to Mr. Bruner?
 4    A    Yes.
 5    Q    Is there anybody other than Mr. Bruner to
 6  whom you would have sent documents related to the
 7  case, meaning any other clients who engaged you in
 8  connection with the PetroHunter case?
 9    A    Mr. Lotito.
10    Q    Would those have been the --
11    A    I sent a number of documents to David
12  Brody, as you can see in the e-mails.
13    Q    Would the -- would the body of documents
14  that you sent to Mr. Bruno -- I'm sorry, Mr. Bruner
15  be the same as the body of documents that you sent to
16  Mr. Lotito, or would they potentially be different?
17    A    I have no idea.
18    Q    How did you store your documents with
19  respect to this case?
20    A    To the extent we had them stored, they're
21  stored electronically in the Bruner file that I
22  mentioned.
23    Q    Yeah.  And I'm referring to the hard copy
24  ones that you would have sent off to either
25  Mr. Bruner or Mr. Lotito or Mr. Brody for that

**EXHIBIT 22**

```
                                                         Page 15
 1        Q     And so the hard copy files, can you
 2   describe the hard copy documents or files that you
 3   would have sent to Mr. Bruner and/or to Mr. Lotito
 4   during the course of the case?
 5        A     To the extent a document would have come
 6   in electronic format, I may have printed it.  I then
 7   would have scanned it and e-mailed it to them.
 8        Q     Understood.  Did you ever actually deliver
 9   hard copy documents to them?
10        A     I don't recall.
11        Q     Would you records that reflect when you
12   send client documents to clients?
13        A     Only e-mails.
14        Q     So it's not some -- you don't maintain
15   records of the hard copy documents that you may send
16   to clients from time to time?
17        A     Correct.
18        Q     Okay.  Now, separate -- up until now,
19   we've been talking about the subpoena duces tecum.
20   Do you have, in addition to what you sent, other
21   documents that pertain to the PetroHunter case and
22   your representation of any clients in that case?
23        A     Sure.
24        Q     Okay.  Have you sent those to Mr. Bruner's
25   lawyers?
```

**EXHIBIT 22**

Page 16

```
 1      A     I received a request from Mr. Bruner's
 2   lawyers, I think Ms. Sevy saying she wanted copies of
 3   certain documents.  I told her that I sent copies of
 4   all the documents that I had to Mr. Bruner.  I did
 5   not hear back from her after that.
 6      Q     Okay.  So is -- is the narrow answer to my
 7   question, no, you did not send any documents to
 8   Mr. Bruner's lawyers?
 9      A     Correct.
10      Q     Okay.  Did you -- are there documents that
11   you have that would be responsive to the subpoena
12   duces tecum that you did not send because you
13   believed them to be privileged?
14      A     No.
15      Q     In response to the subpoena duces tecum --
16   well, let me ask you this, do you have documents that
17   reflect communications with third parties, not your
18   clients that you have withheld because they were not
19   responsive to the subpoena duces tecum?
20      A     Are you asking me are there any documents
21   that I have that were not requested by the subpoena
22   duces tecum?
23      Q     Yeah.  I'm trying to figure out whether
24   there was something I didn't ask for, but that
25   nevertheless pertained to the PetroHunter case and
```

**EXHIBIT 22**