**FILED**
**United States Court of Appeals**
**Tenth Circuit**

# UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

**May 1, 2024**

**Christopher M. Wolpert**
**Clerk of Court**

---

DAVID E. BRODY,

   Plaintiff - Appellant,

v.

MARK E. BRUNER, as trustee of the
Bruner Family Trust; THE BRUNER
FAMILY TRUST

   Defendants - Appellees.

No. 23-1102
(D.C. No. 1:19-CV-01091-RM-NRN)
(D. Colo.)

---

### ORDER AND JUDGMENT[*]

---

Before **TYMKOVICH**, **MATHESON**, and **CARSON**, Circuit Judges.

---

   David Brody sued The Bruner Family Trust ("BFT") and its trustee, Mark E.

Bruner ("MEB") (collectively "the BFT Defendants"), for civil conspiracy. The district

court dismissed his claim with prejudice, denied his motion for reconsideration or leave

to amend, and awarded attorney fees and costs.

---

   [*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of this
appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered
submitted without oral argument. This order and judgment is not binding precedent,
except under the doctrines of law of the case, res judicata, and collateral estoppel. It may
be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and
10th Cir. R. 32.1.

On appeal Mr. Brody argues the district court should not have (1) dismissed his civil conspiracy claim, (2) dismissed that claim with prejudice, (3) denied his motion for reconsideration, or (4) awarded attorney fees and costs to the BFT Defendants.

Exercising jurisdiction under 28 U.S.C. § 1291, we affirm the district court on all four issues.

## I. BACKGROUND

### A. *Key Players*

Mark A. Bruner ("MAB"), an oil and gas developer, founded several companies, including PetroHunter. Mr. Brody was an attorney for several of MAB's companies, including general counsel for PetroHunter. BFT is a family trust that MAB formed to benefit Bruner family members. MEB is MAB's son and BFT's trustee.[1]

Carmen Lotito was MAB's business partner and a BFT beneficiary. Mr. Brody alleged that Mr. Lotito served MAB and BFT in "various capacities," App., Vol. I at 37, and acted "on behalf of Defendants," *id.* at 38.

### B. *Bankruptcy Proceedings*

In October 2016, PetroHunter filed for Chapter 7 bankruptcy. The bankruptcy court appointed a trustee, who could sell PetroHunter's assets to fund the bankruptcy estate. PetroHunter's one valuable asset was Sweetpea Petroleum ("Sweetpea"). PetroHunter valued SweetPea at $5.6 million.

---

[1] MEB was sued only in his capacity as BFT's trustee.

MAB tried to acquire Sweetpea from PetroHunter's bankruptcy estate several times.  BFT was involved in one of these attempts, *see* App., Vol. V at 132, which Mr. Brody refers to as the "Joint Plan," Aplt. Br. at 4-7.  The participants included MAB, BFT, Mr. Lotito, and some of MAB's other companies.

As part of the Joint Plan, MAB sought creditor status in the PetroHunter bankruptcy.  Mr. Brody, already a creditor, had filed a claim ("the Brody Claim").  Mr. Brody agreed to transfer his claim to MAB for $ 25,000 and 150,000 shares of stock in one of MAB's other companies.   App., Vol. I. at 21, 23.  Mr. Brody transferred his claim to MAB, but MAB never paid the $ 25,000 or assigned the stock shares to him. *See id.* at 27-28; App., Vol. II at 68.

The Joint Plan members presented a bid for Sweetpea to PetroHunter's bankruptcy trustee, who declined the bid.  They then moved to convert the PetroHunter bankruptcy from Chapter 7 to Chapter 11, which would remove the Chapter 7 trustee.  The trustee sold Sweetpea to another group, which mooted the motion because PetroHunter no longer had any valuable assets.

### C.  *District Court Proceedings*

Mr. Brody initially sued MAB for breach of contract for failing to pay Mr. Brody for his bankruptcy claim.  He then amended his complaint to (1) add additional claims against MAB, including fraud and civil theft and (2) allege a civil conspiracy claim

against both MAB and the newly-added BFT Defendants.  This appeal concerns

Mr. Brody's civil conspiracy claim.[2]

MAB and the BFT Defendants moved to dismiss the conspiracy claim under

Federal Rule of Civil Procedure 12(b)(6).  The district court granted the motion to

dismiss the civil conspiracy claim and dismissed it with prejudice.

The BFT Defendants then sought attorney fees and costs, arguing that Colo. Rev.

Stat. § 13-17-201(1) mandated an award of fees and costs.[3]

Mr. Brody moved for "reconsideration of the court's order dismissing the civil

conspiracy claim . . . or, alternatively, for leave to amend his complaint, under Rule

60(b)."  App., Vol. III at 158.  He argued that "[r]ather than judging [his] pleadings under

the ordinary, liberal pleading standard" articulated in *Bell Atlantic Corp. v. Twombly*,

550 U.S. 544, 556-57 (2007), which "applies to state-law civil conspiracy claims, the

[c]ourt applied the heightened pleading standard applicable to conspiracy claims filed

under 42 U.S.C. §§ 1983, 1985."  *Id.* at 159.  He further argued that he adequately pled

---

[2] Mr. Brody originally invoked diversity jurisdiction under 28 U.S.C. § 1332, but
adding the BFT Defendants destroyed complete diversity.  *See Strawbridge v. Curtis*,
7 U.S. 267, 267 (1806).  He then invoked and the district court relied on 28 U.S.C § 1334
for jurisdiction.  App., Vol. II at 48-52 (district court order finding "related to"
bankruptcy jurisdiction over Mr. Brody's amended complaint).

[3] MAB did not join the motion for attorney fees because other tort claims were
pending against him.  Colo. Rev. Stat. § 13-17-201(1) does not allow attorney fees when
only "a single tort claim" rather than "an entire tort action" against a defendant is
dismissed.  *State v. Golden's Concrete Co.*, 962 P.2d 919, 925 (Colo. 1998), *as modified
on denial of reh'g* (June 22, 1998).

the elements of civil conspiracy, including an agreement between MAB and the BFT

Defendants and an overt act.

 While BFT's attorney fees and costs motion and Mr. Brody's reconsideration

motion were pending, discovery began on the claims then-pending against MAB.

Mr. Brody deposed several people, including Mr. Lotito.  Following discovery, MAB

settled with Mr. Brody.  The settlement agreement included a stipulation that all of the

claims against him, including the civil conspiracy claim, would be dismissed without

prejudice.  Doc. 11078779 at 1-2.  Consistent with the settlement agreement, Mr. Brody

dismissed all his claims against MAB under Federal Rule of Civil Procedure 41(a).[4]

App., Vol. IV at 164-65.

 Mr. Brody moved to supplement his motion for reconsideration with the

deposition testimony, arguing the testimony (1) showed Mr. Lotito was working as BFT's

agent in the bankruptcy proceedings and (2) provided details about the alleged civil

conspiracy agreement between MAB and the BFT Defendants.

 The district court denied Mr. Brody's motion for reconsideration or leave to

amend and denied his motion to supplement.  It partially granted the BFT Defendants'

---

 [4] Mr. Brody's dismissal of his claims against MAB did not preclude him from
challenging the dismissal of the civil conspiracy claim against the BFT Defendants.
A plaintiff may maintain a civil conspiracy claim, if sufficiently pled, against one party to
the agreement.  *See Rocky Mountain Expl., Inc. v. Davis Graham & Stubbs LLP*,
420 P.3d 223, 228-29, 232-33 (Colo. 2018) (addressing the merits of a civil conspiracy
claim against one defendant when the alleged co-conspirators all earlier settled).

motion for attorney fees and costs, holding that § 13-17-201(1) entitled BFT to fees, and

that "the amount of fees requested—in connection with *this proceeding*—is reasonable."

App., Vol. V at 258.  The court declined to award the BFT Defendants fees accrued in the

PetroHunter bankruptcy proceeding.

Mr. Brody timely appealed, challenging (1) the dismissal of the civil conspiracy

claim, (2) the with-prejudice part of the dismissal, (3) the denial of his motion for

reconsideration, and (4) the partial award of attorney fees and costs to the BFT

Defendants.  At this point, the remaining parties are Mr. Brody and the BFT Defendants,

and the only remaining claim at issue is the civil conspiracy claim.

## II.  **APPELLATE JURISDICTION**

"[T]his court must always satisfy itself of jurisdiction before addressing the

merits" of an appeal.  *Cudjoe v. Indep. Sch. Dist. No. 12*, 297 F.3d 1058, 1063

(10th Cir. 2002).  We have "jurisdiction of appeals from all final decisions of the district

courts."  28 U.S.C. § 1291.  "To be final, a district court's 'decision must reflect the

termination of all matters as to all parties and causes of action.'"  *Banner Bank v. Smith*,

30 F.4th 1232, 1237-38 (10th Cir. 2022) (quoting *Dodge v. Cotter Corp.*, 328 F.3d

1212, 1221 (10th Cir. 2003)).

"Our general rule is that a party cannot obtain appellate jurisdiction where the

district court has dismissed at least one claim without prejudice because the case has not

been fully disposed of in the lower court."  *Jackson v. Volvo Trucks N. Am., Inc.*,

462 F.3d 1234, 1238 (10th Cir. 2006). As a corollary, "we will not allow parties to

manufacture finality by obtaining a voluntary dismissal without prejudice of some claims

so that others may be appealed." *Spring Creek Expl. & Prod. Co. LLC v. Hess Bakken

Inv., II, LLC*, 887 F.3d 1003, 1015 (10th Cir. 2018), *as revised* (Apr. 13, 2018)

(quotations omitted). "Although a dismissal without prejudice is usually not a final

decision, . . . [t]he critical determination as to whether an order is final is whether [the]

plaintiff has been effectively excluded from federal court under the present

circumstances." *Id.* (quotations omitted).

Because Mr. Brody dismissed his claims against MAB without prejudice, we must

determine whether we have appellate jurisdiction. *See Spring Creek Expl. & Prod. Co.*,

887 F.3d at 1015-16. We requested briefing from the parties on this finality issue. After

hearing from them, we are convinced that we have jurisdiction.

In his reply to the BFT Defendants' supplemental briefing, Mr. Brody "agree[d] to

waive" any right "to bring any of the claims asserted or that could have been asserted in

the operative complaint or an amended complaint in this action against [MAB] in any

court." Aplt. Reply to Aplee. Suppl. Br. at 2. And as Mr. Brody correctly states, his

"promise" to us "will judicially estop him [from] bring[ing] the waived claims against

[MAB]." *Id.* at 2 n.1; *see New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) ("[W]here

a party assumes a certain position in a legal proceeding, and succeeds in maintaining that

position, he may not thereafter, simply because his interests have changed, assume a

7

contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him." (quotations omitted)). "[A] plaintiff may cure [a finality] defect in appellate jurisdiction by disclaiming an intent to revive the dismissed claim (effectively, converting it to a dismissal *with prejudice*, for reasons of estoppel)." *Jewish People for the Betterment of Westhampton Beach v. Vill. of Westhampton Beach*, 778 F.3d 390, 394 (2nd Cir. 2015). In light of Mr. Brody's representations, we have appellate jurisdiction. *See Banner Bank*, 30 F.4th at 1237-38.[5]

## III. DISCUSSION

Mr. Brody argues the district court should not have (A) dismissed his civil conspiracy claim, (B) dismissed this claim with prejudice, (C) denied his motion for reconsideration, or (D) awarded attorney fees and costs to the BFT Defendants. We affirm.

### A. *Dismissal of the Civil Conspiracy Claim*

"We review de novo the dismissal of a complaint under Rule 12(b)(6)." *Barnett v. Hall, Estill, Hardwick, Gable, Golden & Nelson, P.C.*, 956 F.3d 1228, 1234 (10th Cir. 2020). Because Mr. Brody did not adequately allege a claim for civil conspiracy, we affirm.

---

[5] The BFT Defendants moved to dismiss the appeal for lack of jurisdiction and, if we granted the motion, for appellate attorney fees. Doc. 11070591 at 1, 4. Because we have jurisdiction and decide this appeal on the merits, we deny their motion.

1. **The Amended Complaint**

    a. *Mr. Brody's amended complaint*

According to Mr. Brody's amended complaint, the BFT Defendants "conspire[ed]

with [MAB] to defraud" Mr. Brody.  App., Vol. I at 28 ¶ 1; *see also id.* at 29 ¶ 9(a)

("Defendants are responsible for the defrauding of Plaintiff of the Brody claim . . . .").

BFT's purported involvement in the conspiracy is not mentioned again until

¶ 61, which states MAB, "BFT, and one Carmen J. (Tony) Lotito . . . have conducted and

treated the business activities of BFT, [MAB's] companies, and the BFT Trustee's

companies as intertwined and interrelated entities, including with respect to the claims

alleged herein."  *Id.* at 37-38 ¶ 61.

The amended complaint then alleged:

> [The BFT] Defendants [and MAB] agreed and worked
> cooperatively to defraud [Mr. Brody] of and steal the Brody
> Claim, use the Brody Claim, and/or retain the benefit of the
> Brody Claim, or, in the alternative, to breach [MAB]'s
> contractual obligation to pay consideration and act in good
> faith under the Agreement, and/or retain the benefit of
> [MAB]'s breach, in order to enrich themselves at the expense
> of [Mr. Brody].

*Id.* at 38 ¶ 62.  It further alleged:

> [Mr.] Lotito, on behalf of [MAB and the BFT] Defendants
> and potentially on behalf of himself . . . , repeatedly misled
> [Mr. Brody] into believing that [MAB] would fulfill his
> obligations under the Agreement, but instead allowed
> distributions on bankruptcy claims, including the Brody
> Claim, to become imminent.  [Mr.] Lotito did so by stating to
> [Mr. Brody] on several occasions that [Mr.] Lotito would
> provide [MAB] with [Mr. Brody]'s communications that

9

> [Mr. Brody] s[ought] to resolve the dispute amicably, and
> then for almost three years falsely telling [Mr. Brody] that
> [MAB] intended to pay and would pay the consideration
> required under the Agreement.

*Id.* ¶ 64. The amended complaint also alleged that Mr. Lotito "served in various

capacities with respect to [MAB] and the BFT Trustee . . . and their respective and joint

companies, as well as with BFT." *Id.* at 37 ¶ 61.

     b. *Mr. Brody's proposed reading of the complaint*

     On appeal, Mr. Brody argues that the district court focused too narrowly on

Paragraph 62 and that the amended complaint, "[v]iewed as a whole," Aplt. Br. at 20,

alleged the following:

> that the BFT Defendants conspired with [MAB] to defraud
> [Mr. Brody]; that together [the BFT] Defendants [and MAB]
> are responsible for the defrauding of [Mr. Brody] of the
> Brody Claim; that the purpose of acquiring [Mr. Brody]'s
> Claim was to benefit both [MAB] and the BFT Defendants in
> the bankruptcy case; that [the BFT] Defendants [and MAB]
> harmed [Mr. Brody]; that [MAB] and the BFT Defendants
> used their various business enterprises as intertwined and
> interrelated entities, including with respect to the claims
> alleged herein, with the intent to use [Mr. Brody's] Claim,
> without paying for it, through deception by [MAB] and the
> BFT's representative, [Mr.] Lotito.

*Id.* (alterations and quotations omitted); *see also* Aplt. Reply Br. at 4-5.

### 2.  **Legal Background**

     a. *Pleading standard*

     To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain "enough

facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

"All well-pleaded facts, as distinguished from conclusory allegations, must be taken as true, and the court must liberally construe the pleadings and make all reasonable inferences in favor of the non-moving party." *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1105 (10th Cir. 2017) (alterations and quotations omitted).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* "An allegation is conclusory where it states an inference without stating underlying facts or is devoid of any factual enhancement." *Brooks v. Mentor Worldwide LLC*, 985 F.3d 1272, 1281 (10th Cir. 2021). "[W]e disregard conclusory statements and look to the remaining factual allegations to see whether Plaintiffs have stated a plausible claim." *Id*.

"The degree of specificity needed to establish plausibility and provide fair notice depends on the context and the type of case." *Id.* In *Twombly*, the Supreme Court criticized conspiracy complaints that mentioned "no specific time, place, or person involved in the alleged conspiracies." 550 U.S. at 565 n.10.

b. *Elements of civil conspiracy*

Mr. Brody attempted to allege civil conspiracy under Colorado law,[6] which

requires a plaintiff to allege facts supporting the following elements "(1) two or more

persons; (2) an object to be accomplished; (3) a meeting of the minds [or agreement] on

the object or course of action; (4) an unlawful overt act; and (5) damages as to the

proximate result." *Nelson v. Elway*, 908 P.2d 102, 106 (Colo. 1995). "Additionally, the

purpose of the conspiracy must involve an unlawful act or unlawful means." *Id.*

"A party may not be held liable for doing in a proper manner that which it had a lawful

right to do." *Id.*

On the agreement element, the plaintiff "need not allege an express agreement,"

but "must at the very least allege 'a course of conduct and other circumstantial evidence

. . . [providing] some indicia of agreement in an unlawful means or end.'" *Scott v. Hern*,

216 F.3d 897, 918 (10th Cir. 2000) (quoting *Schneider v. Midtown Motor Co.*, 854 P.2d

1322, 1326 (Colo. App. 1992)); *see also Rosenblum v. Budd*, 538 P.3d 354, 367 (Colo.

App. 2023). Similarly, a plaintiff may rely on circumstantial evidence that supports

---

[6] As previously noted, the district court found it had jurisdiction under the "related
to" bankruptcy provision in 28 U.S.C. § 1334. In "related to" bankruptcy cases, the
court, as in diversity cases, applies state substantive law. *See Marshall v. Marshall*,
547 U.S. 293, 313 (2006). Thus, "our duty is simply to ascertain and apply the state
law," here Colorado law. *Gerson v. Logan River Acad.*, 20 F.4th 1263, 1277
(10th Cir. 2021) (quotations omitted). We accord no deference to the district court's
interpretation of state law. *McGehee v. Forest Oil Corp.*, 908 F.3d 619, 624
(10th Cir. 2018).

"infer[ring] an agreement," but must still plead facts to support that inference. *Twombly*, 550 U.S. at 554, 556. Further, "silent knowledge of an unlawful act is insufficient to establish the requisite agreement." *More v. Johnson*, 568 P.2d 437, 440 (Colo. 1977).

*Scott* is instructive. There, the plaintiff sued a doctor and private investigator for civil conspiracy under Colorado law, alleging that they had conspired to invade his privacy. 216 F.3d at 904-05, 917. We upheld dismissal of the complaint for failure to state a claim because the plaintiff failed to allege sufficient facts to show an agreement between the defendants. *Id.* at 918. The plaintiff alleged that the private investigator unlawfully obtained records about the plaintiff and that the doctor then relied on information from those unlawfully obtained records to seek a restraining order against the plaintiff. *Id.* at 905, 917. We held this failed to allege an agreement. *Id.* at 917-18. We further said that even if the private investigator unlawfully obtained the records and the doctor used them knowing that they were unlawfully obtained, "silent knowledge of an unlawful act is insufficient to establish the requisite agreement." *Id.* at 918 (quoting *More*, 568 P.2d at 440). The complaint therefore failed to allege an agreement, and the civil conspiracy claim was properly dismissed. *Id.*

3. **Application**

Mr. Brody did not plausibly allege the agreement element for civil conspiracy. His allegations about the BFT Defendants were conclusory. The amended complaint failed to describe what the BFT Defendants did or how they conspired with MAB.

App., Vol. I at 37-38. In particular, it failed to allege an agreement between the BFT Defendants and MAB.

Paragraph 62 of the amended complaint contains Mr. Brody's most detailed conspiracy allegations, averring that the BFT Defendants and MAB "agreed . . . to defraud Plaintiff and steal . . . use . . . and/or retain the benefit of the Brody claim." *Id* at 37 ¶ 62. These conclusory allegations are "devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (quotations omitted). "Terms like 'conspiracy,' or even 'agreement,' are border-line" and "might . . . be sufficient in conjunction with a more specific allegation" like "identifying a written agreement . . . ." *Twombly*, at 550 U.S. at 557 (alterations and quotations omitted). Mr. Brody provides no detail about what BFT agreed to do to defraud Mr. Brody, how the parties planned to steal Mr. Brody's claim, or when the BFT Defendants and MAB agreed to defraud him. Similarly, he does not identify any purported written or oral agreement.

Reading the amended complaint as a whole, as Mr. Brody urges, we find it still fails to provide sufficient factual allegations to show an agreement between MAB and the BFT Defendants. Mr. Brody again relies on conclusory allegations, alleging, for example, that MAB and the BFT Defendants "used their various business enterprises as 'intertwined and interrelated entities,'" Aplt. Br. at 20 (quoting App., Vol. I at 37-38 ¶ 61), without alleging facts showing how the businesses were actually intertwined or how MAB and BFT agreed to steal the Brody Claim. He similarly alleges that MAB and

14

the BFT Defendants "inten[ded] 'to use [Mr. Brody's] Claim,' without paying for it," *id.* (quoting App., Vol. I at 38 ¶ 62), but provides no facts to show intent.

Mr. Brody also fails to allege a course of conduct or relevant circumstantial evidence to infer an agreement between MAB and the BFT Defendants. The amended complaint describes MAB's actions—such as "advis[ing] [Mr. Brody] that he did not have the ability to" pay within the specified time and failing to assign the promised shares to Mr. Brody, App., Vol. I at 32-33 ¶ 23—but provides no corresponding allegations about BFT, *see id.* at 27-39.[7]

"Finally, even if [Mr. Brody's] complaint could be read to allege that [MAB], acting independently, obtained" the Brody Claim unlawfully, and the BFT Defendants used the claim "knowing [its] unlawful provenance, 'silent knowledge of an unlawful act

---

[7] Mr. Brody alleged that Mr. Lotito "t[old] [Mr. Brody] that . . . [MAB] intended to pay and would pay the consideration required by the agreement." App., Vol. I at 38 ¶ 64. On appeal, Mr. Brody argues that Mr. Lotito was an agent of BFT, *see* Aplt. Br. at 5, 38, but he never alleged this in his complaint, *see* App., Vol. I at 37-38. A plaintiff seeking to establish a party's liability for the acts of its purported agent must allege an agency relationship. *See, e.g.*, *Daniel v. Ben E. Keith Co.*, 97 F.3d 1329, 1335-36 (10th Cir. 1996) ("The party asserting the existence of an agency relationship carries the burden of proving the relationship exists."). It is not enough to allege "*some* sort of relationship"; the plaintiff must establish "an *agency* relationship." *Escano v. Concord Auto Protect*, No. 22-2096, 2023 WL 4247703, at *4 (10th Cir. June 29, 2023) (unpublished). And to do so, the plaintiff must plead "sufficient facts to support the legal allegation of an agency relationship." *Id.* (affirming dismissal where the plaintiff pled one entity controlled another and "both . . . manifested assent to that control, but [the complaint] did not supply sufficient facts to support those conclusory allegations"). Mr. Brody failed to do so here.

is insufficient to establish the requisite agreement.'" *Scott*, 216 F.3d at 918 (quoting

*More*, 568 P.2d at 440)).

The district court thus had no basis to "infer an agreement." Aplt. Br. at 24-25.

Mr. Brody alleged conclusions rather than facts about an agreement between MAB and

the BFT Defendants. Because he did not plausibly allege an agreement between the

alleged co-conspirators, Mr. Brody did not state a claim that the BFT Defendants

committed civil conspiracy.

## B. *Dismissal with Prejudice*

Mr. Brody argues the district court's decision to dismiss with prejudice rather

than without prejudice was an abuse of discretion. First, he contends the court failed

to explain this choice. Second, he asserts it would not have been futile to amend his

complaint, so the with-prejudice dismissal was improper. Mr. Brody has waived both

arguments.

### 1. **Additional Procedural History**

The district court did not explain why it chose "with prejudice" for its dismissal of

the civil conspiracy claim. Mr. Brody moved for reconsideration of the dismissal order

or for leave to amend. His motion did not contest the with-prejudice nature of the order.

*See* App., Vol. III at 158-71. In his reply to the BFT Defendants' opposition to his

motion, he said the court could allow him to amend his complaint only if it

"reconsider[ed] its prejudicial dismissal." App., Vol. IV at 69. Mr. Brody argued

(1) dismissal with prejudice would have been proper only if "amendment would be futile" and (2) the court should not have found futility because "the facts the [c]ourt ha[d] not yet considered show that [Mr. Brody] would be able to state a claim for conspiracy if the [c]ourt allows him to replead." *Id.* at 69-70.

In denying Mr. Brody's motion, the district court first said that leave to amend would be inappropriate because amendment would be futile. In response to Mr. Brody's contention that "newly discovered evidence strengthen[ed] his conspiracy claims," the court found that the additional facts "establish[ed] neither a meeting of the minds between MAB and the BFT Defendants with regard to any agreement between [Mr. Brody] and MAB nor any awareness or participation on the part of the BFT Defendants regarding any unlawful conduct." App., Vol. V at 255.[8] The court further explained that, as Mr. Brody conceded, a motion to amend "cannot be made unless and until [it] reconsiders its prejudicial dismissal." *Id.* at 255-56. It said it "ha[d] already determined that reconsideration [of its dismissal] [wa]s not appropriate, and therefore there [wa]s no basis for granting leave to amend." *Id.* at 256.

## 2. **Legal Background**

"[D]enial of leave to amend and dismissal with prejudice are two separate concepts." *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006).

---

[8] The district court also noted that Mr. Brody failed to file a proposed amended complaint as required under the local rules when seeking leave to amend.

But the two are related, as "[a] dismissal with prejudice is appropriate where a complaint fails to state a claim under Rule 12(b)(6) and granting leave to amend would be futile." *Id.* And courts may deny leave to amend when it would be futile for the plaintiff to amend their complaint. *Duncan v. Mgr., Dep't of Safety*, 397 F .3d 1300, 1315 (10th Cir. 2005). "A proposed amendment is futile if the complaint, as amended, would be subject to dismissal." *Anderson v. Suiters*, 499 F.3d 1228, 1238 (10th Cir. 2007) (quotations omitted).

A district court's failure to determine whether amendment would be futile when dismissing with prejudice may be "both (1) substantively harmless in light of [the appellate court's] own de novo conclusion on the matter, and (2) procedurally unobjectionable in light of [the plaintiff's] failure to file a formally adequate and factually substantiated motion for leave to amend in the district court following . . . defendants' motions to dismiss." *Christensen v. Big Horn Cnty. Bd. of Cnty. Comm'rs*, 374 F. App'x 821, 829 (10th Cir. 2010) (unpublished).[9]

3. **Analysis**

On appeal, Mr. Brody challenges the with-prejudice part of the court's dismissal. He does not contest the denial of his request for leave to amend. *See* Aplt. Br. at 2-3. He argues "the court abused its discretion when it dismissed the conspiracy claim with

---

[9] Although not precedential, we find the reasoning of unpublished opinions cited in this order and judgment instructive. *See* 10th Cir. R. 32.1; Fed. R. App. P. 32.1.

prejudice where: (a) the Court's dismissal order did not include a basis for dismissing with prejudice and/or (b) facts sought to be incorporated by reference showed that amendment would not be futile." *Id.* at 2-3.

   a. *Failure to explain*

   Mr. Brody has waived his argument that the district court erred by failing to explain why it dismissed with prejudice. He failed to raise it when he sought reconsideration of the district court's dismissal[10] and thus forfeited this argument by failing to "alert[] the district court to the issue." *Somerlott v. Cherokee Nation Distribs., Inc.*, 686 F.3d 1144, 1150 (10th Cir. 2012) (quotations omitted). Mr. Brody mentions plain error in his reply brief but does not adequately address the required four-prong showing of plain error. *See* Aplt. Reply Br. at 21 (discussing only a "miscarriage of justice").[11] We therefore will not consider Mr. Brody's argument that the district court failed to explain its dismissal with prejudice. *See Richison v. Ernest Grp., Inc.*, 634 F.3d 1123, 1128 (10th Cir. 2011) (when an appellant has failed to present an argument in

---

   [10] Before the district court, Mr. Brody's only argument was that dismissal with prejudice "should only happen when amendment would be futile" and that the court "ought not find futility" in his case. App., Vol. IV at 69-70.

   [11] To establish plain error, the appellant must show "there is (1) error, (2) that is plain, which (3) affects substantial rights, and which (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Gonzalez-Huerta*, 403 F.3d 727, 732 (10th Cir. 2005) (quotations omitted).

district court and fails to argue plain error in this court, the argument is waived); *United States v. Kearn*, 863 F.3d 1299, 1313 (10th Cir. 2017).

    b.  *Futility of amendment*

Mr. Brody also argues the district court erred in dismissing his case with prejudice because amendment would not have been futile. Aplt. Br. at 34. He briefly made this argument in district court. *See* App., Vol. IV at 69-70. But on appeal he fails to adequately present it. He does not explain what additional facts he would allege or how he would otherwise revise his complaint. *See* Aplt. Br. at 34.[12] "We routinely have declined to consider arguments that are not raised, or are inadequately presented, in an appellant's opening brief." *Bronson v. Swensen*, 500 F.3d 1099, 1104 (10th Cir. 2007); *see* Fed. R. App. P. 18(a)(8)(A). We therefore decline to consider Mr. Brody's futility argument.

### C. *Motion for Reconsideration*

We review the district court's denial of a motion for reconsideration for abuse of discretion. *Muskrat v. Deer Creek Pub. Sch.*, 715 F.3d 775, 789 (10th Cir. 2013). "Under an abuse of discretion standard, a trial court's decision will not be disturbed

---

[12] Mr. Brody similarly failed to explain to the district court how he would amend his complaint, arguing that "facts the [c]ourt has not yet considered show that [he] would be able to state a claim for conspiracy" but not discussing those facts or how they would be incorporated into an amended complaint. *See* App., Vol. IV at 70. Further, the Colorado federal district court requires a plaintiff seeking leave to amend to include a copy of the proposed amendment. *See* D.C. Colo. L. Civ. R. 15.1. Mr. Brody failed to do so. *See* App., Vol. V at 255.

unless" we have "a definite and firm conviction that the lower court made a clear error of

judgment or exceeded the bounds of permissible choice in the circumstances." *Wright ex*

*rel. Tr. Co. of Kansas v. Abbott Lab'ys, Inc*., 259 F.3d 1226, 1235 (10th Cir. 2001)

(quotations omitted).  In other words, "we will not alter a trial court's decision unless it

can be shown that the court's decision was an arbitrary, capricious, whimsical, or

manifestly unreasonable judgment." *Id.* at 1236 (quotations omitted).  The district court

did not abuse its discretion in denying Mr. Brody's motion for reconsideration, which he

filed under Federal Rule of Civil Procedure 60(b).[13]

1.  **Legal Background**

     Under Rule 60(b), the district court may relieve a party from an order for "any . . .

reason that justifies relief."  Fed. R. Civ. P. 60(b)(6).  "Grounds warranting a motion to

reconsider include (1) an intervening change in the controlling law, (2) new evidence

previously unavailable, and (3) the need to correct clear error or prevent manifest

injustice."  *Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000).  When,

as here, a motion seeks reconsideration of a 12(b)(6) motion to dismiss, the court may

consider only the pleadings.  *See GFF Corp. v. Associated Wholesale Grocers, Inc.*,

130 F.3d 1381, 1385 (10th Cir. 1997).

---

     [13] Mr. Brody moved for reconsideration 25 days after the district court ruled on the
motion to dismiss.  *See* App., Vol. I at 8-9.  He could have moved for reconsideration
under Rule 59(e) but did so under Rule 60(b), s*ee* App., Vol. III at 159.  *See* Fed. R. App.
Proc. 4(a)(4)(vi) (observing a Rule 60 motion may be filed during the same time frame
allowed for a Rule 59 motion).

2.  **District Court Order**

The district court noted that Mr. Brody's motion for reconsideration primarily

argued the court had evaluated his pleadings under an improperly "heightened" standard.

App., Vol. V at 252.  It rejected this argument, stating it had correctly applied the

*Twombly* standard to find that Mr. Brody "failed to plead sufficient facts to support his

conspiracy claims." *Id.* at 253.  It said that Mr. Brody's use of "snippets of allegations"

from his amended complaint "add[ed] no heft to the allegation[s]" that the court had

found were insufficient to state a claim. *Id.* at 254.  The court said Mr. Brody still failed

to allege "evidence imputing" MAB's intent not to pay for the bankruptcy claim "to the

BFT Defendants." *Id.*  It concluded, "[T]he mere fact that MAB's acquisition of the

bankruptcy claim may have strengthened the BFT Defendants' position in the bankruptcy

proceeding is inadequate to establish that the BFT Defendants supported acquiring the

claim *by unlawful means*." *Id.*

The district court also addressed Mr. Brody's request to supplement his motion for

reconsideration.  First, it noted "the Motion for Reconsideration addresse[d] an

underlying Order addressing the allegations contained within the four corners of the

Amended Complaint." *Id.* at 256.  Mr. Brody's attempt to supplement his motion thus

"stray[ed] well beyond the purpose of a motion to dismiss, which is to test the adequacy

of the allegations *in the complaint*." *Id.*  Mr. Brody showed no reason that the district

court should "consider matters outside the complaint when ruling on a motion to

dismiss." *Id.* at 257.  Second, even if the court were to consider the additional evidence, the "newly discovered facts . . . ha[d] little, if anything, to do with the allegations in the Amended Complaint." *Id.* at 256.

3.  **Analysis**

Mr. Brody argues the district court abused its discretion in denying his motion for reconsideration.  We disagree.

<u>First</u>, the district court analyzed Mr. Brody's complaint under the appropriate legal standard.  As discussed above, Mr. Brody failed to state a claim for civil conspiracy. Because the district court's reasoning in its initial dismissal order was correct, there was no manifest injustice or clear error for it to correct through reconsideration.

<u>Second</u>, as to "new" evidence, the district court correctly recognized the purpose of a 12(b)(6) motion to dismiss is to test a complaint's allegations.  *See, e.g.*, *Waller v. City and Cnty. of Denver*, 932 F.3d 1277, 1286 n.1 (10th Cir. 2019) ("The nature of a Rule 12(b)(6) motion tests the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true, and we will not consider evidence or allegations outside the four corners of the complaint in reviewing the district court's Rule 12(b)(6) dismissal." (quotations and citations omitted)).  The new evidence Mr. Brody

presented was not incorporated into his amended complaint or in a proposed amendment, and therefore was not properly before the court.[14]

The district court did not abuse its discretion in denying Mr. Brody's motion for reconsideration.

## D.   *Attorney Fees under Colo. Rev. Stat. § 13-17-201(1)*

"We review a district court's attorneys' fee award for abuse of discretion, though in doing so we review the district court's application of legal principles de novo . . . ." *In re Syngenta AG MIR 162 Corn Litig.*, 61 F.4th 1126, 1177 (10th Cir. 2023) (alterations and quotations omitted).  The "statutory interpretation or legal analysis that formed the basis of the award" is therefore reviewed de novo.  *Xlear, Inc. v. Focus Nutrition, LLC*, 893 F.3d 1227, 1233 (10th Cir. 2018) (quotations omitted).  We affirm the district court's award of attorney fees under Colo. Rev. Stat. § 13-17-201(1).

## 1.  **Legal Background**

### a.  *Section 13-17-201(1)*

Colorado Revised Statute § 13-17-201(1) provides:

> In all actions brought as a result of a death or an injury to person or property occasioned by the tort of any other person, where any such action is dismissed on motion of the defendant prior to trial under rule 12(b) of the Colorado rules

---

[14] The cases Mr. Brody cites on appeal to argue the district court should have considered his supplemental evidence are summary judgment cases and are not applicable to a Rule 12(b)(6) motion to dismiss.  *See* Aplt. Br. at 35.

of civil procedure, such defendant shall have judgment for his reasonable attorney fees in defending the action.[15]

"Where a plaintiff has pleaded both tort and non-tort claims, the question of statutory attorney fees [under § 13-17-201] properly turns on the question whether the essence of the action was one in tort." *Luskin Daughters 1996 Tr. v. Young*, 448 P.3d 982, 987 (Colo. 2019) (quotations omitted); *see also Li v. Colo. Reg'l Ctr. LLC*, No. 21-1232, 21-1253, 2022 WL 5320135, at *16 (10th Cir. Oct. 7, 2022) (unpublished) (quoting *Gagne v. Gagne*, 338 P.3d 1152, 1167 (Colo. App. 2014)). For example, in *Luskin*, the Colorado Supreme Court considered what behavior "occasioned" the plaintiff's allegations. 448 F.3d at 987. It explained that the essence of the case sounded in tort because the non-tort claims "only attempted to establish" a predicate issue to allow relief from the "alleged tortious conduct." *Id.* at 988. When a complaint essentially alleges a tort, attorney fees are mandatory. *See id.* Finally, "a court must also award attorney fees to a defendant even if claims remain live against a co-defendant." *Li*, 2022 WL 532015, at *16.

---

[15] Although § 13-17-201(1) expressly references Rule 12(b) of the Colorado Rules of Civil Procedure, we held it also applies when a federal court is applying substantive Colorado law and procedurally dismisses under Federal Rule of Civil Procedure 12(b)(6). *See Seale v. Peacock*, 32 F.4th 1011, 1032 n.15 (10th Cir. 2022) (affirming a 12(b)(6) dismissal and leaving in place the district court's order granting attorney fees under § 13-17-201); *Jones v. Denver Post Corp.*, 203 F.3d 748, 757 (10th Cir. 2000), *abrogated on other grounds by Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 122 (2002) (explaining that because attorney fee statutes are considered substantive state law the district court properly awarded fees under § 13-17-201(1) when dismissing the plaintiff's Colorado state law claim under Federal Rule of Civil Procedure 12(b)(6)).

b. *The nature of civil conspiracy*

The issue here is whether civil conspiracy is a tort. When ascertaining Colorado

law, we look first to "the most recent decisions of the state's highest court." *Wade v.*

*EMCASCO Ins. Co.*, 483 F.3d 657, 665-66 (10th Cir. 2007). "If the state's highest court

has not decided an issue, we predict how the court would rule by consulting persuasive

state authority, such as dictum by the state's highest court and precedential decisions by a

state's intermediate appellate courts." *Evanston Ins. Co. v. Desert State Life Mgmt.*,

56 F.4th 899, 905 (10th Cir. 2022) (quotations omitted).

The Colorado Supreme Court has recognized civil conspiracy as a "tort claim[]."

*Glover v. Serratoga Falls LLC*, 498 P.3d 1106, 1110, 1120 (Colo. 2021) (listing civil

conspiracy as one of "various tort claims"); *Ingold v. AIMCO/Bluffs, L.L.C. Apartments*,

159 P.3d 116, 122 (Colo. 2007); *Logixx Automation, Inc. v. Lawrence Michels Fam. Tr.*,

56 P.3d 1224, 1230-31 (Colo. App. 2002) (analyzing civil conspiracy to breach a contract

as a tort claim).

2. **Analysis**

Under § 13-17-201(1), a court must award a prevailing defendant attorney fees

and costs when all the tort claims against that party were dismissed on a Rule 12(b)(6)

motion. *See Jones*, 203 F.3d at 757. Because the only claim against the BFT Defendants

was dismissed on a Rule 12(b)(6) motion, and because the Colorado Supreme Court has

said a civil conspiracy is a "tort claim[]," *Glover*, 498 P.3d at 1110, the district court did

not abuse its discretion by awarding the BFT Defendants attorney fees under

§ 13-17-201(1).[16]

## IV. **CONCLUSION**

We affirm the district court on all four issues.  We deny the BFT Defendants'

motion to file a supplemental appendix as moot.

Entered for the Court

Scott M. Matheson, Jr.
Circuit Judge

---

[16] Mr. Brody argues that applying § 13-17-201(1) here would be inappropriate because the tort claims against MAB for civil theft and fraud were not dismissed under Rule 12(b)(6).  Aplt. Br. at 41-42.  We disagree.  Section 13-17-201(1) entitles the BFT Defendants to attorney fees because the court dismissed the sole claim against them. *Stauffer v. Stegemann*, 165 P.3d 713, 718-19 (Colo. App. 2006) (affirming an attorney fee award under § 13-17-201(1) when the sole tort claim against one defendant was dismissed despite other claims pending against other defendants).

UNITED STATES COURT OF APPEALS FOR THE TENTH CIRCUIT

Byron White United States Courthouse
1823 Stout Street
Denver, Colorado 80257
(303) 844-3157
Clerk@ca10.uscourts.gov

Christopher M. Wolpert
Clerk of Court

Jane K. Castro
Chief Deputy Clerk

May 01, 2024

Mr. Michael A. Rollin
Foster Graham Milstein & Calisher
360 South Garfield Street, Suite 600
Denver, CO 80209

**RE:**    **23-1102, Brody v. Bruner**
Dist/Ag docket: 1:19-CV-01091-RM-NRN

Dear Counsel:

Enclosed is a copy of the order and judgment issued today in this matter. The court has entered judgment on the docket pursuant to Fed. R. App. P. Rule 36.

Pursuant to Fed. R. App. P. Rule 40(a)(1), any petition for rehearing must be filed within 14 days after entry of judgment. Please note, however, that if the appeal is a civil case in which the United States or its officer or agency is a party, any petition for rehearing must be filed within 45 days after entry of judgment. Parties should consult both the Federal Rules and local rules of this court with regard to applicable standards and requirements. In particular, petitions for rehearing may not exceed 3900 words or 15 pages in length, and no answer is permitted unless the court enters an order requiring a response. *See* Fed. R. App. P. Rules 35 and 40, and 10th Cir. R.35 and 40 for further information governing petitions for rehearing.

Please contact this office if you have questions.

Sincerely,

Christopher M. Wolpert
Clerk of Court

cc:    Bennett L. Cohen
William Meyer

CMW/jm